UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X

725 EATERY CORP., etc., *et ano.,*                    :

                          Plaintiffs,    :

              - against -                    :    Civil Action No.
                                    02 CV 4431 (WHP)

THE CITY OF NEW YORK, et al.,                    :

                        Defendants.    :
-------------------------------------------------------------X

59 MURRAY ENTERPRISES INC., etc., *et al.,*        :

                          Plaintiffs,    :

              - against -                    :    Civil Action No.
                                    02 CV 4432 (WHP)

THE CITY OF NEW YORK, et al.,                    :

                        Defendants.    :
-------------------------------------------------------------X

CLUB AT 60TH STREET, INC., etc., *et al.,*        :

                          Plaintiffs,    :

              - against -                    :    Civil Action No.
                                    02 CV 8333 (WHP)

THE CITY OF NEW YORK,                    :

                        Defendant.    :
-------------------------------------------------------------X

336 LLC., etc., *et al.,*                    :

                          Plaintiffs,    :

              - against -                    :    Civil Action No.
                                    18 CV 3732 (WHP)

THE CITY OF NEW YORK,                    :

                        Defendant.    :
-------------------------------------------------------------X

# NOTICE OF FILING OF PLAINTIFFS' JOINT APPENDIX VOLUME 5
## IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

**PLEASE TAKE NOTICE,** that Plaintiffs hereby file the within Volume 5 of

Plaintiffs' Joint Appendix in the above-captioned actions.

Dated:        New York, New York
              November 21, 2018

*Respectfully,*

**DANIEL A. SILVER**                           **JOHN H. WESTON**
**SILVER & SILVER**                            **G. RANDALL GARROU**
One Liberty Square                             **WESTON, GARROU & MOONEY**
New Britain, Connecticut 06050-0698            12121 Wilshire Boulevard, Suite 525
(860) 225-3518                                 Los Angeles, CA 90025-1176
                                               (310) 442-0072

     - and -                                      - and -

**JENNIFER KINSLEY**                           **ALAN M. ABRAMSON**
Kinsley Law Office                             **ABRAMSON & MORAK**
Post Office Box 19478                          35 Worth Street
Cincinnati, Ohio 45219                         New York, New York 10013
(513) 708-2595                                 (212) 226-7098

*Attorneys for Plaintiffs*                     *Attorneys for*
*725 Eatery Corp., etc., et ano.*              *Club At 60th Street, Inc., etc., et al.*

By: ___s/Daniel A. Silver_____               By: ___s/John Weston_____
Daniel A. Silver                                      John Weston

**EDWARD S. RUDOFSKY**                         **ERICA DUBNO**
**ZANE and RUDOFSKY**                          Fahringer & Dubno
601 West 26th Street, # 1315                   767 Third Avenue, Suite 3600
New York, New York  10001                      New York, New York
(212) 245-2222                                 (212) 319-5351

*Attorneys for Plaintiffs*                     *Attorneys for Plaintiffs*
*59 Murray Enterprises, Inc., etc.*            *336 LLC, etc., et al.*
*et al.*

By: ___s/Edward S. Rudofsky_____              By: ___s/Erica T. Dubno_____
    Edward S. Rudofsky                          Erica T. Dubno

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
725 EATERY CORP., etc., *et ano.,*                    :

                         Plaintiffs,      :

           - against -                    :            Civil Action No.
                                           02 CV 4431 (WHP)
THE CITY OF NEW YORK, et al.,                    :

                         Defendants.  :
----------------------------------------------------------------X
59 MURRAY ENTERPRISES INC., etc., *et al.,*      :

                         Plaintiffs,      :

           - against -                    :            Civil Action No.
                                           02 CV 4432 (WHP)
THE CITY OF NEW YORK, et al.,                    :

                         Defendants.  :
----------------------------------------------------------------X
CLUB AT 60TH STREET, INC., etc., *et al.,*       :

                         Plaintiffs,      :

           - against -                    :            Civil Action No.
                                           02 CV 8333 (WHP)
THE CITY OF NEW YORK,                            :

                         Defendant.   :
----------------------------------------------------------------X

336 LLC., etc., *et al.,*                        :

                         Plaintiffs,      :

           - against -                    :            Civil Action No.
                                           18 CV 3732 (WHP)
THE CITY OF NEW YORK,                            :

                         Defendant.   :
----------------------------------------------------------------X

## PLAINTIFFS' JOINT APPENDIX
## (<u>VOL. 5 of 17; pp. 0339--0519</u>)

Per the Court's Order of November 7, 2018, Plaintiffs in each of the four above-entitled actions hereby submit their unitary Joint Appendix consisting exclusively of evidentiary documents upon which some or all of the Plaintiffs may choose to rely. The inclusion of documents in this Joint Appendix does not automatically signify an endorsement or promotion of any of these documents by any individual Plaintiff or group of Plaintiffs. That will depend on specific adoption of any of these documents by any Plaintiffs or Group of Plaintiffs in documents they may file with the Court.

The reference below to the "Club Plaintiffs" refers to all the Plaintiffs in Action Nos. 02 CV 4431, 02 CV 4432 and 02 CV 8333. The reference below to the "Bookstore Plaintiffs" refers to all the Plaintiffs in Action No. 18 CV 3732.

## <u>TABLE OF CONTENTS</u>

| <u>Tab No.</u> | <u>Description of Document</u> | <u>Joint Appendix Starting Page #</u> |
|---|---|---|
| | <u>DOCUMENTS SUBMITTED BY CLUB PLAINTIFFS</u> | |
| | **VOLUME 1** <br> **(pp. 0001--0030)** | |
| | <u>CLUB PLAINTIFFS' EXPERT DECLARATIONS</u> | |
| A | **Declaration of Michael Berzak Regarding Adult Business Sites in Support of Plaintiffs' Motion for** | **0001** |

| | | |
|---|---|---|
| | **Preliminary Injunction** | |
| | ***Exhibit 1***: Sequential Maps of Adult Business Sites in Manhattan, Prepared by Berzak Associates | 0019 |
| | **VOLUME 2**<br>**(pp. 0031--0038)** | |
| | ***Exhibit 2***: Sequential Maps of Adult Business Sites in Queens, Prepared by Berzak Associates | 0031 |
| | ***Exhibit 3***: Sequential Maps of Adult Business Sites in the Bronx, Prepared by Berzak Associates | 0035 |
| | **VOLUME 3**<br>**(pp. 0039--0046)** | |
| | ***Exhibit 4***: Sequential Maps of Adult Business Sites in Brooklyn, Prepared by Berzak Associates | 0039 |
| | ***Exhibit 5***: Sequential Maps of Adult Business Sites in Staten Island, Prepared by Berzak Associates | 0043 |
| | **VOLUME 4**<br>**(pp. 0047--0338)** | |
| | ***Exhibit 6***: Relevant Portions of AZR § 12-10 (definitions), § 32-01 (commercial zone restrictions on adult uses) and § 42-01 (manufacturing zone restrictions on adult uses) | 0047 |
| | ***Exhibit 7***: 1 RCNY § 9000-01 | 0059 |
| | ***Exhibit 8***: DOB Operations Policy and Procedure Notice No. 17/95 | 0061 |
| | ***Exhibit 9***: DOB Operations Policy and Procedure Notice No. 6/96 | 0065 |
| | ***Exhibit 10***: DOB Operations Policy and Procedure Notice No. 7/96 | 0074 |

| | | |
|---|---|---|
| | *Exhibit 11*: DOB Operations Policy and Procedure Notice No. 8/96 | 0077 |
| | *Exhibit 12*: DOB Operations Policy and Procedure Notice No. 4/98 | 0080 |
| | *Exhibit 13*: DOB Operations Policy and Procedure Notice No. 6/98 | 0083 |
| | *Exhibit 14*: DOB Operations Policy and Procedure Notice No. 7/02 | 0087 |
| | *Exhibit 15*: Online DOB handbook published in 2016 entitled "Adult Establishment Applications" | 0091 |
| | *Exhibit 16*: City-generated Map Showing the Gowanus Canal Areas Which are Under Consideration for Zoning Changes Allowing Residential and Mixed Uses | 0103 |
| B | Declaration of Michael Berzak in Support of Permitting Issues Presented in Plaintiffs' Motion for Preliminary Injunction | 0105 |
| | *Exhibit 1*: Curriculum Vitae | 0124 |
| | *Exhibit 2*: NYCAC Title 27 Subchapter 1, Article 10 (Permits) | 0126 |
| | *Exhibit 3*: 1 RCNY § 9000-01 | 0129 |
| | *Exhibit 4*: NYCAC § 27-217 | 0131 |
| | *Exhibit 5*: NYCAC Title 27 Subchapter 1, Article 9 (Approval of Plans) | 0133 |
| | *Exhibit 6*: Relevant Portions of NYCAC Title 27 Subchapter 1, Article 19 (Issuance of Permits) | 0137 |
| | *Exhibit 7*: DOB's Buildings Bulletin 2016-010 | 0140 |
| | *Exhibit 8*: OPPN # 7/02 | 0145 |

6

| | *Exhibit 9*: DOB Code Note (Adult Establishment Applications) | **0149** |
|---|---|---|
| **C** | **Declaration of Hugh Kelly in Support of Plaintiffs' Motion for Preliminary Injunction** | **0161** |
| **D** | **Affidavit of Lance Freeman in Support of Plaintiffs' Motion for Preliminary Injunction** | **0212** |
| | **CLUB CLIENTS' DECLARATIONS** | |
| **E** | **Declaration of David M. Talla in Support of Plaintiffs' Motion for Preliminary Injunction** | **0227** |
| **F** | **Declaration of Keith Warech in Support of Plaintiffs' Motion for Preliminary Injunction** | **0248** |
| **G** | **Declaration of Anthony Capeci in Support of Plaintiffs' Motion for Preliminary Injunction** | **0262** |
| **H** | **Declaration of Barry Lipsitz in Support of Plaintiffs' Motion for Preliminary Injunction** | **0265** |
| **I** | **Declaration of Anthony D'Amico in Support of Plaintiffs' Motion for Preliminary Injunction** | **0283** |
| **J** | **Declaration of Maurice Kavanagh in Support of Plaintiffs' Motion for Preliminary Injunction** | **0297** |
| | **OTHER ITEMS** | |
| **K** | **Declaration of Edward Rudofsky in Support of Plaintiffs' Motion for Preliminary Injunction Regarding Legislative History and Related Matters** | **0312** |
| **L** | **Declaration of Edward S. Rudofsky in Support of Plaintiffs' Motion for Preliminary Injunction Regarding the Status of Veil NYC and Headquarters n/k/a Rosewood Theater** | **0335** |
| | **VOLUME 5 (pp. 0339--0519)** | |

| | | |
|---|---|---|
| **M** | **Club Plaintiffs' Request To Take Judicial Notice** | **0339** |
| | *Exhibit 1*: NYC Council Resolution 1322-1995 ("1995 Ordinance") | 0348 |
| | *Exhibit 2*: NYC Council Resolution 0208-1998 (regarding signage regulations) | 0364 |
| | *Exhibit 3*: NYC Council Resolution 2096-2001 ("2001 Amendments") | 0378 |
| | *Exhibit 4*: Relevant portions of NYC Council Resolution 586-2004 (amending, *inter alia*, AZR §§ 32-01 & 42-01 regarding adult businesses) | 0384 |
| | *Exhibit 5*: Relevant portions of NYC Council Resolution 499-2010 (amending, *inter alia*, AZR §§ 32-01 & 42-01 regarding adult businesses) | 0391 |
| | *Exhibit 6*: NYC AZR § 31-17 | 0394 |
| | *Exhibit 7*: NYC AZR § 31-18 | 0397 |
| | *Exhibit 8*: NYC AZR § 32-01 (multiple versions) | 0400 |
| | *Exhibit 9*: NYC AZR § 32-69 (multiple versions) | 0404 |
| | *Exhibit 10*: NYC AZR § 42-01 (multiple versions) | 0408 |
| | *Exhibit 11*: NYC AZR § 52-11 | 0412 |
| | *Exhibit 12*: NYC AZR § 52-61 | 0415 |
| | *Exhibit 13*: NYC AZR § 52-734 | 0419 |
| | *Exhibit 14*: NYC AZR § 52-77 | 0423 |
| | *Exhibit 15*: NYC AZR § 72-41 | 0427 |
| | *Exhibit 16*: NYC Administrative Code, Title 27, Chapter 1, Article 9 ("Approval of Plans") | 0431 |

| | | |
|---|---|---|
| | *Exhibit 17*: NYC Administrative Code, Title 27, Chapter 1, Article 10 ("Permits") | 0438 |
| | *Exhibit 18*: NYC Administrative Code, Title 27, Chapter 1, Article 19 ("Issuance of Permits") (relevant sections) | 0444 |
| | *Exhibit 19*: NYC Administrative Code, Title 27, Chapter 1, Article 22, § 27-217 ("Certificates of Occupancy / Change of Occupancy of Use") | 0457 |
| | *Exhibit 20*: NYC Dept. of Buildings Administrative Materials: Directive 14 of 1975 (authorizing self-certification of applications for building permits by licensed architects and engineers) | 0462 |
| | *Exhibit 21*: NYC Dept. of Buildings Administrative Materials: Policy and Procedure Notice OPPN 17/95 (prohibiting self-certification of adult uses by architects and engineers) | 0466 |
| | *Exhibit 22*: NYC Dept. of Buildings Administrative Materials: Policy and Procedure Notice OPPN 6/96 (reaffirming prohibition on self-certification of adult uses by architects and engineers) | 0483 |
| | *Exhibit 23*: NYC Dept. of Buildings Administrative Materials: Policy and Procedure Notice OPPN 7/96 (defining "place of worship" and "church") | 0492 |
| | *Exhibit 24*: NYC Dept. of Buildings Administrative Materials: Policy and Procedure Notice OPPN 8/96 (describing methodology for measuring separation between adult uses and other adult uses or sensitive receptors) | 0495 |
| | *Exhibit 25*: NYC Dept. of Buildings Administrative Materials: Policy and Procedure Notice OPPN 4/98 (definition of "substantial portion") | 0501 |
| | *Exhibit 26*: NYC Dept. of Buildings Administrative Materials: Policy and Procedure Notice OPPN 6/98 (explanation of "substantial portion" in context of multiple uses) | 0505 |

9

| | | |
|---|---|---|
| | *Exhibit 27*: NYC Dept. of Buildings Administrative Materials: Policy and Procedure Notice OPPN 5/02 (clarifying procedures for self-certification by architects and engineers) | 0509 |
| | *Exhibit 28*: NYC Dept. of Buildings Administrative Materials: OPPN 7/02 (clarifying procedures for seeking adult use "priority" permit) | 0516 |
| | **VOLUME 6**<br>**(pp. 0520--0629)** | |
| | *Exhibit 29*: NYC Dept. of Buildings Administrative Materials: Policy and Procedure Notice OPPN 1/04 (clarifying procedures for self-certification by architects and engineers) | 0520 |
| | *Exhibit 30*: NYC Dept. of Buildings Administrative Materials: Bulletin 2016-010 (most recent document clarifying procedures for self-certification by architects and engineers) | 0532 |
| | *Exhibit 31*: NYC Dept. of Buildings Administrative Materials: Code Note on Adult Establishment Applications (handbook from DOB website) | 0537 |
| | *Exhibit 32*: NYC Dept. of Buildings Administrative Materials: Rule Title 1, Rules of City of New York § 9000-01 (establishing priority of locations under adult zoning scheme) | 0549 |
| | *Exhibit 33*: Legislative History of 2001 Amendments, 3/21/01 DCP Application No. N 010508 ZRY (to amend the AZR definition of adult establishment) | 0551 |
| | *Exhibit 34*: Legislative History of 2001 Amendments, CEQR Negative Declaration No. 01DCP045Y of 3/23/01, and Environmental Assessment Statement No. 01DCP045Y filed 3/23/01 | 0563 |

10

| | | |
|---|---|---|
| | **VOLUME 7**<br>**(pp. 0630--0707)** | |
| | *Exhibit 35*: Legislative History of 2001 Amendments, Transcript of New York City Planning Commission Public Hearing held 5/23/01 | 0630 |
| | **VOLUME 8**<br>**(pp. 0708--0889)** | |
| | *Exhibit 36*: Legislative History of 2001 Amendments, 8/8/01 New York City Planning Commission Report | 0708 |
| | *Exhibit 37*: Legislative History of 2001 Amendments, Transcript of New York City Planning Commission Public Hearing held 8/8/01 | 0835 |
| | *Exhibit 38*: Legislative History of 2001 Amendments, Transcript of 10/1/01 Hearing of Zoning and Franchises Subcommittee of New York City Council | 0848 |
| | **VOLUME 9**<br>**(pp. 0890--1068)** | |
| | *Exhibit 39*: Legislative History of 2001 Amendments, Correspondence between Edward S. Rudofsky and New York City Council (10/9/01), and David Karnovsky and New York City Council (10/24/01) | 0890 |
| | *Exhibit 40*: Legislative History of 2001 Amendments, Transcript of 10/25/01 Meeting of Zoning and Franchises Subcommittee of New York City Council | 0899 |
| | *Exhibit 41*: Legislative History of 2001 Amendments, Transcript of 10/25/01 Meeting of Land Use Committee of New York City Council | 0911 |
| | *Exhibit 42*: Legislative History of 2001 Amendments, Transcript of 10/31/01 Meeting of the New York City Council | 0919 |

| | | |
|---|---|---|
| | *Exhibit 43*: Excerpt of Record On Appeal, Ten's Cabaret, Inc. v. City of New York, Supreme Court, New York County, Index No. 121197/2002 ("State Action"), Affidavit of David Karnovsky, Counsel to the New York City Department of City Planning, sworn to 10/23/02, filed in State Action on 10/25/02 (without internal Exhibits) | 1032 |
| | **VOLUME 10**<br>**(pp. 1069--1296)** | |
| | *Exhibit 44*: Excerpts of Record On Appeal, Ten's Cabaret, Inc. v. City of New York, Supreme Court, New York County, Index No. 121197/2002 ("State Action"), Relevant pages from Transcripts of evidentiary hearing in State Action in Supreme Court, New York County, on 2/23/09 through 3/2/09 | 1069 |
| | **VOLUME 11**<br>**(pp. 1297--1381)** | |
| | *Exhibit 45*: New York City Department of City Planning ("DCP") Materials, NYC DCP "Manufacturing Districts: M3" webpage (https://www.1.nyc.gov/site/planning/zoning/districts-tools/m3.page) | 1297 |
| | *Exhibit 46*: New York City Department of City Planning ("DCP") Materials, NYC Department of City Planning "Manufacturing Districts: 1/1/02 to 1/1/12" webpage (https://www.1.nyc.gov/site/planning/zoning/districts-tools/mfg-districts-2002-2012.page) | 1300 |
| | *Exhibit 47*: Studies, Moss and Quing, "The Dynamic Population of Manhattan", Rudin Center for Transportation Policy and Management of the New York University Wagner School of Public Service (2012) (https://wagner.nyu.edu/files/faculty/publications/dynamic_pop_manhattan.pdf) | 1304 |

| | | |
|---|---|---|
| | *Exhibit 48:* **Linz and Paul, "Measuring the Secondary Effects of 60/40 Businesses in New York City: A Study of Calls for Service to the Police", including Figures and Tables (2005) Exhibits 6 and 6A admitted into evidence at evidentiary hearing held on February 23 through March 2, 2009 in <u>Ten's Cabaret, Inc. v City of New York</u>, Supreme Court, New York County, Index No. 121197/2002** | **1330** |
| | **VOLUME 12** <br> **<u>(pp. 1382--1467)</u>** | |
| | *Exhibit 49:* **Studies, Freeman, "Examining The Relationship Between Businesses That Comply With the '60/40' Zoning Regulations and Surrounding Property Values in New York City" (2008) (Exhibit 8 admitted in evidence at evidentiary hearing held on 2/23/09 through 3/2/09 in <u>Ten's Cabaret, Inc. v. City of New York</u>, Supreme Court, New York County, Index No. 121197/2002** | **1382** |
| | *Exhibit 50:* **Studies, Focus Probe, Inc., "Perceived Differences Between Adult Entertainment Clubs With 'Subdued Facades' vs. 'Loud Facades', with photographs (Exhibits 12, 12A, 12B and 12C admitted in evidence at evidentiary hearing held on 2/23/09 through 3/2/09 in <u>Ten's Cabaret, Inc. v. City of New York</u>, Supreme Court, New York County, Index No. 121197/2002)** | **1418** |
| | *Exhibit 51:* **New York Court of Appeals Brief, Excerpt from Respondents' Brief of City of New York, et al., in <u>Stringfellow's of New York, Inc. v. City of New York</u>, New York County Index Nos. 113049/96 103568/96 and 103569/96, filed in New York Court of Appeals, dated 12/11/97** | **1443** |

| | | |
|---|---|---|
| | *Exhibit 52:* Excerpts from September 3, 1996 deposition testimony of Marilyn Mammamo, Director of Zoning & Urban Design of the NYC Department of City Planning, in <u>Hickerson v. The City of New York</u>, New York County Index No. 103569/96 | 1448 |
| | *Exhibit 53*: Undocketed Correspondence With Court, Litigation Management Agreement dated 9/25/17 (Exhibit B to 3/2/18 letter from Plaintiffs to Hon. William Pauley) in all current club cases | 1459 |
| | <u>**DOCUMENTS SUBMITTED BY BOOKSTORE PLAINTIFFS**</u> | |
| | **VOLUME 13** **(pp. 1468--1574)** | |
| N | Declaration of Dr. Elliott Sclar in Support of Plaintiffs' Motion for Preliminary Injunction | 1468 |
| | *Exhibit 1*: Dr. Sclar's Curriculum Vitae | 1515 |
| | *Exhibit 2*: Maps Prepared by the Department of City Planning in Support of the 1995 Resolution Showing Permissible Areas for Adult Establishments | 1539 |
| | *Exhibit 3*: Maps Prepared by the Department of City Planning Showing Zoning Changes between 1995 and 2001 in Support of the 2001 Resolution | 1545 |
| | *Exhibit 4*: Reports issued by the Department of City Planning and Information in the Press Confirming the Effectiveness of Mayor Bloomberg's Administration in Rezoning New York City | 1561 |

| | | **VOLUME 14**<br>**(pp. 1575--1683)** | |
|---|---|---|---|
| | | *Exhibit 5*: Report Prepared by the Department of City Planning Detailing the Reduction in Manufacturing Districts between 2002 and January 2012 | 1575 |
| | | *Exhibit 6*: Map Depicting Zoning Changes in New York City between January 2002 and September 2018 | 1594 |
| | | *Exhibit 7*: Table 1: List of Adopted Rezonings that Impacted Manufacturing Use | 1596 |
| | | *Exhibit 8*: Table 2: List of Certified Rezonings that Impact Manufacturing Use | 1603 |
| | | *Exhibit 9*: Map of Anticipated Mandatory Inclusion Housing ("MIH") Rezonings | 1605 |
| | | *Exhibit 10*: Department of City Planning Report on City Planning History | 1607 |
| | | *Exhibit 11*: MTA Staten Island Railway ("SIR") System Map | 1612 |
| | | *Exhibit 12*: Map Showing the Staten Island Railway Route Superimposed on the Map of Permissible Areas on Staten Island Prepared by the Department of City Planning in Support of the 1995 Resolution | 1614 |
| O | | Declaration of Daniel J. Zazzali in Support of Plaintiffs' Motion for Preliminary Injunction | 1616 |
| P | | Declaration of Daniel Knecht in Support of Plaintiffs' Motion for Preliminary Injunction | 1643 |

| | | |
|---|---|---|
| | ***Exhibit 1***: Map of Public Transportation between the Plaintiffs' Bookstore at 336 Eighth Avenue, in Manhattan, and the Only Permissible Adult Bookstore with booths, on Staten Island | 1659 |
| **Q** | Declaration of Yitzik Shachaf in Support of Plaintiffs' Motion for Preliminary Injunction | 1662 |
| **R** | Declaration of Erica T. Dubno in Support of Plaintiffs' Motion for Preliminary Injunction | 1670 |
| | **VOLUME 15**<br>**(pp. 1684--1755)** | |
| **S** | Bookstore Plaintiffs' Request to Take Judicial Notice | 1684 |
| | ***Exhibit 54***: Z.R. § 42-11 | 1691 |
| | ***Exhibit 55***: Z.R. § 42-13 | 1694 |
| | ***Exhibit 56***: New York City Charter § 85 "Borough Board" | 1698 |
| | ***Exhibit 57***: DCP "Use Groups" webpage | 1702 |
| | ***Exhibit 58***: DCP "Manufacturing Districts: Overview" webpage | 1707 |
| | ***Exhibit 59***: DCP City Planning History webpage | 1710 |
| | ***Exhibit 60***: DCP "Community-Based Planning" webpage | 1715 |
| | ***Exhibit 61***: DCP "Special Purpose Districts: Citywide" webpage | 1722 |
| | ***Exhibit 62***: DCP "Special Purpose Districts" webpage | 1730 |

| | | |
|---|---|---|
| | *Exhibit 63*: DCP Press Release, November 15, 2011, containing "Mayor Michael Bloomberg's Remarks at Zoning the City Conference, as Delivered by Deputy Mayor Robert K. Steel | 1732 |
| | *Exhibit 64*: DCP's Portion of the Mayor's Management Report, dated September 2012 | 1736 |
| | *Exhibit 65*: Excerpts from NYC's Risk Landscape: A Guide to Hazard Mitigation, Coastal Erosion Chapter 4.2, developed by the NYC Emergency Management in Partnership with the DCP and Close Collaboration with the NYC Mayor's Office of Recovery and Resiliency | 1741 |
| | **VOLUME 16**<br>**(pp. 1756--1852)** | |
| | *Exhibit 66*: Excerpts from the NYC Building Department's "Place of Assembly" guide | 1756 |
| | *Exhibit 67*: Excerpts from the NYC Fire Department's "Theater Inspections, Maintenance and Recordkeeping" Rules | 1759 |
| | *Exhibit 68*: MTA Staten Island Railway ("SIR") System Map | 1765 |
| | *Exhibit 69*: MTA Notice regarding Bridges and Tunnels Tolls | 1767 |
| | *Exhibit 70*: Zoning and the Comprehensive Plan, James A. Coon Local Government Technical Series, Revised 2015 | 1772 |
| | *Exhibit 71*: NYS Public Health Law § 3000-d | 1791 |
| | *Exhibit 72*: Charles V. Bagli, "Going Out With a Building Boom, Mayor Pushes Billions in Projects", N.Y. Times, Dec. 15, 2013 | 1795 |

| | | |
|---|---|---|
| | *Exhibit 73*: Ford Fessenden, "The Bloomberg Years: Reshaping New York", N.Y. Times, Aug. 18, 2013 (interactive feature) | **1801** |
| | *Exhibit 74*: "Mayor Bloomberg's NYC Mayoralty Comes To An End", dailyfreeman.com, Dec. 31, 2013 | **1803** |
| | *Exhibit 75*: James Dao, "The 1993 Elections: Staten Island; Secession is Approved; Next Move is Albany's", N.Y. Times, Nov. 3, 1993 | **1806** |
| | *Exhibit 76*: Maps (Reduced Size Versions) Generated by the DCP of Manhattan, Brooklyn, Bronx, Queens, and Staten Island indicating "Areas Where Adult Uses Would Continue to be Allowed Under the Proposal and Encumbered Property Within those Areas" filed in State Judicial Proceedings in Connection with the 1995 Resolution: <u>Amsterdam Video, Inc. v. City of New York</u>, Supreme Court, New York County, Index No. 103568/96, and <u>Hickerson v. City of New York</u>, Supreme Court, New York County, Supreme Court, New York County, Index No. 103569/96 | **1810** |
| | *Exhibit 77*: Excerpts from September 3, 1996 deposition testimony of Marilyn Mammano, Director of Zoning & Urban Design of the NYC Department of City Planning, in <u>Hickerson v. The City of New York</u>, New York County Index No. 103569/96 | **1816** |
| | *Exhibit 78*: Maps generated by the DCP depicting the reduction in permissible areas for adult businesses based on Zoning Changes between 1995 and 2001, filed in <u>For the People Theatres</u> on October 17, 2002, as Exhibit S to the Affidavit of David Karnovsky | **1838** |

| | VOLUME 17<br>(pp. 1854--1881) | |
|---|---|---|
| | *Exhibit 79*: Excerpts from Affidavit of David Karnovsky filed in <u>For The People Theatres of N.Y., Inc., et al. v. The City of New York, et al.</u>, New York County Supreme Court Index No. 121080/02 | **1854** |
| | *Exhibit 80*:  Excerpts from the DCP's Adult Entertainment Study, November 1994 | **1864** |
| | *Exhibit 81*: 8/2/17 Stipulation and Agreement between Bookstore Plaintiffs and The City of New York | **1875** |

Dated:  New York, New York
November 21, 2018

*Respectfully,*

**DANIEL A. SILVER**
**SILVER & SILVER**
One Liberty Square
New Britain, Connecticut 06050-0698
(860) 225-3518

- and -

**JENNIFER KINSLEY**
Kinsley Law Office
Post Office Box 19478
Cincinnati, Ohio 45219
(513) 708-2595

*Attorneys for Plaintiffs*
*725 Eatery Corp., etc., et ano.*

By:    s/Daniel A. Silver
Daniel A. Silver

**EDWARD S. RUDOFSKY**
**ZANE and RUDOFSKY**
601 West 26th Street, # 1315
New York, New York  10001
(212) 245-2222

*Attorneys for Plaintiffs*
*59 Murray Enterprises, Inc., etc.*
 *et al.*

By: ___s/Edward S. Rudofsky_____
        Edward S. Rudofsky

**JOHN H. WESTON**
**G. RANDALL GARROU**
**WESTON, GARROU & MOONEY**
12121 Wilshire Boulevard, Suite 525
Los Angeles, CA 90025-1176
(310) 442-0072

            - and -

**ALAN M. ABRAMSON**
**ABRAMSON & MORAK**
35 Worth Street
New York, NY 10013
(212) 226-7098

*Attorneys for*
*Club At 60th Street, Inc., etc., et al.*

By: ___s/John Weston_____
        John Weston

**FAHRINGER & DUBNO**
767 Third Avenue, Suite 3600
New York, New York 10017
(212) 319-5351

 *Attorneys for Plaintiff's*
*336 LLC, etc., et al.*

By: ___s/Erica T. Dubno_____
        Erica T. Dubno

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------X
725 EATERY CORP., etc., *et ano.,*                     :

                    Plaintiffs,     :

        - against -                     :     Civil Action No.
                                                              02 CV 4431 (WHP)
THE CITY OF NEW YORK, et al.,                          :

                 Defendants.   :
---------------------------------------------------------X
59 MURRAY ENTERPRISES INC., etc., *et al.,* :

                    Plaintiffs,     :

        - against -                     :     Civil Action No.
                                                              02 CV 4432 (WHP)
THE CITY OF NEW YORK, et al.,                          :

                 Defendants.   :
---------------------------------------------------------X
CLUB AT 60TH STREET, INC., etc.,*et al.,*              :

                    Plaintiffs,     :

        - against -                     :     Civil Action No.
                                                              02 CV 8333 (WHP)
THE CITY OF NEW YORK,                          :

                 Defendant.    :
---------------------------------------------------------X

## **CLUB PLAINTIFFS' REQUEST TO TAKE JUDICIAL NOTICE**

      Plaintiffs, by their undersigned attorneys, hereby request that the Court

take judicial notice of the following pursuant to Federal Rule of Evidence 201:

0339

**A.**    <u>**NYC Council Resolutions Amending NYC Zoning Resolutions**</u>

<u>Exhibit 1</u>    Resolution 1322-1995, approving Text Amendment N 950384 ZRY ("1995 Ordinance")

<u>Exhibit 2</u>    Resolution 0208-1998, approving Text Amendment N 980135 ZRY

<u>Exhibit 3</u>    Resolution 2096-2001, approving Text Amendment N 010508 ZRY ("2001 Amendments")

<u>Exhibit 4</u>    Relevant portions of NYC Council Resolution 586-2004 (amending, *inter alia,* AZR 32-01 & 42-01 regarding adult businesses)

<u>Exhibit 5</u>    Relevant portions of NYC Council Resolution 499-2010 (amending, *inter alia,* AZR 32-01 and 42-01 regarding adult businesses)


**B.**    <u>**New York City Amended Zoning Resolution ("AZR") Provisions**</u>

<u>Exhibit 6</u>    AZR § 31-17

<u>Exhibit 7</u>    AZR § 31-18

<u>Exhibit 8</u>    AZR § 32-01 (multiple versions)

<u>Exhibit 9</u>    AZR § 32-69 (multiple versions)

<u>Exhibit 10</u>    AZR § 42-01 (multiple versions)

<u>Exhibit 11</u>    AZR § 52-11

<u>Exhibit 12</u>    AZR § 52-61

<u>Exhibit 13</u>    AZR § 52-734

<u>Exhibit 14</u>    AZR § 52-77

0340

<u>Exhibit 15</u>    AZR § 72-41

**C.**    <u>**New York City Administrative Code Provisions**</u>

<u>Exhibit 16</u>    Title 27, Chapter 1, Article 9 ("Approval of Plans")

<u>Exhibit 17</u>    Title 27, Chapter 1, Article 10 ("Permits")

<u>Exhibit 18</u>    Title 27, Chapter 1, Article 19 ("Issuance of Permits") (relevant sections)

<u>Exhibit 19</u>    Title 27, Chapter 1, Article 22, Section 27-217 ("Certificates of Occupancy / Change of Occupancy or Use")

**D.**    <u>**New York City Department of Buildings Administrative Materials**</u>

**(i)**    **Directive**

<u>Exhibit 20</u>    Directive 14 of 1975 (authorizing self-certification of applications for building permits by licensed architects and engineers)

**(ii)**    **Policy and Procedure Notices**

<u>Exhibit 21</u>  OPPN 17/95 (prohibiting self-certification of adult uses by architects and engineers)

<u>Exhibit 22</u>  OPPN 6/96 (reaffirming prohibition on self-certification of adult uses by architects and engineers)

<u>Exhibit 23</u>    OPPN 7/96 (defining "place of worship" and "church")

<u>Exhibit 24</u>  OPPN 8/96 (describing methodology for measuring separation between adult uses and other adult uses or sensitive receptors)

3

Exhibit 25    OPPN 4/98 (definition of "substantial portion")

Exhibit 26    OPPN 6/98 (explanation of "substantial portion" in context of multiple uses)

Exhibit 27    OPPN 5/02 (clarifying procedures for self-certification by architects and engineers)

Exhibit 28    OPPN 7/02 (clarifying procedures for seeking adult use "priority" permit)

Exhibit 29    OPPN 1/04 (clarifying procedures for self-certification by architects and engineers)

**(iii)    Bulletins**

Exhibit 30    Bulletin 2016-010 (most recent document clarifying procedures for self-certification by architects and engineers)

**(iv)    Code Notes**

Exhibit 31    Adult Establishment Applications (handbook from DOB website)

**(v)    Rules**

Exhibit 32    Title 1, Rules of City of New York § 9000-01 (establishing priority of locations under adult zoning scheme)

**E.    <u>Legislative History of 2001 Amendments</u>**

Exhibit 33    March 21, 2001 DCP Application No. N 010508 ZRY (to amend the AZR definition of adult establishment)

Exhibit 34    CEQR Negative Declaration No. 01DCP045Y of March 23, 2001, and Environmental Assessment Statement No. 01DCP045Y filed March 23, 2001

Exhibit 35    Transcript of New York City Planning Commission Public Hearing held May 23, 2001

Exhibit 36    August 8, 2001 New York City Planning Commission Report

Exhibit 37    Transcript of New York City Planning Commission Public Hearing held August 8, 2001

Exhibit 38    Transcript of October 1, 2001 Hearing of Zoning and Franchises Subcommittee of New York City Council

Exhibit 39    Correspondence between Edward S. Rudofsky and New York City Council (October 9, 2001), and David Karnovsky and New York City Council (October 24, 2001)

Exhibit 40    Transcript of October 25, 2001 Meeting of Zoning and Franchises Subcommittee of New York City Council

Exhibit 41    Transcript of October 25, 2001 Meeting of Land Use Committee of New York City Council

Exhibit 42    Transcript of October 31, 2001 Meeting of the New York City Council

**F.**    **Excerpts of Record On Appeal, Ten's Cabaret, Inc. v. City of New York, Supreme Court, New York County, Index No. 121197/2002 ("State Action")**

Exhibit 43    Affidavit of David Karnovsky, Counsel to the New York City Department of City Planning, sworn to October 23, 2002, filed in State Action on October 25, 2002 (without internal exhibits)

Exhibit 44    Relevant pages from Transcripts of evidentiary hearing in State Action in Supreme Court, New York County, on February 23 through March 2, 2009

**G.**    **New York City Department of City Planning ("DCP") Materials**

Exhibit 45    NYC DCP "Manufacturing Districts: M3" webpage (https://www.1.nyc.gov/site/planning/zoning/districts-tools/m3.page)

5

Exhibit 46    NYC Department of City Planning "Manufacturing Districts: January 1, 2002 to January 1, 2012" webpage https://www1.nyc.gov/site/planning/zoning/districts-tools/mfg-districts-2002-2012.page

**H.   Studies**

Exhibit 47    Moss and Quing, " The Dynamic Population of Manhattan", Rudin Center for Transportation Policy and Management of the New York University Wagner School of Public Service (2012) (https://wagner.nyu.edu/files/faculty/publications/dynamic_pop_manhattan.pdf)

Exhibit 48    Linz and Paul, "Measuring the Secondary Effects of 60/40 Businesses in New York City: A Study of Calls For Service to the Police", including Figures and Tables (2005) (Exhibits 6 and 6A admitted into evidence at evidentiary hearing held on February 23 through March 2, 2009 in Ten's Cabaret, Inc. v. City of New York, Supreme Court, New York County, Index No. 121197/2002

Exhibit 49    Freeman, "Examining The Relationship Between Businesses That Comply With the '60/40' Zoning Regulations and Surrounding Property Values in New York City" (2008) (Exhibit 8 admitted in evidence at evidentiary hearing held on February 23 through March 2, 2009 in Ten's Cabaret, Inc. v. City of New York, Supreme Court, New York County, Index No. 121197/2002

Exhibit 50    Focus Probe, Inc., "Perceived Differences Between Adult Entertainment Clubs With 'Subdued Facades' vs. 'Loud Facades'), with photographs (Exhibits 12, 12A, 12B and 12C admitted in evidence at evidentiary hearing held on February

0344

23 through March 2, 2009 in <u>Ten's Cabaret, Inc. v. City of New York,</u> Supreme Court, New York County, Index No. 121197/2002)

**I.**   <u>**Prior Litigation Documents**</u>

<u>Exhibit 51</u>   Excerpt from Respondents' Brief of City of New York, *et al.,* in <u>Stringfellow's of New York, Inc. v. City of New York</u>, New York County Index Nos. 113049/96 103568/96 and 103569/96, filed in New York Court of Appeals, dated December 11, 1997

<u>Exhibit 52</u>   Excerpts from September 3, 1996 deposition testimony of Marilyn Mammano, Director of Zoning & Urban Design of the NYC Department of City Planning, in <u>Hickerson v. The City of New York</u>, New York County Index No. 103569/96

**J.**   <u>**Undocketed Correspondence With Court**</u>

<u>Exhibit 53</u>   Litigation Management Agreement dated September 25, 2017 (Exhibit B to March 2, 2018 letter from Plaintiffs to Hon. William Pauley)

**K.**   <u>**Adjudicative Facts**</u>

1.   Because of a combination of court orders and litigation agreements, the 2001 Amendments have not been enforced against any of the Plaintiffs at any time through the present date.

2.   The City's analysis, in response to the constitutional challenge to the 1995 Ordinance, that there were in excess of 500 potential sites to which adult establishments could relocate under the 1995 Ordinance, did not include consideration of the 500-foot buffer zone being imposed around all then-existing and new adult establishments.

0345

Dated:       New York, New York
             November 21, 2018

*Respectfully,*

**DANIEL A. SILVER**
**SILVER & SILVER**
One Liberty Square
New Britain, Connecticut 06050-0698
(860) 225-3518

- and -

**JENNIFER KINSLEY**
Kinsley Law Office
Post Office Box 19478
Cincinnati, Ohio 45219
(513) 708-2595

*Attorneys for Plaintiffs*
*725 Eatery Corp., etc., et ano.*

By:   s/Daniel A. Silver
          Daniel A. Silver

**EDWARD S. RUDOFSKY**
**ZANE and RUDOFSKY**
601 West 26th Street, # 1315
New York, New York 10001
(212) 245-2222

*Attorneys for Plaintiffs*
*59 Murray Enterprises, Inc., etc.*
*et al.*

By: s/Edward S. Rudofsky
          Edward S. Rudofsky

[Attorney Signatures Continued On Following Page]

8

0346

**JOHN H. WESTON**
**G. RANDALL GARROU**
**WESTON, GARROU & MOONEY**
12121 Wilshire Boulevard,
  Suite 525
Los Angeles, CA 90025-1176
(310) 442-0072

- and -

**ALAN M. ABRAMSON**
**ABRAMSON & MORAK**
35 Worth Street New York, NY 10013
(212) 226-7098

*Attorneys for*
*Club At 60th Street, Inc., etc., et al.*


By: s/John Weston
        John Weston

9

0347

# EXHIBIT 1

Exhibit A

THE COUNCIL OF THE CITY OF NEW YORK
RESOLUTION NO. 1322

Resolution approving the decision of the City Planning Commission on Application No. N 950384 ZRY, an amendment to the text of the Zoning Resolution regarding adult establishments (L.U. No. 713).

By Council Members Eisland and McCaffrey

WHEREAS, the City Planning Commission filed with the Council on September 22, 1995 its decision dated September 18, 1995 ("the Decision"), on the application submitted by the Department of City Planning and the City Council Land Use Committee, pursuant to Sections 200 and 201 of the New York City Charter, for an amendment to the text of the Zoning Resolution (Application No. N 950384 ZRY) (the "Application");

WHEREAS, on March 21, 1995, the Land Use Committee adopted Resolution No. 897, which approved the filing of the Application with the City Planning Commission;

WHEREAS, the Decision is subject to review and action by the Council pursuant to Section 197-d(b)(1) of the City Charter;

WHEREAS, the Council held a public hearing on the Decision and Application on October 19 and 20, 1995;

WHEREAS, the Council has considered the land use implications and other policy issues relating to the Decision and Application; and

WHEREAS, the Council has considered the relevant environmental issues and the negative declaration, issued on April 10, 1995 (CEQR No. 95DCP038Y);

RESOLVED:

The Council finds that the action described herein will have no significant effect on the environment;

Page 2 of 15 pages
N 950384 ZRY
Reso. No. 1322 (L.U. No. 713)

Pursuant to Sections 197-d and 200 of the City Charter and on the basis of the Decision and Application the Council approves the Decision; and

The Zoning Resolution of the City of New York, effective as of December 15, 1961, and as subsequently amended, is further amended as follows:

Matter in G̲r̲a̲y̲t̲o̲n̲e̲ is new, to be added;
Matter in strikeout is old, to be deleted;
Matter within #   # is defined in Section 12-10;
*** indicates where unchanged text appears in the Zoning Resolution

\*\*\*

11-113
For adult establishments

Notwithstanding any other provision of this Resolution to the contrary, in all districts, no new #adult establishment# shall be allowed, nor shall any existing #adult establishment# be #enlarged# or #extended#, nor shall any #non-conforming use# be changed to an #adult establishment#, for an interim period of one year from the effective date of this amendment.

\*\*\*

12-10
DEFINITIONS
\*\*\*

Adult Establishment
An "adult establishment" is a #use# which includes:

(a)    Adult bookstore — an establishment listed in Use Group 6 or 12 having as a significant portion of its stock-in-trade books, magazines, other periodicals, films, slides or video tapes, and which establishment is customarily not open to the public because it excludes minors by reason of age; or,

Page 3 of 15 pages
N 950384 ZRY
Reso. No. 1322 (L.U. No. 713)

(b) ~~Adult eating or drinking establishment — an eating or drinking establishment listed in Use Group 6A, 6C, 10 or 12A which customarily presents topless or nude dancers, strippers or similar entertainments, and which establishment is customarily not open to the public because it excludes minors by reason of age; or;~~

(c) ~~Adult theater — an establishment listed in Use Group 8 or 13 which customarily presents motion pictures, films, videotapes, slide shows, or live performances featuring topless or nude dancers, strippers or similar entertainments, including an establishment where such entertainment is viewed from an enclosure, and which establishment is customarily not open to the public because it excludes minors by reason of age.~~

Adult Establishment

An "adult establishment" is a commercial establishment where a "substantial portion" of the establishment includes an adult book store, adult eating or drinking establishment, adult theater, or other adult commercial establishment, or any combination thereof, as defined below:

(a) An adult book store is a book store which has as a "substantial portion" of its stock-in-trade any one or more of the following:

(1)     books, magazines, periodicals or other printed matter which are characterized by an emphasis upon the depiction or description of "specified sexual activities" or "specified anatomical areas"; or,

(2)     photographs, films, motion pictures, video cassettes, slides or other visual representations which are characterized by an emphasis upon the depiction or description of "specified sexual activities" or "specified anatomical areas."

(b) An adult eating or drinking establishment is an eating or drinking establishment which regularly features any one or more of the following:

(1)     live performances which are characterized by an emphasis on "specified anatomical areas" or "specified sexual activities"; or,

Page 4 of 15 pages
N 950384 ZRY
Reso. No. 1322 (L.U. No. 713)

(2)     films, motion pictures, video cassettes, slides or other photographic reproductions which are characterized by an emphasis upon the depiction or description of "specified sexual activities" or "specified anatomical areas"; or,

(3)     employees who, as part of their employment, regularly expose to patrons "specified anatomical areas," and

which is not customarily open to the general public during such features because it excludes minors by reason of age.

(c) An adult theater is a theater which regularly features one or more of the following:

(1)     films, motion pictures, video cassettes, slides or similar photographic reproductions characterized by an emphasis on the depiction or description of "specified sexual activities" or "specified anatomical areas"; or,

(2)     live performances characterized by an emphasis on "specified anatomical areas" or "specified sexual activities", and

which is not customarily open to the general public during such features because it excludes minors by reason of age.

An adult theater shall include commercial establishments where such materials or performances are viewed from individual enclosures.

(d)     An other adult commercial establishment is a facility — other than an adult book store, adult eating and drinking establishment, adult theater, commercial studio, or business or trade school — which features employees who as part of their employment, regularly expose to patrons "specified anatomical areas" and which is not customarily open to the general public during such features because it excludes minors by reason of age.

For the purpose of defining #adult establishments#, "specified sexual activities" are (i) human genitals in a state of sexual stimulation or arousal; (ii) actual or simulated acts of human masturbation, sexual intercourse or sodomy; or (iii) fondling or other erotic touching of human genitals, pubic region, buttock, anus or female breast.

Page 5 of 15 pages
N 950384 ZRY
Reso. No. 1322 (L.U. No. 713)

"Specified anatomical areas" are: (i) less than completely and opaquely concealed: (a) human genitals, pubic region, (b) human buttock, anus, or (c) female breast below a point immediately above the top of the areola; or (ii) human male genitals in a discernibly turgid state, even if completely and opaquely concealed.

For the purpose of determining whether a "substantial portion" of an establishment includes an adult bookstore, adult eating or drinking establishment, adult theater, or other adult commercial establishment, or combination thereof, the following factors shall be considered: (1) the amount of #floor area# and #cellar# space accessible to customers and allocated to such #uses#; and (2) the amount of #floor area# and #cellar# space accessible to customers and allocated to such uses as compared to the total #floor area# and #cellar# space accessible to customers in the establishment.

For the purpose of determining whether a bookstore has a "substantial portion" of its stock in materials defined in paragraphs (a) (1) or (a) (2) hereof, the following factors shall be considered: (1) the amount of such stock accessible to customers as compared to the total stock accessible to customers in the establishment; and (2) the amount of #floor area# and #cellar# space accessible to customers containing such stock; and (3) the amount of #floor area# and #cellar# space accessible to customers containing such stock as compared to the total #floor area# and #cellar# space accessible to customers in the establishment.

\*\*\*

32-00
GENERAL PROVISIONS

In order to carry out the purposes and provisions of this Resolution, the #uses# of #buildings or other structures# and of tracts of land have been classified and combined into Use Groups. A brief statement is inserted at the start of each Use Group to describe and clarify the basic characteristics of that Use Group. Use Groups 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15 and 16, including each #use# listed separately therein, are permitted in #Commercial Districts# as indicated in Sections 32-11 to 32-25, inclusive –, except that any such #use# which is also an #adult establishment# shall, in addition, be subject to the provisions of Section 32-01 (Special Provisions for Adult Establishments).

Page 6 of 15 pages
N 950384 ZRY
Reso. No. 1322 (L.U. No. 713)


32-01
Special Provisions for Adult Establishments

In addition to the applicable regulations for the #uses# listed in a permitted Use Group, #adult establishments# shall be subject to the following provisions:

(a)  #adult establishments# are not permitted in C1, C2, C3, C4, C5, C6-1, C6-2, or C6-3 Districts;

(b)  in C6-4, C6-5, C6-6, C6-7, C6-8, C6-9, C7 or C8 Districts, #adult establishments# shall be located at least 500 feet from a church, a #school#, a #residence district#, a C1, C2, C3, C4, C5-1, C6-1, C6-2, or C6-3 district, or a #manufacturing district# other than M1-6M in which new #residences#, new #joint living-work quarters for artists# or new #loft dwellings# are allowed, under the provisions of the Zoning Resolution, as-of-right or by special permit or authorization. However, on or after the effective date of this amendment, an #adult establishment# that otherwise complies with the provision of this paragraph shall not be rendered #non-conforming# if a church or a #school# is established on or after April 10, 1995 within 500 feet of such #adult establishment#;

(c)  in C6-4, C6-5, C6-6, C6-7, C6-8, C6-9, C7, or C8 Districts, #adult establishments# shall be located at least 500 feet from another #adult establishment#;

(d)  in C6-4, C6-5, C6-6, C6-7, C6-8, C6-9, C7, or C8 Districts, no more than one #adult establishment# permitted under this Section shall be located on a #zoning lot#;

(e)  in C6-4, C6-5, C6-6, C6-7, C6-8, C6-9, C7, or C8 Districts, #adult establishments# shall not exceed in total 10,000 square feet of #floor area# and #cellar# space not used for enclosed storage or mechanical equipment;

Page 7 of 15 pages
N 950384 ZRY
Reso. No. 1322 (L.U. No. 713)


(f)     #adult establishments# which existed on the effective date of this amendment and
        conform to all provisions of the Zoning Resolution relating to #adult
        establishments# other than the provisions of all or any combination of paragraphs
        (c), (d), and (e) of this Section, shall not be subject to the provisions of Section
        52-77 (Termination of Adult Establishments).

                                         ***

32-60
SIGN REGULATIONS

                                         ***

32-62
Permitted Accessory Business Signs
C1, C2, C3, C4, C5, C6, C7, C8

In all districts, as indicated, #accessory business signs# are permitted subject to the
provisions of the following Sections:

                                         ***

Section 32-69 (Additional Accessory Business Sign Regulations for Adult Establishments)

                                         ***

32-69
Additional Accessory Business Sign Regulations for Adult Establishments
C6-4, C6-5, C6-6, C6-7, C6-8, C6-9, C7, C8

#Accessory business signs# for #adult establishments# are permitted only as set forth in
this Section, and are limited to locations in the districts indicated.

All permitted #accessory business signs# for #adult establishments# shall conform with
all the #sign# regulations applicable in C1 Districts as set forth in this Chapter, except
that the provisions of Section 32-64 (Surface Area and Illumination Provisions) shall not
apply. In lieu thereof, the maximum #surface area# of all #accessory business signs# for

Page 8 of 15 pages
N 950384 ZRY
Reso. No. 1322 (L.U. No. 713)

#adult establishments# shall not exceed, in the aggregate, three times the #street# frontage of the #zoning lot#, but in no event more than 150 square feet per establishment, of which no more than 50 square feet may be #illuminated# non-#flashing signs#.

\*\*\*

42-00
GENERAL PROVISIONS

In order to carry out the purposes and provisions of this Resolution, the #uses# of #buildings or other structures# and of tracts of land have been classified and combined into Use Groups.  A brief statement is inserted at the start of each Use Group to describe and clarify the basic characteristics of that Use Group.  Use Groups 4B, 4C, 5, 6A, 6B, 7, 8, 9B, 9C, 10B, 10C, 11, 12A, 12C, 12D, 12E, 13, 14, 16, 17 or 18, including each #use# listed separately therein, and certain #uses# listed in Use Groups 3A, 6C, 9A, 10A or 12B are permitted in #Manufacturing Districts# as indicated in Sections 42-11 to 42-15, inclusive – , except that any such #use# which is also an #adult establishment# shall, in addition, be subject to the provisions of Section 42-01 (Special Provisions for Adult Establishments).

42-01
Special Provisions for Adult Establishments

In addition to the applicable regulations for the #uses# listed in a permitted Use Group, #adult establishments# shall be subject to the following provisions:

(a)   #adult establishments# are not permitted in a #manufacturing district# in which #residences#, #joint living-work quarters for artists# or #loft dwellings# are, under the provisions of the Zoning Resolution, allowed as-of-right or by special permit or authorization.

(b)   in all other #manufacturing districts#, #adult establishments# shall be located at least 500 feet from a church, a #school#, a #residence district#, a C1, C2, C3, C4, C5-1, C6-1, C6-2, or C6-3 district, or a #manufacturing district# other than

Page 9 of 15 pages
N 950384 ZRY
Reso. No. 1322 (L.U. No. 713)

M1-6M in which new #residences#, new #joint living-work quarters for artists# or new #loft dwellings# are allowed, under the provisions of the Zoning Resolution, as-of-right or by special permit or authorization. However, on or after the effective date of this amendment, an #adult establishment# that otherwise complies with the provision of this paragraph shall not be rendered #non-conforming# if a church or a #school# is established on or after April 10, 1995 within 500 feet of such #adult establishment#.

(c)   #adult establishments# shall be located at least 500 feet from another #adult establishment#.

(d)   no more than one #adult establishment# permitted under this Section shall be located on a #zoning lot#.

(e)   that #adult establishments# shall not exceed in total 10,000 square feet of #floor area# and #cellar# space not used for enclosed storage or mechanical equipment.

(f)   #adult establishments# which existed on the effective date of this amendment and conform to all provisions of the Zoning Resolution relating to #adult establishments# other than the provisions of all or any combination of paragraphs (c), (d), and (e) of this Section, shall not be subject to the provisions of Section 52-77 (Termination of Adult Establishments).

***

42-50
SIGN REGULATIONS

***

42-52
Permitted Accessory Business Signs or Advertising Signs
M1, M2, M3

In all districts, as indicated, #accessory business signs# or #advertising signs# are permitted with no restriction on size, illumination or otherwise, except as ~~otherwise~~ provided in Section 42-54 (Special Provisions Applying along District Boundaries) and

Page 10 of 15 pages
N 950384 ZRY
Reso. No. 1322 (L.U. No. 713)

subject to the provisions of Section 42-53 (Additional Regulations for Advertising Signs) ~~and Section 42-55 (Additional Regulations for Business and Advertising Signs in Certain Manufacturing Districts).~~ and Section 42-55 (Additional Accessory Business Sign Regulations for Adult Establishments).

\*\*\*

42-55

Additional Accessory Business Sign Regulations for Adult Establishments
M1, M2, M3

In all districts, as indicated, all permitted #accessory business signs# for #adult establishments# shall conform with the provisions of this Chapter, except that the maximum #surface area# of all #accessory business signs# for #adult establishments# shall not exceed, in the aggregate, three times the #street# frontage of the #zoning lot#, but in no event more than 150 square feet per establishment, of which no more than 50 square feet may be #illuminated# and no portion thereof may be #flashing#

No #accessory business signs# for #adult establishments# shall be permitted on the roof of any #building#, nor shall such signs extend above #curb level# at a height greater than 25 feet.

\*\*\*

ARTICLE V
NON-CONFORMING USES AND NON-COMPLYING BUILDINGS

CHAPTER 1
STATEMENT OF LEGISLATIVE INTENT

51-00
PURPOSE OF REGULATIONS GOVERNING NON-CONFORMING USES AND NON-COMPLYING BUILDINGS

\*\*\*

In the case of a few objectionable non-conforming uses which are detrimental to the character of ~~residence~~ the districts in which such uses are located, a reasonable statutory

Page 11 of 15 pages
N 950384 ZRY
Reso. No. 1322 (L.U. No. 713)

period of life is established for such uses, in order to permit the owner gradually to make
his plans for the future during the period when he the owner is allowed to continue the
non-conforming uses of his the property, thereby minimizing any loss, while at the same
time assuring the public that the district in which such non-conformity exists will
eventually benefit from a more nearly uniform character.

\*\*\*

52-30
CHANGE OF NON-CONFORMING USE

\*\*\*

52-38
Special Regulations for Adult Establishments

In all districts, a #non-conforming use# may not be changed, initially or in any
subsequent change, to an #adult establishment#, except as provided in Section 32-01
(Special Provisions for Adult Establishments) or Section 42-01 (Special Provisions for
Adult Establishments).

\*\*\*

52-70
TERMINATION     OF     CERTAIN     NON-CONFORMING     USES     AFTER
AMORTIZATION

52-71
General Provisions

In specified districts, specific #non-conforming signs#, specific #non-conforming uses#
of #land with minor improvements#, specific #non-conforming# objectionable #uses#,
certain specific types of #uses# involving open storage or salvage , #non-conforming#
#adult establishments#, or certain #non-conforming public parking lots# may be continued

0359

Page 12 of 15 pages
N 950384 ZRY
Reso. No. 1322 (L.U. No. 713)

for a reasonable period of useful life as set forth in this Chapter, provided that after the expiration of that period such #non-conforming uses# shall terminate in accordance with the provisions of this Chapter.

\*\*\*

52-73
Non-conforming Signs

\*\*\*

52-734
Non-conforming accessory business signs for adult establishments

In all districts, a #non-conforming accessory business sign# for an #adult establishment# shall terminate within one year from the effective date of this amendment or from such later date that such #sign# becomes #non-conforming#, except that such #sign# may be continued for a limited period of time by the Board of Standards and Appeals pursuant to Section 72-40 (Amortization of Certain Adult Establishments and Signs for Adult Establishments).

\*\*\*

52-77
Termination of Adult Establishments

In all districts, a #non-conforming# #adult establishment# shall terminate within one year from the effective date of this amendment or from such later date that the #adult establishment# becomes #non-conforming#, except that such establishment may be continued for a limited period of time by the Board of Standards and Appeals pursuant to Section 72-40 (Amortization of Certain Adult Establishments and Signs for Adult Establishments). However, the provisions of this Section shall not apply to an #adult establishment# subject to the provisions of paragraph (f) of Section 32-01 or 42-01 (Special Provisions for Adult Establishments).

\*\*\*

52-80
REGULATIONS APPLYING TO NON-CONFORMING SIGNS

\*\*\*

Page 13 of 15 pages
N 950384 ZRY
Reso. No. 1322 (L.U. No. 713)

52-82
Non-Conforming Business Signs

Any #non-conforming accessory business sign#, except a #flashing sign# or a #sign# subject to the provisions of Section 52-734 (Non-conforming accessory business signs for adult establishments), may be structurally altered, reconstructed, or replaced in the same location and position, provided that such structural alteration, reconstruction, or replacement does not result in:

(a)     the creation of a new #non-conformity# or an increase in the degree of #non-conformity# of such #sign#;

(b)     an increase in the #surface area# of such #sign#; or

(c)     an increase in the degree of illumination of such #sign#.

                                        ***

72-01
General Provisions

The Board of Standards and Appeals (referred to hereinafter as the Board) shall have the power, pursuant to the provisions of the New York City Charter and of this Resolution, after public notice and hearing:

                                        ***

(f)     to make such administrative determinations and findings as may be set forth in this Resolution at Sections 15-021 and 15-50 et seq., or pursuant to Section 72-40 (Amortization of Certain Adult Establishments and Signs for Adult Establishments).

                                        ***

72-40
AMORTIZATION OF CERTAIN ADULT ESTABLISHMENTS AND SIGNS FOR ADULT ESTABLISHMENTS

Page 14 of 15 pages
N 950384 ZRY
Reso. No. 1322 (L.U. No. 713)

The Board of Standards and Appeals may permit any #non-conforming# #adult establishment# or any #non-conforming accessory business sign# for an #adult establishment# to continue for a limited period of time beyond that provided for in Section 52-734 (Non-conforming accessory business signs for adult establishments) or Section 52-77 (Termination of Adult Establishments), provided that:

(a)     an application is made by the owner of such establishment to the Board of Standards and Appeals at least 120 days prior to the date on which such establishment or #sign# must terminate;

(b)     the Board shall find, in connection with such establishment or #sign#, that:

   (1)     the applicant had made, prior to the #non-conformity#, substantial financial expenditures related to the #non-conformity#; and;

   (2)     the applicant has not recovered substantially all of the financial expenditures related to the #non-conformity#; and,

   (3)     the period for which such establishment or #sign# may be permitted to continue is the minimum period sufficient for the applicant to recover substantially all of the financial expenditures incurred related to the #non-conformity#.

For the purpose of this Section, "financial expenditures" shall mean the capital outlay made by the applicant to establish the #adult establishment# or #sign#, exclusive of the fair market value of the #building# in which such #use# or #sign# is located and exclusive of any improvements unrelated to the #non-conforming# #adult establishment# or #non-conforming accessory business sign# for #adult establishments#.

                                   ***

Page 15 of 15 pages
N 950384 ZRY
Reso. No. 1322 (L.U. No. 713)


Adopted.


Office of the City Clerk, }
The City of New York,  } ss.:

I hereby certify that the foregoing is a true copy of a Resolution passed by The
Council of The City of New York on October 25, 1995, on file in this office.

.....................................
City Clerk, Clerk of Council

0363

# EXHIBIT 2



# The New York City Council

City Hall
New York, NY  10007

## Legislation Details (With Text)

| | | | | |
|---|---|---|---|---|
| **File #:** | Res 0208-1998 | **Version:** * | **Name:** | Zoning, Text Changes Signage Regulations(N980135ZRY) |
| **Type:** | Resolution | | **Status:** | Adopted |
| | | | **In control:** | Committee on Land Use |

**On agenda:**

**Enactment date:**            **Enactment #:**

**Title:** Resolution approving the decision of the City Planning Commission on Application No. N 980135 ZRY, amendments to the text of the Zoning Resolution concerning signs (L.U. No. 91).

**Sponsors:** June M. Eisland, Walter L. McCaffrey

**Indexes:**

**Attachments:** 1. LU 91, 2. Committee Report

| Date | Ver. | Action By | Action | Result |
|---|---|---|---|---|
| 4/8/1998 | * | City Council | Approved by Council | |

THE COUNCIL OF THE CITY OF NEW YORK
RESOLUTION NO. 208

Resolution approving the decision of the City Planning Commission on Application No. N 980135 ZRY, amendments to the text of the Zoning Resolution concerning signs (L.U. No. 91).

By Council Members Eisland and McCaffrey

WHEREAS, the City Planning Commission filed with the Council on February 26, 1998 its decision dated February 18, 1998 (the "Decision"), on the application submitted by the Department of City Planning, pursuant to Section 201 of the New York City Charter, for amendments to the text of the Zoning Resolution (Application No. N 980135 ZRY) (the "Application");

WHEREAS, the Decision is subject to review and action by the Council pursuant to Section 197-d(b)(1) of the City Charter;

WHEREAS, the Council held a public hearing on the Decision and Application on March 16 and April 1, 1998;

WHEREAS, the Council has considered the land use implications and other policy issues relating to the Decision and Application; and

WHEREAS, the Council has considered the relevant environmental issues and the Negative Declaration, issued on October 20, 1997 (CEQR No. 98DCP022Y);

RESOLVED:

The Council finds that the action described herein will have no significant effect on the environment;

Pursuant to Sections 197-d and 200 of the City Charter and on the basis of the Decision and Application the Council approves the Decision; and

The Zoning Resolution of the City of New York, effective as of December 15, 1961, and as subsequently amended, is further amended as follows:

Matter in Graytone is new, to be added;
Matter in strikeout is old, to be deleted;
Matter within #  # is defined in Section 12-10;
*** indicates where unchanged text appears in the Zoning Resolution

0365

File #: Res 0208-1998, **Version:** *

Text not in graytone or strikeout is to be readopted

12-10
DEFINITIONS

•••

Advertising sign - see Sign, advertising

•••

Business sign - see Sign, business

•••

Flashing sign - see Sign, flashing

•••

Illuminated sign - see Sign, illuminated

•••

Sign

A "sign" is any writing (including letter, word, or numeral), pictorial representation (including illustration or decoration), emblem (including device, symbol, or trademark), flag, (including banner or pennant), or any other figure of similar character, that:

(a)       is a structure or any part thereof, or is attached to, painted on, or in any other manner represented on a #building or other structure#;

(b)       is used to announce, direct attention to, or advertise; and

(c)       is visible from outside a #building#.  A #sign# shall include writing, representation, or other figures of similar character, within a #building#, only when illuminated and located in a window.

However, non-#illuminated# signs containing solely non-commercial copy with a total #surface area# not exceeding 12 square feet on any #zoning lot#, including memorial tablets or signs displayed for the direction or convenience of the public, The following shall not be subject to the provisions of this Resolution:.

(1)       Signs of a duly constituted governmental body, including traffic or similar regulatory devices, legal notices, or warnings at railroad crossings;

(2)       Flags or emblems of a political, civic, philanthropic, educational or religious organization;

(3)       Temporary signs announcing a campaign, drive, or event of the above organizations;

(4)       Memorial signs or tablets;

(5)       Signs denoting architect, engineer, or contractor when placed on construction sites and not exceeding 25 square feet in area;

(6)       Signs required to be maintained by law or governmental order, rule, or regulation, with a total #surface area# not exceeding ten square feet on any #zoning lot#;

(7)       Small signs displayed for the direction or convenience of the public, including signs that identify rest rooms, freight entrances, or the like, with a total #surface area# not exceeding five square feet on any #zoning lot#.

Sign, advertising

An "advertising sign" is a #sign# that directs attention to a business, profession, commodity, service or entertainment conducted, sold, or offered elsewhere than upon the same #zoning lot# and is not #accessory# to a #use# located on the #zoning lot#.

Sign, business (12/15/61)

A "business sign" is an #accessory sign# that directs attention to a profession, business, commodity, service or entertainment conducted, sold, or offered upon the same #zoning lot#.

•••

Sign, flashing (12/15/61)

0366

File #: Res 0208-1998, **Version:** *

A "flashing sign" is any #illuminated sign#, whether stationary, revolving or rotating, that exhibits changing light or color effects, provided that revolving or rotating #signs# that exhibit no changing light or color effects other than those produced by revolution or rotation, shall be deemed #flashing signs# only if they exhibit sudden or marked changes in such light or color effects.

#Illuminated signs# that indicate the time, temperature, weather or other similar information shall not be considered #flashing signs#, provided that:

(a)      the total #surface area# of such #sign# is not greater than 16 square feet;

(b)      the vertical dimension of any letter or number is not greater than 24 inches; and

(c)      color or intensity of light is constant except for periodic changes in the information displayed, which occur not more frequently than once every minute.


Sign, illuminated (12/15/61)

An "illuminated sign" is a #sign# designed to give forth any artificial light or reflect such light from an artificial source.

Sign, surface area of - see Surface area (of a sign)

Sign with indirect illumination (12/15/61)

A "sign with indirect illumination" is any #illuminated# non-#flashing sign# whose illumination is derived entirely from an external artificial source and is so arranged that no direct rays of light are projected from such artificial source into #residences# or #streets#.

***

Surface area (of a sign)

The "surface area" of a #sign# shall be the entire area within a single continuous perimeter enclosing the extreme limits of writing, representation, emblem, or any figure of similar character, together with any material or color forming an integral part of the display or used to differentiate such #sign# from the background against which it is placed.  In any event, the supports or uprights on which such #sign# is supported shall not be included in determining the #surface area# of a #sign#.

When two #signs# of the same shape and dimensions are mounted or displayed back to back and parallel on a single free-standing structural frame, only one of such #signs# shall be included in computing the total #surface area# of the two #signs#.

When a double-faced #sign# projects from the wall of a #building#, and its two sides are located not more than 28 inches apart at the widest point and not more than 18 inches apart at the narrowest point, and display identical writing or other representation, the #surface area# shall include only one of the sides.  Any additional side of a multi-faced #sign# shall be considered as a separate #sign# for purposes of computing the total #surface area# of the #sign#.

***

22-30
SIGN REGULATIONS

***

22-32
Permitted Non-Illuminated Accessory Signs

R1 R2 R3 R4 R5 R6 R7 R8 R9 R10

In all districts, as indicated, non-#illuminated accessory business signs# are permitted as set forth in this Section, subject to the provisions of Section 22-34 (Additional Regulations).
***

22-33
Signs on Lots Containing Certain Community Facilities

22-331
Permitted Iilluminated Aaccessory Ssigns for Hhospitals and Rrelated Ffacilities

R1 R2 R3 R4 R5 R6 R7 R8 R9 R10

In all districts, as indicated, for hospitals and related facilities #illuminated# non-#flashing accessory business signs# are permitted in all districts, subject to Section 22-34 (Additional Regulations).  Any number of #illuminated# non-#flashing# identification or directional #signs# are permitted, provided that the total #surface area# in square feet of said #illuminated signs# or the combined total #surface area# in square feet

0367

File #: Res 0208-1998, Version: *

of the #illuminated# and non-#illuminated# identification or directional #signs# does not exceed 25 square feet on any one #street# frontage or 15 percent of such #street# frontage in feet, whichever is less, and provided further that the Commissioner of Buildings determines that such #signs# are so located as to cause a minimum amount of light to be projected on to abutting or adjacent #residences#.  In addition to #illuminated# or non-#illuminated# accessory business #signs#, one illuminated non-flashing directory or bulletin board or combination thereof is permitted in lieu of a non-illuminated directory or bulletin board or combination thereof provided that the total #sign# area does not exceed 50 square feet and provided further that the Commissioner of Buildings determines that such #sign# is so located as to minimize the amount of light projected on the abutting or adjacent #residences#.

22-332
Flags, banners or pennants on lots containing certain community facilities

R1 R2 R3 R4 R5 R6 R7 R8 R9 R10

In all districts, as indicated, flags, banners or pennants other than those that are #advertising signs#, located on any #zoning lot# used primarily for #community facility uses# of a civic, philanthropic, educational or religious nature, are permitted without limitation.
***

22-35
Advertising Signs on Waterways

No moving or stationary "advertising sign" shall be displayed on a vessel plying waterways adjacent to #Residence Districts# and within view from an arterial highway.  For the purposes of this Section, arterial highways shall include all highways which are shown on the Master Plan of Arterial Highways and Major Streets as "principal routes," "parkways," or "toll crossings" and which have been designated by the City Planning Commission as arterial highways to which the provisions of this Section shall apply.

For the purposes of this Section "advertising sign" is a sign which directs attention to a profession, business, commodity, service or entertainment conducted, sold, or offered elsewhere than upon the premises of the vessel, and shall not include signs, symbols or flags identifying the vessel, its owners or operators and is not #accessory# to a #use# on such vessel.
***

32-421
Limitation on floors occupied by non-residential uses

C1 C2 C3

In the districts indicated, in any #building#, or portion of a #building# occupied on one or more of its upper #stories# by #residential uses# listed in Use Group 1 or 2 or by #community facility uses# listed in Use Group 3 or 4, no non-#residential uses# listed in Use Group 6, 7, 8, 9 or 14 shall be located above the level of the first #story# ceiling, provided, however, that permitted #business signs, other than #advertising signs#, accessory# to such non-#residential uses# may extend to a maximum height of two feet above the level of the finished floor of the second #story#, but in no event higher than six inches below the lowest window sill of the second #story#. In any other #building#, or portion thereof, not more than two #stories# may be occupied by non-#residential uses# listed in Use Group 6A, 6B, 6C, 6F, 7, 8, 9 or 14. Non-#residential uses# permitted by the applicable district regulations may occupy two #stories# in any new #development# in C1 or C2 Districts mapped within R9 or R10 Districts or in C1-8, C1-9, C2-7 or C2-8 Districts.

32-422
Location of floors occupied by non-residential uses

C4 C5 C6

In the districts indicated, in any #building#, or portion of a #building# occupied by #residential uses# listed in Use Group 1 or 2, non-#residential uses# listed in Use Group 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15 or 16 may be located only on a #story# below the lowest #story# occupied in whole or in part by such #residential uses#, except that this limitation shall not preclude the location of any such non-#residential use# below the level of the first #story# ceiling, or the extension of a permitted #business sign, other than #advertising sign#, accessory# to such non-#residential use# to a maximum height of two feet above the level of the finished floor of the second #story#, but in no event higher than six inches below the lowest window sill on the second #story#.
***

32-60
SIGN REGULATIONS
***

32-62
Permitted Accessory Business Signs

C1 C2 C3 C4 C5 C6 C7 C8

In all districts, as indicated, #accessory business signs# other than #advertising signs# are permitted subject to the provisions of the following

File #: Res 0208-1998, **Version:** *

Sections:

| | |
|---|---|
| Section 32-64 | (Surface Area and Illumination Provisions) |
| Section 32-65 | (Permited Projection or Height of Signs) |
| Section 32-67 | (Special Provisions Applying along District Boundaries) |
| Section 32-68 | (Permitted Signs on Residential Buildings) . |
| Section 32-69 | (Additional Accessory Business Sign Regulations for Adult Establishments) |

However, notwithstanding any provision of this Section, flags, banners or pennants other than those that are #advertising signs#, located on any #zoning lot# used primarily for #community facility uses# of a civic, philanthropic, educational or religious nature, are permitted in all districts, as indicated, without limitation.

***

32-64
Surface Area and Illumination Provisions

C1 C2 C3 C4 C5 C6 C7 C8

In all districts, as indicated, all permitted #signs# shall be subject to the restrictions on #surface area# and illumination as set forth in this Section, provided that the following #signs# shall be exempted from such restrictions on #surface area#:

#Illuminated# non-#flashing business signs# other than #advertising signs# located in a window within a #building#, with a total #surface area# not exceeding eight square feet on any #zoning lot# and limited to not more than three such #signs# in any window.

For the purpose of determining permitted #surface area# of #signs# for #zoning lots# occupied by more than one establishment, any portion of such #zoning lot# occupied by a #building# or part of a #building# accommodating one or more establishments on the ground floor may be considered as a separate #zoning lot#.

***

32-645
Illuminated or flashing signs in C8 Districts

C8

In the district indicated, #illuminated# or #flashing business signs#, other than #advertising signs#, and or #advertising signs# with indirect illumination , are permitted, provided that the total #surface area# of all such #signs# (in square feet) shall not exceed five times the #street# frontage of the #zoning lot# (in feet) and that the #surface area# of each #sign# shall not exceed 500 square feet.

***

32-651
Permitted projection in C6-5, C6-7 or C7 Districts

C6-5 C6-7 C7

In the districts indicated, except as otherwise provided in Section 32-653 (Additional regulations for projecting business signs), no permitted #sign# shall project across a #street line# more than eight feet.

32-652
Permitted projection in all other Commercial Districts

C1 C2 C3 C4 C5 C6-1 C6-2 C6-3 C6-4 C6-6 C6-8 C6-9 C8

In the districts indicated, except as otherwise provided in Section 32-653 (Additional regulations for projecting business signs), no permitted #sign# shall project across a #street line# more than 18 inches for double- or multi-faceted #signs# or 12 inches for all other #signs#.

32-653
Additional regulations for projecting business signs

C1 C2 C3 C4 C5 C6 C7 C8

In all districts, as indicated, permitted #accessory business signs# other than #advertising signs# may be displayed as follows:

0369

File #: Res 0208-1998, Version: *

(a)     Non-#illuminated signs# may be displayed on awnings or canopies permitted by Section 27-313(b) of the Administrative Code, with a #surface area# not exceeding 12 square feet and with the height of letters not exceeding 12 inches . , provided that Any commercial copy on such #signs# shall be limited to identification of the name or address of the #building# or an establishment contained therein.

(b)     #Signs# may be displayed on marquees permitted by Section 27-313(b) of the Administrative Code, provided that such #signs# conform to the provisions of Section 26-182 of the Administrative Code, and provided further that no such #sign# in a district other than a C6-5, C6-7 or C-7 District shall project more than 48 inches above nor more than 12 inches below such marquee.

***

32-661
Advertising signs on waterways

No moving or stationary  # advertising sign #  shall be displayed on a vessel plying waterways adjacent to #Commercial Districts# and within view from an arterial highway.  For the purposes of this Section, arterial highways shall include all highways which are shown on the Master Plan of Arterial Highways and Major Streets as "principal routes," "parkways," or "toll crossings" and which have been designated by the City Planning Commission as arterial highways to which the provisions of this Section shall apply.

For the purposes of this Section #advertising sign# is a #sign# which directs attention to a profession, business, commodity, service or entertainment conducted, sold, or offered elsewhere than upon the premises of the vessel, and shall not include signs, symbols or flags identifying the vessel, its owner or operators and is not #accessory# to a #use# on such vessel.

32-67
Special Provisions Applying along District Boundaries

C2 C3 C4 C5 C6 C7 C8

In the districts indicated, and within 100 feet of the #street line# of any #street# or portion thereof in which the boundary of an adjoining #Residence District# is located, or which adjoins a #public park# of one-half acre or more, all #signs# no #advertising sign# which faces at an angle of less than 165 degrees away from such #Residence District# or park boundary shall be permitted and all other #signs# facing at less than such an angle limited to #accessory business signs# and shall conform with all the #sign# regulations applicable in C1 Districts as set forth in Sections 32-61 to 32-68, inclusive, relating to Sign Regulations.

32-68
Permitted Signs on Residential or Mixed Buildings

C1 C2 C3 C4 C5 C6

In the districts indicated, any #use# listed in Use Group 1 or 2 shall conform to the #sign# regulations for #Residence Districts# set forth in Sections 22-31 to 22-34, inclusive.  In #residential# or #mixed buildings#, #residential sign# regulations shall apply to a #building# or part of a #building# used for #residential# purposes.

Where non-#residential uses# are permitted to occupy two floors of the #building#, all #signs accessory# to non-#residential uses# located on the second floor shall be non-#illuminated business signs#, and shall be located below the level of the finished floor of the third #story#.

32-69
Additional Accessory Business Sign Regulations for Adult Establishments

C6-4 C6-5 C6-6 C6-7 C6-8 C6-9 C7 C8

#Accessory business signs# #Signs#, other than #advertising signs#, for #adult establishments# are permitted only as set forth in this Section and are limited to locations in the districts indicated.

All permitted #accessory business signs#, other than #advertising signs#, for #adult establishments# shall conform with all the #sign# regulations applicable in C1 Districts as set forth in this Chapter, except that the provisions of Section 32-64 (Surface Area and Illumination Provisions) shall not apply. In lieu thereof, the maximum #surface area# of all #accessory business signs#, other than #advertising signs#, for #adult establishments# shall not exceed, in the aggregate, three times the #street# frontage of the #zoning lot#, but in no event more than 150 square feet per establishment, of which no more than 50 square feet may be #illuminated# non-#flashing signs#.

***

36-56
Screening

C1 C2 C3 C4 C5 C6 C7 C8

***

(d)     have no #signs# hung or attached thereto other than those permitted in Sections 32-62 (Permitted Accessory Business Signs) or 32-

0370

File #: Res 0208-1998, **Version:** *

63 (Permitted Advertising Signs).

\*\*\*

36-685
Screening

C1 C2 C3 C4 C5 C6 C7 C8

\*\*\*

(d)        shall have no #signs# hung or attached thereto other than those permitted in Sections 32-62 (Permitted Accessory Business Signs) or 32-63 (Permitted Advertising Signs).

\*\*\*

37-011
Applicability of Section 37-01

\*\*\*

An application to the Department of Buildings for a permit respecting any new #development# shall include a plan and an elevation drawn to a scale of at least one sixteenth inch to a foot of the new #building# and #buildings# on #contiguous lots# or #contiguous blocks# showing #accessory business signs#, other than #advertising signs#, #arcades#, #street wall# articulation, curb cuts, #street# trees, sidewalk paving, central refuse storage area and such other necessary information as may be required by the Commissioner of Buildings.

\*\*\*

37-014
Modifications to applicability of Article II, Chapter 6

In C1-8, C1-9, C2-7, C2-8, C4-6, C5-1, C5-2, C5-4, C6-3, C6-4, C6-5 and C6-8 Districts, or C1 or C2 Districts mapped within R9 or R10 Districts, the regulations of Article II, Chapter 6, applicable to #residential developments# or #developments# occupied by a #predominantly residential use# are modified by the provisions of Sections 37-015 (Retail continuity) and 37-016 (Accessory business signsSign regulations) and 37-017 (Street wall articulation).

\*\*\*

37-016
Accessory business signsSign regulations

In addition to the applicable district regulations in C1-8, C1-9, C2-7, C2-8, C4-6 Districts and C1 or C2 Districts mapped within R9 or R10 Districts, all #accessory business signs#, other than #advertising signs# and other than window #signs#, shall be located in a horizontal band not higher than 3 feet, the base of which is located not higher than 17 feet above #curb level#.  Where there is a grade change of at least 1.5 feet in 100 along the portion of the #street# upon which the #development# fronts, such signage band may be staggered along such #street#.

\*\*\*

42-50
SIGN REGULATIONS

\*\*\*

42-52
Permitted Accessory Business Signs or Advertising Signs

M1 M2 M3

In all districts, as indicated, #accessory business signs# or #advertising signs# are permitted with no restriction on size, illumination or otherwise, except as otherwise provided in Section 42-53 (Additional Regulations for Advertising Signs), 42-54 (Special Provisions Applying along District Boundaries) and subject to the provisions of Section 42-55 (Additional Accessory Business Sign Regulations for Adult Establishments).

\*\*\*

42-53
Additional Regulations for Advertising Signs

0371

File #: Res 0208-1998, **Version:** *

M1 M2 M3

In all districts, as indicated no #advertising sign# shall be located, nor shall an existing #advertising sign# be structurally altered, relocated, or reconstructed, within 200 feet of an arterial highway or of a #public park# with an area of one-half acre or more, if such #advertising sign# is within view of such arterial highway or #public park#.  For the purposes of this Section, arterial highways shall include all highways which are shown on the Master Plan of Arterial Highways and Major Streets, as "principal routes," "parkways," or "toll crossings,"

and which have been designated by the City Planning Commission as arterial highways to which the provisions of this Section shall apply. Beyond 200 feet from such arterial highway or #public park#, an #advertising sign# shall be located at a distance of at least as many linear feet therefrom as there are square feet of #surface area# on the face of such #sign#.  However, in all districts as indicated, the more restrictive of the following shall apply:

(a)      Any #advertising sign# erected, structurally altered, relocated or reconstructed prior to June 1, 1968, within 660 feet of the nearest edge of the right-of-way of an arterial highway, whose message is visible from such arterial highway, shall have legal #non-conforming use# status pursuant to Section 52-83, to the extent of its size existing on May 31, 1968.

(b)      Any #advertising sign# erected, structurally altered, relocated or reconstructed between June 1, 1968 and November 1, 1979, within 660 feet of the nearest edge of the right-of-way of an arterial highway, whose message is visible from such arterial highway, and whose size does not exceed 1200 square feet in #surface area# on its face, 30 feet in height, and 60 feet in length, shall have legal #non-conforming use# status pursuant to Section 52-83, to the extent of its size existing on November 1, 1979.  All #advertising signs# not in conformance with the standards set forth herein shall terminate.

42-531
Advertising signs on waterways

No moving or stationary #advertising sign# shall be displayed on a vessel plying waterways adjacent to #Manufacturing Districts# and within view from an arterial highway.  For the purposes of this Section, arterial highways shall include all highways which are shown on the Master Plan of Arterial Highways and Major Streets as "principal routes," "parkways," or "toll crossings" and which have been designated by the City Planning Commission as arterial highways to which the provisions of this Section shall apply.

For the purposes of this Section, #advertising sign# is a #sign# which directs attention to a profession, business, commodity, service or entertainment conducted, sold, or offered elsewhere than upon the premises of the vessel, and shall not include signs, symbols or flags identifying the vessel, its owners or operators and is not #accessory# to a #use# on such vessel.

42-54
Special Provisions Applying along District Boundaries

42-541
Restrictions along district boundary located in a street

M1 M2 M3

In all districts, as indicated, and within 100 feet of the #street line# of any #street# or portion thereof in which the boundary of an adjoining #Residence District# is located, or which adjoins a #public park# of one-half acre or more, #advertising signs# which face at an angle of less than 165 degrees away from such #Residence District# or park boundary shall not be permitted and all other #signs# facing at less than such an angle be limited to #accessory business signs# and shall conform with all the #sign# regulations applicable in C1 Districts as set forth in Sections 32-61 to 32-68, inclusive, relating to Sign Regulations.

···

42-55
Additional Accessory Business Sign Regulations for Adult Establishments

M1 M2 M3

In all districts, as indicated, all permitted #accessory business signs#, other than #advertising signs#, for #adult establishments# shall conform with the provisions of this Chapter, except that the maximum #surface area# of all #accessory business signs#, other than #advertising signs#, for #adult establishments# shall not exceed, in the aggregate, three times the #street# frontage of the #zoning lot#, but in no event more than 150 square feet per establishment, of which no more than 50 square feet may be #illuminated# and no portion thereof may be #flashing#.

No #accessory business signs# for #adult establishments# shall be permitted on the roof of any #building#, nor shall such #signs# extend above #curb level# at a height greater than 25 feet.

···

44-45
Screening

M1 M2 M3

File #: Res 0208-1998, **Version:** *

\*\*\*

(d)      shall have no #signs# hung or attached thereto other than those permitted in Section 42-52 (Permitted Accessory Business Signs or Advertising Signs).

\*\*\*

44-585
Screening

M1 M2 M3

\*\*\*

(3)      shall have no #signs# hung or attached thereto other than those permitted in Section 42-52 (Permitted Accessory Business Signs or Advertising Signs).

\*\*\*

52-73
Non-Conforming Signs

\*\*\*

52-733
Advertising signs on waterways

On all waterways adjacent to #Residence#, #Commercial# or #Manufacturing Districts# and within view from an arterial highway, a #non-conforming advertising sign# may be continued for one year after July 23, 1964 if already in operation on April 15, 1964; provided that after the expiration of this period such #non-conforming advertising sign# shall terminate.

For the purposes of this Section #advertising sign# is a #sign# which directs attention to a profession, business, commodity, service or entertainment conducted, sold, or offered elsewhere than upon the premises of the vessel, and shall not include signs, symbols or flags identifying the vessel, its owners or operators and is not #accessory# to a #use# on such vessel.

52-734
Non-conforming accessory business signs for adult establishments

In all districts, a #non-conforming accessory business sign# for an #adult establishment# shall terminate within one year from October 25, 1995 or from such later date that such #sign# becomes #non-conforming#, except that such #sign# may be continued for a limited period of time by the Board of Standards and Appeals pursuant to Section 72-40 (AMORTIZATION OF CERTAIN ADULT ESTABLISHMENTS AND SIGNS FOR ADULT ESTABLISHMENTS).

\*\*\*

52-80
REGULATIONS APPLYING TO NON-CONFORMING SIGNS

52-81
General Provisions

A #non-conforming sign# shall be subject to all the provisions of this Chapter relating to #non-conforming uses#, except as modified by the provisions of Section 52-82 (Non-Conforming Business Signs) and Section 52-83 (Non-Conforming Advertising Signs).

A change in the subject matter represented on a #sign# shall not be considered a change of #use#.

52-82
Non-Conforming Business Signs other than #Advertising Signs#

Any #non-conforming accessory business sign#, except a #flashing sign# or a #sign# subject to the provisions of Section 52-734 (Non-conforming accessory business signs for adult establishments), and except any #advertising sign# may be structurally altered, reconstructed, or replaced in the same location and position, provided that such structural alteration, reconstruction, or replacement does not result in:

(a)      the creation of a new #non-conformity# or an increase in the degree of #non-conformity# of such #sign#;

(b)      an increase in the #surface area# of such #sign#; or

(c)      an increase in the degree of illumination of such #sign#.

However, any structural alteration, reconstruction or replacement of a #non-conforming sign accessory# to a #non-conforming use# shall be

0373

**File #:** Res 0208-1998, **Version:** *

subject to the provisions of Section 52-31 (General Provisions).

To the extent that such structural alteration, reconstruction, or replacement of #non-conforming accessory business signs# is permitted under the provisions of this Section, the provisions of the following Sections are modified:

Section 52-22 (Structural Alterations)

Sections 52-51 to 52-55, inclusive, relating to Damage or Destruction.

\*\*\*

72-40
AMORTIZATION OF CERTAIN ADULT ESTABLISHMENTS AND SIGNS FOR ADULT ESTABLISHMENTS

The Board of Standards and Appeals may permit any #non-conforming adult establishment# or any #non-conforming accessory business sign#, other than #advertising sign#, for an #adult establishment# to continue for a limited period of time beyond that provided for in Section 52-734 (Non-conforming accessory business signs for adult establishments) or Section 52-77 (Termination of Adult Establishments), provided that:

\*\*\*

73-211
Location in C2, C4, C6 or C7 Districts
\*\*\*

(5)      that #accessory business signs#, other than #advertising signs#, shall be subject to the applicable district #sign# regulations, provided that:

\*\*\*

73-241
In C1-1, C1-2, C1-3, C1-4, C2-1, C2-2, C2-3, C2-4, C3, C5, M1-5A or M1-5B Districts

\*\*\*

The Board may modify the regulations relating to #accessory business signs# in C3 Districts to permit a maximum total #surface area# of 50 square feet of non-#illuminated# or #illuminated# non-#flashing signs#, provided that any #illuminated sign# shall not be less than 150 feet from the boundary of any #Residence District#.  The Board shall prescribe appropriate controls to minimize adverse effects on the character of the surrounding area, including, but not limited to, location of entrances and operable windows; provision of sound-lock vestibules; specification of acoustical insulation; maximum size of establishment; kinds of amplification of musical instruments or voices; shielding of floodlights; adequate screening; curb cuts or parking.

73-242
In C3 Districts

\*\*\*

The Board may modify the regulations relating to #accessory business signs# in C3 Districts to permit a maximum total #surface area# of 50 square feet of non-#illuminated# or #illuminated# non-#flashing signs#, provided that any #illuminated sign# shall not be less than 150 feet from the boundary of any #Residence District#.

\*\*\*

73-25
Boatels

\*\*\*

The Board may modify the regulations relating to #accessory business signs# in C3 Districts to permit a maximum total #surface area# of 50 square feet of non-#illuminated# or #illuminated# non-#flashing signs# on each of not more than three #street# or water frontages.

\*\*\*

73-35
Amusement Arcades
\*\*\*

(c)      that the #use# is so located within the shopping center that no entrance and no #accessory business sign# fronts upon or faces a #street#.

0374

File #: Res 0208-1998, **Version:** *

\*\*\*

74-47
Amusement Arcades

(c)     the #use# is so located within the #building# that no entrance nor any #accessory business sign# of the amusement arcade fronts upon or faces a #street#.

\*\*\*

74-744
Modification of use regulations

\*\*\*

(c)     Modifications of #accessory business sign# regulations

In C6 Districts, the City Planning Commission may modify the regulations of Section 32-65 (Permitted Projection or Height of Signs) for #accessory business signs#, other than #advertising signs#, on a non- #residential building#, provided that such #accessory signs# will not be incompatible with the character of the surrounding area.

\*\*\*

81-141
Special sign regulations
\*\*\*

(b)     In a C5-3 District within the Fifth Avenue Subdistrict, the Chairperson of the City Planning Commission may, by certification, modify the requirements of Section 32-655 (Height of signs in all other Commercial Districts), to allow a single non-#illuminated business sign#, other than #advertising sign#, per #building# to be located at a height between 25 and 50 feet above #curb level# provided that the permitted #sign# shall:
\*\*\*

82-24
Supplementary Sign Regulations

No permitted #business sign# shall extend above #curb level# at a height greater than 20 feet or obstruct an #arcade#.

\*\*\*

93-34
Accessory Business Signs

All #accessory business signs#, other than #advertising signs# and other than window #signs#, shall be located in a horizontal band not higher than two feet, the base of which is located not less than 13 feet nor more than 16 feet above #curb level#.  Where there is a grade change of at least

1.5 feet in 100 feet along the portion of the #street# upon which the #development# fronts, such signage band may be staggered along such #street#.

\*\*\*

94-066
Additional sign regulations

Where #illuminated signs# are permitted by the underlying district regulations, such #signs# shall have only indirect illumination. Where #business signs#, other than #advertising signs#, are permitted by the underlying district regulations, such #signs# shall not extend above the roof level of any #building or other structure# in the Special District.

\*\*\*

97-112
Sign regulations

All #signs# for Use Group M #manufacturing uses# within the R(M) #Special Northside Mixed Use District# shall be limited to #accessory business signs#, other than #advertising signs#, and shall conform to regulations for C1 Districts as set forth in Sections 32-61 to 32-68 (Sign Regulations) inclusive, in this Resolution, except that no #illuminated signs# shall be permitted in the R(M) #Special Northside Mixed Use District#. In addition, no #sign# shall extend above the floor level of the second #story# above ground.

\*\*\*

108-112
Sign regulations

All #signs# for #manufacturing# or #commercial uses# within the #Special Franklin Street Mixed Use District# shall be limited to #accessory business signs#, other than #advertising signs#, and shall conform to regulations for C1 Districts as set forth in Section 32-61 to 32-68 (Sign Regulations), inclusive, in this Resolution, except that no #illuminated signs# shall be permitted in the #Special Franklin Street Mixed Use District#. In addition, no #sign# shall extend above the floor level of the second #story# above ground.

***

109-24
Sign Regulations

In addition to the underlying district #sign# regulations, the following regulations shall apply to all #signs#:

(a)      #accessory business signs# may not occupy more than 25 percent of the total area of the storefront measured from #curb level# to 10 feet above #curb level#;
***

(c)      #accessory business signs# may not cover columns, cornices or sills.

***

112-00
GENERAL PURPOSES

***

(c)      to maintain and protect the environmental quality and "village" character of City Island Avenue by imposing special controls on building setbacks and accessory business signs; and

***

112-123
Screening requirements for parking facilities accessory to commercial uses

***

(c)      shall have no #signs# hung or attached thereto other than those permitted in Section 32-62 (Permitted Accessory Business Signs), Section 32-63 (Permitted Advertising Signs) or Section 42-52 (Permitted Accessory Business Signs or Advertising Signs).

***

115-046
Permitted projection of signs

Except as otherwise permitted in Section 32-653 (Additional regulations for projecting business signs), no permitted #sign# shall project across a #street line# more than 12 inches.  Double or multifaced #signs# are not permitted.

***

117-423
Accessory business sSign regulations

***

118-12
Sign Regulations

***

#Signs# on #street walls# fronting on all other #streets# within the Special District shall be subject to the provisions of Section 37-016 (Accessory business signsSign regulations).

***

121-20
SIGN REGULATIONS

0376

File #: Res 0208-1998, **Version:** *

The following provisions apply on #wide streets# within the #Special Garment Center District#:

(a)      no #accessory businesssign# or #advertising sign# shall project across the #street line# of a #wide street# more than 18 inches for double or multi-faced #signs# or 12 inches for other #signs#;

***

122-20
SPECIAL SIGN REGULATIONS

In order to enhance the visual quality of the Special District, the applicable #sign# regulations of the underlying districts are modified as follows:

(a)      Within the Limited Commercial Areas, only one #accessory business sign#, other than an #advertising sign#, with a surface area not exceeding 12 square feet shall be permitted per #commercial use#.  #Accessory business Such signs# shall be located in a #sign band#, on the flap of a canopy, or as allowed under Section 122-20(d).  The height of an #accessory business such #signs# shall be not more than 24 inches and the letter sizes shall be restricted to a height of 12 inches.  Except as provided in Section 122-20(d), all such #signs# may not project from the vertical surface of a #building# more than 18 inches.

(b)      Within the Commercial Extension Areas, no #accessory business signs# and no #display windows# shall be permitted on a #building or other structure# within 50 feet of the Grand Concourse.  #Commercial uses# which are located on a cross-street beyond a distance of 50 feet from the Grand Concourse #street line#, shall comply with the #sign# regulations applicable to the underlying #Commercial District#.

(c)      On Commercial Infill Sites, the maximum surface area to be occupied by an #accessory business sign#, other than an #advertising sign#, shall be three square feet for every five feet of store frontage or 12 square feet, whichever is greater.  #Accessory business Such #signs# shall be located in a #sign band# and/or on the flap of a canopy, or as allowed under Section 122-20(d).  On portions of Commercial Infill Sites more than 50 feet from the Grand Concourse, the signage regulations of a C1 District  shall apply.

(d)      Except in C1 Districts, no #sign# may be located so as to obscure any decorative lintel, cornice or other architectural detail.  In the event that compliance with this requirement does not provide adequate surface area for the allowable #accessory business sign# as defined in Section 122-20(a), a projecting #sign# may be permitted by the Commissioner of Buildings provided that no such #sign# shall project from the vertical surface of a #building# more than 18 inches.

Adopted.

Office of the City Clerk, }
       The City of New York,  } ss.:

I hereby certify that the foregoing is a true copy of a Resolution passed by The Council of The City of New York on April 8, 1998, on file in this office.

.......................................
City Clerk, Clerk of Council

0377

# EXHIBIT 3



# The New York City Council

City Hall
New York, NY 10007

## Legislation Text

---

**File #:** Res 2096-2001, **Version:** *

---

THE COUNCIL OF THE CITY OF NEW YORK
RESOLUTION NO. 2096

Resolution approving the decision of the City Planning Commission on Application No. N 010508 ZRY, an amendment to the text of the Zoning Resolution regarding adult establishments (L.U. No. 1112).

By Council Members Eisland and McCaffrey

WHEREAS, the City Planning Commission filed with the Council on August 16, 2001 its decision dated August 8, 2001 (the "Decision"), on the application submitted by the Department of City Planning, pursuant to Section 201 of the New York City Charter, for an amendment to the text of the Zoning Resolution (Application No. N 010508 ZRY) (the "Application");

WHEREAS, the Decision is subject to review and action by the Council pursuant to Section 197-d(b)(1) of the City Charter;

WHEREAS, upon due notice, the Council held a public hearing on the Decision and Application on October 1, 2001;

WHEREAS, the Council has considered the land use implications and other policy issues relating to the Decision and Application; and

WHEREAS, the Council has considered the relevant environmental issues and the Negative Declaration, issued on March 26, 2001 (CEQR No. 01DCP054Y);

RESOLVED:

The Council finds that the action described herein will have no significant effect on the environment;

Pursuant to Sections 197-d and 200 of the City Charter and on the basis of the Decision and Application the Council approves the Decision; and

---

The Zoning Resolution of the City of New York, effective as of December 15, 1961, and as subsequently amended, is further amended as follows:

\*\*\*

Matter in greytone is new, to be added;
Matter in strikeout is existing text, to be deleted;
\*\*\* indicates where unchanged text appears in the Resolution

Section 12-10
DEFINITIONS

\*\*\*

Adult Establishment (10/25/95)

1.      Adult Establishment:  An "adult establishment" is a commercial establishment where a "substantial portion" of the establishment which is or includes an adult book store, adult eating or drinking establishment, adult theater, or other adult commercial establishment, or any combination thereof as defined below:

(a)      An adult book store is a book store which  has as that offers "printed or visual material" for sale or rent to customers where a "substantial portion" of its stock-in-trade of "printed or visual material" consists of "adult printed or visual material", defined as any one or more

---

0379

of the following:

(1) books, magazines, periodicals or other printed matter which are characterized by an emphasis upon the depiction or description of "specified sexual activities" or "specified anatomical areas"; or

(2) photographs, films, motion pictures, video cassettes or other visual representations which are "printed or visual material" characterized by an emphasis upon the depiction or description of "specified sexual activities" or "specified anatomical areas";

(b)     An adult eating or drinking establishment is an eating or drinking establishment which regularly features in any portion of such establishment any one or more of the following:

(1)     live performances which are characterized by an emphasis on "specified anatomical areas" or "specified sexual activities"; or

(2)     films, motion pictures, video cassettes, slides or other photographic reproductions which are characterized by an emphasis upon the depiction or description of "specified sexual activities" or "specified anatomical areas"; or

(3)     employees who, as part of their employment, regularly expose to patrons "specified anatomical areas"; and

which is not customarily open to the general public during such features because it excludes or restricts minors by reason of age.

(c)     An adult theater is a theater commercial establishment which regularly features one or more of the following:

(1)     films, motion pictures, videocassettes, slides or similar photographic reproductions characterized by an emphasis on the depiction or description of "specified sexual activities" or "specified anatomical areas"; or

(2)     live performances characterized by an emphasis on "specified anatomical areas" or "specified sexual activities"; and

which is not customarily open to the general public during such features because it excludes or restricts minors by reason of age.

An adult theater shall include commercial establishments where such materials or performances are viewed from one or more individual enclosures.

(d)     An other adult commercial establishment is a facility  - other than an adult book store, adult eating or drinking establishment, adult theater, commercial studio, or business or trade school  - which features employees who as part of their employment, regularly expose to patrons "specified anatomical areas" and which is not customarily open to the general public during such features because it excludes or restricts minors by reason of age.

For the purpose of defining adult establishments,
2.     Defined Terms:

(a)     For purposes of paragraph (1) (a), "printed or visual materials" are books, magazines, or other printed matter, including product packaging or wrapping, or photographs, films, motion pictures, video cassettes, slides or other visual matter;

(b)     For purposes of paragraph (1)(a)(b) and (c), "specified sexual activities" are: (1 i) human genitals in a state of sexual stimulation or arousal; (2 ii) actual or simulated acts of human masturbation, sexual intercourse or sodomy; or (3 iii) fondling or other erotic touching of human genitals, pubic region, buttock, anus or female breast;

(c)     For purposes of paragraph (1)(a)(b)(c) and (d), "specified anatomical areas" are: (1 i) less than completely and opaquely concealed: (i aa) human genitals, pubic region,(ii bb) human buttock, anus, or (iii cc) female breast below a point immediately above the top of the areola; or (2 ii) human male genitals in a discernibly turgid state, even if completely and opaquely concealed.

For the purpose of determining whether a "substantial portion" of an establishment includes an adult bookstore, adult eating or drinking establishment, adult theater, or other adult commercial establishment, or combination thereof, the following factors shall be considered: (1) the amount of floor area and cellar space accessible to customers and allocated to such uses and (2) the amount of floor area and cellar space accessible to customers and allocated to such uses as compared to the total floor area and cellar space accessible to customers in the establishment.

(d)     For the purpose of determining under paragraph (1)(a) whether a bookstore has a "substantial portion" of its stock in materials defined in paragraphs (a)(1) or (a)(2) hereof a book store's stock-in-trade of "printed or visual" material consists of "adult printed or visual material", the following factors shall be considered: (1) (i) the amount of such stock of "adult printed or visual material" accessible to customers as compared to the total stock of "printed or visual material" accessible to customers in the establishment; and (2) (ii) the amount of floor area and cellar space accessible to customers containing such stock of "adult printed or visual material"; and (3) (iii) the amount of floor area and cellar space accessible to customers containing such stock "of adult printed or visual material" as compared to the total amount of floor area and cellar space accessible to customers in the establishment containing "printed or visual material" which is not "adult printed or visual material", provided that "printed or visual material" which is not "adult printed or visual material" (hereinafter for purposes of this paragraph "other printed or visual material") shall not be considered stock-in-trade for purposes of this paragraph where such store has one or more of the following features:

0380

**File #:** Res 2096-2001, **Version:** *

(aa)       An interior configuration and lay-out which requires customers to pass through an area of the store with "adult printed or visual material" in order to access an area of the store with "other printed or visual material";

(bb)       One or more individual enclosures where adult movies or live performances are available for viewing by customers;

(cc)       A method of operation which requires customer transactions with respect to "other printed or visual material" to be made in an area of the store which includes "adult printed or visual material";

(dd)       A method of operation under which "other printed or visual material" is offered for sale only and "adult printed or visual material" is offered for sale or rental;

(ee)       A greater number of different titles of "adult printed or visual material" than the number of different titles of "other printed or visual material";

(ff)       A method of operation which excludes or restricts minors from the store as a whole or from any section of the store with "other printed or visual material";

(gg)       A sign that advertises the availability of "adult printed or visual material" which is disproportionate in size relative to a sign that advertises the availability of "other printed or visual material," when compared with the proportions of adult and other printed or visual materials offered for sale or rent in the store, or the proportions of floor area or cellar space accessible to customers containing stock of adult and other printed or visual materials;

(hh)       A window display in which the number of products or area of display of "adult printed or visual material" is disproportionate in size relative to the number of products or area of display of "other printed or visual material," when compared with the proportions of adult and other printed or visual materials offered for sale or rent in the store, or the proportions of floor area or cellar space accessible to customers containing stock of adult and other printed or visual materials;

(ii)       Other features relating to configuration and lay-out or method of operation, as set forth in rules adopted by the commissioner of buildings, which the commissioner has determined render the sale or rental of "adult printed or visual material" a substantial purpose of the business conducted in such store.  Such rules shall provide for the scheduled implementation of the terms thereof to commercial establishments in existence as of the date of adoption, as necessary.

(e)       For the purposes of paragraph (1) (b), an "eating or drinking establishment" includes: (i) any portion of a commercial establishment within which food or beverages are offered for purchase, or are available to or are consumed by customers or patrons, and (ii) any portion of a commercial establishment from which a portion of a commercial establishment described in (i) above is accessible by customers or patrons.

          \*\*\*

32-01
Special Provisions for Adult Establishments

          \*\*\*

(b)       In C6-4, C6-5, C6-6, C6-7, C6-8, C6-9, C7 or C8 Districts, #adult establishments# no #adult establishment# shall be located at least established less than 500 feet from a church, a #school#, a #Residence District#, a C1, C2, C3, C4, C5-1, C6-1, C6-2 or C6-3 District, or a #Manufacturing District#, other than an M1-6M District, in which new #residences# new #joint living-work quarters for artists# or new #loft dwellings# are allowed, under the provisions of the Zoning Resolution, as-of-right or by special permit or authorization.  No provisions or findings of such special permit or authorization which require an assessment of the impact of new #residences#, new #joint living-work quarters for artists# or new #loft dwellings# on #commercial# or #manufacturing uses# within a #Manufacturing District# shall be construed as a limitation on the scope of this provision.  However, on or after October 25, 1995, an #adult...

(c)       in C6-4, C6-5, C6-6, C6-7, C6-8, C6-9, C7 or C8 Districts, #adult establishments# no #adult establishment# shall be located established at least less than 500 feet from another a previously established #adult establishment#.

(d)       in C6-4, C6-5, C6-6, C6-7, C6-8, C6-9, C7, or C8 districts, no more than one #adult establishment# permitted under this Section shall be located established on a #zoning lot#.

          \*\*\*

(f)       #adult establishments# which existed on were established on the effective date...

For purposes of this section, an #adult establishment# shall be established upon the date of a permit issued by the department of buildings therefor, or, in the case of an #adult establishment# in existence prior to August 8, 2001, as determined by the department of buildings, subject to rules as the department of buildings may prescribe regarding the failure to perform work authorized under a permit or to commence operation pursuant to a permit and the discontinuance of an #adult establishment#.

\*\*\*

0381

File #: Res 2096-2001, **Version:** *

42-01
Special Provisions for Adult Establishments

***

(a)     #adult establishments# are not permitted in a #Manufacturing District# in which #residences#, #joint living-work quarters for artists# or #loft dwellings# are, under the provisions of the Zoning Resolution, allowed as-of-right or by special permit or authorization. No provisions or findings of such special permit or authorization which require an assessment of the impact of new #residences#, new #joint living-work quarters for artists# or new #loft dwellings# on #commercial# or #manufacturing uses# within a "Manufacturing District# shall be construed as a limitation on the scope of this provision.

(b)     In all other #Manufacturing Districts#, #adult establishments# no #adult establishment# shall be located established at least less than 500 feet from a church, a #school#, a #Residence District#, a C1, C2, C3, C4, C5-1, C6-1, C6-2 or C6-3 District, or a #Manufacturing District#, other than an M1-6M District, in which new #residences#, new #joint living-work quarters for artists# or new #loft dwellings# are allowed, under the provisions of the Zoning Resolution, as-of-right or by special permit or authorization.  No provisions or findings of such special permit or authorization which require an assessment of the impact of new #residences#, new #joint living-work quarters for artists# or new #loft dwellings# on #commercial# or #manufacturing uses# within a "Manufacturing District# shall be construed as a limitation on the scope of this provision. However, on or after October 25, 1995, an #adult establishment# that otherwise complies with the provisions of this paragraph shall not be rendered #non-conforming# if a church or a #school# is established on or after April 10, 1995 within 500 feet of such #adult establishment#.

(c)     #Adult establishments# No #adult establishment# shall be located at least established less than 500 feet from another #adult establishment#.

(d)     No more than one #adult establishment# permitted under this Section shall be located established on a #zoning lot#.

***

(f)     #Adult establishments# which existed on were established on October 25, 1995 and conform to all provisions of the Zoning Resolution relating to #adult establishments# other than the provisions of all or any combination of paragraphs (c), (d), and (e) of this Section, shall not be subject to the provisions of Section 52-77 (Termination of Adult Establishments).

For purposes of this section, an #adult establishment# shall be established upon the date of a permit issued by the department of buildings therefor, or, in the case of an #adult establishment# in existence prior to August 8, 2001, as determined by the department of buildings, subject to rules as the department of buildings may prescribe regarding the failure to perform work authorized under a permit or to commence operation pursuant to a permit and the discontinuance of an #adult establishment#.

***

72-01
General Provisions

***

(f)     to make such administrative determinations and findings as may be set forth in this Resolution or pursuant to Section 72-40 (AMORTIZATION OF CERTAIN ADULT ESTABLISHMENTS AND SIGNS FOR ADULT ESTABLISHMENTS), or to Section  72-41 (Continuation of Certain Adult Establishments).

***
72-40
Amortization of Certain Adult Establishments and Signs For Adult Establishments
***
This section shall not apply to commercial establishments described in section 72-41.
***
72 - 41
Continuation of Certain Adult Establishments

Any commercial establishment in existence as of August 8, 2001 which: (i) subsequent to September 18, 1995 and prior to August 8, 2001 made financial expenditures so as to avoid becoming subject to the provisions of Section 32-01 or 42-01 (Special Provisions for Adult Establishments); and (ii) is defined as an #adult establishment# pursuant to the amendments to the definition of #adult establishment# in Section 12-10 adopted on (date of Council adoption), shall terminate as an #adult establishment# within one year from (date of Council adoption). Notwithstanding the foregoing, the Board of Standards and Appeals may permit such #adult establishment# to continue for a limited period beyond such one year period, provided that:

(b)     an application is made by the owner of such establishment to the Board of Standards     and Appeals at least 120 days prior to the date on which such establishment must        terminate;

(c)     the Board shall find, in connection with such establishment, that:

---

**File #:** Res 2096-2001, **Version:** *

(1)      the applicant had made, subsequent to September 18,1995 and prior to August 8, 2001, substantial financial expenditures so as to avoid becoming subject to the provisions of Section 32-01 or 42-01 (Special Provisions for Adult Establishments);

(2)      the applicant has not recovered substantially all such financial expenditures; and

(3)      the period for which such establishment may be permitted to continue is the minimum period sufficient for the applicant to recover substantially all of such financial expenditures;

For purposes of this Section, "financial expenditures" shall mean the following: (i) any capital outlay for improvements made in connection with the configuration or reconfiguration of the amount of #floor area# and #cellar# space within such establishment accessible to customers either: (a) containing books, magazines, periodicals or other printed matter or photographs, films, motion pictures, video cassettes, slides or other visual matter characterized by an emphasis upon the depiction or description of "specified sexual activities" or "specified anatomical areas"; or (b) allocated to one of the activities described in paragraphs (b) (c) or (d) of section 1 of the definition of #adult establishment# in Section 12-10; and (ii) any purchases of books, magazines, periodicals, or other printed matter, or photographs, films, motion pictures, video cassettes, slides or other visual matter, which are not characterized by an emphasis upon the depiction or description of "specified sexual activities" or "specified anatomical areas".

The provisions of Sections 52-77 and 72-40 shall not apply to commercial establishments subject to this Section.


Adopted.

Office of the City Clerk, }
       The City of New York,  } ss.:

       I hereby certify that the foregoing is a true copy of a Resolution passed by The Council of The City of New York on October 31, 2001, on file in this office.


.............................................
City Clerk, Clerk of Council


Page 19 of 1
N 010508 ZRY
Reso. No. 2096 (L.U. No. 1112)


|1013|

# EXHIBIT 4

9/5/2018                          The New York City Council - File #: Res 0586-2004

## THE NEW YORK CITY COUNCIL
Corey Johnson, Speaker

Council Home    Legislation    Calendar    City Council    Committees

RSS  Alerts

Details    Reports

| | | | |
|---|---|---|---|
| File #: | Res 0586-2004   Version: * | Name: | LU 236 - Zoning, Amendment as it relates to community facilities (040202 ZRY) |
| Type: | Resolution | Status: | Adopted |
| | | Committee: | Subcommittee on Zoning and Franchises |
| On agenda: | 8/12/2004 | | |
| Enactment date: | | Law number: | |
| Title: | Resolution approving the decision of the City Planning Commission on Application No. N 040202 ZRY, an amendment to the text of the Zoning Resolution regarding community facilities (L.U. No. 236). | | |
| Sponsors: | Melinda R. Katz | | |
| Council Member Sponsors: | 1 | | |
| Attachments: | 1. Committee Report, 2. Hearing Transcript - Stated Meeting 9/9/04 | | |

History (2)    Text

THE COUNCIL OF THE CITY OF NEW YORK
RESOLUTION NO. 586

Title
Resolution approving the decision of the City Planning Commission on Application No. N 040202 ZRY, an amendment to the text of the Zoning Resolution regarding community facilities (L.U. No. 236).
Body

By Council Members Katz and Avella

WHEREAS, the City Planning Commission filed with the Council on July 28, 2004 its decision dated July 28, 2004 (the "Decision"), on the application submitted by the Department of City Planning and the City Council Land Use Committee, pursuant to Section 201 of the New York City Charter, for an amendment to the text of the Zoning Resolution (Application No. N 040202 ZRY) (the "Application");

WHEREAS, the Decision is subject to review and action by the Council pursuant to Section 197-d(b)(1) of the City Charter;

WHEREAS, upon due notice, the Council held a public hearing on the Decision and Application on August 9, 2004;

WHEREAS, the Council has considered the land use implications and other policy issues relating to the Decision and Application; and

0385

WHEREAS, the Council has considered the relevant environmental issues and the Final Environmental Impact Statement ("FEIS") for which a Notice of Completion was issued on July 16, 2004 (CEQR No. 04DCP025Y);

RESOLVED:

Having considered the FEIS, with respect to the Application, the Council finds that:

(1) The FEIS meets the requirements of 6 N.Y.C.R.R. Part 617;

From among the reasonable alternatives thereto, the action to be approved is one which minimize or avoid adverse environmental impacts to the maximum extent practicable; and

The adverse environmental impacts identified in the FEIS will be minimized or avoided to the maximum extent practicable by incorporating as conditions to the approval those mitigative measures that were identified as practicable;

The Decision and the FEIS constitute the written statement of facts, and of social, economic and other factors and standards that form the basis of this decision, pursuant to 6 N.Y.C.R.R. §617.11(d).

Pursuant to Sections 197-d and 200 of the City Charter and on the basis of the Decision and Application the Council approves the Decision; and

The Zoning Resolution of the City of New York, effective as of December 15, 1961, and as subsequently amended, is further amended as follows:


Matter underlined is new, to be added;
Matter in strikeout is old, to be deleted;
Matter within # # signs is defined in Section 12-10;
*** indicates where unchanged text appears in the Zoning Resolution
City Council's changes are indicated by bold and doubled underline

***

12-10
DEFINITIONS

***

Adult physical culture establishments

An "adult physical culture establishment," is any establishment,... except for activities which are excluded below or defined under #physical culture or health establishment# in Section 12-10 and which are, therefore, not included within the definition of an #adult physical culture establishment#:

***

(3) hospitals, nursing homes, or ambulatory diagnostic or treatment health care facilities listed in Use Group 4 medical clinics or medical offices;

***

Residence, or residential

A "residence" is a #building# or part of a #building# containing #dwelling units# or #rooming units#, including

the #zoning lot# definition in Section 12-10) as the #use# to which they are #accessory#, and shall be subject to deed restrictions filed in an office of record, binding the owner and his heirs and assigns to maintain the required number of spaces available throughout the life of such #use#.

(b) Such spaces shall conform to all applicable regulations of the district in which they are located.

***
12/15/61

25-66
Screening

R1 R2 R3 R4 R5 R6 R7 R8 R9 R10

In all districts, as indicated, all open off-street parking areas or groups of individual garages with 10 spaces or more, which are located either at natural grade or on a roof, shall be screened from all adjoining #zoning lots#, including such #zoning lots# situated across a #street#, by either:

(a) a strip at least four feet wide, densely planted with shrubs or trees that are at least four feet high at the time of planting and that are of a type which may be expected to form a year-round dense screen at least six feet high within three years; or

(b) a wall or barrier or uniformly painted fence of fire-resistant material at least six feet high, but not more than eight feet above finished grade (or above the roof level, if on a roof). Such wall, barrier or fence may be opaque or perforated, provided that not more than 50 percent of the face is open.

For community facilities located in R1, R2, R3, R4 or R5 Districts, except for any parking that is located on a roof, all such parking shall be screened pursuant to paragraph (a) herein.

In addition, such screening:

(1) shall be maintained in good condition at all times;

(2) may be interrupted by normal entrances or exits; and

(3) shall have no #signs# hung or attached thereto other than those permitted in Section 22-323 (Signs for parking areas).

***
10/31/01

32-01
Special Provisions for Adult Establishments

In addition to the applicable regulations for the #uses# listed in a permitted Use Group, #adult establishments# shall be subject to the following provisions:

(a) #Adult establishments# are not permitted in C1, C2, C3, C4, C5, C6-1, C6-2 or C6-3 Districts.

(b) In C6-4, C6-5, C6-6, C6-7, C6-8, C6-9, C7 or C8 Districts, no #adult establishment# shall be established less than 500 feet from a church house of worship, a #school#, a #Residence District#, a C1, C2, C3, C4, C5-1, C6-1, C6-2 or C6-3 District, or a #Manufacturing District#, other than an M1-6M District, in which new #residences#, new #joint living-work quarters for artists# or new #loft dwellings# are allowed, under the provisions of the Zoning Resolution, as-of-right or by special permit or authorization. No provisions or findings

9/5/2018                    The New York City Council - File #: Res 0586-2004

of such special permit or authorization which require an assessment of the impact of new #residences#, new #joint living-work quarters for artists# or new #loft dwellings# on #commercial# or #manufacturing uses# within a #Manufacturing District# shall be construed as a limitation on the scope of this provision. However, on or after October 25, 1995, an #adult establishment# that otherwise complies with the provisions of this paragraph shall not be rendered #non-conforming# if a church house of worship or a #school# is established on or after April 10, 1995, within 500 feet of such #adult establishment#.

\*\*\*

6/29/94

33-121
In districts with bulk governed by Residence District bulk regulations

C1-1 C1-2 C1-3 C1-4 C1-5 C2-1 C2-2 C2-3 C2-4 C2-5

In the districts indicated, the maximum #floor area ratio# for a #commercial# or #community facility building# is determined by the #Residence District# within which such #Commercial District# is mapped and shall not exceed the maximum #floor area ratio# set forth in the following table:

MAXIMUM FLOOR AREA RATIO

| District | For #Commercial Buildings# | For #Community Facility Buildings# | For #Buildings# Used for Both #Commercial# and #Community Facility Uses# |
|---|---|---|---|
| R1 R2 | 1.00 | 0.50 | 1.00 |
| R3 R3-1 R3A 3X | 1.00 | 1.00 | 1.00 1.00 1.00 1.00 |
| R3-2 | 1.00 | 1.60 | 1.60 |
| R4 R5 | 1.00 | 2.00 | 2.00 |
| R6B | 2.00 | 2.00 | 2.00 |
| R6A R7B | 2.00 | 3.00 | 3.00 |
| R7A R8B | 2.00 | 4.00* | 4.00 |
| R6 R7-1 | 2.00 | 4.80 | 4.80 |
| R7X | 2.00 | 5.00 | 5.00 |
| R7-2 R8 | 2.00 | 6.50 | 6.50 |
| R8X | 2.00 | 6.00 | 6.00 |
| R9 | 2.00 | 10.00 | 10.00 |
| R9A | 2.00 | 7.50 | 7.50 |
| R9X | 2.00 | 9.00 | 9.00 |
| R10 | 2.00 | 10.00 | 10.00 |

———————

\* In R8B Districts, within the boundaries of Community Board 8 in the Borough of Manhattan, the maximum #floor area ratio# on a #zoning lot# containing #community facility uses# exclusively shall not exceed 5.10.

\*\*\*

33-16
Floor Area Bonus for Front Yards

8/27/98

9/5/2018                         The New York City Council - File #: Res 0586-2004

In the districts indicated, required #accessory# off-street parking spaces may be provided for houses of worship in facilities designed to be shared with other permitted non-#residential uses#, in any district, provided that:

(a) no more than 25 percent of the spaces in such facilities may be used to satisfy the parking requirement for both the house of worship and other permitted non-#residential uses#, except that such percentage may be increased by the Commissioner of Buildings if it can be demonstrated that such additional parking spaces would not be used by the house of worship and other permitted non-#residential uses# at the same times.

(b) all such spaces are no further than 600 feet from the nearest boundary of the #zoning lot# containing the house of worship.

(c) all such spaces conform to all applicable regulations of the district in which they are located.

8/18/77

36-45
Additional Regulations for Required Spaces When Provided Off Site

C1 C2 C3 C4 C5 C6 C7 C8

In all districts, as indicated, when required #accessory# off-street parking spaces are provided off the site in accordance with the provisions of Section 36-42 (Off-Site Spaces for Residences), Section 36-43 (Off-Site Spaces for Commercial or Community Facility Uses), or Section 36-44 (Joint And Shared Facilities), the following additional regulations shall apply:

(a) such spaces shall be in the same ownership (single fee ownership or alternative ownership arrangements of the #zoning lot# definition in Section 12-10) as the #use# to which they are #accessory#, and shall be subject to deed restrictions filed in an office of record, binding the owner and his heirs and assigns to maintain the required number of spaces available throughout the life of such #use#; and

(b) such spaces shall conform to all applicable regulations of the district in which they are located.

***

10/25/95

42-00
GENERAL PROVISIONS

In order to carry out the purposes and provisions of this Resolution, the #uses# of #buildings or other structures# and of tracts of land have been classified and combined into Use Groups. A brief statement is inserted at the start of each Use Group to describe and clarify the basic characteristics of that Use Group.

Use Groups 4B, 4C, 5, 6A, 6B, 7, 8, 9B, 9C, 10B, 10C, 11, 12A, 12C, 12D, 12E, 13, 14, 16, 17 or 18, including each #use# listed separately therein, and certain #uses# listed in Use Groups 3A, 4A, 6C, 9A, 10A or 12B are permitted in #Manufacturing Districts# as indicated in Section 42-11 to 42-15, inclusive, except that any such #use# which is also an #adult establishment# shall, in addition, be subject to the provisions of Section 42-01 (Special Provisions for Adult Establishments).

***

10/31/01

42-01

The New York City Council - File #: Res 0586-2004

Special Provisions for Adult Establishments

In addition to the applicable regulations for the #uses# listed in a permitted Use Group, #adult establishments# shall be subject to the following provisions:

\*\*\*

(b) In all other #Manufacturing Districts#, no #adult establishment# shall be established less than 500 feet from a church house of worship, a #school#, a #Residence District#, a C1, C2, C3, C4, C5-1, C6-1, C6-2 or C6-3 District, or a #Manufacturing District#, other than an M1-6M District, in which new #residences#, new #joint living-work quarters for artists# or new #loft dwellings# are allowed, under the provisions of the Zoning Resolution, as-of-right or by special permit or authorization. No provisions or findings of such special permit or authorization which require an assessment of the impact of new #residences#, new #joint living-work quarters for artists# or new #loft dwellings# on #commercial# or #manufacturing uses# within a #Manufacturing District# shall be construed as a limitation on the scope of this provision.

However, on or after October 25, 1995, an #adult establishment# that otherwise complies with the provisions of this paragraph shall not be rendered #non-conforming# if a church house of worship or a #school# is established on or after April 10, 1995, within 500 feet of such #adult establishment#.

\*\*\*

12/21/89

42-03
Residential Use

In M1-1D, M1-2D, M1-3D, M1-4D and M1-5D Districts, the #use# regulations governing M1 Districts shall apply, except that #residential uses# may be permitted by authorization of the City Planning Commission in accordance with the provisions of Section 42-47 (Residential Uses in M1-D Districts), subject to the regulations of Sections 43-61 (Bulk Regulations for Residential Uses in M1-D Districts) and 44-27 44-28 (Parking Regulations for Residential Uses in M1-D Districts).

\*\*\*

1/28/71

42-10
USES PERMITTED AS-OF-RIGHT

8/16/79

42-11
Use Groups 4A, 4B, 4C, 5, 6C, 6E, 7A, 9A and 12B

M1

Use Groups 4B, 4C, 5, 6C, 6E, 7A, 9A and 12B as set forth in Sections 32-14, 32-15, 32-16, 32-18, 32-21.

All health facilities listed in Use Group 4A and requiring approval under Article 28 of the Public Health Law of the State of New York, which prior to July 10, 1974, have received approval of Part I of the required application from the Commissioner of Health, and houses of worship, are allowed as-of-right and are not subject to the special permit provision of Sections 42-32 and 74-921.
\*\*\*

# EXHIBIT 5

9/5/2018                                           The New York City Council - File #: Res 0499-2010



Council Home      Legislation      Calendar      City Council      Committees

⌂ RSS   ⌄ Alerts

Details      Reports

File #:                 Res 0499-2010    Version: *        Name:            LU 222 - Zoning, Change to Zoning Resolution (N 100370(A) ZRM )
Type:                  Resolution                          Status:          Adopted
                                                           Committee:       Committee on Land Use

On agenda:            10/13/2010
Enactment date:                                            Law number:
Title:                 Resolution approving the decision of the City Planning Commission on Application No. N 100370 (A) ZRM, proposed for modification pursuant to Section 2-06 (c)(
Sponsors:             Leroy G. Comrie, Jr., Mark S. Weprin
Council Member
Sponsors:             2
Attachments:          1. Committee Report, 2. Hearing Transcript - Stated Meeting 10-13-10

History (2)      Text

Resolution approving the decision of the City Planning Commission on Application No. N 100370 (A) ZRM, proposed for modification pursuant to Section 2-06 (c)(1) of t

By Council Members Comrie and Weprin

        WHEREAS, the City Planning Commission filed with the Council on September 17, 2010 its decision dated September 15, 2010 (the "Decision"), pursuant to S

    WHEREAS, the Application is related to Application Number C 100369 ZMM (L.U. No. 221), an amendment to the Zoning Map to replace the existing M1-5 zoni

    WHEREAS, the Decision is subject to review and action by the Council pursuant to Section 197-d(b)(1) of the City Charter;

    WHEREAS, upon due notice, the Council held a public hearing on the Decision and Application on October 5, 2010;

    WHEREAS, the Council has considered the land use implications and other policy issues relating to the Decision and Application; and

    WHEREAS, the Council has considered the relevant environmental issues and the Negative Declaration, issued on June 4, 2010 which included an e-designation (E

RESOLVED:

    The Council finds that the action described herein will have no significant effect on the environment.

    Pursuant to Sections 197-d and 200 of the City Charter and on the basis of the Decision and Application, and based on the environmental determination and conside

    The Zoning Resolution of the City of New York, effective as of December 15, 1961, and as subsequently amended, is further amended as follows:

Matter in underline is new, to be added;
Matter in strikeout is to be deleted;
Matter with # # is defined in Section 12-10;
* * * indicates where unchanged text appears in the Zoning Resolution

**Article I**


**Chapter 2**
**Construction of Language and Definitions**


**12-10**
**DEFINITIONS**


Accessory use, or accessory


An #accessory use# includes:


(iv)        in C6-2M, C6-4M, M1-5M, M1-6M, M1-5A; and M1-5B Districts and the #Special Tribeca Mixed Use District#, no living or sleeping accommodation for care

The New York City Council - File #: Res 0499-2010

    (i)    the unit or quarters shall contain one or more windows that open onto a #street# or thirty foot #yard#;

    (ii)    the area of such required window shall be not less than eight percent of the #floor area# of the unit or quarters and 50 percent of the area of such

    (iii)    the interior dimension of the wall in which such required window is located shall be no less than 12 feet in width; or

    (2)    The minimum size of a #dwelling unit#, #joint living-work quarters for artists#, or #loft dwelling# may be no less than 600 square feet of #floor area#, p

    (i)    the unit or quarters shall contain one or more windows that open onto either:

    (a)    a ten foot #yard#, where the window sill of such required window is at least 23 feet above #curb level#; or

    (b)    a 15 foot #yard#, where the window sill of such required window is less than 23 feet above #curb level#; or

    (c)    a #court# with a minimum dimension of 15 feet perpendicular to such required window and 375 square feet or more in area; or

    (d)    a #street#;

    (ii)    the minimum horizontal distance between such required window opening onto a #yard# and any wall opposite such window on the same or anoth

    (iii)    the area of such required window shall be no less than five percent of the #floor area# of the unit or quarters, and 50 percent of the area of such r

    (iv)    the interior dimension of the wall in which such required window is located shall be no less than 12 feet in width;

    (v)    the average width of such unit or quarters shall be no less than 14 feet; and

    (vi)    not less than two-thirds of the #floor area# of the unit or quarters shall have a floor-to-ceiling height of nine feet or more.

**32-01**
**Special Provisions for Adult Establishments**

In addition to the applicable regulations for the #uses# listed in a permitted Use Group, #adult
establishments# shall be subject to the following provisions:

(a)    #Adult establishments# are not permitted in C1, C2, C3, C4, C5, C6-1, C6-2 or C6-3 Districts.

(b)    In C6-4, C6-5, C6-6, C6-7, C6-8, C6-9, C7 or C8 Districts, no #adult establishment# shall be established less than 500 feet from a house of worship, a #school#,

**42-01**
**Special Provisions for Adult Establishments**

In addition to the applicable regulations for the #uses# listed in a permitted Use Group, #adult establishments# shall be subject to the following provisions:

(a)    #Adult establishments# are not permitted in a #Manufacturing District# in which #residences#, or #joint living-work quarters for artists# or #loft dwellings# are;

(b)    In all other #Manufacturing Districts#, no #adult establishment# shall be established less than 500 feet from a house of worship, a #school#, a #Residence Distri

**42-53**
**Surface Area and Illumination Provisions**

M1 M2 M3

No #illuminated sign# shall have a degree or method of illumination that exceeds standards established by the Department of Buildings by rule pursuant to the City Admini

**42-532**
**Non-illuminated signs**

M1 M2 M3

In all districts, as indicated, non-#illuminated signs# with total #surface areas# not exceeding six times the #street# frontage of the #zoning lot#, in feet, but in no event mor

However, in any #Manufacturing District# in which #residences#, #loft dwellings# or #joint living-work quarters for artists# are, under the provisions of the Zoning Resolu

**42-533**
**Illuminated or flashing signs**

# EXHIBIT 6

# ZONING RESOLUTION  Web Version

# THE CITY OF NEW YORK



THE CITY OF NEW YORK
Bill de Blasio, Mayor

CITY PLANNING COMMISSION
Marisa Lago, Chair

# Article III: Commercial District Regulations
## Chapter 1 - Statement of Legislative Intent

Effective date of most recently amended section of Article III Chapter 1: 02/02/11

Date of file creation: Web version of Article III Chapter 1: 3/6/17

CITY PLANNING COMMISSION
nyc.gov/planning

DEPARTMENT OF CITY PLANNING
©Copyrighted by the City of New York

Zoning Disclaimer- the Web version of the Zoning Resolution of the City of New York is provided for reference and the convenience of having the Resolution in an online format.  Recent amendments to the Zoning Resolution also appear on the Web prior to being incorporated into the print version of the Resolution.

generate a large volume of trucking.


(12/15/61)

**31-17**
**C7 Commercial Amusement District**

This district is designed to permit large open commercial amusement parks and is mapped in only a few areas.


(12/15/61)

**31-18**
**C8 General Service Districts**

These districts are designed to provide for necessary services for a wider area than is served by the Local Service Districts. Since these service establishments often involve objectionable influences, such as noise from heavy service operations and large volumes of truck traffic, they are incompatible with both residential and retail uses. New residential development is excluded from these districts.


(5/13/82)

**31-20**
**SPECIAL MIDTOWN DISTRICT**

The regulations regarding C5P, C5-2.5, C5-3.5, C6-4.5, C6-6.5 and C6-7.5 Districts and any other underlying districts within the #Special Midtown District# are set forth in Article VIII, Chapter 1 (Special Midtown District).

# EXHIBIT 7

# ZONING RESOLUTION  Web Version

# THE CITY OF NEW YORK



THE CITY OF NEW YORK
Bill de Blasio, Mayor

CITY PLANNING COMMISSION
Marisa Lago, Chair

# Article III: Commercial District Regulations
## Chapter 1 - Statement of Legislative Intent

Effective date of most recently amended section of Article III Chapter 1: 02/02/11

Date of file creation: Web version of Article III Chapter 1: 3/6/17

CITY PLANNING COMMISSION
nyc.gov/planning

DEPARTMENT OF CITY PLANNING
©Copyrighted by the City of New York

Zoning Disclaimer- the Web version of the Zoning Resolution of the City of New York is
provided for reference and the convenience of having the Resolution in an online
format.  Recent amendments to the Zoning Resolution also appear on the Web prior to
being incorporated into the print version of the Resolution.

generate a large volume of trucking.


(12/15/61)

**31-17**
**C7 Commercial Amusement District**

This district is designed to permit large open commercial amusement parks and is mapped in only a few areas.


(12/15/61)

**31-18**
**C8 General Service Districts**

These districts are designed to provide for necessary services for a wider area than is served by the Local Service Districts. Since these service establishments often involve objectionable influences, such as noise from heavy service operations and large volumes of truck traffic, they are incompatible with both residential and retail uses. New residential development is excluded from these districts.


(5/13/82)

**31-20**
**SPECIAL MIDTOWN DISTRICT**

The regulations regarding C5P, C5-2.5, C5-3.5, C6-4.5, C6-6.5 and C6-7.5 Districts and any other underlying districts within the #Special Midtown District# are set forth in Article VIII, Chapter 1 (Special Midtown District).

# EXHIBIT 8

# ZONING RESOLUTION  Web Version

# THE CITY OF NEW YORK



THE CITY OF NEW YORK
Bill de Blasio, Mayor

CITY PLANNING COMMISSION
Marisa Lago, Chair

# Article III: Commercial District Regulations
## Chapter 2 - Use Regulations

Effective date of most recently amended section of Article III Chapter 2: 12/19/17

Correction: 32-642

Date of file creation: Web version of Article III Chapter 2: 1/12/18

CITY PLANNING COMMISSION
nyc.gov/planning

DEPARTMENT OF CITY PLANNING
©Copyrighted by the City of New York

Zoning Disclaimer– the Web version of the Zoning Resolution of the City of New York is provided for reference and the convenience of having the Resolution in an online format.  Recent amendments to the Zoning Resolution also appear on the Web prior to being incorporated into the print version of the Resolution.

| | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| General Commercial C4 | x | x | | x | x | x | | x | | | |
| Restricted Central Commercial C5 | x | x | | | x | x | x | | | | |
| General Central Commercial C6 | x | x | x | x | x | | x | | x | x | |
| Commercial Amusement C7 | | | | | | | | | x | x | x | x |
| General Service C8 | x | x | x | x | x | | x | | x | x | x | x |

(10/13/10)

**32-01**
**Special Provisions for Adult Establishments**

In addition to the applicable regulations for the #uses# listed in a permitted Use Group, #adult establishments# shall be subject to the following provisions:

(a)   #Adult establishments# are not permitted in C1, C2, C3, C4, C5, C6-1, C6-2 or C6-3 Districts.

(b)   In C6-4, C6-5, C6-6, C6-7, C6-8, C6-9, C7 or C8 Districts, no #adult establishment# shall be established less than 500 feet from a house of worship, a #school#, a #Residence District#, a C1, C2, C3, C4, C5-1, C6-1, C6-2 or C6-3 District, or a #Manufacturing District#, other than an M1-6M District, in which new #residences# or new #joint living-work quarters for artists# are allowed as-of-right or by special permit or authorization. No provisions or findings of such special permit or authorization which require an assessment of the impact of new #residences# or new #joint living-work quarters for artists# on #commercial# or #manufacturing uses# within a #Manufacturing District# shall be construed as a limitation on the scope of this provision. However, on or after October 25, 1995, an #adult establishment# that otherwise complies with the provisions of this paragraph shall not be rendered #non-conforming# if a house of worship or a #school# is established on or after April 10, 1995, within 500 feet of such #adult establishment#.

(c)   In C6-4, C6-5, C6-6, C6-7, C6-8, C6-9, C7 or C8 Districts,
      no #adult establishment# shall be established less than 500
      feet from a previously established #adult establishment#.

(d)   In C6-4, C6-5, C6-6, C6-7, C6-8, C6-9, C7 or C8 Districts,
      no more than one #adult establishment# permitted under this
      Section shall be established on a #zoning lot#.

(e)   In C6-4, C6-5, C6-6, C6-7, C6-8, C6-9, C7 or C8 Districts,
      #adult establishments# shall not exceed, in total, 10,000
      square feet of #floor area# and #cellar# space not used for
      enclosed storage or mechanical equipment.

(f)   #Adult establishments# which were established on October 25,
      1995, and conform to all provisions of the Zoning Resolution
      relating to #adult establishments# other than the provisions
      of all or any combination of paragraphs (c), (d), and (e) of
      this Section, shall not be subject to the provisions of
      Section 52-77 (Termination of Adult Establishments).

For purposes of this Section, an #adult establishment# shall be
established upon the date of a permit issued by the Department of
Buildings therefor, or, in the case of an #adult establishment#
in existence prior to August 8, 2001, as determined by the
Department of Buildings, subject to rules as the Department of
Buildings may prescribe regarding the failure to perform work
authorized under a permit or to commence operation pursuant to a
permit and the discontinuance of an #adult establishment#.


(12/15/61)

**32-10
USES PERMITTED AS-OF-RIGHT**


(1/18/11)

**32-11
Use Groups 1 and 2**

C1 C2 C3 C4 C5 C6

Use Groups 1 and 2, as set forth in Sections 22-11 and 22-12.
However, in C3A Districts, Use Group 2 shall be limited to
#single#- or #two-family detached# or #zero lot line residences#.

In #lower density growth management areas# in the Borough of

# EXHIBIT 9

# ZONING RESOLUTION  Web Version

# THE CITY OF NEW YORK



THE CITY OF NEW YORK
Bill de Blasio, Mayor

CITY PLANNING COMMISSION
Marisa Lago, Chair

# Article III: Commercial District Regulations
## Chapter 2 - Use Regulations

Effective date of most recently amended section of Article III Chapter 2: 12/19/17

Correction: 32-642

Date of file creation: Web version of Article III Chapter 2: 1/12/18

CITY PLANNING COMMISSION
nyc.gov/planning

DEPARTMENT OF CITY PLANNING
©Copyrighted by the City of New York

Zoning Disclaimer- the Web version of the Zoning Resolution of the City of New York is provided for reference and the convenience of having the Resolution in an online format.  Recent amendments to the Zoning Resolution also appear on the Web prior to being incorporated into the print version of the Resolution.

that directs attention to a profession, business, commodity,
service or entertainment conducted, sold or offered elsewhere
than upon the premises of the vessel and is not #accessory# to a
#use# on such vessel.


(4/8/98)

**32-67**
**Special Provisions Applying Along District Boundaries**

C2 C3 C4 C5 C6 C7 C8

In the districts indicated, and within 100 feet of the #street
line# of any #street# or portion thereof in which the boundary of
an adjoining #Residence District# is located, or which adjoins a
#public park# of one-half acre or more, no #advertising sign#
that faces at an angle of less than 165 degrees away from such
#Residence District# or park boundary shall be permitted and all
other #signs# facing at less than such an angle shall conform
with all the #sign# regulations applicable in C1 Districts as set
forth in Sections 32-62 through 32-68, inclusive, relating to
Sign Regulations.


(2/2/11)

**32-68**
**Permitted Signs on Residential or Mixed Buildings**

C1 C2 C3 C4 C5 C6

In the districts indicated, any #use# listed in Use Group 1 or 2
shall conform to the #sign# regulations for #Residence Districts#
set forth in Sections 22-32 through 22-34. In #residential# or
#mixed buildings#, #residential sign# regulations shall apply to
the #residential# portion.

Where non-#residential uses# are permitted to occupy two floors
of the #building#, all #signs accessory# to non-#residential
uses# located on the second floor shall be non-#illuminated
signs#, and shall be located below the level of the finished
floor of the third #story#.


(4/8/98)

**32-69**

**Additional Sign Regulations for Adult Establishments**

C6-4 C6-5 C6-6 C6-7 C6-8 C6-9 C7 C8

#Signs#, other than #advertising signs#, for #adult establishments# are permitted only as set forth in this Section and are limited to locations in the districts indicated.

All permitted #signs#, other than #advertising signs#, for #adult establishments# shall conform with all the #sign# regulations applicable in C1 Districts as set forth in this Chapter, except that the provisions of Section 32-64 (Surface Area and Illumination Provisions) shall not apply. In lieu thereof, the maximum #surface area# of all #signs#, other than #advertising signs#, for #adult establishments# shall not exceed, in the aggregate, three times the #street# frontage of the #zoning lot#, but in no event more than 150 square feet per establishment, of which no more than 50 square feet may be #illuminated# non-#flashing signs#.

0407

# EXHIBIT 10

0408

# ZONING RESOLUTION  Web Version

# THE CITY OF NEW YORK



THE CITY OF NEW YORK
Bill de Blasio, Mayor

CITY PLANNING COMMISSION
Marisa Lago, Chair

# Article IV: Manufacturing District Regulations
## Chapter 2 - Use Regulations

Effective date of most recently amended section of Article IV Chapter 2: 12/19/17

Date of file creation: Web version of Article IV Chapter 2: 1/26/18

CITY PLANNING COMMISSION
nyc.gov/planning

DEPARTMENT OF CITY PLANNING
©Copyrighted by the City of New York

Zoning Disclaimer- the Web version of the Zoning Resolution of the City of New York is provided for reference and the convenience of having the Resolution in an online format. Recent amendments to the Zoning Resolution also appear on the Web prior to being incorporated into the print version of the Resolution.

(10/13/10)

## 42-01
## Special Provisions for Adult Establishments

In addition to the applicable regulations for the #uses# listed in a permitted Use Group, #adult establishments# shall be subject to the following provisions:

(a)  #Adult establishments# are not permitted in a #Manufacturing District# in which #residences# or #joint living-work quarters for artists# are allowed as-of-right or by special permit or authorization. No provisions or findings of such special permit or authorization which require an assessment of the impact of new #residences# or new #joint living-work quarters for artists# on #commercial# or #manufacturing uses# within a #Manufacturing District# shall be construed as a limitation on the scope of this provision.

(b)  In all other #Manufacturing Districts#, no #adult establishment# shall be established less than 500 feet from a house of worship, a #school#, a #Residence District#, a C1, C2, C3, C4, C5-1, C6-1, C6-2 or C6-3 District, or a #Manufacturing District#, other than an M1-6M District, in which new #residences# or new #joint living-work quarters for artists# are allowed as-of-right or by special permit or authorization. No provisions or findings of such special permit or authorization which require an assessment of the impact of new #residences# or new #joint living-work quarters for artists# on #commercial# or #manufacturing uses# within a #Manufacturing District# shall be construed as a limitation on the scope of this provision. However, on or after October 25, 1995, an #adult establishment# that otherwise complies with the provisions of this paragraph shall not be rendered #non-conforming# if a house of worship or a #school# is established on or after April 10, 1995, within 500 feet of such #adult establishment#.

(c)  No #adult establishment# shall be established less than 500 feet from another #adult establishment#.

(d)  No more than one #adult establishment# permitted under this Section shall be established on a #zoning lot#.

(e)  #Adult establishments# shall not exceed, in total, 10,000 square feet of #floor area# and #cellar# space not used for enclosed storage or mechanical equipment.

(f)  #Adult establishments# which were established on October 25, 1995, and conform to all provisions of the Zoning Resolution

relating to #adult establishments# other than the provisions of all or any combination of paragraphs (c), (d) and (e) of this Section, shall not be subject to the provisions of Section 52-77 (Termination of Adult Establishments).

For purposes of this Section, an #adult establishment# shall be established upon the date of a permit issued by the Department of Buildings therefor, or, in the case of an #adult establishment# in existence prior to August 8, 2001, as determined by the Department of Buildings, subject to rules as the Department of Buildings may prescribe regarding the failure to perform work authorized under a permit or to commence operation pursuant to a permit and the discontinuance of an #adult establishment#.


(9/21/11)

## 42-02
## Residential Use

In M1-1D, M1-2D, M1-3D, M1-4D and Ml-5D Districts, the #use# regulations governing M1 Districts shall apply, except that #residential uses# may be permitted by authorization of the City Planning Commission in accordance with the provisions of Section 42-47 (Residential Uses in M1-1D Through M1-5D Districts), subject to the regulations of Sections 43-61 (Bulk Regulations for Residential Uses in M1-1D Through M1-5D Districts) and 44-28 (Parking Regulations for Residential Uses in M1-1D Through M1-5D Districts).

In the M1-1 District bounded by 95th Avenue, 148th Street, 97th Avenue and 147th Place in Community District 12 in the Borough of Queens, the #use# regulations of an M1 District shall apply, except that #residential use# is allowed subject to the #bulk# regulations of Section 43-01 (Applicability of This Chapter) and the #accessory# off-street parking regulations of Section 44-025 (Applicability of regulations in an M1-1 District in Community District 12 in the Borough of Queens).

In M1-6D Districts, #residences# shall be permitted in accordance with the #use# regulations set forth in Section 42-48, the #bulk# regulations set forth in Section 43-62, and the parking regulations applicable in C6-4 Districts as set forth in Article III, Chapter 6, and as modified, pursuant to Article I, Chapter 3 (Comprehensive Off-street Parking and Loading Regulations in the Manhattan Core) and Article I, Chapter 6 (Comprehensive Off-street Parking Regulations in the Long Island City Area).

# EXHIBIT 11

# ZONING RESOLUTION  Web Version

# THE CITY OF NEW YORK



THE CITY OF NEW YORK
Bill de Blasio, Mayor

CITY PLANNING COMMISSION
Marisa Lago, Chair

## Article V:  Non-conforming uses and non-complying buildings
### Chapter 2 - Non-Conforming Uses

Effective date of most recently amended section of Article V Chapter 2: 10/09/13

Administrative correction: 52-31

Date of file creation: Web version of Article V Chapter 2: 12/1/17

CITY PLANNING COMMISSION          DEPARTMENT OF CITY PLANNING
nyc.gov/planning                            ©Copyrighted by the City of New York

Zoning Disclaimer- the Web version of the Zoning Resolution of the City of New York is
provided for reference and the convenience of having the Resolution in an online
format.  Recent amendments to the Zoning Resolution also appear on the Web prior to
being incorporated into the print version of the Resolution.

(12/15/61)

**Chapter 2**
**Non-Conforming Uses**

(12/15/61)

**52-00**
**DEFINITIONS AND GENERAL PROVISIONS**

(11/19/87)

**52-01**
**Definitions**

Words in italics are defined in Section 12-10 (DEFINITIONS) or, if applicable exclusively to this Chapter, in this Section.

(10/9/13)

**52-02**
**Applicability of Article V, Chapter 2**

In the #flood zone#, the provisions of this Chapter are modified by the provisions of Article VI, Chapter 4.

(12/15/61)

**52-10**
**CONTINUATION OF NON-CONFORMING USE**

(12/15/61)

**52-11**
**General Provisions**

A #non-conforming use# may be continued, except as otherwise provided in this Chapter.

# EXHIBIT 12

# ZONING RESOLUTION  Web Version

# THE CITY OF NEW YORK



THE CITY OF NEW YORK
Bill de Blasio, Mayor

CITY PLANNING COMMISSION
Marisa Lago, Chair

## Article V:  Non-conforming uses and non-complying buildings
### Chapter 2 - Non-Conforming Uses

Effective date of most recently amended section of Article V Chapter 2: 10/09/13

Administrative correction: 52-31

Date of file creation: Web version of Article V Chapter 2: 12/1/17

CITY PLANNING COMMISSION          DEPARTMENT OF CITY PLANNING
nyc.gov/planning                              ©Copyrighted by the City of New York

Zoning Disclaimer- the Web version of the Zoning Resolution of the City of New York is provided for reference and the convenience of having the Resolution in an online format.  Recent amendments to the Zoning Resolution also appear on the Web prior to being incorporated into the print version of the Resolution.

(a)   there shall be no increase in the number of #dwelling units#
      in the #building# beyond the lawful number in existence
      prior to such damage and destruction; and

(b)   there shall be no increase to the pre-existing amount of
      #floor area# except as expressly provided in Section 52-46
      (Conforming and Non-conforming Residential Uses in M1-1D
      Through M1-5D Districts).

#Enlargements# in excess of those permitted, pursuant to
paragraph (b) of this Section, and #enlargements# that create
additional #dwelling units#, may be permitted by authorization of
the City Planning Commission pursuant to the regulations of
Section 42-47 (Residential Uses in M1-1D Through M1-5D
Districts).


(12/15/61)

**52-60
DISCONTINUANCE**


(10/7/76)

**52-61
General Provisions**

If, for a continuous period of two years, either the #non-
conforming use# of #land with minor improvements# is
discontinued, or the active operation of substantially all the
#non-conforming uses# in any #building or other structure# is
discontinued, such land or #building or other structure# shall
thereafter be used only for a conforming #use#. Intent to resume
active operations shall not affect the foregoing.

The provisions of this Section shall not apply where such
discontinuance of active operations is directly caused by war,
strikes or other labor difficulties, a governmental program of
materials rationing, or the construction of a duly authorized
improvement project by a governmental body or a public utility
company.

Except in Historic Districts as designated by the Landmarks
Preservation Commission, the provisions of this Section shall not
apply to vacant ground floor or #basement# stores in #buildings
designed for residential use# located in R5, R6 or R7 Districts
where the changed or reactivated #use# is listed in Use Group 6A,

6B, 6C or 6F excluding post offices, veterinary medicine for small animals, automobile supply stores, electrolysis studios and drive-in banks. In addition, the changed or reactivated #use# shall be subject to the provisions of Section 52-34 (Commercial Uses in Residence Districts).


(9/21/11)

**52-62**
**Buildings Containing Residences in M1-1D Through M1-5D Districts**

In M1-1D, M1-2D, M1-3D, M1-4D and M1-5D Districts, vacant #floor area# in a #building# originally designed as #dwelling units# or #rooming units# may be occupied by a #residential use# provided that the requirements of either paragraph (a) or (b) are met.

(a)  #Residential uses# in such #buildings# may be reactivated as-of-right, provided:

　　(1)  the #floor area# has been continuously vacant for two years or more;

　　(2)  the #street line# of the #zoning lot# upon which the discontinued #building# stands does not exceed 60 feet in length (or, in the case of a #corner lot#, the #lot area# does not exceed 6,800 square feet); and

　　(3)  the #zoning lots abutting# on both #side lot lines# and fronting on the same #street# (or #streets#, if a #corner lot#) are occupied by #buildings designed for residential use# and contain no #manufacturing uses#.

(b)  #Residential uses# in such #buildings# may be reactivated by authorization of the City Planning Commission, provided:

　　(1)  the #floor area# has been continuously vacant for two years or more;

　　(2)  the #street line# of the #zoning lot# upon which the discontinued #building# stands does not form a continuous frontage with vacant land or #land with minor improvements# whose aggregate length exceeds 60 feet (or, in the case of a #corner lot#, the #lot area# does not exceed 6,800 square feet);

　　(3)  the #zoning lot abutting# on one #side lot line# and fronting on the same #street# is occupied by either:

0418

# EXHIBIT 13

# ZONING RESOLUTION  Web Version

# THE CITY OF NEW YORK



THE CITY OF NEW YORK
Bill de Blasio, Mayor

CITY PLANNING COMMISSION
Marisa Lago, Chair

# Article V:  Non-conforming uses and non-complying buildings
### Chapter 2 - Non-Conforming Uses

Effective date of most recently amended section of Article V Chapter 2: 10/09/13

Administrative correction: 52-31

Date of file creation: Web version of Article V Chapter 2: 12/1/17

CITY PLANNING COMMISSION
nyc.gov/planning

DEPARTMENT OF CITY PLANNING
©Copyrighted by the City of New York

Zoning Disclaimer- the Web version of the Zoning Resolution of the City of New York is provided for reference and the convenience of having the Resolution in an online format.  Recent amendments to the Zoning Resolution also appear on the Web prior to being incorporated into the print version of the Resolution.

later date that such #sign# becomes #non-conforming#, providing
that after the expiration of that period such #non-conforming
advertising sign# shall terminate.


(12/15/61)

**52-732**
**Signs on awnings or canopies**

In all #Residence# or #Commercial Districts#, a #non-conforming
sign# on an awning or canopy may be continued for one year after
December 15, 1961, or such later date that such #sign# becomes
#non-conforming#, provided that after the expiration of that
period such #non-conforming sign# shall terminate.


(4/8/98)

**52-733**
**Advertising signs on waterways**

On all waterways adjacent to #Residence#, #Commercial# or
#Manufacturing Districts# and within view from an arterial
highway, a #non-conforming advertising sign# may be continued for
one year after July 23, 1964, if already in operation on April
15, 1964; provided that after the expiration of this period such
#non-conforming advertising sign# shall terminate.

For the purposes of this Section, an #advertising sign# is a
#sign# that directs attention to a profession, business,
commodity, service or entertainment conducted, sold or offered
elsewhere than upon the premises of the vessel and is not
#accessory# to a #use# on such vessel.


(4/8/98)

**52-734**
**Non-conforming signs for adult establishments**

In all districts, a #non-conforming sign# for an #adult
establishment# shall terminate within one year from October 25,
1995, or from such later date that such #sign# becomes #non-
conforming#, except that such #sign# may be continued for a
limited period of time by the Board of Standards and Appeals,
pursuant to Section 72-40 (AMORTIZATION OF CERTAIN ADULT

ESTABLISHMENTS AND SIGNS FOR ADULT ESTABLISHMENTS).

(2/8/68)

**52-74**
**Uses Objectionable in Residence Districts**

In all #Residence Districts#, any of the following objectionable #uses# listed in Use Group 18, other than a #use# of #land with minor improvements#:

Coal storage;

Dumps, marine transfer stations for garbage, or slag piles;

Junk or salvage yards, including auto wrecking or similar establishments (whether or not such yard is enclosed);

Lumber yards (whether or not such yard is enclosed);

Manure, peat or topsoil storage;

Scrap metal, junk, paper or rags storage, sorting or baling (whether or not the yard in which such #use# is conducted is enclosed);

that:

(a)   involves activities not located within a #completely enclosed building#; and

(b)   involves the #use# of #buildings or other structures# or other improvements with a total assessed valuation, excluding land, of less than $20,000 as determined from the assessment rolls effective on the date established for termination;

may be continued for 10 years after December 15, 1961, or such later date that the #use# becomes #non-conforming#, provided that after the expiration of that period such #non-conforming use# shall terminate, and thereafter such land or #building or other structure# shall be used only for a conforming #use#.

(2/8/68)

# EXHIBIT 14

# ZONING RESOLUTION  Web Version

# THE CITY OF NEW YORK



THE CITY OF NEW YORK
Bill de Blasio, Mayor

CITY PLANNING COMMISSION
Marisa Lago, Chair

## Article V:  Non-conforming uses and non-complying buildings
### Chapter 2 - Non-Conforming Uses

Effective date of most recently amended section of Article V Chapter 2: 10/09/13

Administrative correction: 52-31

Date of file creation: Web version of Article V Chapter 2: 12/1/17

CITY PLANNING COMMISSION                    DEPARTMENT OF CITY PLANNING
nyc.gov/planning                                       ©Copyrighted by the City of New York

Zoning Disclaimer- the Web version of the Zoning Resolution of the City of New York is
provided for reference and the convenience of having the Resolution in an online
format.  Recent amendments to the Zoning Resolution also appear on the Web prior to
being incorporated into the print version of the Resolution.

**52-75**
**Certain Types of Uses Involving Open Storage or Salvage**

In all districts, #non-conforming# building materials or contractors' yards, or #non-conforming# junk or salvage yards, including auto wrecking or similar establishments, or #non-conforming# scrap metal, junk, paper or rags storage, sorting or baling may be continued subject to the applicable provisions set forth herein, whichever impose the greater restriction.

(a)   In #Residence Districts#, where such #use# constitutes a #non-conforming use# of #land with minor improvements#, the provisions of Section 52-72 (Land With Minor Improvements) apply.

(b)   In #Residence Districts#, where such #use# constitutes a #use# other than a #use# of #land with minor improvements#, and meets the criteria set forth in Section 52-74 (Uses Objectionable in Residence Districts), the provisions of Section 52-74 apply.

(c)   In all districts where such #use# is #non-conforming# with respect to the required enclosure as set forth in the listing of such #use# in Sections 42-14 (Use Group 17) or 42-15 (Use Group 18), and is either conforming or #non-conforming# in other respects, it may be continued without such enclosure until a date three years from February 8, 1968, or from such later date that the #use# becomes #non-conforming#. Thereafter, any such #use# which does not conform with the enclosure requirements shall be terminated, and the land shall be used only for a conforming #use#.


(11/16/78)

**52-76**
**Adult Physical Culture Establishments**

In all districts, any #adult physical culture establishment#, unless subject to an earlier termination requirement contained in this Resolution, shall terminate not later than one year after November 16, 1978, and thereafter the space formerly occupied by such #use# shall be used only for a conforming #use#.


(10/25/95)

**52-77**

**Termination of Adult Establishments**

In all districts, a #non-conforming adult establishment# shall terminate within one year from October 25, 1995, or from such later date that the #adult establishment# becomes #non-conforming#, except that such establishment may be continued for a limited period of time by the Board of Standards and Appeals pursuant to Section 72-40 (AMORTIZATION OF CERTAIN ADULT ESTABLISHMENTS AND SIGNS FOR ADULT ESTABLISHMENTS). However, the provisions of this Section shall not apply to an #adult establishment# subject to the provisions of paragraph (f) of Section 32-01 or 42-01 (Special Provisions for Adult Establishments).


(4/8/98)

**52-80**
**REGULATIONS APPLYING TO NON-CONFORMING SIGNS**


(4/8/98)

**52-81**
**General Provisions**

A #non-conforming sign# shall be subject to all the provisions of this Chapter relating to #non-conforming uses#, except as modified by the provisions of Sections 52-82 (Non-Conforming Signs other than Advertising Signs) and 52-83 (Non-Conforming Advertising Signs).

A change in the subject matter represented on a #sign# shall not be considered a change of #use#.


(4/8/98)

**52-82**
**Non-Conforming Signs other than Advertising Signs**

Any #non-conforming sign#, except a #flashing sign# or a #sign# subject to the provisions of Section 52-734 (Non-conforming signs for adult establishments), and except any #advertising signs# may be structurally altered, reconstructed or replaced in the same location and position, provided that such structural alteration, reconstruction or replacement does not result in:

# EXHIBIT 15

# ZONING RESOLUTION  Web Version

# THE CITY OF NEW YORK



THE CITY OF NEW YORK
Bill de Blasio, Mayor

CITY PLANNING COMMISSION
Marisa Lago, Chair

## Article VII: Administration
### Chapter 2 - Interpretations and Variances

Effective date of most recently amended section of Article VII Chapter 2: 02/02/11

Date of file creation: Web version of Article VII Chapter 2: 4/26/17

CITY PLANNING COMMISSION
nyc.gov/planning

DEPARTMENT OF CITY PLANNING
©Copyrighted by the City of New York

Zoning Disclaimer- the Web version of the Zoning Resolution of the City of New York is provided for reference and the convenience of having the Resolution in an online format.  Recent amendments to the Zoning Resolution also appear on the Web prior to being incorporated into the print version of the Resolution.

(3)   the period for which such establishment or #sign# may
      be permitted to continue is the minimum period
      sufficient for the applicant to recover substantially
      all of the financial expenditures incurred related to
      the #non-conformity#.

For the purpose of this Section, "financial expenditures" shall
mean the capital outlay made by the applicant to establish the
#adult establishment# or #sign#, exclusive of the fair market
value of the #building# in which such #use# or #sign# is located
and exclusive of any improvements unrelated to the #non-
conforming adult establishment# or #non-conforming accessory
business sign# for #adult establishments#.

This Section shall not apply to #commercial# establishments
described in Section 72-41 (Continuation of Certain Adult
Establishments).


(2/2/11)

## 72-41
## Continuation of Certain Adult Establishments

Any #commercial# establishment in existence as of August 8, 2001
which: (i) subsequent to September 18, 1995, and prior to August
8, 2001, made financial expenditures so as to avoid becoming
subject to the provisions of Section 32-01 or 42-01 (Special
Provisions for Adult Establishments); and (ii) is defined as an
#adult establishment# pursuant to the amendments to the
definition of #adult establishment# in Section 12-10 adopted on
October 31, 2001, shall terminate as an #adult establishment#
within one year from October 31, 2001. Notwithstanding the
foregoing, the Board of Standards and Appeals may permit such
#adult establishment# to continue for a limited period beyond
such one year period, provided that:

(a)   an application is made by the owner of such establishment to
      the Board of Standards and Appeals at least 120 days prior
      to the date on which such establishment must terminate;

(b)   the Board shall find, in connection with such establishment,
      that:

      (1)   the applicant had made, subsequent to September 18,1995
            and prior to August 8, 2001, substantial financial
            expenditures so as to avoid becoming subject to the
            provisions of Section 32-01 or 42-01;

(2) the applicant has not recovered substantially all such financial expenditures; and

(3) the period for which such establishment may be permitted to continue is the minimum period sufficient for the applicant to recover substantially all of such financial expenditures.

For purposes of this Section, "financial expenditures" shall mean the following: (i) any capital outlay for improvements made in connection with the configuration or reconfiguration of the amount of #floor area# and #cellar# space within such establishment accessible to customers either: (a) containing books, magazines, periodicals or other printed matter or photographs, films, motion pictures, video cassettes, slides or other visual matter characterized by an emphasis upon the depiction or description of "specified sexual activities" or "specified anatomical areas"; or (b) allocated to one of the activities described in paragraphs (1)(b), (1)(c) or (1)(d) of the definition of #adult establishment# in Section 12-10; and (ii) any purchases of books, magazines, periodicals, or other printed matter, or photographs, films, motion pictures, video cassettes, slides or other visual matter, which are not characterized by an emphasis upon the depiction or description of "specified sexual activities" or "specified anatomical areas."

The provisions of Sections 52-77 (Termination of Adult Establishments) and 72-40 (AMORTIZATION OF CERTAIN ESTABLISHMENTS AND SIGNS FOR ADULT ESTABLISHMENTS) shall not apply to #commercial# establishments subject to this Section.

# EXHIBIT 16

# TITLE 27
# CONSTRUCTION AND MAINTENANCE

### CHAPTER 1
### BUILDING CODE

### SUBCHAPTER 1
### ADMINISTRATION AND ENFORCEMENT

## TABLE OF CONTENTS

| [Sub-Art. or Sec.]* | Art. or Sec.** | |
|---|---|---|
| **[100.0]** | **Art. 1** | **General Provisions** |
| [100.1] | 101 | Title |
| [100.2] | 102 | Purpose |
| [100.3] | 103 | Scope |
| [100.4] | 104 | Interpretation |
| [100.5] | 105 | Effective Date |
| [100.6] | 106 | Enforcement |
| [100.7] | 107 | Variations |
| [100.9] | 108 | Application of References |
| **[101.0]** | **Art. 2** | **Matters Covered** |
| [101.1] | 109 | Building Matters Covered |
| [101.2] | 110 | Matters Not Provided For |
| **[102.0]** | **Art. 3** | **Continuation and Change in Use** |
| [102.1] | 111 | Continuation of Lawful Existing Use |
| [102.2] | 112 | Change in Occupancy or Use |
| [102.3] | 113 | Continuation of Unlawful Existing Use |
| **[103.0]** | **Art. 4** | **Alteration of Existing Buildings** |
| [103.0] | 114 | Alteration of Existing Buildings |
| [103.1] | 115 | Alterations Exceeding Sixty Percent of Building Value |
| [103.2] | 116 | Alterations Between Thirty Percent and Sixty Percent of Building Value |
| [103.3] | 117 | Alterations Under Thirty Percent of Building Value |
| [103.4] | 118 | Alterations Involving Change in Occupancy or Use |
| | 118.1 | Illegal Alterations Involving Change in Occupancy |
| [103.5] | 119 | Alteration Cost: Building Value |
| [103.6] | 120 | Alterations to Multiple Dwellings and Conversions to Multiple Dwellings |
| [103.7] | 121 | Alterations to Residence Buildings |
| [103.8] | 122 | Alterations, Conversions from Seasonal to Year Round Use |
| [103.9] | 123 | Alterations, High Hazard Occupancies |
| | 123.1 | Alterations, Additions, Repairs and Changes in Occupancy or Use Requiring Facilities for People Having Physical Disabilities |
| | 123.2 | Provision of Sprinklers in Existing Buildings |
| **[104.0]** | **Art. 5** | **Minor Alterations: Ordinary Repairs** |
| [104.1] | 124 | Minor Alterations |
| [104.2] | 125 | Ordinary Repairs |
| [104.3] | 126 | Work Not Constituting Minor Alterations or Ordinary Repairs |
| **[105.0]** | **Art. 6** | **Maintenance** |
| [105.1] | 127 | Maintenance Requirements |
| [105.2] | 128 | Owner Responsibility |
| [105.3] | 129 | Exterior Walls and Appurtenances Thereof |
| **[106.0]** | **Art. 7** | **Materials, Assemblies, Forms and Methods of Construction** |
| [106.1] | 130 | General Requirements |
| [106.2] | 131 | Acceptance Requirements |
| | 131.1 | Reference Standards |
| [106.3] | 132 | Inspection Requirements |
| [106.4] | 133 | Alternate or Equivalent Materials |
| **[107.0]** | **Art. 8** | **Service Equipment** |
| [107.1] | 134 | General Requirements |
| [107.2] | 135 | Acceptance Requirements |
| [107.3] | 136 | Inspection Requirements |
| [107.4] | 137 | Alternate or Equivalent Equipment |
| **[108.0]** | **Art. 9** | **Approval of Plans** |
| [108.1] | 138 | Separate Approval of Plans Required |
| [108.2] | 139 | Application for Approval of Plans |
| [108.3] | 140 | Applicant |
| | 140.1 | Registration Requirements |
| [108.4] | 141 | Plans |

**Title 27 / Subchapter 1**

| | | | | | |
|---|---|---|---|---|---|
| [108.5] | 142 | Applicant's Statement | [114.5] | 176 | Exemptions from Permit Requirement |
| [108.6] | 143 | Examination of Application and Plans | **[115.0]** | **Art. 16** | **Applications for Sign Permits** |
| [108.7] | 144 | Approval of Application and Plans | [115.1] | 177 | General Requirements |
| [108.8] | 145 | Conditional Approval of Plans | [115.2] | 178 | Plans Required |
| [108.9] | 146 | Endorsement of Approved Plans | [115.3] | 179 | Exemptions from Permit Requirements |
| **[109.0]** | **Art. 10** | **Permits** | **[116.0]** | **Art. 17** | **Applications for Equipment Work Permits** |
| [109.1] | 147 | When Permits Required | | | |
| [109.2] | 148 | Classification of Permits | [116.1] | 180 | When Equipment Work Permits Required |
| [109.3] | 149 | Separate Permits Required | | | |
| [109.4] | 150 | Application for Permit | [116.2] | 181 | Application Requirements |
| [109.5] | 151 | Applicant | | | |
| [109.6] | 152 | Other Application Requirements | [116.3] | 182 | Plans Required |
| [109.7] | 153 | Place of Filing Applications | [116.4] | 183 | Exemptions from Plan Requirements |
| [109.8] | 154 | Amendments to Applications | [116.5] | 184 | Exemptions from Permit Requirement |
| [109.9] | 155 | Time Limitation of Application | | 184.1 | Alteration and Repair Slip |
| **[110.0]** | **Art. 11** | **Applications for New Building Permits** | **[117.0]** | **Art. 18** | **Applications for Equipment Use Permits** |
| [110.1] | 156 | General Requirements | [117.1] | 185 | When Equipment Use Permits Required |
| [110.2] | 157 | Plans Required | | | |
| [110.3] | 158 | Datum | [117.2] | 186 | Application Requirements |
| [110.4] | 159 | Additional Information | | | |
| [110.5] | 160 | Certification of Performance Bond, License and Insurance Required | [117.3] | 187 | Inspections and Tests |
| | | | [117.4] | 188 | Temporary Use Permit |
| **[111.0]** | **Art. 12** | **Applications for Building Alteration Permits** | [117.5] | 189 | Exemptions from Equipment Use Permit Requirement |
| [111.1] | 161 | General Requirements | [117.6] | 190 | Duration and Renewal of Permit |
| [111.2] | 162 | Plans Required | | | |
| **[112.0]** | **Art. 13** | **Applications for Foundation and Earthwork Permits** | **[118.0]** | **Art. 19** | **Issuance of Permits** |
| | | | [118.1] | 191 | Approval of Permit Application |
| [112.1] | 163 | General Requirements | | | |
| [112.2] | 164 | Plans Required | [118.2] | 192 | Approval of Application in Part |
| [112.3] | 165 | Notice to Adjoining Owners | | | |
| [112.4] | 166 | Protection of Adjoining Properties | [118.3] | 193 | Signature to Permit |
| | | | [118.4] | 194 | Posting of Permit |
| **[113.0]** | **Art. 14** | **Applications for Demolition and Removal Permits** | [118.5] | 195 | Notice of Commencement of Work |
| [113.1] | 167 | General Requirements | [118.6] | 196 | Revocation of Permit |
| [113.2] | 168 | Requirement of Certifications | [118.8] | 198 | Approval of Plans and Permit Applications for Alteration or Demolition of Single Room Occupancy Multiple Dwellings |
| [113.3] | 169 | Notice to Adjoining Owners | | | |
| [113.4] | 170 | Protection of Lot and Adjoining Properties | | | |
| [113.5] | 171 | Requirement of Photographs | | | |
| **[114.0]** | **Art. 15** | **Applications for Plumbing Permits** | [118.9] | 198.1 | Approval of Plans and Permit Applications Where An Asbestos Project is Performed |
| [114.1] | 172 | General Requirements | | | |
| [114.2] | 173 | Plans Required | | | |
| [114.3] | 174 | Exemptions from Plan Requirements | [118.10] | 198.2 | Conversion, Alteration and Demolition of Single Room |
| [114.4] | 175 | Alteration and Repair Slip | | | |

| | | |
|---|---|---|
| | | Occupancy Multiple Dwellings Prohibited |
| | 198.3 | Relocation of Tenants in Occupancy in Certain Single Room Occupancy Multiple Dwellings |
| **[119.0]** | **Art. 20** | **Conditions of Permit** |
| [119.1] | 199 | Payment of Fees |
| [119.2] | 200 | Compliance with Code, Etc. |
| [119.3] | 201 | Compliance with Application, Plans, Etc. |
| [119.4] | 202 | Adherence to Lot Diagram |
| [119.5] | 203 | Compliance with Safety Requirements |
| [119.6] | 204 | Builder's pavement |
| **[120.0]** | **Art. 21** | **Department Inspections** |
| [120.1] | 205 | Right of Entry and Inspection |
| [120.2] | 206 | Identification of Inspectors |
| [120.3] | 207 | General Provisions |
| [120.4] | 208 | Preliminary Inspection |
| [120.5] | 209 | Inspections During Progress of Work |
| [120.6] | 210 | Final Inspection |
| [120.7] | 211 | Inspection of Completed Buildings |
| [120.8] | 212 | Inspection Reports |
| **[121.0]** | **Art. 22** | **Certificates of Occupancy** |
| [121.1] | 213 | General Provisions |
| [121.2] | 214 | New Buildings; Sidewalk Requirements |
| [121.3] | 215 | Altered Buildings |
| [121.4] | 216 | Existing Buildings |
| [121.5] | 217 | Change of Occupancy or Use |
| [121.6] | 218 | Temporary Occupancy |
| [121.7] | 219 | Applications for Certificates of Occupancy |
| [121.8] | 220 | Applicant |
| [121.9] | 221 | Statement of Compliance |
| [121.10] | 222 | Issuance of Certificates of Occupancy |
| [121.11] | 223 | Contents of Certificates |
| [121.12] | 224 | Record of Certificates |
| **[122.0]** | **Art. 23** | **Posting Buildings** |
| [122.1] | 225 | Posted Occupancy and Use |
| [122.2] | 226 | Replacement of Posted Signs |
| **[123.0]** | **Art. 24** | **Stop-Work Order** |
| [123.1] | 227 | Stop-Work Notice and Order |
| [123.2] | 228 | Unlawful Continuance |
| **[124.0]** | **Art. 25** | **Fire Protection Plan** |
| [124.1] | 228.1 | Applicability |
| [124.2] | 228.2 | Scope |
| [124.3] | 228.3 | General Requirements |
| [124.4] | 228.4 | Retroactivity |
| **[125.0]** | **Art. 26** | **Special Filing Requirements** |
| [125.1] | 228.5 | General Requirements |
| | **Art. 27** | **Alternative Procedure for Certain Permits** |
| | 228.6 | Contract with Not-For-Profit Corporation |
| | 228.7 | Not-For-Profit Corporation |
| | 228.8 | Examination and Approval of Plans |
| | 228.9 | Issuance of Permits |
| | 228.10 | Fees |
| | 228.11 | Employment Conditions |
| | 228.12 | Inspection |
| | 228.13 | Records |
| | 228.14 | Corruption Prevention Program |
| | 228.15 | Performance Review by the Commissioner |
| | 228.16 | Jurisdiction of the Fire Department |

*"C26" omitted from section numbers in this column.*
**"27" omitted from section numbers in this column.*

## ARTICLE 1  GENERAL PROVISIONS

§[C26-100.1] **27-101 Title.-** This code shall be known and may be cited as the "building code of the city of New York", and is hereinafter referred to as "this code" or "the code".

§[C26-100.2] **27-102 Purpose.-** The purpose of this code is to provide reasonable minimum requirements and standards, based upon current scientific and engineering knowledge, experience and techniques, and the utilization of modern machinery, equipment, materials, and forms and methods of construction, for the regulation of building construction in the city of New York in the interest of public safety, health and welfare, and with due regard for building construction and maintenance costs.

§[C26-100.3] **27-103 Scope. -** This code shall apply to the construction, alteration, repair, demolition, removal, maintenance, occupancy and use of new and existing buildings in the city of New York, including the installation, alteration, repair, maintenance and use of service equipment therein, except as provided in section six hundred forty-three of the charter.

§[C26-100.4] **27-104 Interpretation.-** This code shall be liberally interpreted to secure the beneficial purposes thereof. Any conflict or inconsistency between the requirements of this code and applicable state and federal laws and regulations shall be resolved in favor of the more restrictive requirement.

**§[C26-107.1] 27-134 General requirements.-** All service equipment and machinery and devices used in connection therewith (hereinafter collectively referred to as "equipment") which, in their use, are regulated by the provisions of this code, shall be subject to the requirements for acceptance, as provided in section 27-135, and to the requirements for inspection, as provided in section 27-136 of this article, except as otherwise specifically provided by the provisions of this code. Equipment which in its use does not require regulation and control in the interests of public safety, health, and welfare, is not subject to any requirement of acceptance, inspection, test, or approval under the provisions of this code. Elements or appurtenances of equipment or machinery which are in conformity with specifications relating thereto in this code, or which may be designed in their entirety in accordance with accepted engineering design principles based on provisions of this code are not subject to the requirements for acceptance.

**§[C26-107.2] 27-135 Acceptance requirements.-** The requirements for acceptance of materials, as provided in section 27-131 of article seven of this subchapter, shall apply to the initial acceptance of all equipment which, in its use, is regulated by the provisions of this code; and for this purpose, the word "equipment" shall be substituted for the words "or materials" wherever those words occur in section 27-131 of article seven of this subchapter.

**§[C26-107.3] 27-136 Inspection requirements.-** The requirements for inspection of materials, as provided in section 27-132 of article seven of this subchapter, shall apply to the inspection of all equipment which, in its use, is regulated by the provisions of this code; and for this purpose, the word "equipment" shall be substituted for the words "material" and "materials" wherever those words occur in section 27-132 of article seven of this subchapter.

**§[C26-107.4] 27-137 Alternate or equivalent equipment.-** Whenever the code prescribes the use of particular equipment, the commissioner may permit the use of any equipment shown to be equivalent for the use intended, in terms of health, fire and/or structural safety. Nothing contained in this code shall be construed to require the use of any particular equipment for the purpose of meeting performance requirements of this code.

## ARTICLE 9  APPROVAL OF PLANS

**§[C26-108.1] 27-138 Separate approval of plans required.-** Whenever plans are required to be submitted in connection with applications for work permits, as provided in articles ten through seventeen of this subchapter, separate application shall be made for the approval of the plans

therefor. The application may be made at or prior to the time of submitting the work permit application.

**§[C26-108.2] 27-139 Application for approval of plans.-** Applications for approval of plans shall be made on forms furnished by the department, and shall be accompanied by the required fee. The application shall contain a general description of the proposed work, its location, and such other pertinent information as the commissioner may require. All applications for approval of plans for any new construction, in which plumbing fixtures are to be installed, shall be accompanied by the following:

　　1. Information as to the availability of a public sewer system.

　　**2.In the event that a private sewage treatment plant is proposed, evidence of submission of plans for approval of such plant to the department of environmental protection and the department of health as required by law[shall be submitted. In the case of plans for the construction of new buildings or the alteration of existing buildings, separate application may be made for the approval of:

　　(a)  the lot diagram showing compliance with the zoning resolution, as provided in paragraph one of subdivision (a) of section 27-157 of article eleven of this subchapter;

　　(b)  the foundation plans, as provided in paragraphs one and seven of subdivision (b) of section 27-157 of article eleven of this subchapter;

　　(c)  the floor and roof plans showing compliance with exit requirements, as provided in paragraph three of subdivision (a) of section 27-157 of article eleven of this subchapter;

　　(d)  the detailed architectural, structural and mechanical drawings, as provided in subdivisions (a) through (c) of section 27-157 of article eleven of this subchapter.
***Local Law 65-1996.**

***§[C26-108.3]  27-140  Applicant.-** Applications for approval of plans shall be made in behalf of the owner or lessee or condominium unit owner or cooperative shareholder by the person who prepared or supervised the preparation of the plans, and shall be accompanied by a signed statement of the owner, condominium board of managers or cooperative board of directors stating that the applicant is authorized to make the application. In the case of applications for approval of plans for the construction or alteration of buildings, for the installation or alteration of plumbing or plumbing systems, or for the installation or alteration of service equipment which involves changes in the structure of the building or requirements for fire protection, light, heat, ventilation, or means of egress, the application shall be made by protection, light, heat, ventilation, or means of egress, the application shall be made by an architect or

engineer. The full names and addresses of the owner, including the condominium unit owner or cooperative shareholder, lessee, and applicant, and of the principal officers thereof, if a corporation, shall be set forth in the application.
*Local Law 72-1991.*

## ** §27-140.1 Registration requirements.-

(a)  No person, other than those described in subdivision (c) of this section, may present, submit, furnish or seek approval of applications for approval of plans or remove any documents from the possession of the department, without first having registered with the department his or her name, address and company affiliation on a form to be furnished by the department. Consistent with article twenty-three-A of the correction law, registration may be denied to any person who has been convicted of a criminal offense relating to bribing or receipt of a bribe, giving or receiving unlawful gratuities, official misconduct, or other corruption-related acts. The commissioner, after due notice and a hearing before the office of administrative trials and hearings, pursuant to section one thousand forty-eight of the charter and rules established thereunder, shall have the power to revoke, suspend or limit the registration of any person upon a finding that such person has willfully or negligently violated the rules of the department or has engaged in any misconduct arising out of his or her business dealings with the department. Misconduct shall be defined by the rules of the commissioner promulgated pursuant to subdivision (d) of this section.

(b)  No person shall use the term "registered with the department of buildings", "registered" or any similar representation in such a manner as to convey the impression that such person is registered with the department of buildings unless such person is registered in accordance with the provisions of this section.

(c)  The following persons are exempt from the provisions of this section:

(i)   the owners of the premises for which the building applications are filed including, in the case of partnerships or corporations, the general partners or the principal officers of the corporation. Principal officers of a corporation shall include the president, vice presidents, secretary and treasurer;

(ii)  the lessees of such premises authorized by the owner to file building applications;

(iii) condominium unit owners authorized by the condominium board of managers to file building applications;

(iv)  cooperative shareholders authorized by the cooperative board of directors to file building applications;

(v)   registered architects licensed by the New York state department of education;

(vi)  professional engineers licensed by the New York state department of education;

(vii) attorneys admitted to practice in New York state;

(viii) master plumbers licensed pursuant to article two of subchapter two of chapter one of title twenty-six of this code;

(ix)  master fire suppression piping contractors licensed pursuant to article two of subchapter two of chapter one of title twenty-six of this code; and

(x)   master electricians licensed pursuant to subchapter one of chapter three of title twenty-seven of this code.

(a)  the commissioner shall promulgate rules for the proper and efficient administration and enforcement of this section.
*Local Law 72-1991.*

## §[C26-108.4]  27-141  Plans.- With each application for approval of plans, there shall be submitted such number of copies of the plans as the commissioner may require. All plans shall comply in form and content with requirements of this code and other applicable laws and regulations.

## §[C26-108.5]  27-142  Applicant's statement.-

(a)  A signed statement of the applicant shall also be submitted with the application, stating that he or she is authorized by the owner to make the application and that, to the best of his or her knowledge and belief, the plans and the work shown thereon comply with the provisions of this code and other applicable laws and regulations. If there are practical difficulties in the way of carrying out the strict letter of the law, the applicant shall set forth the nature of such difficulties in such signed statement.

(b)  In addition to all other requirements of this article, an application for approval of plans for the alteration of an existing building or the construction of a new building shall be accompanied by a signed statement of the applicant certifying either (1) that the building to be altered, or the site of the new building, as the case may be, contains no occupied housing accommodations subject to control under chapter three of title twenty-six of the administrative code, or (2) that the owner has notified the city rent agency of his or her intention to file such plans and has complied with all requirements imposed by the regulations of such agency as preconditions for such filing.

## §[C26-108.6]  27-143  Examination of application and plans.- All applications for approval of plans and all plans submitted in connection therewith, and any amendments thereto, shall be numbered, docketed and examined promptly after their submission. The examination shall be made under the direction of the commissioner for compliance with the provisions of this code and other applicable laws and regulations. The commissioner may at his or her discretion, when the application is submitted by an architect or an engineer,

0436

designate portions of the examination for limited supervisory check. The personnel employed for examination of plans shall be qualified engineers or architects experienced in building construction and design.

**\*§[C26-108.7]  27-144  Approval of application and plans.-**
Except as otherwise provided in section 27-198 and section 27-198.1 of article nineteen of this subchapter, applications and plans complying with the provisions of this code and other applicable laws and regulations shall be approved by the commissioner and written notice of approval shall be given the applicant promptly and no later than forty calendar days after the submission thereof, and applications and plans failing to comply with the provisions of this code and other applicable laws and regulations shall be rejected and written notice of rejection, stating the grounds of rejection, shall be given the applicant promptly and not later than forty calendar days after the submission thereof, except that on or before the fortieth day, the commissioner may on good cause shown, and upon notification to the applicant, extend such times for an additional twenty days. Whenever an application and accompanying plans have been rejected and are thereafter revised and resubmitted to meet stated grounds of rejection, the revised application and plans shall be approved if they meet the stated grounds of rejection, or shall be rejected if they fail to meet the stated grounds of rejection; and written notice of approval or written notice of rejection, stating the grounds of rejection, shall be given the applicant promptly and not later than twenty calendar days after the resubmission thereof.
*Local Law 76-1985, language juxtaposed per Ch. 907-1985.*

**§[C26-108.8]  27-145  Conditional approval of plans.-**
All approvals of plans given prior to the submission of the work permit application shall be conditioned upon and subject to compliance with the requirements of this code and other applicable laws and regulations in effect at the time of submission of the permit application, and shall also be conditioned upon the submission of the work permit application not later than twelve months after the date of notice of plan approval.

**§[C26-108.9]  27-146  Endorsement of approved plans.-**
All plans and amendments thereto, when approved by the commissioner, shall be stamped or endorsed approved under the official seal of the department, followed by a notation of the date of plan approval. One set of such approved plans shall be retained in the department office of the borough in which the building premises or equipment is located; and after the issuance of a work permit, a second set of such approved plans shall be retained at the place where the building premises or equipment is located, and shall be open at all times to inspection by the commissioner and his or her authorized representatives until final inspection of the work is completed.

## ARTICLE 10  PERMITS

**§[C26-109.1]  27-147  When permits required.-**
No building construction or alteration work, foundation or earthwork, demolition or removal work, or plumbing work shall be commenced, and no signs or service equipment of the types listed in articles sixteen and seventeen of this subchapter shall be erected, installed, altered, repaired, or used, nor shall any service equipment of the types listed in article eighteen of this subchapter be used or operated, unless and until a written permit therefor shall have been issued by the commissioner. The provisions of this section shall not apply, however, to minor alterations and ordinary repairs, as defined and delineated in article five of this subchapter or to work or equipment exempted from permit requirements under the provisions of sections 27-176, 27-179, 27-184, and 27-189 of this subchapter.

**§[C26-109.2]  27-148  Classification of permits.-**
For the purposes of this code, permits shall be classified as follows:

(a) **New building permits**: for the construction of new buildings, as provided in article eleven of this subchapter.

(b) **Alteration permits**: for the alteration of existing buildings, as provided in article twelve of this subchapter.

(c) **Foundation and earthwork permits**: for the construction or alteration of foundations, including earthwork excavation and fill, as provided in article thirteen of this subchapter.

(d) **Demolition and removal permits**: for the demolition or removal of existing buildings, as provided in article fourteen of this subchapter.

(e) **Plumbing permits**: for the installation or alteration of plumbing and plumbing systems including gas piping, as provided in article fifteen of this subchapter.

(f) **Sign permits**: for the erection or alteration of signs and sign installations, as provided in article sixteen of this subchapter.

(g) **Equipment work permits**: for the installation or alteration of service equipment, as provided in article seventeen of this subchapter.

(h) **Equipment use permits**: for the use and operation of service equipment, as provided in article eighteen of this subchapter.

**\*\* §[C26-109.3]  27-149  Separate permits required.-**
Separate permits shall be required, as provided above, except that separate permits for foundations and earthwork, or for the installation or alteration of service equipment, other than fire suppression piping systems,

# EXHIBIT 17

# TITLE 27
# CONSTRUCTION AND MAINTENANCE

## CHAPTER 1
## BUILDING CODE

### SUBCHAPTER 1
### ADMINISTRATION AND ENFORCEMENT

### TABLE OF CONTENTS

| [Sub-Art. or Sec.]* | Art. or Sec.** | |
|---|---|---|
| **[100.0]** | **Art. 1** | **General Provisions** |
| [100.1] | 101 | Title |
| [100.2] | 102 | Purpose |
| [100.3] | 103 | Scope |
| [100.4] | 104 | Interpretation |
| [100.5] | 105 | Effective Date |
| [100.6] | 106 | Enforcement |
| [100.7] | 107 | Variations |
| [100.9] | 108 | Application of References |
| **[101.0]** | **Art. 2** | **Matters Covered** |
| [101.1] | 109 | Building Matters Covered |
| [101.2] | 110 | Matters Not Provided For |
| **[102.0]** | **Art. 3** | **Continuation and Change in Use** |
| [102.1] | 111 | Continuation of Lawful Existing Use |
| [102.2] | 112 | Change in Occupancy or Use |
| [102.3] | 113 | Continuation of Unlawful Existing Use |
| **[103.0]** | **Art. 4** | **Alteration of Existing Buildings** |
| [103.0] | 114 | Alteration of Existing Buildings |
| [103.1] | 115 | Alterations Exceeding Sixty Percent of Building Value |
| [103.2] | 116 | Alterations Between Thirty Percent and Sixty Percent of Building Value |
| [103.3] | 117 | Alterations Under Thirty Percent of Building Value |
| [103.4] | 118 | Alterations Involving Change in Occupancy or Use |
| | 118.1 | Illegal Alterations Involving Change in Occupancy |
| [103.5] | 119 | Alteration Cost: Building Value |
| [103.6] | 120 | Alterations to Multiple Dwellings and Conversions to Multiple Dwellings |
| [103.7] | 121 | Alterations to Residence Buildings |
| [103.8] | 122 | Alterations, Conversions from Seasonal to Year Round Use |
| [103.9] | 123 | Alterations, High Hazard Occupancies |
| | 123.1 | Alterations, Additions, Repairs and Changes in Occupancy or Use Requiring Facilities for People Having Physical Disabilities |
| | 123.2 | Provision of Sprinklers in Existing Buildings |
| **[104.0]** | **Art. 5** | **Minor Alterations: Ordinary Repairs** |
| [104.1] | 124 | Minor Alterations |
| [104.2] | 125 | Ordinary Repairs |
| [104.3] | 126 | Work Not Constituting Minor Alterations or Ordinary Repairs |
| **[105.0]** | **Art. 6** | **Maintenance** |
| [105.1] | 127 | Maintenance Requirements |
| [105.2] | 128 | Owner Responsibility |
| [105.3] | 129 | Exterior Walls and Appurtenances Thereof |
| **[106.0]** | **Art. 7** | **Materials, Assemblies, Forms and Methods of Construction** |
| [106.1] | 130 | General Requirements |
| [106.2] | 131 | Acceptance Requirements |
| | 131.1 | Reference Standards |
| [106.3] | 132 | Inspection Requirements |
| [106.4] | 133 | Alternate or Equivalent Materials |
| **[107.0]** | **Art. 8** | **Service Equipment** |
| [107.1] | 134 | General Requirements |
| [107.2] | 135 | Acceptance Requirements |
| [107.3] | 136 | Inspection Requirements |
| [107.4] | 137 | Alternate or Equivalent Equipment |
| **[108.0]** | **Art. 9** | **Approval of Plans** |
| [108.1] | 138 | Separate Approval of Plans Required |
| [108.2] | 139 | Application for Approval of Plans |
| [108.3] | 140 | Applicant |
| | 140.1 | Registration Requirements |
| [108.4] | 141 | Plans |

59

Title 27 / Subchapter 1

[108.5]    142    Applicant's Statement
[108.6]    143    Examination of Application
                  and Plans
[108.7]    144    Approval of Application and Plans
[108.8]    145    Conditional Approval of Plans
[108.9]    146    Endorsement of Approved Plans
**[109.0]**    **Art. 10**    **Permits**
[109.1]    147    When Permits Required
[109.2]    148    Classification of Permits
[109.3]    149    Separate Permits Required
[109.4]    150    Application for Permit
[109.5]    151    Applicant
[109.6]    152    Other Application
                  Requirements
[109.7]    153    Place of Filing Applications
[109.8]    154    Amendments to
                  Applications
[109.9]    155    Time Limitation of
                  Application
**[110.0]**    **Art. 11**    **Applications for New
                  Building Permits**
[110.1]    156    General Requirements
[110.2]    157    Plans Required
[110.3]    158    Datum
[110.4]    159    Additional Information
[110.5]    160    Certification of Performance
                  Bond, License and Insurance
                  Required
**[111.0]**    **Art. 12**    **Applications for Building
                  Alteration Permits**
[111.1]    161    General Requirements
[111.2]    162    Plans Required
**[112.0]**    **Art. 13**    **Applications for Foundation
                  and Earthwork Permits**
[112.1]    163    General Requirements
[112.2]    164    Plans Required
[112.3]    165    Notice to Adjoining Owners
[112.4]    166    Protection of Adjoining
                  Properties
**[113.0]**    **Art. 14**    **Applications for Demolition
                  and Removal Permits**
[113.1]    167    General Requirements
[113.2]    168    Requirement of
                  Certifications
[113.3]    169    Notice to Adjoining Owners
[113.4]    170    Protection of Lot and
                  Adjoining Properties
[113.5]    171    Requirement of Photographs
**[114.0]**    **Art. 15**    **Applications for Plumbing
                  Permits**
[114.1]    172    General Requirements
[114.2]    173    Plans Required
[114.3]    174    Exemptions from Plan
                  Requirements
[114.4]    175    Alteration and Repair Slip

[114.5]    176    Exemptions from Permit
                  Requirement
**[115.0]**    **Art. 16**    **Applications for Sign Permits**
[115.1]    177    General Requirements
[115.2]    178    Plans Required
[115.3]    179    Exemptions from Permit
                  Requirements
**[116.0]**    **Art. 17**    **Applications for Equipment
                  Work Permits**
[116.1]    180    When Equipment Work
                  Permits Required
[116.2]    181    Application
                  Requirements
[116.3]    182    Plans Required
[116.4]    183    Exemptions from Plan
                  Requirements
[116.5]    184    Exemptions from Permit
                  Requirement
           184.1  Alteration and Repair Slip
**[117.0]**    **Art. 18**    **Applications for
                  Equipment Use Permits**
[117.1]    185    When Equipment Use
                  Permits Required
[117.2]    186    Application
                  Requirements
[117.3]    187    Inspections and Tests
[117.4]    188    Temporary Use Permit
[117.5]    189    Exemptions from
                  Equipment Use Permit
                  Requirement
[117.6]    190    Duration and Renewal of
                  Permit
**[118.0]**    **Art. 19**    **Issuance of Permits**
[118.1]    191    Approval of Permit
                  Application
[118.2]    192    Approval of Application in
                  Part
[118.3]    193    Signature to Permit
[118.4]    194    Posting of Permit
[118.5]    195    Notice of Commencement
                  of Work
[118.6]    196    Revocation of Permit
[118.8]    198    Approval of Plans and
                  Permit Applications for
                  Alteration or
                  Demolition of Single
                  Room Occupancy
                  Multiple Dwellings
[118.9]    198.1  Approval of Plans and
                  Permit Applications
                  Where An Asbestos
                  Project is Performed
[118.10]   198.2  Conversion, Alteration
                  and Demolition of
                  Single Room

Title 27 / Subchapter 1

| | | Occupancy Multiple Dwellings Prohibited |
| | 198.3 | Relocation of Tenants in Occupancy in Certain Single Room Occupancy Multiple Dwellings |
| **[119.0]** | **Art. 20** | **Conditions of Permit** |
| [119.1] | 199 | Payment of Fees |
| [119.2] | 200 | Compliance with Code, Etc. |
| [119.3] | 201 | Compliance with Application, Plans, Etc. |
| [119.4] | 202 | Adherence to Lot Diagram |
| [119.5] | 203 | Compliance with Safety Requirements |
| [119.6] | 204 | Builder's pavement |
| **[120.0]** | **Art. 21** | **Department Inspections** |
| [120.1] | 205 | Right of Entry and Inspection |
| [120.2] | 206 | Identification of Inspectors |
| [120.3] | 207 | General Provisions |
| [120.4] | 208 | Preliminary Inspection |
| [120.5] | 209 | Inspections During Progress of Work |
| [120.6] | 210 | Final Inspection |
| [120.7] | 211 | Inspection of Completed Buildings |
| [120.8] | 212 | Inspection Reports |
| **[121.0]** | **Art. 22** | **Certificates of Occupancy** |
| [121.1] | 213 | General Provisions |
| [121.2] | 214 | New Buildings; Sidewalk Requirements |
| [121.3] | 215 | Altered Buildings |
| [121.4] | 216 | Existing Buildings |
| [121.5] | 217 | Change of Occupancy or Use |
| [121.6] | 218 | Temporary Occupancy |
| [121.7] | 219 | Applications for Certificates of Occupancy |
| [121.8] | 220 | Applicant |
| [121.9] | 221 | Statement of Compliance |
| [121.10] | 222 | Issuance of Certificates of Occupancy |
| [121.11] | 223 | Contents of Certificates |
| [121.12] | 224 | Record of Certificates |
| **[122.0]** | **Art. 23** | **Posting Buildings** |
| [122.1] | 225 | Posted Occupancy and Use |
| [122.2] | 226 | Replacement of Posted Signs |
| **[123.0]** | **Art. 24** | **Stop-Work Order** |
| [123.1] | 227 | Stop-Work Notice and Order |
| [123.2] | 228 | Unlawful Continuance |
| **[124.0]** | **Art. 25** | **Fire Protection Plan** |
| [124.1] | 228.1 | Applicability |
| [124.2] | 228.2 | Scope |
| [124.3] | 228.3 | General Requirements |
| [124.4] | 228.4 | Retroactivity |
| **[125.0]** | **Art. 26** | **Special Filing Requirements** |
| [125.1] | 228.5 | General Requirements |

| **Art. 27** | **Alternative Procedure for Certain Permits** |
| 228.6 | Contract with Not-For-Profit Corporation |
| 228.7 | Not-For-Profit Corporation |
| 228.8 | Examination and Approval of Plans |
| 228.9 | Issuance of Permits |
| 228.10 | Fees |
| 228.11 | Employment Conditions |
| 228.12 | Inspection |
| 228.13 | Records |
| 228.14 | Corruption Prevention Program |
| 228.15 | Performance Review by the Commissioner |
| 228.16 | Jurisdiction of the Fire Department |

*"C26" omitted from section numbers in this column.*
*"27" omitted from section numbers in this column.*

## ARTICLE 1  GENERAL PROVISIONS

**§[C26-100.1]  27-101 Title.-** This code shall be known and may be cited as the "building code of the city of New York", and is hereinafter referred to as "this code" or "the code".

**§[C26-100.2]  27-102 Purpose.-** The purpose of this code is to provide reasonable minimum requirements and standards, based upon current scientific and engineering knowledge, experience and techniques, and the utilization of modern machinery, equipment, materials, and forms and methods of construction, for the regulation of building construction in the city of New York in the interest of public safety, health and welfare, and with due regard for building construction and maintenance costs.

**§[C26-100.3]  27-103 Scope. -** This code shall apply to the construction, alteration, repair, demolition, removal, maintenance, occupancy and use of new and existing buildings in the city of New York, including the installation, alteration, repair, maintenance and use of service equipment therein, except as provided in section six hundred forty-three of the charter.

**§[C26-100.4]  27-104 Interpretation.-** This code shall be liberally interpreted to secure the beneficial purposes thereof. Any conflict or inconsistency between the requirements of this code and applicable state and federal laws and regulations shall be resolved in favor of the more restrictive requirement.

61

designate portions of the examination for limited supervisory check. The personnel employed for examination of plans shall be qualified engineers or architects experienced in building construction and design.

**\*§[C26-108.7]   27-144   Approval of application and plans.-**
Except as otherwise provided in section 27-198 and section 27-198.1 of article nineteen of this subchapter, applications and plans complying with the provisions of this code and other applicable laws and regulations shall be approved by the commissioner and written notice of approval shall be given the applicant promptly and no later than forty calendar days after the submission thereof, and applications and plans failing to comply with the provisions of this code and other applicable laws and regulations shall be rejected and written notice of rejection, stating the grounds of rejection, shall be given the applicant promptly and not later than forty calendar days after the submission thereof, except that on or before the fortieth day, the commissioner may on good cause shown, and upon notification to the applicant, extend such times for an additional twenty days. Whenever an application and accompanying plans have been rejected and are thereafter revised and resubmitted to meet stated grounds of rejection, the revised application and plans shall be approved if they meet the stated grounds of rejection, or shall be rejected if they fail to meet the stated grounds of rejection; and written notice of approval or written notice of rejection, stating the grounds of rejection, shall be given the applicant promptly and not later than twenty calendar days after the resubmission thereof.
*\*Local Law 76-1985, language juxtaposed per Ch. 907-1985.*

**§[C26-108.8]   27-145   Conditional approval of plans.-**
All approvals of plans given prior to the submission of the work permit application shall be conditioned upon and subject to compliance with the requirements of this code and other applicable laws and regulations in effect at the time of submission of the permit application, and shall also be conditioned upon the submission of the work permit application not later than twelve months after the date of notice of plan approval.

**§[C26-108.9]   27-146   Endorsement of approved plans.-**
All plans and amendments thereto, when approved by the commissioner, shall be stamped or endorsed approved under the official seal of the department, followed by a notation of the date of plan approval. One set of such approved plans shall be retained in the department office of the borough in which the building premises or equipment is located; and after the issuance of a work permit, a second set of such approved plans shall be retained at the place where the building premises or equipment is located, and shall be open at all times to inspection by the commissioner and his or her authorized representatives until final inspection of the work is completed.

## ARTICLE 10   PERMITS

**§[C26-109.1]   27-147   When permits required.-**
No building construction or alteration work, foundation or earthwork, demolition or removal work, or plumbing work shall be commenced, and no signs or service equipment of the types listed in articles sixteen and seventeen of this subchapter shall be erected, installed, altered, repaired, or used, nor shall any service equipment of the types listed in article eighteen of this subchapter be used or operated, unless and until a written permit therefor shall have been issued by the commissioner. The provisions of this section shall not apply, however, to minor alterations and ordinary repairs, as defined and delineated in article five of this subchapter or to work or equipment exempted from permit requirements under the provisions of sections 27-176, 27-179, 27-184, and 27-189 of this subchapter.

**§[C26-109.2]   27-148   Classification of permits.-**
For the purposes of this code, permits shall be classified as follows:

(a) **New building permits**: for the construction of new buildings, as provided in article eleven of this subchapter.

(b) **Alteration permits**: for the alteration of existing buildings, as provided in article twelve of this subchapter.

(c) **Foundation and earthwork permits**: for the construction or alteration of foundations, including earthwork excavation and fill, as provided in article thirteen of this subchapter.

(d) **Demolition and removal permits**: for the demolition or removal of existing buildings, as provided in article fourteen of this subchapter.

(e) **Plumbing permits**: for the installation or alteration of plumbing and plumbing systems including gas piping, as provided in article fifteen of this subchapter.

(f) **Sign permits**: for the erection or alteration of signs and sign installations, as provided in article sixteen of this subchapter.

(g) **Equipment work permits**: for the installation or alteration of service equipment, as provided in article seventeen of this subchapter.

(h) **Equipment use permits**: for the use and operation of service equipment, as provided in article eighteen of this subchapter.

**\*\* §[C26-109.3]   27-149   Separate permits required.-**
Separate permits shall be required, as provided above, except that separate permits for foundations and earthwork, or for the installation or alteration of service equipment, other than fire suppression piping systems,

shall not be required whenever plans for such work are included in and form a part of the plans for the construction of new buildings or the alteration of existing buildings.
*** Local Law 107-1993.*

### *§[C26-109.4] 27-150 Application for permit.-
All applications for permits shall be submitted on forms furnished by the department, and shall be accompanied by the required fee. The application shall contain a general description of the proposed work or equipment, its location, and such other pertinent information as required pursuant to section 27-198.1 or as the commissioner may require.

* *Local Law 76-1985, language juxtaposed per Ch. 907-1985.*

### §[C26-109.5]   27-151   Applicant.-
Applications for permits shall be made by or in behalf of the owner or lessee of the buildings; and if made by a person other than the owner, the application shall be accompanied by a signed statement of the applicant declaring that he or she is authorized by the owner to make the application. The full names of the owner, lessee, and applicant, and of the principal officers thereof, if a corporation, shall be set forth in the application.

### §[C26-109.6] 27-152   Other application requirements.-
In addition to the foregoing general requirements, applications for permits shall be subject to the further requirements of articles eleven through eighteen of this subchapter, as the same may be applicable.

### ** §[C26-109.7]   27-153   Place of filing applications.-
Except as otherwise provided by rule, applications for permits and accompanying papers and plans shall be filed in the department office in the borough in which the work or equipment is located. Applications shall be numbered and docketed promptly as received; and for purposes of identification and reference, all such papers shall be marked with the block and lot number of the property to which they apply, and with street and house number where possible.
**Local Law 107-1993.*

### §[C26-109.8] 27-154 Amendments to applications.-
Subject to the limitations of section 27-155 of this article, amendments to permit applications and any accompanying plans and papers may be submitted at any time before final inspection of the work or equipment is completed; and such amendments shall be deemed part of the original permit application and shall be filed therewith.

### §[C26-109.9] 27-155 Time limitation of application.-
An application for a permit shall be deemed to have been abandoned twelve months after date of submission, unless such application has been diligently prosecuted after rejection in whole or in part, or a permit shall have been issued under article nineteen of this subchapter except that the commissioner may, for reasonable cause, grant extensions of time for additional twelve month periods.

## ARTICLE 11  APPLICATIONS FOR NEW BUILDING PERMITS

### §[C26-110.1]   27-156   General requirements.-
All applications for new building permits shall be subject to the requirements of articles nine and ten of this subchapter. In addition, each such application shall set forth the name and business address of the person who is to perform the proposed work, and shall be accompanied by satisfactory evidence of compliance with the provisions of the workers compensation law.

### §[C26-110.2]   27-157   Plans required.-
All such applications shall be accompanied by architectural, structural, and mechanical plans, which shall be complete and of sufficient clarity to indicate the entire nature and extent of the proposed construction work and its compliance with the provisions of this code and other applicable laws and regulations. Composite plans showing architectural, structural, and mechanical parts of a building may be submitted provided that a clear understanding of each part is not impaired. The plans may be submitted with the application for the permit or prior thereto, as provided in section 27-138 of article nine of this subchapter; and the same set of plans may be used for several buildings of the same construction, if such buildings are located on adjoining lots under the same ownership, and if permit applications therefore [*sic*] are filed simultaneously. All such plans shall be drawn to suitable scale and shall be reproduced upon substantial paper, plastic, or cloth, as the commissioner may require; and each plan or drawing shall contain the registration number, seal, signature, and address of the architect or engineer who prepared or supervised the preparation of the plans. Whenever equipment, materials, assemblies, forms, or methods of construction are subject to "controlled inspection", as provided in sections 27-131 and 27-135 of this subchapter, all such equipment, materials, assemblies, forms, or methods of construction shall be listed on the title sheet of the plans, or the sheet immediately following as subject to "controlled inspection" in accordance with code requirements. In no case shall the code be cited or the term "legal" or its equivalent used as a substitute for specific reference to particular code section or standard in order to show compliance with code requirements or other applicable laws or regulations.
  (a)  **Architectural plans** shall contain at least the following data and information:
    (1) Lot diagram showing compliance with the zoning resolution, and indicating the size, height and

# EXHIBIT 18

# TITLE 27
# CONSTRUCTION AND MAINTENANCE

## CHAPTER 1
## BUILDING CODE

### SUBCHAPTER 1
### ADMINISTRATION AND ENFORCEMENT

### TABLE OF CONTENTS

| [Sub-Art. or Sec.]* | Art. or Sec.** | |
|---|---|---|
| [100.0] | Art. 1 | General Provisions |
| [100.1] | 101 | Title |
| [100.2] | 102 | Purpose |
| [100.3] | 103 | Scope |
| [100.4] | 104 | Interpretation |
| [100.5] | 105 | Effective Date |
| [100.6] | 106 | Enforcement |
| [100.7] | 107 | Variations |
| [100.9] | 108 | Application of References |
| [101.0] | Art. 2 | Matters Covered |
| [101.1] | 109 | Building Matters Covered |
| [101.2] | 110 | Matters Not Provided For |
| [102.0] | Art. 3 | Continuation and Change in Use |
| [102.1] | 111 | Continuation of Lawful Existing Use |
| [102.2] | 112 | Change in Occupancy or Use |
| [102.3] | 113 | Continuation of Unlawful Existing Use |
| [103.0] | Art. 4 | Alteration of Existing Buildings |
| [103.0] | 114 | Alteration of Existing Buildings |
| [103.1] | 115 | Alterations Exceeding Sixty Percent of Building Value |
| [103.2] | 116 | Alterations Between Thirty Percent and Sixty Percent of Building Value |
| [103.3] | 117 | Alterations Under Thirty Percent of Building Value |
| [103.4] | 118 | Alterations Involving Change in Occupancy or Use |
| | 118.1 | Illegal Alterations Involving Change in Occupancy |
| [103.5] | 119 | Alteration Cost: Building Value |
| [103.6] | 120 | Alterations to Multiple Dwellings and Conversions to Multiple Dwellings |
| [103.7] | 121 | Alterations to Residence Buildings |
| [103.8] | 122 | Alterations, Conversions from Seasonal to Year Round Use |
| [103.9] | 123 | Alterations, High Hazard Occupancies |
| | 123.1 | Alterations, Additions, Repairs and Changes in Occupancy or Use Requiring Facilities for People Having Physical Disabilities |
| | 123.2 | Provision of Sprinklers in Existing Buildings |
| [104.0] | Art. 5 | Minor Alterations: Ordinary Repairs |
| [104.1] | 124 | Minor Alterations |
| [104.2] | 125 | Ordinary Repairs |
| [104.3] | 126 | Work Not Constituting Minor Alterations or Ordinary Repairs |
| [105.0] | Art. 6 | Maintenance |
| [105.1] | 127 | Maintenance Requirements |
| [105.2] | 128 | Owner Responsibility |
| [105.3] | 129 | Exterior Walls and Appurtenances Thereof |
| [106.0] | Art. 7 | Materials, Assemblies, Forms and Methods of Construction |
| [106.1] | 130 | General Requirements |
| [106.2] | 131 | Acceptance Requirements |
| | 131.1 | Reference Standards |
| [106.3] | 132 | Inspection Requirements |
| [106.4] | 133 | Alternate or Equivalent Materials |
| [107.0] | Art. 8 | Service Equipment |
| [107.1] | 134 | General Requirements |
| [107.2] | 135 | Acceptance Requirements |
| [107.3] | 136 | Inspection Requirements |
| [107.4] | 137 | Alternate or Equivalent Equipment |
| [108.0] | Art. 9 | Approval of Plans |
| [108.1] | 138 | Separate Approval of Plans Required |
| [108.2] | 139 | Application for Approval of Plans |
| [108.3] | 140 | Applicant |
| | 140.1 | Registration Requirements |
| [108.4] | 141 | Plans |

Title 27 / Subchapter 1

| [108.5] | 142 | Applicant's Statement | [114.5] | 176 | Exemptions from Permit Requirement |
| [108.6] | 143 | Examination of Application and Plans | **[115.0]** | **Art. 16** | **Applications for Sign Permits** |
| [108.7] | 144 | Approval of Application and Plans | [115.1] | 177 | General Requirements |
| [108.8] | 145 | Conditional Approval of Plans | [115.2] | 178 | Plans Required |
| [108.9] | 146 | Endorsement of Approved Plans | [115.3] | 179 | Exemptions from Permit Requirements |
| **[109.0]** | **Art. 10** | **Permits** | | | |
| [109.1] | 147 | When Permits Required | **[116.0]** | **Art. 17** | **Applications for Equipment Work Permits** |
| [109.2] | 148 | Classification of Permits | | | |
| [109.3] | 149 | Separate Permits Required | [116.1] | 180 | When Equipment Work Permits Required |
| [109.4] | 150 | Application for Permit | | | |
| [109.5] | 151 | Applicant | [116.2] | 181 | Application Requirements |
| [109.6] | 152 | Other Application Requirements | | | |
| | | | [116.3] | 182 | Plans Required |
| [109.7] | 153 | Place of Filing Applications | [116.4] | 183 | Exemptions from Plan Requirements |
| [109.8] | 154 | Amendments to Applications | | | |
| | | | [116.5] | 184 | Exemptions from Permit Requirement |
| [109.9] | 155 | Time Limitation of Application | | 184.1 | Alteration and Repair Slip |
| **[110.0]** | **Art. 11** | **Applications for New Building Permits** | **[117.0]** | **Art. 18** | **Applications for Equipment Use Permits** |
| [110.1] | 156 | General Requirements | [117.1] | 185 | When Equipment Use Permits Required |
| [110.2] | 157 | Plans Required | | | |
| [110.3] | 158 | Datum | [117.2] | 186 | Application Requirements |
| [110.4] | 159 | Additional Information | | | |
| [110.5] | 160 | Certification of Performance Bond, License and Insurance Required | [117.3] | 187 | Inspections and Tests |
| | | | [117.4] | 188 | Temporary Use Permit |
| | | | [117.5] | 189 | Exemptions from Equipment Use Permit Requirement |
| **[111.0]** | **Art. 12** | **Applications for Building Alteration Permits** | | | |
| [111.1] | 161 | General Requirements | [117.6] | 190 | Duration and Renewal of Permit |
| [111.2] | 162 | Plans Required | | | |
| **[112.0]** | **Art. 13** | **Applications for Foundation and Earthwork Permits** | **[118.0]** | **Art. 19** | **Issuance of Permits** |
| | | | [118.1] | 191 | Approval of Permit Application |
| [112.1] | 163 | General Requirements | | | |
| [112.2] | 164 | Plans Required | [118.2] | 192 | Approval of Application in Part |
| [112.3] | 165 | Notice to Adjoining Owners | | | |
| [112.4] | 166 | Protection of Adjoining Properties | [118.3] | 193 | Signature to Permit |
| | | | [118.4] | 194 | Posting of Permit |
| **[113.0]** | **Art. 14** | **Applications for Demolition and Removal Permits** | [118.5] | 195 | Notice of Commencement of Work |
| [113.1] | 167 | General Requirements | [118.6] | 196 | Revocation of Permit |
| [113.2] | 168 | Requirement of Certifications | [118.8] | 198 | Approval of Plans and Permit Applications for Alteration or Demolition of Single Room Occupancy Multiple Dwellings |
| [113.3] | 169 | Notice to Adjoining Owners | | | |
| [113.4] | 170 | Protection of Lot and Adjoining Properties | | | |
| [113.5] | 171 | Requirement of Photographs | | | |
| **[114.0]** | **Art. 15** | **Applications for Plumbing Permits** | [118.9] | 198.1 | Approval of Plans and Permit Applications Where An Asbestos Project is Performed |
| [114.1] | 172 | General Requirements | | | |
| [114.2] | 173 | Plans Required | | | |
| [114.3] | 174 | Exemptions from Plan Requirements | [118.10] | 198.2 | Conversion, Alteration and Demolition of Single Room |
| [114.4] | 175 | Alteration and Repair Slip | | | |

0446

Title 27 / Subchapter 1

|  |  | Occupancy Multiple Dwellings Prohibited |
|  | 198.3 | Relocation of Tenants in Occupancy in Certain Single Room Occupancy Multiple Dwellings |
| **[119.0]** | **Art. 20** | **Conditions of Permit** |
| [119.1] | 199 | Payment of Fees |
| [119.2] | 200 | Compliance with Code, Etc. |
| [119.3] | 201 | Compliance with Application, Plans, Etc. |
| [119.4] | 202 | Adherence to Lot Diagram |
| [119.5] | 203 | Compliance with Safety Requirements |
| [119.6] | 204 | Builder's pavement |
| **[120.0]** | **Art. 21** | **Department Inspections** |
| [120.1] | 205 | Right of Entry and Inspection |
| [120.2] | 206 | Identification of Inspectors |
| [120.3] | 207 | General Provisions |
| [120.4] | 208 | Preliminary Inspection |
| [120.5] | 209 | Inspections During Progress of Work |
| [120.6] | 210 | Final Inspection |
| [120.7] | 211 | Inspection of Completed Buildings |
| [120.8] | 212 | Inspection Reports |
| **[121.0]** | **Art. 22** | **Certificates of Occupancy** |
| [121.1] | 213 | General Provisions |
| [121.2] | 214 | New Buildings; Sidewalk Requirements |
| [121.3] | 215 | Altered Buildings |
| [121.4] | 216 | Existing Buildings |
| [121.5] | 217 | Change of Occupancy or Use |
| [121.6] | 218 | Temporary Occupancy |
| [121.7] | 219 | Applications for Certificates of Occupancy |
| [121.8] | 220 | Applicant |
| [121.9] | 221 | Statement of Compliance |
| [121.10] | 222 | Issuance of Certificates of Occupancy |
| [121.11] | 223 | Contents of Certificates |
| [121.12] | 224 | Record of Certificates |
| **[122.0]** | **Art. 23** | **Posting Buildings** |
| [122.1] | 225 | Posted Occupancy and Use |
| [122.2] | 226 | Replacement of Posted Signs |
| **[123.0]** | **Art. 24** | **Stop-Work Order** |
| [123.1] | 227 | Stop-Work Notice and Order |
| [123.2] | 228 | Unlawful Continuance |
| **[124.0]** | **Art. 25** | **Fire Protection Plan** |
| [124.1] | 228.1 | Applicability |
| [124.2] | 228.2 | Scope |
| [124.3] | 228.3 | General Requirements |
| [124.4] | 228.4 | Retroactivity |
| **[125.0]** | **Art. 26** | **Special Filing Requirements** |
| [125.1] | 228.5 | General Requirements |

| Art. 27 | **Alternative Procedure for Certain Permits** |
|  |  |
| 228.6 | Contract with Not-For-Profit Corporation |
| 228.7 | Not-For-Profit Corporation |
| 228.8 | Examination and Approval of Plans |
| 228.9 | Issuance of Permits |
| 228.10 | Fees |
| 228.11 | Employment Conditions |
| 228.12 | Inspection |
| 228.13 | Records |
| 228.14 | Corruption Prevention Program |
| 228.15 | Performance Review by the Commissioner |
| 228.16 | Jurisdiction of the Fire Department |

*"C26" omitted from section numbers in this column.*
**"27" omitted from section numbers in this column.*

## ARTICLE 1  GENERAL PROVISIONS

§[C26-100.1]  **27-101 Title.-** This code shall be known and may be cited as the "building code of the city of New York", and is hereinafter referred to as "this code" or "the code".

§[C26-100.2]  **27-102 Purpose.-** The purpose of this code is to provide reasonable minimum requirements and standards, based upon current scientific and engineering knowledge, experience and techniques, and the utilization of modern machinery, equipment, materials, and forms and methods of construction, for the regulation of building construction in the city of New York in the interest of public safety, health and welfare, and with due regard for building construction and maintenance costs.

§[C26-100.3]  **27-103 Scope. -** This code shall apply to the construction, alteration, repair, demolition, removal, maintenance, occupancy and use of new and existing buildings in the city of New York, including the installation, alteration, repair, maintenance and use of service equipment therein, except as provided in section six hundred forty-three of the charter.

§[C26-100.4]  **27-104 Interpretation.-** This code shall be liberally interpreted to secure the beneficial purposes thereof. Any conflict or inconsistency between the requirements of this code and applicable state and federal laws and regulations shall be resolved in favor of the more restrictive requirement.

occupancy, provided that the addition of sprinkler heads in existing systems shall be limited to light hazard occupancy in rooms or spaces not exceeding eight hundred square feet requiring only one head with the maximum spacing allowed by the code, and provided that the number of new heads does not exceed a total of five.

(6)  Relocation of combined fire standpipe auxiliary hose sources and cabinets within ten feet of their original location, provided that the existing covered area is not affected and provided that such relocation complies with subchapter seventeen and reference standard RS 17-1.

(b)  Notwithstanding any inconsistent provision of this section, an application for an equipment work permit for work on an existing combined standpipe or sprinkler system may not be treated as an application for an alteration and repair slip for any alteration of primary or auxiliary water supplies.

(c)  Upon the approval of the application an alteration and repair slip shall be issued in lieu of an equipment work permit, with the same force and effect as if an equipment work permit had been issued.

(d)  The submission of plans shall not be required for an alteration and repair slip.

*Local Law 6-1997.*

## ARTICLE 18  APPLICATIONS FOR EQUIPMENT USE PERMITS

§[C26-117.1]  27-185  **When equipment use permits required.-**  Equipment use permits shall be required for the use and operation of the following types of service equipment:

(a)  Air-conditioning and ventilating systems.

(b)  Elevators, escalators, moving walks and stairways, dumbwaiters, etc.

(c)  Fuel-burning and fuel-oil storage equipment.

(d)  Refrigeration systems.

(e)  Heating systems.

(f)  Boilers.

§[C26-117.2]  27-186  **Application requirements.-**  All applications for equipment use permits shall be subject to the requirements of article ten of this subchapter.

§[C26-117.3]  27-187  **Inspections and tests.-**  No equipment use permit shall be issued unless and until the equipment shall have been inspected and tested to determine proper functioning and compliance with the provisions of this code and other applicable laws and regulations.  All inspections and tests shall be conducted in accordance with required inspection and test procedures; and signed copies of all required inspection and test reports shall be filed with the department and form part of the papers accompanying the permit application.  In the case of heating systems, a signed statement by an architect or engineer shall be submitted with the permit application, stating that the system has been operated and functions satisfactorily and that, to the best of his or her knowledge and belief, the system will meet code temperature requirements.

§[C26-117.4]  27-188  **Temporary use permit.-**  The commissioner may, upon request, issue a temporary use permit authorizing partial use and operation of the equipment prior to completion of the installation or alteration work, provided that such partial use and operation may be made safely and without endangering public health, safety and welfare, and further provided that such temporary use permit shall not be issued for a period of more than thirty calendar days, subject to renewal for additional thirty-day periods at the discretion of the commissioner.  All temporary use permits shall be required to be posted in a conspicuous location in or near the equipment covered by the permit, and shall state the nature and extent of the partial use and operation permitted and indicate clearly that full use and operation of the equipment is not permitted.

§[C26-117.5]  27-189  **Exemptions from equipment use permit requirement.-**  No equipment use permit shall be required for equipment exempted from the requirement of an equipment work permit under section 27-184 of article seventeen of this subchapter; nor shall an equipment use permit be required for the use and operation of equipment specifically exempted under the provisions of subchapters thirteen and fourteen of this chapter.

§[C26-117.6]  27-190  **Duration and renewal of permit.-**  Equipment use permits shall be of indefinite duration, subject to the provisions of section 27-196 of article nineteen of this subchapter, except that permits for the use and operation of elevators and similar equipment and boilers shall be limited to a term of one year from the date of issuance of the permit, subject to annual renewal upon application and proof of compliance with the requirements for periodic inspections as prescribed in subchapters fourteen and eighteen of this chapter.  Applications for renewal of such permits shall be submitted on forms furnished by the department, not later than thirty calendar days prior to the expiration date of the permit, accompanied by the required fee; and late applications for renewal shall be subject to the payment of an additional fee of one (1) dollar.

## ARTICLE 19  ISSUANCE OF PERMITS

§[C26-118.1]  27-191  **Approval of permit application.-**All applications for permits and any accompanying plans and papers, including any amendments thereto, shall be examined promptly after their submission for compliance with the

provisions of this code and other applicable laws and regulations. Except as otherwise provided in section 27-198 of this article, applications complying with the provisions of this code and other applicable laws and regulations shall be approved by the commissioner and the permit issued promptly and not later than forty calendar days after the submission thereof, and applications failing to comply with the requirements of this code and other applicable laws and regulations shall be rejected and written notice of rejection, stating the grounds of rejection, shall be given the applicant promptly and not later than forty calendar days after the submission thereof, except that on or before the fortieth day, the commissioner may on good cause shown, and upon notification to the applicant, extend such time for an additional twenty days. Whenever a permit application has been rejected and is thereafter revised and resubmitted to meet stated grounds of rejection, the revised application shall be approved if it meets the stated grounds of rejection, or shall be rejected if it fails to meet the stated grounds of rejection; and the permit shall be issued or written notice of rejection, stating the grounds of rejection, shall be given the applicant promptly and not later than 20 calendar days after the resubmission thereof.

§[C26-118.2] 27-192 Approval of application in part.- The commissioner may approve the application and issue a permit for construction of part of a building, including foundations, before complete plans and specifications for the entire building have been submitted and approved, provided that adequate information and detailed plans or statements have been submitted complying with the provisions of this code and any other applicable laws and regulations, and provided further that the holder of such permit shall proceed with the building operation at his or her own risk and without assurance that a permit for construction of the entire building will thereafter be issued.

§[C26-118.3] 27-193   Signature to permit.- Every permit issued by the commissioner shall have his or her signature affixed thereto; but the commissioner may authorize any subordinate to affix such signature.

§[C26-118.4] 27-194  Posting of permit.- A permit card bearing the permit number, application number, location of the premises or equipment for which the permit is issued, and such other information as the commissioner may determine, shall be furnished the applicant in connection with the issuance of the permit; and such permit card shall be posted in a conspicuous place at such location open to public inspection during the entire time of the prosecution of the work or the use and operation of the equipment, or until the expiration of the permit. No such permit card shall be posted or displayed at any location other than the location of the premises or equipment for which the permit was issued.

§[C26-118.5]  27-195  Notice of commencement of work.- At least twenty-four hours written notice shall be given to the commissioner before the commencement of any work for which a permit has been issued. Before any work is commenced on an item of construction requiring controlled inspection, all persons responsible for such controlled inspection shall be notified in writing at least seventy-two hours prior to such commencement.

*§[C26-118.6]  27-196  Expiration of permit.- Except as otherwise provided in section 27-190 of article eighteen of this subchapter, all permits issued by the commissioner shall expire by limitation and become invalid if the permitted work or use is not commenced within twelve months from the date of issuance of the permit or, if commenced, is suspended or abandoned for a period of twelve months thereafter. All permits for work in a special flood hazard area as delineated in reference standard RS4-4 shall expire if the actual start of permanent construction has not occurred within one hundred eighty-eight days of the date on which such permit is issued. The commissioner may, however, upon good cause shown, reinstate a work permit at any time within a period of two years from the date of issuance of the original permit, provided that the work shall comply with all the requirements of this code and other applicable laws and regulations in effect at the time application for reinstatement is made, and provided further that the applicant shall pay a renewal fee in accordance with section 26-211 of the code.
*Local Law 38-1990; Local Law 33-1988.

**§[C26-118.7]  27-197  Revocation of permit.- The commissioner may, on notice to the applicant, revoke any permit for failure to comply with the provisions of this code or other applicable laws and regulations; or whenever there has been any false statement or any misrepresentation as to a material fact in the application or accompanying plans and papers upon the basis of which the permit was issued; or whenever any permit has been issued in error and conditions are such that a permit should not have been issued. Such notice shall inform the applicant that he or she shall have the right to present to the commissioner or his or her representative within five business days or personal service or ten days of the posting of service by mail information as to why the permit should not be revoked. The commissioner may suspend a permit immediately when the commissioner has determined that an imminent peril to life or property exists and shall at the same time notify the applicant that the permit shall be revoked

and that the applicant has the right to present to the commissioner or his or her representative within five business days of personal service or ten days of the posting of service by mail information as to why the permit should not be revoked.
**Local Law 11-1988.*

### §[C26-118.8]  27-198  Approval of plans and permit applications for alteration or demolition of single room occupancy multiple dwellings.-

a.  For the purposes of this section "single room occupancy multiple dwelling" means either a class A multiple dwelling used in whole or in part as a rooming house or furnished room house or for single room occupancy pursuant to section two hundred forty-eight of the multiple dwelling law or containing rooming units, as such term is defined in section 27-2004 of the housing maintenance code or a class B multiple dwelling. Notwithstanding the foregoing provision, the term "single room occupancy multiple dwelling" shall not include:

(1) college or school dormitories;

(2) clubhouses;

(3) luxury hotels, as such term is defined by the commissioner of housing preservation and development;

(4) residences whose occupancy is restricted to an institutional use such as housing intended for use primarily or exclusively by the employees of a single company or institution;

(5) city-owned multiple dwellings;

(6) any multiple dwelling containing fewer than nine class B dwelling units used for single room occupancy unless the total number of such units is more than fifty percent of the total number of dwelling units in such multiple dwelling; and

(7) any class A or class B multiple dwelling which is

(a) The subject of a program approved by the commissioner of housing preservation and development and related to the rehabilitation and preservation of single room occupancy multiple dwellings other than a program of tax abatement or tax exemption including, but not limited to, programs of tax abatement or tax exemption authorized by subchapter two of chapter two of title eleven of the administrative code or section four hundred twenty-one-a-a of the real property tax law, and

(b) exempted from the provisions of this section by such commissioner.

b. (1) The commissioner shall not approve any plans pursuant to article nine of this subchapter, issue an alteration permit pursuant to article twelve of this subchapter or a demolition permit pursuant to article fourteen of this subchapter for a single room occupancy multiple dwelling:

(a) for the alteration of such dwelling to a class A multiple dwelling to be used in whole or in part for other than single room occupancy purposes or for the demolition of such dwelling, or

(b) with respect to the addition or removal of kitchen or bathroom facilities in such multiple dwelling or such other types of alteration work as shall be prescribed by regulation of the commissioner of housing preservation and development, in consultation with the commissioner, unless

(i) the commissioner of housing preservation and development has certified that there has been no harassment of the lawful occupants of such multiple dwelling within the thirty-six month period prior to the date of the submission of an application for a certification of no harassment or has issued a waiver of such certification,

(ii) the applicant has submitted a sworn statement by or on behalf of all the owners, as such term is defined in paragraph forty-five of subdivision a of section 27-2004 of the housing maintenance code, of such multiple dwelling that there will be no harassment of the lawful occupants of such multiple dwelling by or on behalf of such owners during the construction period, and

(iii) the applicant has submitted a plan which provides for the safety and health of the occupants thereof during the construction period.

(2) Notwithstanding the foregoing provisions, if within the thirty-six month period prior to the date of the submission of an application for a certification of no harassment to the commissioner of housing preservation and development, title to a single room occupancy multiple dwelling was vested in the city, the period of time for which the commissioner of housing preservation and development shall certify whether there has been no harassment of the lawful occupants of such multiple dwelling shall commence from the date on which the title to such property was no longer vested in the city.

(3) An applicant for such plan approval, alteration or demolition permit shall forward a copy of such application to the commissioner of housing preservation and development, together with an application for a certification of no harassment pursuant to section 27-2093 of the housing maintenance code.

(4) The time period in which the commissioner is required to approve or reject an application, or resubmission thereof, for such plan approval or alteration permit pursuant to section 27-144 or 27-191 of this subchapter shall commence from the date that the commissioner receives either such certification or a waiver thereof, or notice of the denial of such certification or waiver thereof from the commissioner of housing preservation and development and such sworn statement and plan.

(5) Where the commissioner of housing preservation and development denies the certification required by this section the commissioner shall reject

the application for such plan approval, alteration permit or demolition permit.

(6) The commissioner shall be empowered to issue a stop-work notice and order with respect to an alteration or demolition permit or rescind such plan approval, alteration or demolition permit at the request of the commissioner of housing preservation and development pursuant to section 27-2093 of the housing maintenance code.

(7) Where the commissioner rejects an application for such plan approval, alteration or demolition permit pursuant to paragraph five of this subdivision or where the commissioner rescinds such plan approval, alteration or demolition permit pursuant to paragraph six of this subdivision, no further application for plan approval, an alteration or demolition permit, for the purposes described in subdivision b of this section, with respect to the alteration or demolition of such multiple dwelling shall be considered by the commissioner for a period of thirty-six months following the date of the denial of the certification of no harassment by the commissioner of housing preservation and development or the date of the rescission of such certification of no harassment by such commissioner.

(8) The provisions of this subdivision shall not apply to repairs, demolition or any other work performed by a city agency or by a contractor pursuant to a contract with a city agency.

* (9) The commissioner shall not approve any plans or issue any permits based upon a certification of no harassment issued prior to February second, nineteen hundred eighty-seven unless the commissioner of housing preservation and development issues a supplemental certification that there is no reasonable cause to believe that there has been harassment at the multiple dwelling during the period of time from the date of the issuance of the original certification of no harassment to the date of the application for such a supplemental certification. If the commissioner of housing preservation and development finds that there is reasonable cause to believe that harassment has occurred during such period of time he or she shall suspend the original certification of no harassment pursuant to paragraphs two and three of subdivision f of section 27-2093 of the code.
*Local Law 9-1987; Local Law 59-1985, language juxtaposed per Ch. 907-1985.*

**§[C26-118.9] 27-198.1 Approval of plans and permit applications where an asbestos project is performed.-**

a.  The commissioner shall not approve any plans pursuant to article nine of this subchapter except plans for the construction of new buildings unless an asbestos investigator has certified that work to be performed will not constitute an asbestos project or the applicant submits with the application for approval of plans an asbestos inspection report completed in accordance with the provisions of section 24-146.1 of subchapter six of chapter one of title twenty-four of the code.

b.  Where the commissioner of environmental protection has by regulation required that, in connection with other work for which a permit but not plans is required under this chapter, that an asbestos investigator certify that the work to be performed will not constitute an asbestos project or that an asbestos inspection report be completed in accordance with the provisions of section 24-146.1 of subchapter six of chapter one of title twenty-four of the code, the commissioner shall not issue such permit unless such certification or such report is submitted in connection with the application for such permit.

c.  Where the commissioner of environmental protection has by regulation required that, in connection with work for which an alteration permit or demolition permit is required under this chapter, that an asbestos investigator certify that the work to be performed will not constitute an asbestos project or that the applicant submit with the application for such permit proof that an asbestos removal plan has been approved by the commissioner of environmental protection in accordance with the provisions of section 24-146.1 of subchapter six of chapter one of title twenty-four of the code, the commissioner shall not issue such permit unless such certification or proof of such approval has been submitted in connection therewith.

d.  The commissioner shall not issue any permit under this chapter for work which constitutes an asbestos project and for which an asbestos inspection report is required unless the applicant at the time of application for such permit certifies on forms prescribed by the commissioner of environmental protection that he or she is familiar with federal, state and local laws and regulations applicable to asbestos related work.

e.  Whenever proof of approval of an asbestos removal plan is required for plan or permit approval, any requirement for the submission of an asbestos inspection report shall be deemed waived.

f.  For purposes of this section, the terms "asbestos", "asbestos inspection report", "asbestos investigator", "asbestos project" and "asbestos removal plan", shall have the meanings as are ascribed in section 24-146.1 of subchapter six of chapter one of title twenty-four of the code.
**Local Law 80-1986. Not applicable to plans submitted prior to April 1, 1987 oramendments or revisions to such plans submitted prior to March 31, 1988; Local Law 76-1985, language juxtaposed per Ch. 907-1985.*

*§[C26-118.10] 27-198.2 Conversion, alteration and demolition of single room occupancy multiple dwellings prohibited.-**

a.  Except as otherwise provided in this section and notwithstanding any other provision of law to the contrary, no single room occupancy dwelling unit or

units or portions thereof (i) shall be altered for or converted to use as apartments, whether such alteration or conversion is effected   with or without physical alterations, or (ii) shall be altered for or converted to use other than as single room occupancy dwelling units, whether such alteration or conversion is effected with or without physical alterations, or (iii) shall be altered to add either kitchens or bathrooms if such units lacked either of such facilities as of January ninth, nineteen hundred eighty-five or to remove such facilities. No single room occupancy multiple dwelling shall be altered to reduce the number of single room occupancy dwelling units and no single room occupancy multiple dwelling shall be demolished. No single room occupancy multiple dwelling shall be altered to remove kitchens or bathroom facilities which are used for any single room occupancy dwelling unit.

b.  1. For the purposes of this section the term "single room occupancy multiple dwelling" means a multiple dwelling which is either (i) a class A multiple dwelling which is either used in whole or in part for single room occupancy or as a rooming house or furnished room house pursuant to section two hundred forty-eight of the multiple dwelling law or which contains rooming units or (ii) a class B multiple dwelling including, without limitation, hotels, lodging houses, rooming houses, boarding houses and furnished room houses. Notwithstanding the foregoing provision, the term "single room occupancy multiple dwelling" shall not include:

(a) any multiple dwelling which had a certificate of occupancy as a college or school dormitory on January ninth, nineteen hundred eighty-five or if the dwelling had no certificate of occupancy was lawfully used as a college or school dormitory on such date;

(b) any multiple dwelling which had a certificate of occupancy as a clubhouse on January ninth, nineteen hundred eighty-five or if the dwelling had no certificate of occupancy was lawfully used as a clubhouse on such date;

(c) any multiple dwelling which was a residence whose occupancy was restricted to an institutional use such as housing intended for use primarily or exclusively by the employees of a single company or institution on January ninth, nineteen hundred eighty-five;

(d)  multiple dwellings owned by the city, the state, or any political subdivision thereof;

(e) hotels in which the rent on October first, nineteen hundred eighty-four, exclusive of governmentally assisted rental payments, charged for seventy-five percent or more of the total number of occupied individual dwelling units was more than fifty-five dollars per day for each unit rented on a daily basis, or more than two hundred fifty dollars per week for each unit rented on a weekly basis or more than eight hundred fifty dollars per month for each unit rented on a monthly basis;

(f) any class A or class B multiple dwelling in which, on January ninth, nineteen hundred eighty-five, either less

than five dwelling units were rooming units or dwelling units other than apartments or less than ten percent of the total number of dwelling units were rooming units or dwelling units other than apartments;

(g) any class A or class B multiple dwelling which is (a) the subject of a project or program related to the rehabilitation and preservation of single room occupancy multiple dwellings approved by the commissioner of housing preservation and development other than a program of tax abatement or tax exemption including, but not limited to, programs of tax abatement or tax exemption authorized by subchapter two of chapter two of title eleven of the code or section four hundred twenty-one-a of the real property tax law, and (b) exempted from the provisions of this section by such commissioner;

(h)  any wood-frame multiple dwelling.

(i)  any hotel in which during the twelve month period commencing on January first, nineteen hundred eighty-four ninety percent or more of the dwelling units were occupied for less than thirty consecutive days by any one occupant and in which there are no dwelling units subject to regulation pursuant to the rent stabilization law of nineteen hundred sixty-nine, as amended, provided however that this provision shall not apply unless an application for exemption is filed with the department of housing preservation and development in such form and containing such information as the department shall prescribe on or before April thirtieth, nineteen hundred eighty-seven.

2. The status of a vacant building as a single room occupancy multiple dwelling shall be determined by its last legal use prior to vacancy.

3. For the purposes of this section the term "single room occupancy dwelling unit" means a dwelling unit, other than an apartment, in a single room occupancy multiple dwelling.

4. For the purposes of this section the terms "apartment", "dwelling unit", "owner" and "rooming unit" shall be as defined in the housing maintenance code.

c. 1. The commissioner shall not approve any plans pursuant to article nine of this subchapter, issue an alteration permit pursuant to article twelve of this subchapter or a demolition permit pursuant to article fourteen of this subchapter for a single room occupancy multiple dwelling:

(a)  for the alteration of such dwelling to a class A multiple dwelling to be used in whole or in part for other than single room occupancy purposes or for the demolition of such dwelling, or

(b) with respect to the addition or removal of kitchen or bathroom facilities in such multiple

dwelling prohibited pursuant to subdivision a of this section, or

(c) with respect to any other alterations or other work prohibited pursuant to subdivision a of this section.

2. Except as provided in paragraph three of this subdivision, the department shall revoke any such permit or approval granted on or after January ninth, nineteen hundred eighty-five.

3. If demolition of a single room occupancy multiple dwelling has been completed pursuant to a permit issued on or after January ninth, nineteen hundred eighty-five and prior to August fifth, nineteen hundred eighty-five, the department shall not issue a permit for new construction on the site of such demolished dwelling and shall revoke any such permit for new construction issued on or after January ninth, nineteen hundred eighty-five unless the owner makes the payment or provides for replacement units pursuant to subparagraph (a) of paragraph (4) of subdivision d of this section for each single room occupancy dwelling unit which was demolished.

4. The provisions of this section shall not apply to work done pursuant to any permit issued by the department prior to January ninth, nineteen hundred eighty-five.

a.   The provisions of subdivisions a and c shall not apply to a single room occupancy multiple dwelling if:

1. (a) such multiple dwelling had twenty-four or fewer dwelling units on January ninth, nineteen hundred eighty-five and

(i) on January first, nineteen hundred eighty-three and on January ninth, nineteen hundred eighty-five had seven or fewer occupied single room occupancy dwelling units, excluding any owner occupied single room occupancy dwelling units; or

(ii) an individual owner with at least a fifty percent fee interest in the multiple dwelling establishes to the satisfaction of the commissioner of the department of housing preservation and development prior to the issuance of any permit by the department of buildings for work which would otherwise be prohibited pursuant to subdivisions a and c of this section that he or she intends to occupy such premises as his or her primary residence for a period of not less than three years after completion of such work; and

(iii) an application to establish an exemption pursuant to this subparagraph is submitted to the department of housing preservation and development and such application is approved by the department; or

(b) such multiple dwelling had twenty-five or more dwelling units on January ninth, nineteen hundred eighty-five and the residential portion of such dwelling has been continuously vacant since January first, nineteen hundred eighty-three, an application to establish an exemption pursuant to this subparagraph is submitted to the department of housing preservation and development on or before May twenty-ninth, nineteen hundred eighty-

seven and such application is approved by such department; or

2. such multiple dwelling is within an area for which the department of city planning has issued a special permit prior to January ninth, nineteen hundred eighty-five which was conditioned upon a commitment by the developer to provide dwelling units as set forth in such special permit to replace the single room occupancy dwelling units which are lost; or

3. such multiple dwelling is determined by the department or by the fire department to be an unsafe building and the department determines there is no alternative to demolition; or

4. (a) (i) Prior to the issuance of a permit for work which would otherwise be prohibited pursuant to subdivisions a and c of this section, the owner of such single room occupancy multiple dwelling complies with the provisions of §27-198.3 of this code and further provides for the replacement of the single room occupancy dwelling units which would be altered, converted or demolished by paying, to the single room occupancy housing development fund company established pursuant to subdivision i of this section for each dwelling unit which would be altered, converted or demolished as a result of the work, forty-five thousand dollars or such other amount which the commissioner of housing preservation and development determines by regulation would equal the cost of creating a dwelling unit, other than an apartment, to replace such single room occupancy dwelling unit. No such regulation shall be promulgated before January first, nineteen hundred eighty-eight provided, however, that on and after such date such regulation shall be promulgated where the commissioner determines that the cost of creating such a dwelling unit, exceeds forty-five thousand dollars. Each regulation shall indicate the manner in which the cost of creating such a dwelling unit was determined. Notwithstanding the foregoing, where fifty percent or more of the dwelling units of such multiple dwelling are occupied as of January twentieth, nineteen hundred eighty-seven, the owner of such multiple dwelling shall be required to provided for replacement units pursuant to clause (ii) of this subparagraph for such units occupied as of such date; or

(ii) Prior to the issuance of a permit for work which would otherwise be prohibited pursuant to subdivisions a and c of this section, the owner replaces the single room occupancy dwelling units which would be altered, converted or demolished as a result of such work elsewhere within the city by providing dwelling units affordable to persons of low and moderate income, under a plan approved by such commissioner which complies with the provisions of §27-198.3 of this code. "Replacement" shall include but not be limited to the acquisition of an existing

0453

multiple dwelling or the creation of such dwelling units either by the construction of a new multiple dwelling or the substantial rehabilitation of an existing multiple dwelling. "Multiple dwelling" shall include but not be limited to a "single room occupancy multiple dwelling". In the event that an existing multiple dwelling is acquired for the purpose of providing replacement units, such multiple dwelling shall be located in the same or adjacent community board in which the single room occupancy multiple dwelling which is to be altered, converted or demolished is located. Where a replacement Plan is submitted to such commissioner, the commissioner shall give notice to the council member and community board for the community district in which the dwelling units to be provided pursuant to such plan are to be located. Such plan shall provide either for the sale or net lease of the multiple dwelling containing such dwelling units to a not-for-profit organization or for such other form of transfer of ownership, management or possession of such multiple dwelling approved by such commissioner.

(iii) Notwithstanding the provisions of item (i) or (ii) of this subparagraph, upon the submission of an application for a permit for such work an owner shall make an application for a certification of no harassment or supplemental certification of no harassment pursuant to the provisions of section 27-2093 of this code and if such application is denied by the commissioner of housing preservation and development or a certification is granted and thereafter revoked and the basis for such denial or revocation is predicated in whole or in part on a determination by such commissioner that harassment occurred at such multiple dwelling after January ninth, nineteen hundred eighty-five, no permit shall be issued on the basis of any payment made pursuant to item (i) or the provision of dwelling units pursuant to item (ii) and such owner shall be subject to the provisions of section 27-2151 of this code and subdivisions a and c of this section. In addition, the sanctions provided by section 27-198 shall apply and no permit shall be issued for a period of two years following the expiration of the sanction period set forth in section 27-198 unless the owner, prior to the issuance of such permit, makes a payment of twice the amount required by item (i) or provides for twice the number of replacement units required by item (ii) for each single room occupancy dwelling unit which would be demolished, altered or converted as a result of the issuance of such permit. Any payment made or replacement units provided prior to such denial or revocation shall be credited against such required amount or units.

(b) The amount of the payment required to be made or the number of dwelling units required to be provided pursuant to subparagraph (a) of this paragraph may be reduced in whole or in part by the commissioner of housing preservation and development if such commissioner determines that the owner has established:

(i) that there is no reasonable possibility that such owner can make a reasonable rate of return unless the property is altered or converted in a manner prohibited by subdivisions a and c of this section or demolished; and (ii) that neither the owner nor any prior owner intentionally managed the property to impair the ability to earn such return, and (iii) that the requirement that all single room occupancy dwelling units be replaced would substantially impair the feasibility of redeveloping the property for any other use. Such application shall be made to the commissioner of housing preservation and development in a form and manner and containing such information as the commissioner of housing preservation and development shall prescribe. The term "reasonable rate of return" is defined to mean a net annual return of eight and one-half percent of the assessed value of the subject property without recourse to the alteration, conversion or demolition prohibited by subdivisions a and c of this section. If the department of housing preservation and development determines that the assessed value of the subject property has increased as the result of the sale of such property, such department shall disregard the increase in the assessed value resulting from such sale to the extent that such department determines that the amount paid for the property at such sale was in excess of the fair market value of the property on the date of the sale if the property continued to be used for single room occupancy rental housing of the same type and quality after the sale. For the purpose of such determination the property shall be valued subject to the continuation of tenancies existing at the subject property immediately prior to the date of the sale. Notwithstanding the foregoing provision the commissioner shall revoke a determination reducing the payment or the number of replacement dwelling units if the denial or revocation of a certification of no harassment or supplemental certification of no harassment is predicated in whole or in part on a determination by such commissioner that harassment occurred at such multiple dwelling after January ninth, nineteen hundred eighty-five.

e. The department shall not issue a building permit to allow new construction on the site after demolition pursuant to paragraph three of subdivision d of this section unless the owner makes the payment or provides replacement units pursuant to subparagraph (a) of paragraph four of subdivision d of this section for each single room occupancy dwelling unit which is demolished, provided however that if the department of housing preservation and development determines that the conditions which necessitated or significantly contributed to the need for the demolition were not the result of violations of the housing maintenance code which resulted from intentional acts or substantial negligence of an owner or former owner or his or her agent or was the owner of record prior to January ninth, nineteen hundred eighty-five and such acts did not occur during the period of his or her ownership, the owner may

apply for a reduction of the required replacement units pursuant to subparagraph (b) of paragraph four of subdivision d of this section.

f.    Notwithstanding the provisions of section 27-2077 of the code for purposes of this section, rooming units for persons of low and moderate income provided pursuant to paragraph two or four of subdivision d of this section may be created through alterations of apartment units in a class A multiple dwelling.

g.*    Any person who violates the provisions of this section shall be subject to all of the remedies and penalties provided for in this title except that no civil or criminal penalties shall apply with respect to acts in violation of this section committed prior to August fifth, nineteen hundred eighty-five.

*As enacted but "1" probably intended.

2. In addition to any other penalties set forth in this subdivision or in any other provisions of law, any person who violates the provisions of this section following August fifth, nineteen hundred eighty-five shall also be liable for a civil penalty in the amount of one hundred fifty thousand dollars for each single room occupancy dwelling unit unlawfully altered, converted or demolished.

3. An owner who falsely represents an intention to occupy a dwelling in order to obtain a permit pursuant to clause (ii) of subparagraph (a) of paragraph one of subdivision d of this section to do work which would otherwise be prohibited pursuant to subdivisions a and c of this section shall be liable for a civil penalty of fifty thousand dollars for each single room occupancy dwelling unit demolished or converted to use as apartments under such permit.

4. Such civil penalties shall be recovered by the corporation counsel in an action in any court of competent jurisdiction. A judgement recovered in such an action shall constitute a lien against the premises with respect to which the violation occurred from the time of the filing of a notice of pendency in the office of the clerk of the county in which such premises is situated. A notice of pendency may be filed at the time of the commencement of this action or at any time before final judgement or order.

5. In addition to any other penalties set forth in this subdivision or in any other provisions of law, the commissioner shall either (i) refuse to issue or shall seek to have revoked the certificate of occupancy of a dwelling which has been altered, converted or demolished after August fifth, nineteen hundred eighty-five to reduce the number of single room occupancy dwelling units in violation of this section unless the owner makes the payment or provides replacement units pursuant to subparagraph (a) of paragraph four of subdivision d of this section for each single room occupancy dwelling unit which was unlawfully altered, converted or demolished, provided, however, that such owner shall not be eligible for a reduction in such payment pursuant to subparagraph (b) of paragraph four of subdivision d of this section; or (ii) order any single

room occupancy multiple dwelling to be restored so that the number of single room occupancy dwelling units is increased up to the number of such units prior to such alteration or conversion.

h.    All applications submitted pursuant to this section shall be accompanied by an affidavit of the owner attesting to the accuracy and truthfulness of the information contained therein and an application fee. The department of housing preservation and development is authorized to establish such reasonable fees as may be appropriate.

i.    The commissioner of housing preservation and development shall establish a single room occupancy housing development fund company pursuant to the provisions of article eleven of the private housing finance law or such other provision of law as may be deemed appropriate by the corporation counsel. Monies paid to the company shall be used for the preservation, acquisition and development of dwelling units for persons of low and moderate income pursuant to applicable provisions of law and a preference in the occupancy of such dwelling units shall be given to individuals who are of low income, are single adults and whose last residence was in a single room occupancy multiple dwelling unit which was altered, demolished or converted. On or before June thirtieth, nineteen hundred eighty-eight and annually thereafter the company shall submit a report to the city council and to the mayor describing its activities during the preceding calendar year.

j.    All civil penalties recovered pursuant to any provision of this section shall be single room occupancy housing fund development company established pursuant to subdivision i of this section.

k.    The provisions of this section shall not be construed to alter, affect or amend any of the provisions of the emergency housing rent control act, the emergency tenant protection act of nineteen seventy-four or any local laws enacted pursuant thereto, the emergency housing rent control law, the rent stabilization law of nineteen hundred sixty-nine and the local hotel stabilization law of nineteen hundred sixty-nine.

l. For the purpose of this section and §27-198.3, "commissioner of housing preservation and development" may also mean such other agency or office of the city, as the mayor may direct.

*Local Law 9-1987.

## *§ 27-198.3  Relocation of tenants in occupancy in certain single room occupancy multiple dwellings.-

a.    An owner who, pursuant to either clause (i) or (ii) of subparagraph (a) of paragraph four of subdivision d of section 27-198.2, seeks an exemption from the provisions of subdivisions a and c of such section, shall be required to offer tenants in

occupancy as of January twentieth, nineteen hundred eighty-seven, or thereafter, an opportunity for relocation to a comparable unit at a comparable rent and such comparable unit shall be located in the same borough in which the single room occupancy unit which is to be exempted is located. Any owner subjected to the provisions of subdivisions a and c of such section shall, on or before April first, nineteen hundred eighty-seven, submit to the commissioner of housing preservation and development a sworn statement containing a list of tenants in occupancy as of January twentieth, nineteen hundred eighty-seven. A "tenant in occupancy" shall be defined as an occupant of a dwelling unit within a single room occupancy multiple dwelling who has lawfully occupied such dwelling unit for thirty consecutive days or longer or who has entered into a lease with respect to such dwelling unit.

b.   On or before April first, nineteen hundred eighty-seven, an owner of a single room occupancy multiple dwelling subject to the provisions of subdivisions a and c of section 27-198.2 of this code shall both post in a conspicuous, common area in such multiple dwelling and mail to each occupant on an annual basis thereafter and to each new occupant within ten days of occupancy, a notice, in a form approved by the commissioner of housing preservation and development, setting forth the rights of tenants in occupancy pursuant to this section and other applicable provisions of law. Such owner shall be subject to a civil penalty of one hundred dollars per day for each and every day that such owner fails to mail, or to post such notice after April first, nineteen hundred eighty-seven.

c.   The commissioner of housing preservation and development shall not authorize the exemption of any single room occupancy dwelling unit from the prohibitions contained in subdivisions a and c of section 27-198.2 of this code unless the owner of such single room occupancy multiple dwelling shall submit a sworn statement to such commissioner accounting for all vacancies occurring at such multiple dwelling after January twentieth, nineteen hundred eighty-seven by submitting to such commissioner a sworn statement by each and every tenant in occupancy at such multiple dwelling, on January twentieth, nineteen hundred eighty-seven, or thereafter, who has vacated such multiple dwelling, that such tenant was advised by the owner, prior to vacating such dwelling, of his or her right to remain at such dwelling and his or her right to be offered relocation by such owner pursuant to this section. Where a vacancy has occurred at such multiple dwelling after January twentieth, nineteen hundred eighty-seven and the owner does not submit the affidavit of such tenant, the owner shall submit an affidavit to such commissioner stating either that such tenant wrongfully refused to sign such affidavit or, if the owner lacks knowledge of the cause for such vacancy, setting forth the period of such tenant's occupancy at such multiple dwelling, the date of such tenant's vacating of such multiple dwelling and the circumstances thereof. The commissioner shall have the discretion not to accept an affidavit which such

commissioner has reason to believe is substantially or materially inaccurate.

d.   Where an owner, pursuant to either clause (i) or (ii) of subparagraph four of subdivision d of section 27-198.2, seeks an exemption from the provisions of subdivisions a and c of such section for single room occupancy dwelling units which had tenants in occupancy as of the date of the application for such exemption, such owner shall submit to the commissioner of housing preservation and development a relocation plan for such tenants. If such plan is approved by such commissioner, the owner shall notify such tenants, in a form approved by such commissioner, of their right to elect to accept the offer of relocation pursuant to such plan within the period of ninety days from the date of such notification. A tenant in occupancy who fails to accept such an offer within such ninety day period or rejects such offer shall be deemed to have waived his or her right to relocation pursuant to this section. Upon approval of a relocation plan by such commissioner, the commissioner, shall notify those parties who have registered with the commissioner as being interested in providing tenants in occupancy with alternative offers of relocation.
*Local Law 9-1987.*

## ARTICLE 20  CONDITIONS OF PERMIT

§[C26-119.1]  27-199  **Payment of fees.**- No permit shall be issued unless and until the required fee or fees therefor, as prescribed in subchapter three of chapter one of title twenty-six of the administrative code shall have been paid.

§[C26-119.2]  27-200  **Compliance with code, etc.**- Permits shall be deemed to incorporate the provisions [*sic*] that the applicant, his or her agent, employees, and contractors shall carry out the permitted work or use in accordance with the provisions of this code and other applicable laws and regulations, whether specified or not, except insofar as variations therefrom have been legally permitted or authorized.

§[C26-119.3]  27-201  **Compliance with application, plans, etc.**-
All work shall conform to the approved application and accompanying plans and papers, and any approved amendments thereto.

§[C26-119.4]  27-202  **Adherence to lot diagram.**-
All work shall be located strictly in accordance with the approved lot diagram; and no lot or plot shall be changed, increased or diminished in area from that shown on the approved lot diagram, unless and until a revised diagram showing such changes, accompanied by the necessary statement of the owner or applicant,

**EXHIBIT 19**

# TITLE 27
# CONSTRUCTION AND MAINTENANCE

## CHAPTER 1
## BUILDING CODE

### SUBCHAPTER 1
### ADMINISTRATION AND ENFORCEMENT

### TABLE OF CONTENTS

| [Sub-Art. or Sec.]* | Art. or Sec.** | |
|---|---|---|
| [100.0] | Art. 1 | **General Provisions** |
| [100.1] | 101 | Title |
| [100.2] | 102 | Purpose |
| [100.3] | 103 | Scope |
| [100.4] | 104 | Interpretation |
| [100.5] | 105 | Effective Date |
| [100.6] | 106 | Enforcement |
| [100.7] | 107 | Variations |
| [100.9] | 108 | Application of References |
| [101.0] | Art. 2 | **Matters Covered** |
| [101.1] | 109 | Building Matters Covered |
| [101.2] | 110 | Matters Not Provided For |
| [102.0] | Art. 3 | **Continuation and Change in Use** |
| [102.1] | 111 | Continuation of Lawful Existing Use |
| [102.2] | 112 | Change in Occupancy or Use |
| [102.3] | 113 | Continuation of Unlawful Existing Use |
| [103.0] | Art. 4 | **Alteration of Existing Buildings** |
| [103.0] | 114 | Alteration of Existing Buildings |
| [103.1] | 115 | Alterations Exceeding Sixty Percent of Building Value |
| [103.2] | 116 | Alterations Between Thirty Percent and Sixty Percent of Building Value |
| [103.3] | 117 | Alterations Under Thirty Percent of Building Value |
| [103.4] | 118 | Alterations Involving Change in Occupancy or Use |
| | 118.1 | Illegal Alterations Involving Change in Occupancy |
| [103.5] | 119 | Alteration Cost: Building Value |
| [103.6] | 120 | Alterations to Multiple Dwellings and Conversions to Multiple Dwellings |
| [103.7] | 121 | Alterations to Residence Buildings |
| [103.8] | 122 | Alterations, Conversions from Seasonal to Year Round Use |
| [103.9] | 123 | Alterations, High Hazard Occupancies |
| | 123.1 | Alterations, Additions, Repairs and Changes in Occupancy or Use Requiring Facilities for People Having Physical Disabilities |
| | 123.2 | Provision of Sprinklers in Existing Buildings |
| [104.0] | Art. 5 | **Minor Alterations: Ordinary Repairs** |
| [104.1] | 124 | Minor Alterations |
| [104.2] | 125 | Ordinary Repairs |
| [104.3] | 126 | Work Not Constituting Minor Alterations or Ordinary Repairs |
| [105.0] | Art. 6 | **Maintenance** |
| [105.1] | 127 | Maintenance Requirements |
| [105.2] | 128 | Owner Responsibility |
| [105.3] | 129 | Exterior Walls and Appurtenances Thereof |
| [106.0] | Art. 7 | **Materials, Assemblies, Forms and Methods of Construction** |
| [106.1] | 130 | General Requirements |
| [106.2] | 131 | Acceptance Requirements |
| | 131.1 | Reference Standards |
| [106.3] | 132 | Inspection Requirements |
| [106.4] | 133 | Alternate or Equivalent Materials |
| [107.0] | Art. 8 | **Service Equipment** |
| [107.1] | 134 | General Requirements |
| [107.2] | 135 | Acceptance Requirements |
| [107.3] | 136 | Inspection Requirements |
| [107.4] | 137 | Alternate or Equivalent Equipment |
| [108.0] | Art. 9 | **Approval of Plans** |
| [108.1] | 138 | Separate Approval of Plans Required |
| [108.2] | 139 | Application for Approval of Plans |
| [108.3] | 140 | Applicant |
| | 140.1 | Registration Requirements |
| [108.4] | 141 | Plans |

59

Title 27 / Subchapter 1

| [108.5] | 142 | Applicant's Statement | [114.5] | 176 | Exemptions from Permit Requirement |
| [108.6] | 143 | Examination of Application and Plans | **[115.0]** | **Art. 16** | **Applications for Sign Permits** |
| [108.7] | 144 | Approval of Application and Plans | [115.1] | 177 | General Requirements |
| [108.8] | 145 | Conditional Approval of Plans | [115.2] | 178 | Plans Required |
| [108.9] | 146 | Endorsement of Approved Plans | [115.3] | 179 | Exemptions from Permit Requirements |
| **[109.0]** | **Art. 10** | **Permits** | | | |
| [109.1] | 147 | When Permits Required | **[116.0]** | **Art. 17** | **Applications for Equipment Work Permits** |
| [109.2] | 148 | Classification of Permits | | | |
| [109.3] | 149 | Separate Permits Required | [116.1] | 180 | When Equipment Work Permits Required |
| [109.4] | 150 | Application for Permit | | | |
| [109.5] | 151 | Applicant | [116.2] | 181 | Application Requirements |
| [109.6] | 152 | Other Application Requirements | | | |
| | | | [116.3] | 182 | Plans Required |
| [109.7] | 153 | Place of Filing Applications | [116.4] | 183 | Exemptions from Plan Requirements |
| [109.8] | 154 | Amendments to Applications | | | |
| | | | [116.5] | 184 | Exemptions from Permit Requirement |
| [109.9] | 155 | Time Limitation of Application | | | |
| | | | | 184.1 | Alteration and Repair Slip |
| **[110.0]** | **Art. 11** | **Applications for New Building Permits** | **[117.0]** | **Art. 18** | **Applications for Equipment Use Permits** |
| [110.1] | 156 | General Requirements | [117.1] | 185 | When Equipment Use Permits Required |
| [110.2] | 157 | Plans Required | | | |
| [110.3] | 158 | Datum | [117.2] | 186 | Application Requirements |
| [110.4] | 159 | Additional Information | | | |
| [110.5] | 160 | Certification of Performance | [117.3] | 187 | Inspections and Tests |
| | | Bond, License and Insurance | [117.4] | 188 | Temporary Use Permit |
| | | Required | [117.5] | 189 | Exemptions from Equipment Use Permit Requirement |
| [111.0] | **Art. 12** | **Applications for Building Alteration Permits** | | | |
| [111.1] | 161 | General Requirements | [117.6] | 190 | Duration and Renewal of Permit |
| [111.2] | 162 | Plans Required | | | |
| **[112.0]** | **Art. 13** | **Applications for Foundation and Earthwork Permits** | **[118.0]** | **Art. 19** | **Issuance of Permits** |
| | | | [118.1] | 191 | Approval of Permit Application |
| [112.1] | 163 | General Requirements | | | |
| [112.2] | 164 | Plans Required | [118.2] | 192 | Approval of Application in Part |
| [112.3] | 165 | Notice to Adjoining Owners | | | |
| [112.4] | 166 | Protection of Adjoining Properties | [118.3] | 193 | Signature to Permit |
| | | | [118.4] | 194 | Posting of Permit |
| **[113.0]** | **Art. 14** | **Applications for Demolition and Removal Permits** | [118.5] | 195 | Notice of Commencement of Work |
| [113.1] | 167 | General Requirements | [118.6] | 196 | Revocation of Permit |
| [113.2] | 168 | Requirement of Certifications | [118.8] | 198 | Approval of Plans and Permit Applications for Alteration or Demolition of Single Room Occupancy Multiple Dwellings |
| [113.3] | 169 | Notice to Adjoining Owners | | | |
| [113.4] | 170 | Protection of Lot and Adjoining Properties | | | |
| [113.5] | 171 | Requirement of Photographs | | | |
| **[114.0]** | **Art. 15** | **Applications for Plumbing Permits** | [118.9] | 198.1 | Approval of Plans and Permit Applications Where An Asbestos Project is Performed |
| [114.1] | 172 | General Requirements | | | |
| [114.2] | 173 | Plans Required | | | |
| [114.3] | 174 | Exemptions from Plan Requirements | [118.10] | 198.2 | Conversion, Alteration and Demolition of Single Room |
| [114.4] | 175 | Alteration and Repair Slip | | | |

60

Title 27 / Subchapter 1

| | | Occupancy Multiple Dwellings Prohibited |
| | 198.3 | Relocation of Tenants in Occupancy in Certain Single Room Occupancy Multiple Dwellings |
| **[119.0]** | **Art. 20** | **Conditions of Permit** |
| [119.1] | 199 | Payment of Fees |
| [119.2] | 200 | Compliance with Code, Etc. |
| [119.3] | 201 | Compliance with Application, Plans, Etc. |
| [119.4] | 202 | Adherence to Lot Diagram |
| [119.5] | 203 | Compliance with Safety Requirements |
| [119.6] | 204 | Builder's pavement |
| **[120.0]** | **Art. 21** | **Department Inspections** |
| [120.1] | 205 | Right of Entry and Inspection |
| [120.2] | 206 | Identification of Inspectors |
| [120.3] | 207 | General Provisions |
| [120.4] | 208 | Preliminary Inspection |
| [120.5] | 209 | Inspections During Progress of Work |
| [120.6] | 210 | Final Inspection |
| [120.7] | 211 | Inspection of Completed Buildings |
| [120.8] | 212 | Inspection Reports |
| **[121.0]** | **Art. 22** | **Certificates of Occupancy** |
| [121.1] | 213 | General Provisions |
| [121.2] | 214 | New Buildings; Sidewalk Requirements |
| [121.3] | 215 | Altered Buildings |
| [121.4] | 216 | Existing Buildings |
| [121.5] | 217 | Change of Occupancy or Use |
| [121.6] | 218 | Temporary Occupancy |
| [121.7] | 219 | Applications for Certificates of Occupancy |
| [121.8] | 220 | Applicant |
| [121.9] | 221 | Statement of Compliance |
| [121.10] | 222 | Issuance of Certificates of Occupancy |
| [121.11] | 223 | Contents of Certificates |
| [121.12] | 224 | Record of Certificates |
| **[122.0]** | **Art. 23** | **Posting Buildings** |
| [122.1] | 225 | Posted Occupancy and Use |
| [122.2] | 226 | Replacement of Posted Signs |
| **[123.0]** | **Art. 24** | **Stop-Work Order** |
| [123.1] | 227 | Stop-Work Notice and Order |
| [123.2] | 228 | Unlawful Continuance |
| **[124.0]** | **Art. 25** | **Fire Protection Plan** |
| [124.1] | 228.1 | Applicability |
| [124.2] | 228.2 | Scope |
| [124.3] | 228.3 | General Requirements |
| [124.4] | 228.4 | Retroactivity |
| **[125.0]** | **Art. 26** | **Special Filing Requirements** |
| [125.1] | 228.5 | General Requirements |

| | Art. 27 | **Alternative Procedure for Certain Permits** |
| | 228.6 | Contract with Not-For-Profit Corporation |
| | 228.7 | Not-For-Profit Corporation |
| | 228.8 | Examination and Approval of Plans |
| | 228.9 | Issuance of Permits |
| | 228.10 | Fees |
| | 228.11 | Employment Conditions |
| | 228.12 | Inspection |
| | 228.13 | Records |
| | 228.14 | Corruption Prevention Program |
| | 228.15 | Performance Review by the Commissioner |
| | 228.16 | Jurisdiction of the Fire Department |

*"C26" omitted from section numbers in this column.*
**"27" omitted from section numbers in this column.*

## ARTICLE 1 GENERAL PROVISIONS

**§[C26-100.1]  27-101 Title.-**  This code shall be known and may be cited as the "building code of the city of New York", and is hereinafter referred to as "this code" or "the code".

**§[C26-100.2]  27-102 Purpose.-**  The purpose of this code is to provide reasonable minimum requirements and standards, based upon current scientific and engineering knowledge, experience and techniques, and the utilization of modern machinery, equipment, materials, and forms and methods of construction, for the regulation of building construction in the city of New York in the interest of public safety, health and welfare, and with due regard for building construction and maintenance costs.

**§[C26-100.3]  27-103 Scope. -**  This code shall apply to the construction, alteration, repair, demolition, removal, maintenance, occupancy and use of new and existing buildings in the city of New York, including the installation, alteration, repair, maintenance and use of service equipment therein, except as provided in section six hundred forty-three of the charter.

**§[C26-100.4]  27-104 Interpretation.-**  This code shall be liberally interpreted to secure the beneficial purposes thereof. Any conflict or inconsistency between the requirements of this code and applicable state and federal laws and regulations shall be resolved in favor of the more restrictive requirement.

Title 27 / Subchapter 1

**§[C26-121.4]   27-216   Existing buildings.-** Upon application by the owner of an existing building, and subject to the provisions of section 27-111 of article three of this subchapter, the commissioner shall issue a certificate of occupancy for such building, provided that at the time of issuing such certificate, no notices of violation or other notices or orders affecting the building as they relate to the provisions of this code are pending before the department of buildings, and provided further that it is established to the satisfaction of the commissioner, after inspection and investigation, that the alleged use of the building has heretofore legally existed. The issuance of a certificate of occupancy for any existing building on waterfront property not used in conjunction with and in furtherance of waterfront commerce and/or navigation shall be conditioned upon compliance with the provisions of this code regulating means of egress, and upon the issuance of a certificate of completion by the commissioner of ports and trade, and shall be limited to the uses and purposes certified to therein.
*\*\*Local Law 14-1989; Local Law 5-1986, language juxtaposed per Ch. 907-1985.*

**§[C26-121.5]   27-217   Change of occupancy or use.-**
  (a)  No change shall be made in the occupancy or use of an existing building which is inconsistent with the last issued certificate of occupancy for such building, or which would bring it under some special provision of this code or other applicable law or regulation, unless a new certificate of occupancy is issued by the commissioner certifying that such building or part thereof conform to all of the applicable provisions of this code and all other applicable laws and regulations for the proposed new occupancy or use.
  (b)  Except as provided by law, a new certificate of occupancy shall not be required where the change of use is within the same use group as listed in the amended zoning resolution. Where a building exceeds three stories in height and the change does not exceed twenty per cent of the total floor area, an amendment to the existing certificate of occupancy for such new use shall be issued by the commissioner certifying that the proposed new occupancy and use conforms to the provisions of the laws governing building construction and that the proposed use will not be in conflict with any provisions of the labor law, multiple dwelling law or the zoning resolution.

**†§[C26-121.6]   27-218   Temporary occupancy.-** The commissioner may, upon request, issue a temporary certificate of occupancy for a part or parts of a building before the entire work covered by the permit shall have been completed, provided that such part or parts may be occupied safely prior to completion of the building and will not endanger public safety, health or welfare, and further provided that the temporary certificate of occupancy shall be issued initially for a period between ninety and one hundred eighty days, in the case of all buildings classified in occupancy group J-3 or three-family homes, and ninety days for all other buildings subject to renewal for additional ninety-day periods at the discretion of the commissioner. When an applicant applies for an initial temporary certificate of occupancy for longer than ninety days, he or she must state the reason necessary for the longer time period.
*†Local Law 12-1993.*

**\*§[C26-121.7]   27-219   Applications for certificates of occupancy.-** All applications for certificates of occupancy shall be submitted on forms furnished by the department. Each application shall be accompanied by an accurate and complete lot survey made by a licensed surveyor showing the location of any new building and/or any extension to an existing building, the elevation of the first tier of beams or the first floor, the finished grades of all open spaces on the lot, the location and controlling grades of watercourses, paved swales and similar above-grade methods of storm water disposal when permitted by this code, the locations of all catch basins on the property, the established curb level, and the location of all other structures and impervious surfaces, as defined in subdivision (a) of section P110.2 of reference standard RS-16, on the lot. Such lot survey shall also show the location and boundaries of the lot or plot upon which such buildings and structures are located. The commissioner may waive the requirement of such survey in the case of small sheds, stands, signs, and similar small structures. In addition, prior to the issuance of a certificate of occupancy the department shall confirm by inspection that all work relating to the installation of the part of the storm water drainage system which shall lie outside of such property, if and as required by section 24-526 of this code, has been satisfactorily completed.
*\*Local Law 65-1996;  Note: For Excerpts from Local Law 7-1974, see end of Subchapter 1; Local Law 103-1989.*

**§[C26-121.8]   27-220   Applicant.-** The application for a certificate of occupancy shall be made by or in behalf of the owner of the building premises; and if made by a person other than the owner, the application shall be accompanied by a signed statement of the applicant stating that he or she is authorized by the owner to make the application. The full names and addresses of the owner, lessee, and applicant, and of the principal officers thereof, if a corporation shall be stated in the application.

**§[C26-121.9]   27-221   Statement of compliance.-** When a certificate of occupancy for a new or altered building is applied for, the application shall be accompanied by a signed statement of the architect, engineer or other person who supervised or superintended

# EXHIBIT 20

HOUSING AND DEVELOPMENT ADMINISTRATION
DEPARTMENT OF BUILDINGS
DIRECTIVE NO. 14 of 1975

DEPARTMENTAL MEMORANDUM                    DATE: September 19, 1975

TO:      Borough Superintendents

FROM:    Commissioner Jeremiah T. Walsh, P.E.

SUBJECT: BUILDING NOTICES, PERMITS, APPROVALS AND INSPECTIONS

This directive supersedes Directive No. 12, issued August 29, 1975.

1.  Filing.  Upon filing a Building Notice application by a registered
architect or licensed professional engineer, and after payment of
required fees, a permit may be issued with limited examination, as
specified in the following subdivision 2, and without approval of the
application.  It will be required that proof of compensation insurance
and disability benefits insurance be filed before the permit is issued.

2.  Processing.

   a.  Upon filing of the Building Notice application by a registered
   architect or licensed professional engineer, the applicant
   shall be directed to carry the application and plans to the
   Chief Engineer of Engineering.  Either the Chief Engineer
   or his designated assistant, shall immediately review the
   application and plans to determine whether the application
   may be filed as a Building Notice and to ascertain whether
   the application shows conformance with zoning requirements.
   When these items are satisfactory, the application shall be
   so marked.  Otherwise, the application shall be marked that
   an alteration application is required or that a zoning objection
   applies.  When further examination for zoning requirements
   is necessary, the application shall be assigned to an examiner
   for zoning review only.  When such review cannot be made at
   once, the applicant shall be instructed to return the following
   workday at a time when the examiner has completed the zoning
   examination.

   b.  After review by the Chief Engineer or his assistant and when
   the application has been found to be in satisfactory order, the
   applicant is to be directed to the fee estimator, for check of
   the estimated cost and computation of fee.  He shall there-
   after pay the fee at the cashier's window and receive the
   permit, upon producing evidence of workmen's compensation
   insurance and disability benefits insurance.

980

3. Examination Requested and Limitations.  This procedure shall be followed for all Building Notice applications that are filed by registered architects or licensed professional engineers, except when examination is requested by the applicant.  When so requested, the application shall be examined when reached in turn, according to date of filing.  Building Notice applications that are not filed by a registered architect or licensed professional engineer shall be examined completely, and permits shall not be issued until the applications are approved.  Filing of such applications shall be limited in accordance with department regulations.

4.   Post Permit Review.  After issuance of permits, applications will be checked for compliance with applicable laws as the work load and availability of examiners permit, as determined by the Borough Superintendent.  Examination of an application so selected shall be complete.  Where non-compliance is found, corrective action shall be required.  Applications shall be selected at random so as to provide representative sampling.  The number of samplings shall be sufficient to permit the Borough Superintendent to be informed as to the extent of compliance with such applications.

5.  Inspection.  When an owner or lessee responsible for performance of the work elects to do so, he may employ a registered architect or licensed professional engineer to make inspections during progress of the work and upon completion.  In such case, the owner or lessee shall notify the Building Department of the name and address of such architect or engineer.  Where any work is found not in compliance with the plans or not in compliance with applicable laws, it shall be corrected and if not corrected, the department shall be notified by the architect or engineer and a violation requiring elimination of the defective work shall be filed.  Except when such notices are received, inspections by department inspectors will be made on a random basis, as staffing permits.

6.   Reports.  Controlled inspection reports and other reports relating to quality of concrete, ventilation, fire dampers and other requirements shall be filed by an architect or engineer before the work is reported as completed.  In addition, he shall file a certification that the work was performed in accordance with requirements of applicable laws, except as reported otherwise.  Upon receipt of all reports from the architect or engineer, including the report of completion, the application shall be filed with the completed applications.

7.   Limitations.  Building Notice applications may be filed for only that work permitted by memorandum of November 24, 1972, (page 714 of volumes of memorandums) entitled "Building Notice Applications."  The procedure set forth above shall apply only to Building Notice applications.

961

8.   Plans and Stamping.   Entries showing issuance of permits shall be made upon applications in accordance with current practice.  A cloth print and a paper print of plans shall be required.  Plans shall not be stamped as approved but shall be stamped with a permit stamp and number of permit and date shall be noted.

9.   Fees.  Applications shall be reviewed by fee examiners to insure that estimated costs and required fees are correct, before issuance of permits.

10.   Fairs and Carnivals.  Building Notice applications filed for fairs and carnivals shall be examined and approved before issuance of permits.

11.   Fire Safety Applications.  Applications filed to provide compliance with fire safety requirements of Local Law No. 5 of 1973, shall be examined for such compliance and shall be approved, before a permit is issued.  This requirement shall not apply to applications filed for the purpose of installing subdividing partitions, where because of the area of the floor, fire separation of floor areas is required, as incidental to the installation of the partitions.

This directive shall be effective immediately.


JTW/TVB/df

CC:   Exec. Staff
      Industry


                                    Jeremiah T. Walsh, P.E.
                                        Commissioner


982

0465

# EXHIBIT 21



**DEPARTMENT OF BUILDINGS**

EXECUTIVE OFFICES
60 HUDSON STREET, NEW YORK, N.Y. 10013

JOEL A. MIELE, Sr., P.E., COMMISSIONER

**BARRY G. COX**
Assistant Commissioner
Borough Operations
(212) 312-8004

Issuance #  493

---

## OPERATIONS
### POLICY AND PROCEDURE NOTICES  #17/95

---

**TO:**          Distribution

**FROM:**     Barry G. Cox

**DATE:**      27 December 1995

**SUBJECT:**    Adult Establishments

---------------------------------------------------------------------------------------------------------

**Reference:**    Zoning Resolution Sections 11-113, 11-30, 12-10, 32-00, 42-00,  42-55, 51-00, 52-00, and 72-00, et seq.

**Purpose:**      To establish a procedure to assure the provisions of the Zoning Resolution relating to adult establishments is accurately enforced.

**Effective:**    October 25, 1995

**Specifics:**

◆          **Filing Process:**

**Applicant:**
          Directive 14 of 1975 and the Professional Certification of Application and Plans Process (PPN #2/95) may not be used for any filing related to adult establishments.

          In Section 16 (comments) of the PW1, the applicant shall indicate whether the filing he/she is making is to create, enlarge or extend  an adult establishment or to erect a business

sign accessory to such an adult establishment.

The application shall also include a separate area diagram detailing all existing uses and block and lot numbers within a 500 foot radius of the zoning lot of the adult establishment and include the location of any adult establishment identified on the enclosed list from the Department of City Planning. (Appendix A)

. **Plan Examiner:**

An objection shall be raised if there exists another adult establishment within 500 feet of the proposed use or on the same zoning lot or if the establishment is in the wrong zoning district. Examiners should be guided by Appendix B.

. **Permit Clerk:**

Prior to issuing a work permit for an adult establishment, the clerk shall refer the applicant to the Borough Commissioner (or his/her designee) who shall verify from a batch report of all applications filed on or after October 25, 1995 to create, enlarge or extend an adult establishment made available weekly by MIS, that the new establishment meets the criteria established under the Zoning Resolution.

◆       **Enforcement Process:**

*Borough Complaint Clerk:*

   *For all Boroughs Except Manhattan:*

Any complaint received about an adult establishement shall be data entered onto BIS using complaint category code 75. The complaint will automatically be assigned a "B" priority. The jurisdiction must state "refer to Operations", category 98.

The disposition of the complaint by the Night Squad shall be data entered upon being returned to the Borough office and a written response letter generated to the complainant.

   *For Manhattan Only:*

Any complaint received about an adult establishment shall be data entered onto BIS using complaint category code 75. The complaint will automatically be assigned a "B" priority. The jurisdiction must state "refer to Office of Midtown Enforcement" category G7.

A written response letter will be generated and mailed to the complainant indicating the complaint was referred to the Office of Midtown Enforcement, 330 West 42nd Street, 15th Floor, New York, N.Y. 10036.

0468

On a weekly basis, the Borough office shall batch these complaint letters to that Office for investigation.

_Executive Chief Inspector's Office_:

The Executive Chief shall secure a city-wide BIS printout of all category code 75 complaints on a weekly basis, print out the required work orders and route the Night Squad inspectors to these premises.

Complaints about premises appearing on Appendix A shall not be inspected prior to October 25, 1996 unless the complaint alleges such premises has been enlarged or the use extended.

The Executive Chief's office shall request the respective borough office to provide the following information with respect to each premises to be inspected:

> * Certificate of occupancy
> * sign permits
> * any other documentation which may establish the existing legal use of the premises.
> * Zoning or Sanborn map showing premises location.

_Night Emergency Squad_:

Any Department of Buildings notice of violation written for violating Zoning Resolution Section 11-113 must identify the specific type of adult establishment defined in Zoning Resolution Section 12-10 as either:

> * An Adult Bookstore, or
> * Adult Eating or Drinking Establishment, or
> * An Adult Theater or
> * Other commercial establishment or
> * Any combination of the above

To the extent possible, the Night Squad log should include a brief layout of any premises inspected, the extent of the adult establishment and a description of the activities taking place in the premises. Backup documentation and the results of the inspection written on the work order shall be submitted to the Executive Chief who shall review the materials. If a determination is made that a violation should be issued, it shall be returned to the respective Borough Office for data entry.

Inspectors should refer to Appendix B for further guidance.

BGC:yaj
adult.est

3

0469

OCP SURVEY OF ADULT ENTERTAINMENT ESTABLISHMENTS, FALL 1993

1
12:30 Wednesday, November 15, 1995

-------------------------------------------------- BORO=MANHATTAN --------------------------------------------------

| CD | TAXBLOCK | TAXLOT | NAME | ADDRESS | | USE |
|----|----------|--------|------|---------|---|-----|
| 01 | 53 | 38 | THUNDER XXX VIDEO | 100 | GREENWICH ST | VIDEO STORE |
| 01 | 53 | 39 | PUSSYCAT LOUNGE | 96 | GREENWICH ST | TOPLESS BAR |
| 01 | 65 | 10 | XXX VIDEO | 11 | MAIDEN LANE | VIDEO STORE |
| 01 | 90 | 21 | ADULT VIDEO | 21 | ANN ST | VIDEO STORE |
| 01 | 92 | 26 | KINDLS | 118 | NASSAU ST | TOPLESS BAR |
| 01 | 133 | 15 | THE DOLL HOUSE | 59 | MURRAY ST | TOPLESS BAR |
| 01 | 150 | 6 | DESIRE VIDEO | 68 | READE ST | VIDEO STORE |
| 01 | 175 | 16 | HARMONY THEATRE | 279 | CHURCH ST | OTHER THEATER |
| 01 | 193 | 17 | BABY DOLL LOUNGE | 34 | WHITE ST | TOPLESS BAR |
| 02 | 211 | 28 | LOVESTYLE VIDEO | 376 | CANAL ST | VIDEO STORE |
| 02 | 228 | 10 | XXX VIDEO SALE | 377 | CANAL ST | VIDEO STORE |
| 02 | 230 | · | XXX VIDEO SALE | 323 | CANAL ST | VIDEO STORE |
| 08 | 434 | 6 | CHIPPENDALES | 110 | 1ST AV | TOPLESS BAR |
| 02 | 528 | 52 | XXX VIDEO | 220 | VARICK ST | VIDEO STORE |
| 03 | 558 | 30 | ALL MALE JEWEL THEATRE | 100 | 3RD AV | MOVIE THEATER |
| 02 | 577 | 1 | XXX VIDEO SALE | 520 | 6TH AV | VIDEO STORE |
| 02 | 585 | 49 | CHRISTOPHER ST BOOKS | 500 | HUDSON ST | VIDEO STORE |
| 02 | 589 | 28 | CRAZY FANTASY XXX VIDEO | 331 | 6TH AV | VIDEO STORE |
| 02 | 596 | 1 | PRINCE THEATER | 329 | WEST ST | MOVIE THEATER |
| 02 | 619 | 45 | XXX VIDEO | 119 | CHRISTOPHER ST | VIDEO STORE |
| 02 | 630 | 30 | HARMONY VIDEO | 139 | CHRISTOPHER ST | VIDEO STORE |
| 02 | 636 | 1 | BADLANDS ADULT VIDEO | 388 | WEST ST | VIDEO STORE |
| 02 | 636 | 4 | XXX VIDEO | 391 | WEST ST | VIDEO STORE |
| 04 | 699 | 1 | PURE GOLD | 262 | 11TH AV | TOPLESS BAR |
| 04 | 761 | 31 | ZIDEO XX VIDEO | 539 | 8TH AV | BOOK STORE |

PREPARED BY NYC DEPARTMENT OF CITY PLANNING, GIS/PLANNING SUPPORT

APPENDIX - A

0470

DCP SURVEY OF ADULT ENTERTAINMENT ESTABLISHMENTS, FALL 1993

-------------------------------------------------- BORO=MANHATTAN ------ --------------------------------------------------
(continued)

| CD | TAXBLOCK | TAXLOT | NAME | ADDRESS | | USE |
|----|----------|--------|------|---------|---|-----|
| 04 | 763 | 42 | 300 BOOK STORE | 300 | W 40TH ST | VIDEO STORE |
| 04 | 763 | 44 | BACK DATE MAGAZINES | 304 | W 40TH ST | BOOK STORE |
| 04 | 771 | 6 | ADULT VIDEO | 228 | 8TH AV | VIDEO STORE |
| 04 | 778 | 34 | CLUB 90 | 208 | W 29TH ST | TOPLESS BAR |
| 05 | 780 | 70 | PENN VIDEO | 252 | W 31ST ST | VIDEO STORE |
| 05 | 784 | 5 | ADULT ENTERTAINMENT CENTER | 488 | 8TH AV | PEEP SHOW |
| 05 | 787 | 1 | MEDALIOS | 552 | 8TH AV | TOPLESS BAR |
| 04 | 793 | 37 | XXX VIDEO | 603 | 6TH AV | VIDEO STORE |
| 04 | 798 | 11 | ALL-STAR HARMONY CLUB | 161 | W 22ND ST | TOPLESS BAR |
| 04 | 799 | 40 | ADULT VIDEO XXX | 725 | 6TH AV | VIDEO STORE |
| 04 | 799 | 42 | BILLYS TOPLESS | 729 | 6TH AV | TOPLESS BAR |
| 04 | 801 | 36 | SERENDIB XXX VIDEO & PEEP | 755 | 6TH AV | VIDEO STORE |
| 04 | 803 | 35 | ADULT VIDEO | 795 | 6TH AV | VIDEO STORE |
| 05 | 809 | 8 | PEEPWORLD | 155 | W 33RD ST | VIDEO STORE |
| 05 | 821 | 55 | TEXAS GOLD | 20 | W 20TH ST | TOPLESS BAR |
| 05 | 832 | 46 | VOGUE VIDEO | 296 | 5TH AV | VIDEO STORE |
| 05 | 834 | 69 | WORLD FAMOUS PARADISE | 42 | W 33RD ST | TOPLESS BAR |
| 05 | 840 | 12 | BANANA VIDEO | 55 | W 38TH ST | VIDEO STORE |
| 05 | 840 | 81 | MANHATTAN VIDEO | 60 | W 39TH ST | BOOK STORE |
| 05 | 843 | 39 | SALAX IN NEW YORK | 16 | E 16TH ST | TOPLESS BAR |
| 05 | 850 | 25 | STRINGFELLOW | 35 | E 21ST ST | TOPLESS BAR |
| 05 | 860 | 30 | A CARNIVALE | 39 | E 30TH ST | BOOK STORE |
| 06 | 896 | 1 | ALL MALE ADULT VIDEO | 125 | 3RD AV | VIDEO STORE |
| 06 | 896 | 2 | XXX VIDEO | 127 | 3RD AV | VIDEO STORE |

PREPARED BY NYC DEPARTMENT OF CITY PLANNING, GIS/PLANNING SUPPORT

DCP SURVEY OF ADULT ENTERTAINMENT ESTABLISHMENTS, FALL 1993

12:30 Wednesday, November 15, 1995   3

-------------------------------- BORO-MANHATTAN --------------------------------
(continued)

| CD | TAXBLOCK | TAXLOT | NAME | | ADDRESS | USE |
|----|----------|--------|------|---|---------|-----|
| 06 | 917 | 156 | 24-HOUR XXX VIDEO | 557 | 3RD AV | VIDEO STORE |
| 06 | 921 | 1 | | 301 | E 14TH ST | VIDEO STORE |
| 05 | 994 | 47 | LES GALS | 136 | W 42ND ST | PEEP SHOW |
| 05 | 995 | 26 | FUN CITY | 113 | W 42ND ST | VIDEO STORE |
| 05 | 995 | 26 | 113 VIDEO CENTER | 113 | W 42ND ST | VIDEO STORE |
| 05 | 1000 | 64 | JOCKS | 711 | 7TH AV | OTHER THEATER |
| 05 | 1000 | 64 | SHOW FOLLIES CENTER | 711 | 7TH AV | BOOK STORE |
| 05 | 1001 | 3 | METROPOLE GOGO (RUNWAY 69) | 725 | 7TH AV | TOPLESS BAR |
| 05 | 1012 | 63 | XXX NECTAR | 632 | 8TH AV | VIDEO STORE |
| 05 | 1013 | 29 | L & J BOOKS & VIDEOS | 584 | 7TH AV | PEEP SHOW |
| 05 | 1013 | 35 | FORSYTH BOOKS | 598 | 7TH AV | BOOK STORE |
| 05 | 1013 | 37 | VIDEO WORLD CENTER | 210 | W 42ND ST | PEEP SHOW |
| 05 | 1013 | 53 | ROXY MOVIE | 244 | W 42ND ST | MOVIE THEATER |
| 05 | 1013 | 55 | NEPTUNE VIDEO | 252 | W 42ND ST | VIDEO STORE |
| 05 | 1013 | 55 | 250 BOOKSTORE | 250 | W 42ND ST | BOOK STORE |
| 05 | 1013 | 57 | EROTICA | 256 | W 42ND ST | VIDEO STORE |
| 05 | 1013 | 57 | NIMBLE VIDEO | 254 | W 42ND ST | VIDEO STORE |
| 05 | 1014 | 1 | TIME COME VIDEO | 263 | W 42ND ST | VIDEO STORE |
| 05 | 1014 | 1 | TIMES SQ ADULT SHOPPING CENTER | 267 | W 42ND ST | VIDEO STORE |
| 05 | 1014 | 5 | SHOW CENTER | 259 | W 42ND ST | PEEP SHOW |
| 05 | 1014 | 6 | G & A BOOKS | 251 | W 42ND ST | BOOK STORE |
| 05 | 1014 | 10 | HAREM | 249 | W 42ND ST | MOVIE THEATER |
| 05 | 1014 | 11 | VIDEO BLOW OUT | 247 | W 42ND ST | VIDEO STORE |
| 05 | 1014 | 13 | 241 BOOK INC | 241 | W 42ND ST | BOOK STORE |

PREPARED BY NYC DEPARTMENT OF CITY PLANNING, CIS/PLANNING SUPPORT

DCP SURVEY OF ADULT ENTERTAINMENT ESTABLISHMENTS, FALL 1993

12:30 Wednesday, November 15, 1995                    4

------------------------------------ BORO-MANHATTAN ------------------------------------
(continued)

| CD | TAXBLOCK | TAXLOT | NAME | ADDRESS | | USE |
|----|----------|--------|------|---------|---|-----|
| 05 | 1014 | 58 | SUPER VIDEO | 264 | W 43RD ST | VIDEO STORE |
| 05 | 1014 | 59 | PLAYPEN | 266 | W 43RD ST | BOOK STORE |
| 05 | 1014 | 60 | THE MALE BOX | 268 | W 43RD ST | VIDEO STORE |
| 05 | 1014 | 63 | SLR MERCHANDISING | 672 | 8TH AV | BOOK STORE |
| 05 | 1014 | 64 | SHOW PALACE | 670 | 8TH AV | BOOK STORE |
| 05 | 1017 | 2 | VENUS CINEMA | 728 | 8TH AV | MOVIE THEATER |
| 05 | 1017 | 63 | CAPRI THEATER | 738 | 8TH AV | MOVIE THEATER |
| 05 | 1017 | 63 | EROS THEATER | 738 | 8TH AV | MOVIE THEATER |
| 05 | 1017 | 105 | MARQUIS VIDEO | 265 | W 45TH ST | VIDEO STORE |
| 05 | 1018 | 39 | LAPS | 204 | W 47TH ST | MOVIE THEATER |
| 05 | 1019 | 3 | XXX VIDEO | 776 | 8TH AV | VIDEO STORE |
| 05 | 1020 | 38 | CIRCUS CINEMA | 1606 | BROADWAY | MOVIE THEATER |
| 05 | 1020 | 38 | PINKS | 204 | W 49TH ST | OTHER THEATER |
| 05 | 1021 | 49 | ADULT VIDEO EXPRESS | 216 | W 50TH ST | VIDEO STORE |
| 05 | 1024 | 131 | FLASH DANCERS | 1572 | BROADWAY | TOPLESS BAR |
| 05 | 1025 | 50 | NEW DAVID | 236 | W 54TH ST | OTHER THEATER |
| 05 | 1026 | 15 | FAMOUS LEGZ DIAMOND | 231 | W 54TH ST | TOPLESS BAR |
| 04 | 1033 | 32 | SHOW WORLD | 669 | 8TH AV | BOOK STORE |
| 04 | 1034 | 32 | CLUB 44 | 689 | 8TH AV | TOPLESS BAR |
| 04 | 1034 | 33 | XXX-TASY VIDEO | 691 | 8TH AV | PEEP SHOW |
| 04 | 1034 | 34 | ADONIS THEATER | 693 | 8TH AV | MOVIE THEATER |
| 04 | 1034 | 60 | NEW KING MALE CINEMA | 356 | W 44TH ST | MOVIE THEATER |
| 04 | 1037 | 34 | ADULT VIDEO | 763 | 8TH AV | VIDEO STORE |
| 04 | 1038 | 31 | HOLLYWOOD TWIN | 777 | 8TH AV | MOVIE THEATER |

PREPARED BY NYC DEPARTMENT OF CITY PLANNING, CIS/PLANNING SUPPORT

0473

DCP SURVEY OF ADULT ENTERTAINMENT ESTABLISHMENTS, FALL 1993

-------------------------------------------------- BORO=MANHATTAN --------------------------------------------------
(continued)

| CD | TAXBLOCK | TAXLOT | NAME | | ADDRESS | | USE |
|----|----------|--------|------|---|---------|---|-----|
| 04 | 1038 | 31 | HOLLYWOOD TWIN ADULT VIDEO | 777 | 8TH AV | | VIDEO STORE |
| 04 | 1096 | 1 | THE XXX VIDEO | 644 | 12TH AV | | VIDEO STORE |
| 07 | 1145 | 61 | AMSTERDAM AVE VIDEO | 287 | AMSTERDAM AV | | VIDEO STORE |
| 07 | 1228 | 22 | ESHOMMES | 217 | W 80TH ST | | VIDEO STORE |
| 06 | 1302 | 123 | FLASH DANCERS DANGEROUS CURVES | 127 | E 47TH ST | | TOPLESS BAR |
| 06 | 1326 | 36 | LIONS DEN | 230 | E 53RD ST | | VIDEO STORE |
| 06 | 1326 | 40 | HOUSE OF DREAMS | 220 | E 53RD ST | | VIDEO STORE |
| 06 | 1326 | 40 | LOVE TO LOVE | 220 | E 53RD ST | | VIDEO STORE |
| 06 | 1347 | 52 | THE DOLL HOUSE | 307 | E 54TH ST | | TOPLESS BAR |
| 08 | 1435 | 16 | SCORES | 333 | E 60TH ST | | TOPLESS BAR |

N = 107

PREPARED BY NYC DEPARTMENT OF CITY PLANNING, CIS/PLANNING SUPPORT

0474

DCP SURVEY OF ADULT ENTERTAINMENT ESTABLISHMENTS, FALL 1993

6
12:30 Wednesday, November 15, 1995

-------------------------------------------------- BORO=BRONX --------------------------------------------------

| CD | TAXBLOCK | TAXLOT | NAME | | ADDRESS | USE |
|----|----------|--------|------|---|---------|-----|
| 05 | 2875 | 45 | ALTAGRACIA RESTAURANT | 1548 | UNIVERSITY AVE | TOPLESS BAR |
| 05 | 3164 | 31 | ASCOT MOVIE THEATRE | 2313 | GRAND CONCOURSE | MOVIE THEATER |
| 08 | 3266 | 112 | JUST US BAR | 156 | W 231ST ST | TOPLESS BAR |
| 11 | 4317 | 50 | GLOBE THEATER | 640 | PELHAM PARKWAY S | MOVIE THEATER |
| 12 | 4804 | 100 | MICKEY & ANTHONYS CABARET | 1769 | E GUN HILL RD | TOPLESS BAR |
| 12 | 4953 | 122 | PRETTY WOMAN | 4141 | BOSTON RD | TOPLESS BAR |
| 12 | 5275 | 6 | FOOLS PARADISE | 4074 | BOSTON RD | TOPLESS BAR |
| 10 | 5576 | 102 | RUFFLES BAR | 4026 | E TREMONT AVE | TOPLESS BAR |

N = 8

PREPARED BY NYC DEPARTMENT OF CITY PLANNING, CIS/PLANNING SUPPORT

0475

DCP SURVEY OF ADULT ENTERTAINMENT ESTABLISHMENTS, FALL 1993

-------------------------------------- BORO=BROOKLYN ------------ --------------------------------------

| CD | TAXBLOCK | TAXLOT | NAME | | ADDRESS | USE |
|----|----------|--------|------|---|---------|-----|
| 02 | 268 | 52 | PANDORA BOOKS | 88 | COURT ST | BOOK STORE |
| 07 | 654 | 7 | VIDEO XXX WAREHOUSE | 761 | 3RD AV | VIDEO STORE |
| 07 | 687 | 1 | FOXY DEN | 920 | 3RD AV | TOPLESS BAR |
| 07 | 695 | 38 | VIDEO XXX | 952 | 3RD AV | VIDEO STORE |
| 07 | 706 | 24 | CORRADOS CLUB | 3915 | 1ST AV | TOPLESS BAR |
| 07 | 707 | 9 | WILD WILD WEST | 3901 | 2ND AV | TOPLESS BAR |
| 07 | 722 | 8 | MOMS BAR | 4201 | 2ND AV | TOPLESS BAR |
| 06 | 1009 | 5 | PLAYPEN ADULT VIDEO | 463 | 3RD AV | VIDEO STORE |
| 02 | 2012 | 70 | VIDEO XXX | 851 | ATLANTIC AV | VIDEO STORE |
| 12 | 5719 | 35 | VIDEO XXX | 1368 | 60TH ST | VIDEO STORE |
| 07 | 5789 | 46 | CORKSCREW CAFE | 6120 | 3RD AV | TOPLESS BAR |
| 15 | 6774 | 45 | THE RUBY CLUB | 1105 | QUENTIN RD | TOPLESS BAR |
| 15 | 6774 | 45 | XXX VIDEO | 1103 | QUENTIN RD | VIDEO STORE |
| 15 | 7170 | 42 | THE CABARET | 2937 | 86 ST | TOPLESS BAR |
| 14 | 7557 | 40 | CLUB CHEETAH | 1496 | FLATBUSH AV | TOPLESS BAR |

N = 15

PREPARED BY NYC DEPARTMENT OF CITY PLANNING, CIS/PLANNING SUPPORT

0476

DCP SURVEY OF ADULT ENTERTAINMENT ESTABLISHMENTS, FALL 1993

12:30 Wednesday, November 15, 1995       8

----- BORO=QUEENS -----

| CD | TAXBLOCK | TAXLOT | NAME | | ADDRESS | USE |
|----|----------|--------|------|--|---------|-----|
| 02 | 25 | 9 | RIVERHEAD INN | 45-08 | VERNON BLVD | TOPLESS BAR |
| 02 | 160 | 50 | MERRY-GO-ROUND | 45-15 | QUEENS BLVD | TOPLESS BAR |
| 02 | 190 | 2 | GALLAGHERS | 39-33 | QUEENS BLVD | TOPLESS BAR |
| 01 | 239 | 19 | CANDY | 29-32 | NORTHERN BLVD | TOPLESS BAR |
| 02 | 276 | 41 | XXX VIDEO | 31-17 | QUEENS BLVD | VIDEO STORE |
| 02 | 304 | 113 | SCANDALS | 32-37 | GREENPOINT AV | TOPLESS BAR |
| 01 | 589 | 44 | MERMAID | 31-08 | 31ST ST | TOPLESS BAR |
| 01 | 668 | 5 | CITYSCAPE | 35-03 | 38TH ST | TOPLESS BAR |
| 01 | 823 | 165 | XXX VIDEO | 36-19 | DITMARS BLVD | VIDEO STORE |
| 01 | 833 | 3 | PENNY WHISTLE | 31-07 | 23RD AV | TOPLESS BAR |
| 03 | 1284 | 7 | EARLE THEATER | 73-07 | 37TH RD | MOVIE THEATER |
| 02 | 1329 | 1 | NAKED CITY | 56-07 | QUEENS BLVD | TOPLESS BAR |
| 03 | 1364 | 16 | FAIR THEATRE | 90-18 | ASTORIA BLVD | MOVIE THEATER |
| 03 | 1366 | 21 | COZY CABIN | 92-03 | ASTORIA BLVD | TOPLESS BAR |
| 03 | 1366 | 39 | LOVESHACK ADULT VIDEO | 92-20 | ASTORIA BLVD | VIDEO STORE |
| 03 | 1393 | 45 | WILEYS | 95-07 | 31ST AVE | TOPLESS BAR |
| 03 | 1467 | 39 | POLK THEATER | 93-09 | 37TH AVE | MOVIE THEATER |
| 03 | 1480 | 42 | FIDDLE & BOW | 92-07 | ROOSEVELT AV | TOPLESS BAR |
| 03 | 1502 | 6 | DEE TWO VIDEO | 86-10 | ROOSEVELT AV | VIDEO STORE |
| 04 | 1506 | 1 | PIDES PLACE II | 81-26 | BAXTER AV | TOPLESS BAR |
| 03 | 1706 | 1 | JOHNNY JAYS CATCH ME IF YOU CA | N112-08 | ASTORIA BLVD | TOPLESS BAR |
| 03 | 1770 | 81 | TOPLESS BAR | 39-02 | 104TH ST | TOPLESS BAR |
| 04 | 1862 | 1 | CANHE | 92-02 | CORONA AV | TOPLESS BAR |
| 06 | 2075 | 39 | GOLDFINGERS | 92-77 | QUEENS BLVD | TOPLESS BAR |
| 02 | 2282 | 29 | HONEYS | 49-14 | QUEENS BLVD | TOPLESS BAR |

PREPARED BY NYC DEPARTMENT OF CITY PLANNING, GIS/PLANNING SUPPORT

0477

Case 1:02-cv-04431-LJL-SDA   Document 84   Filed 11/21/18   Page 160 of 201

------------------------------------------------- BORO=QUEENS -----------------------------------------------------
(continued)

| CD | TAXBLOCK | TAXLOT | NAME | ADDRESS | | USE |
|----|----------|--------|------|---------|---|-----|
| 02 | 2432 | 21 | NICKELS | 69-20 | QUEENS BLVD | TOPLESS BAR |
| 05 | 2736 | 55 | TREASURE CHEST | 60-07 | METROPOLITAN AVE | TOPLESS BAR |
| 04 | 2855 | 17 | ADULT LOVE BOUTIQUE | 89-18 | QUEENS BLVD | PEEP SHOW |
| 06 | 3080 | 23 | VIRGINIAS | 95-36 | QUEENS BLVD | TOPLESS BAR |
| 06 | 3086 | 22 | XXX VIDEO STORE | 98-32 | QUEENS BLVD | VIDEO STORE |
| 09 | 3338 | 18 | AUSTIN THEATER | 81-07 | LEFFERTS BLVD | MOVIE THEATER |
| 07 | 4294 | 1 | GALLAGHERS II | 26-35 | 123RD ST | TOPLESS BAR |
| 07 | 4958 | 48 | SPORTS BAR | 135-41 | ENORTHERN BLVD | TOPLESS BAR |
| 07 | 4977 | 10 | CORSETORIUM INC | 36-35 | MAIN ST | OTHER |
| 07 | 5033 | 14 | GOODTIME VIDEO | 150-36 | NORTHERN BLVD | VIDEO STORE |
| 07 | 5040 | 1 | CANDELWOOD INN | 41-57 | COLLEGE POINT BLVD | TOPLESS BAR |
| 08 | 6930 | 1 | MAYFAIR THEATRE | 68-25 | FRESH MEADOW LANE | MOVIE THEATER |
| 09 | 8988 | 103 | PORT O CALL | 93-10 | WOODHAVEN BLVD | TOPLESS BAR |
| 09 | 9056 | 16 | ANDYS BAR | 85-01 | ROCKAWAY BLVD | TOPLESS BAR |
| 12 | 9690 | 7 | GORDONS TOPLESS BAR | 146-16 | HILLSIDE AV | TOPLESS BAR |
| 12 | 9798 | 15 | KRYSTALLS | 89-25 | MERRICK BLVD | TOPLESS BAR |
| 12 | 9994 | 51 | DREAMS TOPLESS BAR | 90-67 | SUTPHIN BLVD | TOPLESS BAR |
| 13 | 10759 | 147 | HAPPY TIPS LOUNGE | 215-50 | JAMAICA AV | TOPLESS BAR |
| 13 | 13614 | 12 | XXX VIDEO | 245-02 | S CONDUIT AVE | VIDEO STORE |

N = 44

PREPARED BY NYC DEPARTMENT OF CITY PLANNING, CIS/PLANNING SUPPORT

0478

DCP SURVEY OF ADULT ENTERTAINMENT ESTABLISHMENTS, FALL 1993

12:30 Wednesday, November 15, 1995                                        10

---------------------------------------- BORO=S.I. ----------------------------------------

| CD | TAXBLOCK | TAXLOT | NAME | | ADDRESS | | USE |
|----|----------|--------|------|------|---------|---|-----|
| 02 | 2162 | 190 | LIPSTICKS | 3575 | VICTORY BLVD | | TOPLESS BAR |
| 02 | 3110 | 127 | SCARLETTS | 283 | SAND LANE | | TOPLESS BAR |
| 03 | 7206 | 1 | HIPPS | 2945 | ARTHUR KILL RD | | TOPLESS BAR |

N = 3

PREPARED BY NYC DEPARTMENT OF CITY PLANNING, CIS/PLANNING SUPPORT

0479

# ADULT ESTABLISHMENT GUIDELINES

## DEFINITION OF AN ADULT ESTABLISHMENT

ZR §12-10 defines an adult establishment as any commercial establishment which features the depiction, description, or display of "specified anatomical areas" or "specified sexual activities" to the degree specified in the text.  Adult establishments include:

- adult bookstores,
- adult eating or drinking establishments,
- adult theaters,
- other adult commercial establishments,
- or any combination of the above.

When determining whether a **substantial portion of an establishment** is devoted to an adult establishment(s), the following factors are to be considered:

1) the amount of floor area and cellar space accessible to the customer and allocated to such establishment, and

2) the percentage of total floor area and cellar space accessible to the customer and allocated to such establishment (("adult" FA accessible to the customer + "adult" cellar space accessible to the customer) / (total FA accessible to the customer)).

When determining whether a **substantial portion of an establishment's stock in trade** is devoted to specified materials, the following factors are to be considered:

1) the percentage of total stock accessible to the customer that such materials represent (("adult" stock accessible to the customers) / (total stock accessible to the customer)), and

2) the amount of floor area and cellar space accessible to the customer containing such materials, and

3) the percentage of total floor area and cellar space accessible to the customer containing such materials (("adult" FA accessible to the customer + "adult" cellar space accessible to the customer) / (total FA accessible to the customer)).

See definition under ZR §12-10 for further guidance.

0480

# ADULT ESTABLISHMENT GUIDELINES

## PROHIBITED LOCATIONS

Adult establishments are <u>not</u> permitted in the following districts or locations:

- On the same zoning lot as another adult establishment.
- Residence districts.
- C1, C2, C3, C4, C5, C6-1, C6-2, or C6-3 zoning districts.
- C6-4, C6-5, C6-6, C6-7, C6-8, C6-9, C7, or C8 zoning districts <u>within 500' of</u>:
  - a church established before April 10, 1995,
  - a school established before April 10, 1995,
  - a residence district,
  - a C1, C2, C3, C4, C5-1, C6-1, C6-2, or C6-3 zoning district,
  - a manufacturing district, other than M1-6M district, in which new residence, new joint living-work quarters for artists, or new loft dwellings are allowed, under the provisions of the zoning resolution, as-of-right or by special permit or authorization, or
  - another adult establishment.
- Manufacturing districts in which residences, joint living-work quarters for artists, or loft dwellings are, under the provisions of the Zoning Resolution, allowed as-of-right or by special permit or authorization.
- In any other manufacturing district <u>within 500' of</u>:
  - a church established before April 10, 1995,
  - a school established before April 10, 1995,
  - a residence district,
  - a C1, C2, C3, C4, C5-1, C6-1, C6-2, or C6-3 zoning district,
  - a manufacturing district, other than M1-6M district, in which new residence, new joint living-work quarters for artists, or new loft dwellings are allowed, under the provisions of the zoning resolution, as-of-right or by special permit or authorization, or
  - another adult establishment.

## SIZE LIMITATIONS

- Under no circumstances may an adult establishment exceed in total 10,000 square feet of floor area or cellar space not used for enclosed storage or mechanical equipment.

2

0481

# ADULT ESTABLISHMENT GUIDELINES

## SIGN LIMITATIONS

- Accessory business signs for adult establishments are permitted but are subject to the sign regulations otherwise applicable in C1 zoning districts except that the provisions of ZR §32-64 shall not apply.

- The maximum surface area of all accessory business signs for adult establishments shall not exceed. in the aggregate, three times the street frontage of the zoning lot, but in no event more than 150 square feet per establishment. of which no more than 50 square feet may be illuminated, non-flashing signs.

- In manufacturing districts, accessory business signs for adult establishments are not permitted on the roof of any building and are not permitted to extend above curb level at a height of greater than 25 feet.

## AMORTIZATION OF ADULT ESTABLISHMENTS (§52-77)

General rule:     In all districts, non-conforming adult establishments, including any business signs accessory thereto, shall <u>terminate</u> within one year from October 25, 1995, or from such later date that the adult establishment or sign becomes non-conforming.

Exceptions:     Any adult establishment which existed on October 25, 1995, and which conform to all provisions of the Zoning Resolution regarding adult establishments other than paragraphs (c), (d), and (e) of ZR §32-01 or paragraphs (c), (d), and (e) of ZR §42-01 shall not be required to amortize pursuant to ZR §52-77.

The Board of Standards and Appeals may, pursuant to ZR §72-40, extend the time period for amortization of an adult establishment or business sign accessory thereto under specified circumstances.

## NON-CONFORMING USES (§52-30):

- A legal non-conforming use may not be changed to a use including an adult establishment, except as provided in Section 32-01 or Section 42-01.

3

0482

# EXHIBIT 22



**DEPARTMENT OF BUILDINGS**

EXECUTIVE OFFICES
60 HUDSON STREET, NEW YORK, N.Y. 10013-3394

GASTON SILVA, R.A., Commissioner

(212) 312-8100

Richard C. Visconti, R.A.
First Deputy Commissioner
Technical Affairs/Operations
(212) 312-8120
TTY (212) 312-8188

Issuance # 506

---

## OPERATIONS
## POLICY AND PROCEDURE NOTICES # 6/96

---

**TO:**        Distribution

**FROM:**      Richard C. Visconti, R.A.

**DATE:**      October 25, 1996

**SUBJECT:**   Adult Establishments -- Applications and Complaint Procedure

---

**Reference:**   Zoning Resolution Sections 11-113, 11-30, 12-10, 32-00, 42-00, 42-55, 51-00, 52-00, and 72-00, et seq.

**Purpose:**     To clarify procedures for enforcement of the provisions of the Zoning Resolution relating to adult establishments.

**Effective:**   October 26, 1996

**Specifics:**   This PPN supersedes PPN # 17/95.

♦   **FILING PROCESS**

   •   **Applicant**

Directive 14 of 1975 and the Professional Certification of Application and Plans Process (PPN #2/95) may not be used for any filing related to adult establishments.

In Section 16 (comments) of the PWI, the applicant shall indicate whether the filing he/she is making is to create, enlarge or extend an adult establishment or to erect a business sign accessory to such an establishment.

0484

The application shall also include a separate area diagram detailing all existing uses and block and lot numbers within 500 feet of the center line of the door(s) of the principal entrance of the adult establishment or of the center line of the ground floor door(s) giving the most direct street access to the adult establishment.

### • __Plan Examiner__

An objection shall be raised if there exists another adult establishment within 500 feet of the proposed use or on the same zoning lot or if the establishment is in the wrong zoning district. Examiners should be guided by the Provision of the Zoning Resolution Relating to Adult Establishments, a copy of which is attached hereto as Appendix A.

### • __Permit Clerk__

Prior to issuing a work permit for an adult establishment, the clerk shall refer the applicant to the Borough Commissioner (or his/her designee) who shall verify from a batch report of all applications filed on or after October 25, 1995 to create, enlarge or extend an adult establishment made available weekly by MIS, that the new establishment meets the criteria established under the Zoning Resolution.

## ♦ __ENFORCEMENT PROCESS__

### _Borough Complaint Clerk:_

### • __For All Boroughs Except Manhattan__

Any complaint received about an adult establishment shall be data entered into BIS using complaint category code 75. The complaint will automatically be assigned a "B" priority. The jurisdiction must state "refer to Operations", category 98

The disposition of the complaint by the Night Squad shall be data entered upon being returned to the Borough office and a written response letter generated to the complainant.

### • __For Manhattan Only__

Any complaint received about an adult establishment shall be data entered onto BIS using complaint category code 75. The complaint will automatically be assigned a "B" priority. The jurisdiction must state "refer to Office of Midtown Enforcement" category G7.

A written response letter will be generated and mailed to the complainant indicating the complaint was referred to the Office of Midtown Enforcement, 330 West 42nd Street, 15th Floor, New York, New York 10036.

On a weekly basis, the Borough Office shall batch these complaint letters to that Office for investigation.

- **Executive Chief Inspector's Office**

The Executive Chief shall secure a city-wide BIS printout of all category code 75 complaints on a weekly basis, print out the required work orders and route the Night Squad inspectors.

The Executive Chief's Office shall request the respective borough office to provide the following information with respect to each premises to be inspected.

* Certificate of Occupancy,
* Sign permits,
* Any other documentation which may establish the existing legal use,
* Zoning or Sanborn map showing premises location.

- **Night Emergency Squad**

Any Department of Buildings notice of violation written for violating Zoning Resolution Section 11-113 must identify specific type of adult establishment defined in the Zoning Resolution Section 12-10 as the following:

* An Adult Bookstore, or
* An Adult Eating or Drinking Establishment, or
* An Adult Theater, or
* Other commercial establishment, or
* Any combination of the above.

To the extent possible, the Night Squad log should include, but not be limited to, the following:

* a brief layout of any premises inspected, including the size of the space, location and number of entrances, and description and location of signs,
* the extent of the adult establishment,
* a description of the activities taking place inside the premises,
* the name(s) of the person(s) in charge (if possible), and
* proximity to any places of worship/churches, schools or other adult establishments,
* the size of the area devoted to the adult establishment and/or adult materials in relation to the total floor area and cellar space accessible to the customer, and
* the quantity of stock/inventory devoted to adult material in relation to the entire stock/inventory

Back-up documentation and the results of the inspection written on the work order shall be submitted to the Executive Chief who shall review the materials. If a determination is made that a violation

should be issued, it shall be returned to the respective Borough Office for data entry.

Inspectors should refer to Appendix A for further guidance.

c:\aeproc.ppn

## PROVISIONS OF THE ZONING RESOLUTION RELATING TO ADULT ESTABLISHMENTS

### DEFINITION OF AN ADULT ESTABLISHMENT

ZR §12-10 defines an adult establishment as any commercial establishment which features the depiction, description or display of "specified anatomical areas" or "specified sexual activities" to the degree specified in the text. Adult establishments include:

- adult bookstores,
- adult eating or drinking establishments
- adult theaters,
- other adult commercial establishments,
- or any combination of the above.

When determining whether a **substantial portion of an establishment** is devoted to an adult establishment(s), the following factors are to be considered:

(1)    the amount of floor area and cellar space accessible to the customer and allocated to such an establishment, and

(2)    the percentage of total floor area and cellar space accessible to the customer and allocated to such establishment -- (["adult" FA accessible to the customer  + "adult" cellar space accessible to the customer] / [total FA accessible to the customer]).

When determining whether a **substantial portion of an establishment's stock in trade** is devoted to specified materials, the following factors are to be considered:

(1)    the percentage of total stock accessible to the customer that such  materials represent -- (["adult" stock accessible to the customers] / [total stock accessible to the customer]), and

(2)    the amount of floor area and cellar space accessible to the customer containing such materials, and

(3)    the percentage of total floor area and cellar space accessible to the customer containing such materials -- (["adult" FA accessible to the customer + "adult" cellar space accessible to the customer] / [total FA accessible to the customer]).

See definition under ZR §12-10 for further guidance.

**APPENDIX A**

0488

## PROVISIONS OF THE ZONING RESOLUTION RELATING
## TO ADULT ESTABLISHMENTS

### PROHIBITED LOCATIONS

Adult establishments are <u>not</u> permitted in the following districts or locations:

- on the same zoning lot as another adult establishment.
- Residence districts
- C1, C2, C3, C4, C5, C6-1, C6-2, or C6-3 zoning districts.
- C6-4, C6-5, C6-6, C6-7, C6-8, C6-9, C7, or C8 zoning districts <u>within 500' of</u>:
  - a church
  - a school
  - a residence districts
  - a C1, C2, C3, C4, C5-1, C6-1, C6-2, or C6-3 zoning district,
  - a manufacturing district, other than M1-6M district, in which new residence, new joint living-work quarters for artists, or new loft dwellings are allowed, under the provisions of the zoning resolution, as-of-right or by special permit or authorization, or
  - another adult establishment.

EXCEPTION:   An adult establishment will not become non-conforming if a church or school locates within 500 feet of an <u>existing</u> adult establishment after April 10, 1995 (ZR 32-01 and 42-10).

- Manufacturing districts in which residences, joint living-work quarters for artists, or loft dwellings are, under the provisions of the Zoning Resolution, allowed as-of-right or by special permit or authorization.
- In all other manufacturing districts <u>within 500' of</u>:
  - a church
  - a school
  - a residence district,
  - a C1, C2, C3, C4, C5-1, C6-1, C6-2, or C6-3 zoning district,
  - a manufacturing district, other than M1-6M district, in which new residence, new joint living-work quarters for artists, or new loft dwellings are allowed, under the provisions of the Zoning Resolution, as-of-right by special permit or authorization, or

0489

## PROVISIONS OF THE ZONING RESOLUTION RELATING
## TO ADULT ESTABLISHMENTS

- another adult establishment

EXCEPTION:    An adult establishment will not become non-conforming if a church or school locates within 500 feet of an <u>existing</u> adult establishment after April 10, 1995 (ZR 32-01 and 42-10).

### SIZE LIMITATIONS

- Under no circumstances may an adult establishment exceed in total 10,000 square feet of floor area or cellar space not used for enclosed storage or mechanical equipment.

### SIGN LIMITATIONS

- Accessory business signs for adult establishments are permitted but are subject to the sign regulations otherwise applicable in C1 zoning districts except that the provisions of ZR §32-64 shall not apply.
- The maximum surface area of accessory business signs for adult establishments shall not exceed, in the aggregate, three times the street frontage of the zoning lot, but in no event more than 150 square feet per establishment, of which no more than 50 square feet may be illuminated, non-flashing signs
- In manufacturing districts, accessory business signs for adult establishments are not permitted on the roof of any building and are not permitted to extend above curb level at height of greater than 25 feet

### TERMINATION OF EXISTING ADULT ESTABLISHMENTS (ZR §52-77)

General rule:    In all districts, non-conforming adult establishments, including any business signs accessory thereto, shall <u>terminate</u> within one year from October 25, 1995, or from such later date that the adult establishment or sign becomes non-conforming.

Exceptions:    Any adult establishment which existed on October 25, 1995, and which conforms to provisions of the Zoning Resolution relating to adult establishments other than the provisions of all or any combination of paragraphs (c), (d), and (e) of ZR §32-01 or paragraphs (c), (d), and (e) of ZR §42-01 shall not be subject to ZR §52-77 (Amortization provision).

The Board of Standards and Appeals may, pursuant to ZR §72-40 and ZR §52-734, extend the time period for amortization of an adult establishment or business sign accessory thereto under specified circumstances.

## NON-CONFORMING USES (ZR §52-38)

- A legal non-conforming use may not be changed to an adult establishment, except as provided in Section 32-01 or Section 42-01.

# EXHIBIT 23



**DEPARTMENT OF BUILDINGS**

EXECUTIVE OFFICES
60 HUDSON STREET, NEW YORK, N.Y. 10013-3394

GASTON SILVA, R.A., Commissioner

(212) 312-8100

Richard C. Visconti, R.A.
First Deputy Commissioner
Technical Affairs/Operations
(212) 312-8120
TTY (212) 312-8188

Issuance # 507

## OPERATIONS
## POLICY AND PROCEDURE NOTICES # 7/96

**TO:**        Distribution

**FROM:**    Richard C. Visconti, R.A.

**DATE:**    October 25, 1996

**SUBJECT:**  Adult Establishments -- Places of Worship/Churches

**Reference:**  Zoning Resolution Sections 11-113, 11-30, 12-10, 32-00, 42-00, 42-55, 51-00, 52-00, and 72-00, et seq.

**Purpose:**   To establish a uniform definition of a "place of worship"/"church" in order to assure the provisions of the Zoning Resolution relating to adult establishments is accurately enforced.

**Effective:**  October 26, 1996

**Specifics:**

   The Department of Buildings does not maintain a survey or catalogue of all churches or other places of worship in the City of New York for the purpose of enforcing the adult establishment provision in the Zoning Resolution.  With respect to enforcing zoning regulations for adult establishments, this PPN will refer to a "church" as any "place of worship".

   Evidence supporting the allegation that a particular premises is occupied by a place of worship

should be issued, it shall be returned to the respective Borough Office for data entry.

Inspectors should refer to Appendix A for further guidance.

c:\aeproc.ppn

# EXHIBIT 24



**DEPARTMENT OF BUILDINGS**

EXECUTIVE OFFICES
60 HUDSON STREET, NEW YORK, N.Y. 10013-3394

GASTON SILVA, R.A., Commissioner

(212) 312-8100

Richard C. Visconti, R.A.
First Deputy Commissioner
Technical Affairs/Operations
(212) 312-8120
TTY (212) 312-8188

Issuance # 508

## OPERATIONS
## POLICY AND PROCEDURE NOTICES # 8/96

**TO:**       Distribution

**FROM:**     Richard C. Visconti, R.A.

**DATE:**     October 25, 1996

**SUBJECT:**  Adult Establishments -- Measuring the 500 feet distance requirement

**Reference:**  Zoning Resolution Sections 11-113, 11-30, 12-10, 32-00, 32-01, 42-00, 42-01, 42-55, 51-00, 52-00, and 72-00, et seq.

**Purpose:**   To clarify the manner in which the Department determines the distances between adult establishments and schools or places of worship/churches.

**Effective:** October 26, 1996

**Specifics:**

Pursuant to the Zoning Resolution, adult establishments are not permitted in residence districts and certain commercial districts. In those districts in which adult establishments are permitted, the Zoning Resolution requires that such establishments be located at least 500 feet from a place of worship/church, a school (both also referred to as "sensitive receptors"), or another adult establishment. A "place of worship"/"church" is defined in PPN # 7/96. A "school" is defined in Section 12-10 of the Zoning Resolution. In order to ascertain whether an adult establishment is within 500 feet of such sensitive receptor or another adult establishment, the Department of Buildings shall determine the 500-foot distance radially as set forth below.

0496

### Measuring From the Adult Establishment

When measuring from the adult establishment, the 500-foot distance shall be measured from the center line of the door(s) of the principal entrance of the adult establishment or from the center line of the ground floor door(s) giving the most direct street access to the adult establishment.

### Measuring Between Two Adult Establishments "A" and "B"

When measuring between two adult establishments, the 500-foot distance shall be measured from the center line of the door(s) of the principal entrance of adult establishment "A" or from the center line of the ground floor door(s) giving the most direct street access to adult establishment "A" to the center line of the door(s) of the principal entrance of adult establishment "B" or to the center line of the ground floor door(s) giving the most direct street access to adult establishment "B".

### Measuring From the Adult Establishment to the Sensitive Receptor

With respect to measuring from the adult establishment to the sensitive receptor, the 500-foot distance shall be measured from the center line of the door(s) of the principal entrance of the adult establishment or from the center line of the ground floor door(s) giving the most direct street access to the adult establishment to the outside face of the closest demising wall of the school or place of worship. If there are outdoor spaces directly adjacent to and customarily used by such school or place of worship, such as a school playground, the 500-foot distance shall be measured from the previously described door(s) of the adult establishment to the nearest boundary point of a school playground rather than the boundary of the school building.

However, if a school or place of worship shares a zoning lot with an unrelated use such as a commercial office building, the office building portion of the zoning lot shall not be considered part of the sensitive receptor site.

c:\ae500.ppn

## PROVISIONS OF THE ZONING RESOLUTION RELATING
## TO ADULT ESTABLISHMENTS

### PROHIBITED LOCATIONS

Adult establishments are not permitted in the following districts or locations:

- on the same zoning lot as another adult establishment.
- Residence districts
- C1, C2, C3, C4, C5, C6-1, C6-2, or C6-3 zoning districts.
- C6-4, C6-5, C6-6, C6-7, C6-8, C6-9, C7, or C8 zoning districts within 500' of:
  - a church
  - a school
  - a residence districts
  - a C1, C2, C3, C4, C5-1, C6-1, C6-2, or C6-3 zoning district,
  - a manufacturing district, other than M1-6M district, in which new residence, new joint living-work quarters for artists, or new loft dwellings are allowed, under the provisions of the zoning resolution, as-of-right or by special permit or authorization, or
  - another adult establishment.

EXCEPTION:    An adult establishment will not become non-conforming if a church or school locates within 500 feet of an existing adult establishment after April 10, 1995 (ZR 32-01 and 42-10).

- Manufacturing districts in which residences, joint living-work quarters for artists, or loft dwellings are, under the provisions of the Zoning Resolution, allowed as-of-right or by special permit or authorization.
- In all other manufacturing districts within 500' of:
  - a church
  - a school
  - a residence district,
  - a C1, C2, C3, C4, C5-1, C6-1, C6-2, or C6-3 zoning district,
  - a manufacturing district, other than M1-6M district, in which new residence, new joint living-work quarters for artists, or new loft dwellings are allowed, under the provisions of the Zoning Resolution, as-of-right by special permit or authorization, or

## PROVISIONS OF THE ZONING RESOLUTION RELATING
## TO ADULT ESTABLISHMENTS

- another adult establishment

EXCEPTION:   An adult establishment will not become non-conforming if a church or school locates within 500 feet of an <u>existing</u> adult establishment after April 10, 1995 (ZR 32-01 and 42-10).

### SIZE LIMITATIONS

- Under no circumstances may an adult establishment exceed in total 10,000 square feet of floor area or cellar space not used for enclosed storage or mechanical equipment.

### SIGN LIMITATIONS

- Accessory business signs for adult establishments are permitted but are subject to the sign regulations otherwise applicable in C1 zoning districts except that the provisions of ZR §32-64 shall not apply.

- The maximum surface area of accessory business signs for adult establishments shall not exceed, in the aggregate, three times the street frontage of the zoning lot, but in no event more than 150 square feet per establishment, of which no more than 50 square feet may be illuminated, non-flashing signs.

- In manufacturing districts, accessory business signs for adult establishments are not permitted on the roof of any building and are not permitted to extend above curb level at height of greater than 25 feet.

### TERMINATION OF EXISTING ADULT ESTABLISHMENTS (ZR §52-77)

General rule:   In all districts, non-conforming adult establishments, including any business signs accessory thereto, shall <u>terminate</u> within one year from October 25, 1995, or from such later date that the adult establishment or sign becomes non-conforming.

Exceptions:   Any adult establishment which existed on October 25, 1995, and which conforms to provisions of the Zoning Resolution relating to adult establishments other than the provisions of all or any combination of paragraphs (c), (d), and (e) of ZR §32-01 or paragraphs (c), (d), and (e) of ZR §42-01 shall not be subject to ZR §52-77 (Amortization provision).

0499

The Board of Standards and Appeals may, pursuant to ZR §72-40 and ZR §52-734, extend the time period for amortization of an adult establishment or business sign accessory thereto under specified circumstances.

## NON-CONFORMING USES (ZR §52-38)

- A legal non-conforming use may not be changed to an adult establishment, except as provided in Section 32-01 or Section 42-01.

# EXHIBIT 25

Menu



Search
NYC CodesCode NotesCode DevelopmentReference

Select ▼

- Buildings Bulletins
- Executive Orders
- Directives & Memoranda
- Policy and Procedure Notices
- Rules
- Local Laws
- OTCR
- NYS DEC Wetlands
- Presentations

# Operations Policy And Procedure Notices #04/98

| Date: | July 22, 1998 |
|---|---|
| Subject: | Adult Establishment -- "Substantial Portion" |
| Effective: | Immediately |
| Purpose: | To provide guidance as to the meaning of the phrase "substantial portion" as used in the definition of "adult establishment" in Section 12-10 of the Zoning Resolution. |
| Reference: | Zoning Resolution Sections 12-10, 32-01, 32-69, 42-01, 42-55, 52-734, 52-77, 72-40 |
| Specifics: | Section 12-10 of the Zoning Resolution ("ZR") defines an adult establishment as an establishment, a "substantial portion" of which is occupied by an adult use. The phrase "substantial portion" is again used to define an adult book store as a book store with a substantial portion of its stock-in-trade in materials as defined in ZR §12-10 (a)(1) and (a)(2) ("adult materials"). In order that the |

provisions relating to adult establishments be properly enforced, this OPPN sets forth guidelines to clarify the meaning of the phrase "substantial portion."

<u>Adult Book Store</u>

An establishment shall be deemed a book store if its principal use is selling books, magazines, periodicals or other printed matter or photographs, films, motion pictures, video cassettes, slides or other visual representations, regardless of floor area. If at least 40 percent of the book store's total stock accessible or available ("accessible") for sale or rent to customers is comprised of adult materials, then the book store has a "substantial portion" of its stock in adult materials, and is therefore an "adult book store."

An establishment also includes an adult book store if 40 percent of the establishment's floor area and cellar space accessible to customers contains stock in adult materials.

If 10,000 or more square feet of an establishment is occupied by adult materials, the establishment is deemed to be an "adult book store" regardless of the overall size of the establishment.

General interest stores, including general interest book and video stores, with a section of adult materials that is modest in scale as compared to the overall size or stock of the store, are not intended to be covered by the adult establishment definition in ZR §12-10.

<u>Adult eating or drinking establishment, theater or other commercial establishment</u>

The determination whether a "substantial portion" of an eating or drinking establishment, theater or other commercial establishment includes an adult use should include consideration of the amount of floor area and cellar space accessible to customers allocated to adult use for performance and viewing purposes as compared to total combined floor area and cellar space accessible to customers.

Thus, if an eating or drinking establishment, a theater or other commercial establishment, has at least 40 percent of the floor and cellar area that is accessible to customers, available for adult performance and viewing purposes, then a "substantial portion" of the establishment is devoted to an adult use and is an "adult eating or drinking establishment", an "adult theater" or an "other adult commercial establishment."

If 10,000 or more square feet of an eating or drinking establishment, a theater or other commercial establishment is occupied by an adult use, the establishment is deemed to be an "adult eating or drinking establishment", an "adult theater" or an "other adult commercial establishment" regardless of the overall size of the establishment.

Adult entertainment should be the principal form of entertainment at the establishment.

0503

0504

# EXHIBIT 26

0505

Menu



Search
NYC CodesCode NotesCode DevelopmentReference

Select ▼

- Buildings Bulletins
- Executive Orders
- Directives & Memoranda
- Policy and Procedure Notices
- Rules
- Local Laws
- OTCR
- NYS DEC Wetlands
- Presentations

# Operation Policy and Procedure Notices #06/98

| Date: | August 13, 1998 |
|---|---|
| Subject: | **Adult Establishment -- "Substantial Portion"** |
| Effective: | Immediately |
| Reference: | Zoning Resolution Sections 12-10, 32-01, 32-69, 42-01, 42-55, 52-734, 52-77, 72-40 |
| Purpose: | To provide guidance as to the meaning of the phrase "substantial portion" as used in the definition of "adult establishment" in Section 12-10 of the Zoning Resolution. |
| Supercedes: | OPPN #4/98 |
| Superseded: | OPPN #1/00 |
| Specifics: | Section 12-10 of the Zoning Resolution ("ZR") defines an adult establishment |

0506

as an establishment, a "substantial portion" of which is occupied by an adult book store, adult eating or drinking establishment, adult theater, or "other adult commercial establishment" ("adult use"). The phrase "substantial portion" is again used to define an adult book store as a book store with a substantial portion of its stock-in-trade in materials as defined in ZR §12-10 (a)(1) and (a)(2) ("adult materials"). In order that the provisions relating to adult establishments be properly enforced, this OPPN sets forth guidelines to clarify the meaning of the phrase "substantial portion."

## I. Adult Book Store

An establishment shall be deemed a book store if its principal use is selling books, magazines, periodicals or other printed matter or photographs, films, motion pictures, video cassettes, slides or other visual representations, regardless of floor area. If at least 40 percent of the book store's total stock accessible or available ("accessible") for sale or rent to customers is comprised of adult materials, then the book store has a "substantial portion" of its stock in adult materials, and is therefore an "adult book store."

An establishment also includes an adult book store if 40 percent of the establishment's floor area and cellar space accessible to customers contains stock in adult materials.

If 10,000 or more square feet of an establishment is occupied by adult materials, the establishment is deemed to be an "adult book store" regardless of the overall size of the establishment.

General interest stores, including general interest book and video stores, with a section of adult materials that is modest in scale as compared to the overall size or stock of the store, are not intended to be covered by the adult establishment definition in ZR §12-10.

## II. Adult Establishment

The determination as to whether a "substantial portion" of a commercial establishment with two or more uses, at least one of which is not a book store, an eating or drinking establishment, a theater, or an "other adult commercial establishment," includes an adult use should include consideration of (1) the amount of floor area and cellar space accessible to customers allocated to adult use and (2) such amount of floor area and cellar space as compared to total combined floor area and cellar space accessible to customers.

Thus, if a commercial establishment with two or more uses, at least one of which is not a book store, an eating or drinking establishment, a theater, or an "other adult commercial establishment," has at least 40 percent of the floor and cellar area that is accessible to customers available for adult use, then a "substantial portion" of the establishment is devoted to an adult use and the commercial establishment is deemed to be an adult establishment.

0507

If 10,000 or more square feet of a commercial establishment with two or more uses, at least one of which is not a book store, an eating or drinking establishment, a theater, or an "other adult commercial establishment," is occupied by an adult use, the commercial establishment is deemed to be an "adult establishment" regardless of the overall size of the establishment.

Section II shall not apply to a commercial establishment that is entirely an eating or drinking establishment, a theater, an "other adult establishment," or any combination thereof.

# EXHIBIT 27

Menu



Search

NYC CodesCode NotesCode DevelopmentReference

Select ▼

- Buildings Bulletins
- Executive Orders
- Directives & Memoranda
- Policy and Procedure Notices
- Rules
- Local Laws
- OTCR
- NYS DEC Wetlands
- Presentations

# Operations Policy And Procedure Notices #05/02

| Date: | June 18, 2002 |
|---|---|
| Subject: | **Professional Certification of Applications and Plans** |
| Effective: | **Immediately** |
| Supersedes: | **Policy and Procedure Notice # 2/95 dated January 24, 1995, revised May 8, 1995** |
| Purpose: | To clarify the Department's implementation of the optional plan review procedures, which allow a Professional Engineer (PE) or Registered Architect (RA) to certify compliance with applicable laws and codes on applications filed by him/her as applicant, and which continue to enable a contractor to request a work permit after all required information is data entered into the Building Information System (BIS). |
| Policy: | Since 1995, the Department of Buildings has had and will continue to provide a mechanism for PE/RAs to certify compliance with applicable laws and codes on applications filed with the Department. Participation in these procedures calls for the display of appropriate standards of professional competence and |

integrity by the licensed professional. This Policy and Procedure Notice sets forth the procedures for preparing, submitting, approving and auditing these applications, as well as the procedures for suspension or exclusion of professionals from the professional certification or limited supervisory check procedures:

| | |
|---|---|
| Specifics: | **Restrictions:** |

**Restrictions:**

- For a job requiring Board of Standards and Appeals (BSA) approval, plans and applications must be filed through the standard plan review process, but the professional certification or limited supervisory check procedures may be utilized after the BSA has rendered its decision.
- For a job requiring Landmarks Preservation Commission, Loft Board, or City Planning Commission approval or certification, a PE/RA may only use the professional certification or limited supervisory check procedures after obtaining such approval or certification from the respective agency.
- For any application where a waiver must be sought from compliance with any provision of Local Law 58 of 1987, a PE/RA may use the professional certification or limited supervisory check procedures only after obtaining both an advisory opinion from the Mayor's Office for People with Disabilities, and a determination from the Borough Commissioner that a waiver is to be granted. If such a determination is made, then a PE/RA must certify that all provisions and conditions of the waiver have been satisfied. If the Borough Commissioner determines that a waiver will not be granted, the applicant must revise the application accordingly before the professional certification or limited supervisory check procedures can be utilized.
- For a filing concerning property of foreign governments, plans and applications must include a "Letter of No Objection" from the Office of Foreign Missions of the U.S. Department of State, consistent with Technical Policy and Procedure Notice 5/94.

**Applicant:**

The applicant must submit a complete set of plans and documents required for the work type(s) filed. This submission must be complete and in accordance with code, zoning, and applicable laws. At a minimum, the submission shall meet the requirements set forth in Administrative Code sections 27-156 and 27-157 for new buildings and sections 27-161 and 27-162 for alterations.

**The submission must include:**

1. Separate lists of items required for approval, permit, final signoff or Certificate of Occupancy as well as required controlled inspections. For each item on the list the applicant must make a notation of Yes (Y) or No (N) to indicate whether the item is required. Each list must be signed and sealed by the applicant. The application will be rejected if any information is missing, incomplete or not provided as required.

2. Two stamped envelopes, one addressed to the applicant and one addressed to the owner, which will be used to return the application if the package is incomplete.

3. A certification by the applicant in Section 16 of the PW-1 stating as follows:

"I hereby state that I have exercised a professional standard of care in certifying that the filed application is complete and in accordance with applicable laws, including the rules of the Department of Buildings, as of this date. I am aware the Commissioner will rely upon the truth and accuracy of this statement. I have notified the owner or owner's authorized representative that this application has been professionally certified. If an audit or other exam discloses non-compliance, I agree to notify the owner or the owner's authorized representative of the remedial measures that must be taken to meet legal requirements. I further realize that any misrepresentation or falsification of facts made knowingly, recklessly or negligently by me, my agents or employees, or any knowing or reckless disregard on my part of any misrepresentation or falsification of facts made by others, will render me liable for legal and disciplinary action by the Department of Buildings and other appropriate authorities, including termination of participation in the professional certification or limited supervisory check procedures at the Department of Buildings."

If there is not enough space in Section 16 of the PW-I form for the entire certification, the applicant may make the certification on a separate Al-1 Form. The applicant must then state it is opting for professional certification in Section 16 of the PW-1, with a reference to the certification on the separate Al-1 Form.

If the applicant is using PC filing, a certification will be added to the application automatically by selecting the "apply" button on the appropriate screen during the PC filing program. The applicant must also indicate that it is opting for professional certification pursuant to this Policy and Procedure Notice (including the certification set forth above) in the "Considerations" section.

Applicants who file under the professional certification option cannot subsequently request plan examination review or approval. To obtain an examination and approval by the Department, the applicant must apply, in writing, to withdraw the application and then file a new application, with fees, for assignment to a plan examiner. Applicants may request a preliminary consideration about a code or zoning issue before filing their application using an Al-1 form addressed to the Borough Commissioner or his/her designee. Interpretations and decisions made during the preliminary consideration shall be given in writing and a copy of same will become part of the job application.

All work types filed under a job number must be professionally certified. In instances where multiple work types are filed simultaneously by multiple applicants, under one job number, only one list of items required for approval, permit, final signoff or Certificate of Occupancy, as well as required controlled inspections, shall be submitted.

The applicant will submit the completed package to the pre-filing section for data entry. The applicant, at that time, must alert the pre-filer that the application will be professionally certified as indicated on the PW-1.

The applicant will pay the filing fee at the cashier.

An approval status will be data entered into the computer unless the package is incomplete. An incomplete package may be re-submitted to the DEAR (Data Entry and Research) unit by the applicant when all required information has been compiled and will be given priority processing.

All required items needed for approval must be submitted with the initial submission. Amendments and corrections to professionally certified applications must be professionally certified. Subsequent filings must be reviewed and approved by pre-filing. Filings for additional work types must be filed as a new application and receive a separate job number. Expansions to the scope of the application or work types must be filed as a post-approval amendment (PAA). All PAAs must be reviewed and approved by the Borough Commissioner or his/her designee.

### Borough Office Procedures:
### Pre-Filing:

The pre-filing unit will review the documents for completeness and verify that a PW-1 and any supplementary AI-1s containing the signed and sealed statements listed above are included. The pre-filer will stamp the application and plans "Professional Certification." If the application is not complete because of missing or insufficient data, the application will be returned to the applicant or filing representative and will not be processed.

In addition to entering required pre-filing data, the pre-filer will indicate "Y" next to the question "Professional Certification by Applicant of Job?" on the "Initial Pre-filing - Additional Considerations" screen to indicate that the application is being professionally certified. Fees will be calculated based on the work type(s) filed.

### Cashier:

The Cashier will accept the fee. If the application requires data entry, the package will be forwarded to the DEAR unit. If the application is going to be filed using the PC Filing program, the package will be forwarded to the PC Filing Clerk.

### PC Filing Clerk:

If the applicant intends to file the application using the PC Filing program, the PC Filing clerk will up-load the data from the PC Filing disk. Disks that cannot be processed because of missing or incorrect information will be returned to the applicant to be revised and resubmitted.

### DEAR:

The DEAR unit will review the documents, including the PC Filing full report, for clerical completeness prior to data entry. If the package does not contain all documents and information required for approval as stated on the required items list, a form letter shall be placed in the self-addressed stamped envelopes included in the package and mailed to the applicant and owner. The status of the application will be listed in the computer as "Suspend" or "Disapprove", depending on the status of the application. (The application must not be rejected if the only missing documentation is the self-addressed stamped envelopes. If other documents are also missing which cause the application to be rejected, the Department is otherwise under no obligation to notify the applicant by mail.)

All data entry and processing of rejection letters must be completed within 10 working days.

The DEAR unit will data enter the plan examination information and approval by using special user ID codes assigned for this purpose. The DEAR unit will then stamp the application and plans "Approved per OPPN 5/02".

*Audit Procedures:*

Within 45 days of acceptance by the Department, at least 20% of all professionally certified applications will be reviewed. A representative sample of application types will be randomly selected for review. All applications are subject to audit.

Applications selected for review will be assigned to an examiner from the Technical Compliance Unit located in the Borough Office. The review will focus on the following four areas: 1) accuracy of zoning calculations, 2) fire protection and occupant safety, 3) egress requirements, and 4) appropriateness of fees. A full review may also be conducted at any time based upon receipt of a complaint, evidence of non-compliance, or other determination made by the Department. All audits and results will be recorded in the BIS system and reported monthly to the Assistant Commissioner for Technical Affairs.

If objections are found during this review, they will be noted on an objection sheet and forwarded to the applicant and owner. If a permit has been issued, a 10-day notice of intent to revoke the permit will be included with the objections. If, within 10 days or other authorized time period, the Department receives no written response to the 10-day notice of intent to revoke, or if the Department receives a response that is insufficient in that it does not fully resolve the objections or propose acceptable corrective action to be immediately undertaken, then a final notice of revocation will be sent to the applicant. Applications receiving objections will be processed using the standard plan examination process until the application has been corrected and the application is approved, or until other final disposition of the application. Appointments to review objections and responses can be scheduled by the applicant or applicant's representative via the Department's Central Call Center.

At the discretion of the Borough Commissioner or upon the recommendation of the Assistant Commissioner for Technical Affairs, any application and/or permit may be suspended immediately pursuant to Section 27-197 of the New York City Administrative Code, provided that there is an imminent peril to life or property. The applicant and owner shall be notified of such action, with a copy of such notification forwarded to the Department's Office of Investigations and Discipline (IAD).

**<u>Suspension or Exclusion from the Professional Certification or Limited Supervisory Check Procedures:</u>**

In addition to taking action on particular permit applications, Borough Commissioners and the Assistant Commissioner for Technical Affairs shall forward to the Deputy Commissioner for Technical Affairs the names of, and supporting documentation with respect to, those PEs and RAs whose participation in the professional certification or limited supervisory check procedures evidences grounds for suspension or exclusion pursuant to 1 RCNY §21-02. The Deputy Commissioner for Technical Affairs shall review the evidence and make a recommendation to the Commissioner as to appropriate action. If this recommendation includes disciplinary action, including exclusion or suspension of the PE/RA from the professional certification or limited supervisory check procedures, a copy shall be forwarded immediately to IAD. Additionally, after a matter has been referred to IAD by the Deputy Commissioner, upon the consent of the PE/RA and at the discretion of the Department, certain matters may also be referred to a peer review group comprised of non-Departmental licensed professionals, acceptable to the Commissioner, for review and a non-binding recommendation to the Commissioner. Notwithstanding whether a matter has been referred to a peer review group, the Commissioner may suspend or exclude a PE/RA in accordance with 1 RCNY §21-02.

**EXHIBIT 28**

Menu



Search
NYC CodesCode NotesCode DevelopmentReference

| Select ▼ |

- Buildings Bulletins
- Executive Orders
- Directives & Memoranda
- Policy and Procedure Notices
- Rules
- Local Laws
- OTCR
- NYS DEC Wetlands
- Presentations

# Operations Policy And Procedure Notices #07/02

| | |
|---|---|
| Date: | October 16, 2002 |
| Subject: | **Adult Establishments -- Securing Priorities** |
| Effective: | **Immediately** |
| Reference: | Zoning Resolution provisions relating to adult establishments |
| Supersedes: | **OPPN 06/96** |
| Purpose: | To clarify procedures in order to ascertain whether a proposed adult establishment within 500 feet of or on the same zoning lot as another adult establishment is in violation of NYC Zoning Resolution ("ZR") §§32-01 and 42-01. |
| Specifics: | I. **APPLICANT** |

A. Directive 14 and the Professional Certification of Application and Plans Process (OPPN #5/02) shall not be used for any filing related to adult establishments. No permit issued under a professionally certified application shall be a basis for an establishment to secure its priority to operate as an adult establishment.

B. ZR §§32-01 (c) and 42-01 (c) prohibit an adult establishment from locating within 500 feet of another adult establishment. ZR §§32-01 (d) and 42-01 (d) prohibit more than one adult establishment on a zoning lot.

For an adult establishment that began operating on or after August 8, 2001, a Department permit is required to secure its priority to operate as an adult establishment at a particular location. For an adult establishment that is identified by the Department as having been operating as a lawful adult establishment prior to August 8, 2001, a Department permit is not required to secure its priority. However, if an adult establishment operating prior to August 8, 2001 does not obtain a Department permit to secure priority, it might not be able to establish its priority to operate as an adult establishment.

Securing priority to operate as an adult establishment means that another adult establishment that subsequently proposes to locate or locates within 500 feet of it or on the same zoning lot will not be allowed.

C. For all filings relating to existing or proposed adult establishments, the applicant shall indicate in Section 16 (comments) of the PW1 application form that the filing is to create, alter, enlarge or extend an adult establishment or to erect a business sign accessory to an adult establishment or that the filing otherwise involves an adult establishment. Priority to operate as an adult establishment at a permitted location shall be as of the issuance date of the permit that authorizes the adult use.

To secure priority as an adult establishment when no work requiring a building permit is proposed, an applicant may file an Alteration (Alt.) III application with the Department and secure a "no work" permit.

D. A filing/application to secure priority as an adult establishment shall include the following:

1. a separate area diagram detailing all existing uses and block and lot numbers within 500 feet of the center line of the door(s) of the principal entrance of the proposed adult establishment or of the center line of the ground floor of the door(s) giving the most direct street access to the proposed adult establishment, including a statement that there are no churches or schools within the 500 foot radius;
2. a survey detailing the zoning districts within 500 feet of the center line of the door(s) of the principal entrance of the proposed adult establishment or of the center line of the ground floor of the door(s) giving the most direct street access to the proposed adult establishment;
3. a statement that no other adult establishment exists within 500 feet of the center line of the door(s) of the principal entrance of the proposed adult establishment or of the center line of the ground floor of the door(s) giving the most direct street access to the proposed adult establishment.

## II. **PLAN EXAMINER**

An objection shall be raised if: (1) there exists a church, school, or another adult establishment whether existing, permitted, or approved, within 500 feet of the proposed adult establishment; (2) there is an adult establishment whether existing, permitted, or approved, on the same zoning lot as the proposed adult establishment; (3) the proposed adult establishment is in or within 500 feet of a prohibited zoning district; or (4) the proposed adult establishment fails to comply in any other way with zoning or other applicable provisions.