UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------

CLUB AT 60TH STREET, INC., et al.,

                    Plaintiffs,

                  -against-

                                              02 Civ. 8333 (LJL)

THE CITY OF NEW YORK,

                    Defendant.

-------------------------------------------------------------------

725 EATERY CORP., et al.,

                    Plaintiffs,

                  -against-

                                              02 Civ. 4431 (LJL)

THE CITY OF NEW YORK, et al.,

                    Defendants.

-------------------------------------------------------------------

59 MURRAY ENTERPRISES, INC., et al.

                  Plaintiffs,

                -against-

                                              02 Civ. 4432 (LJL)

THE CITY OF NEW YORK, et al.,

                    Defendants.

-------------------------------------------------------------------

336 LLC, et al.,

                  Plaintiffs,                        18 Civ. 3732 (LJL)

                  -against-

THE CITY OF NEW YORK, et al.,

                    Defendants.

-------------------------------------------------------------------

## **DIRECT TESTIMONY DECLARATION OF SUSAN E. AMRON**

**Susan E. Amron**, declares under the penalties of perjury, pursuant to 28 U.S.C. § 1746, as follows:

1. I am the General Counsel of the New York City Department of City Planning ("DCP"), the city agency which provides staff assistance to the New York City Planning Commission ("Planning Commission"), a position I have held since January 2019. I am an attorney admitted to practice law in the State of New York, and for twenty eight years before joining DCP I held a variety of positions (including chief) in the Environmental Law Division of the Law Department of the City of New York. The Planning Commission is generally charged with planning for the orderly growth, development and improvement of the City of New York ("City"); its specific responsibilities include evaluating and giving preliminary approval to amendments of the New York City Zoning Resolution ("Zoning Resolution" or "Z.R."). See New York City Charter, Chapter 8, §§ 191, et seq. I make this direct testimony declaration for the trial in these four lawsuits that is scheduled to begin on October 16, 2023.

2. The Zoning Resolution (and other local laws) regulates the use and development of tracts of land known as zoning lots (e.g., most private property upon which buildings are constructed). As set forth in its Preamble, in order to protect the "public health, safety and general welfare," the Zoning Resolution addresses, *inter alia,* the height and bulk of buildings and other structures; the area of yards, courts and other open spaces; the density of residential population; and the location of trades, industries and buildings designed for specific uses within the City and, to further these goals, the Zoning Resolution divides the City into districts. Z.R. § 11-01. Specifically, the Zoning Resolution divides the City into three basic types of zoning districts: residence, commercial and manufacturing; within these broad categories there

are numerous subgroups. The intensity of permitted use on a particular property varies based upon, among other factors, its location.

3. In 1995, the City amended the Zoning Resolution to include use regulations governing the areas in which adult establishments may be located throughout the City ("1995 Regulations"). These regulations governed the location of commercial establishments with a predominant, on-going focus on sexually explicit materials or activities, including adult or "triple X" book and video stores, many of which provide "peep booths" for private viewing on premises (referred to in the zoning text as "adult book stores"), topless bars and strip clubs (referred to in the text as "adult eating or drinking establishments"), and theaters regularly offering X-rated movies or topless or nude entertainment (referred to in the text as "adult theaters").

4. By way of amendments to the Zoning Resolution approved by the New York City Council in October, 2001, the 1995 Regulations were amended to modify, as relevant here, the definitions of "adult establishment," "adult book store" and "adult eating or drinking establishment" to more accurately reflect the legislative intent behind the 1995 Regulations; the amendments did not alter the lots where adult uses could be located ("2001 Amendments").

5. The 2001 amended definitions clarify that all restaurants and bars which "regularly feature" adult entertainment are governed by the adult establishment regulations, no matter the amount of floor area devoted to adult entertainment. As to adult bookstores, the amendments clarify, among other things, that all stores with peep booths are governed by the adult use regulations, no matter the amount of floor area devoted to adult entertainment. Other bookstores that do not have peep booths, that do not have adult printed or visual materials that make up a substantial portion of their stock-in-trade, and that otherwise do not have any of the indicia set forth in the definition of "adult establishment," are not adult establishments, do not have

to comply with the adult use regulations, and may be located in any area of the city in which other bookstores may operate. See Z.R. § 12-10, definition of "adult establishment" sub-divisions (1)(a), (2)(d).

6. Pursuant to these regulations, all adult establishments (including adult bookstores and adult eating or drinking establishments) are allowed in the following commercial zoning districts: C6-4, C6-5, C6-6, C6-7, C6-8, C6-9, C7 and C8, and in most manufacturing ("M") zoning districts; adult establishments are prohibited in residential zoning districts, and in manufacturing and most commercial districts where residential uses are permitted (including MX districts). The Zoning Resolution treats all adult establishments, including bookstores fitting within that definition, distinctly from non-adult establishments, including non-adult bookstores, and hence, the prohibition against non-adult bookstores in certain zoning districts does not apply to such adult establishments (adult bookstores may be located where all other adult establishments may be located).

7. The following is a list of zoning districts where adult establishments are currently permitted:

| Not permitted | Permitted |
|---|---|
| All R Districts | |
| *Local commercial service districts:* **C1, C2, C3, C4, C5** **C6-1** through **C6-3** | Central commercial office districts: **C6-4** through **C6-9** **C7, C8** • limited to 10,000 sf or less • at least 500' from other adult uses, houses of worship, schools, or most boundaries of zoning districts in which adult uses are not permitted |
| M1-[x]D (which allow joint living-work quarters for artists) M1-5A, M1-5B, M1-5M, M1-6M, MX Special Districts | **M1, M2, M3** • limited to 10,000 sf or less • at least 500' from other adult uses, houses of worship, schools, or most boundaries of zoning districts in which adult uses are not permitted, except permitted within 500 feet of a boundary of a M1-6M |

Adult establishments that are not in any of these permitted zoning districts will have to relocate once the 2001 Amendments are enforced.

4

8. To the extent an area where adult establishments are allowed is rezoned to a zoning district that does not permit adult establishments, such rezoned districts will not be available for relocation of adult uses. And in the event of such a re-zoning, existing adult establishments within the rezoned area must terminate their use in the rezoned area within one year from the date they become non-conforming.[1] Also limiting the availability of lots for relocation of adult establishments is the fact that in those zoning districts where adult establishments are permitted, they are subject to the further requirement that no new adult establishments may locate within 500 feet of a house of worship or a school (both known as sensitive receptors), or another adult establishment. However, in areas where adult establishments have or will be lawfully established, to the extent that thereafter one or more sensitive receptors locate within 500 feet of an adult establishment, the adult establishment may remain notwithstanding the subsequent addition of a sensitive receptor.

9. As detailed in the Declaration of Matthew Croswell filed herewith, DCP conducted an extensive analysis of potential locations where adult establishments could be located. That analysis indicates that there are over 1,200 available locations throughout New York City where adult establishments could be located.

10. The areas in Manhattan permitting adult establishments, such as the Hudson Yards, Meatpacking and Hell's Kitchen neighborhoods, are zoned for and developed with a wide variety of commercial uses, including retail, office, service and entertainment, in addition to manufacturing and industrial uses. And these areas are largely accessible by public transportation.

---

[1] Although Z.R. Section 52-77 does establish a route whereby adult establishments may seek permission from the New York City Board of Standards and Appeals to continue in business for a period of longer than a year in order to amortize the costs of such establishments, the provision has never been timely utilized, to the knowledge of the Department of City Planning.

The zoning districts mapped in these neighborhoods are high-density commercial and manufacturing districts which are typically only mapped in areas with a high degree of transit accessibility as well as an established pattern of commercial development, where a high degree of future commercial development is anticipated.  Thus, these districts are typically vibrant, flourishing commercial centers supporting a wide range of activities from professional offices to entertainment uses.  Given their accessibility to regional rail connections, multiple subway lines and bus routes, these districts attract a wide range of potential customers, and are therefore some of the most desirable locations to locate for commercial establishments of all types.

11. Similarly, the available lots in Brooklyn are in various neighborhoods such as Sunset Park, Coney Island, East New York, and Red Hook, that are zoned for and developed with a wide variety of commercial uses, including retail, office, service and entertainment, in addition to manufacturing and industrial uses.  Moreover, some of these neighborhoods, such as Sunset Park and Red Hook, as well as North Brooklyn and Gowanus, have developed hotels with over 2,000 rooms (as of September 2020) for tourists and business travelers and are located in or near M1 districts, where adult entertainment uses are permitted.  And these areas are largely accessible by public transportation.  As with the examples in Manhattan, the districts mapped in these neighborhoods are in easily accessible areas with an established commercial character, which feature a vibrant mix of professional, entertainment, and other commercial uses, benefitting from the access to a broad base of potential customers provided by multiple subway lines and bus routes.

12. The available lots in Queens are located in various neighborhoods, including Long Island City, Sunnyside, Maspeth, Flushing and College Point, that provide access to the city's broad customer base through their proximity to multiple subway lines and bus routes.  These areas have an established pattern of commercial development, and in addition to their transit

accessibility, have a high degree of accessibility to customers arriving by taxi, personal automobile, and increasingly, users of ride-hailing services. Given this unique mix of accessibility, these neighborhoods have a high degree of commercial activity suitable for a wide range of potential establishments. Moreover, some of these neighborhoods, such as Long Island City, La Guardia, Flushing and Jamaica-JFK have developed hotels with over 3,000 rooms (as of September 2020) for tourists and are located in M1 districts where adult entertainment uses are permitted.

13. The Bronx neighborhoods with available lots, including Hunts Point, Port Morris/Mott Haven and Eastchester, provide access to the City's broad customer base through their proximity to multiple subway lines and bus routes. These areas have an established pattern of commercial development, and in addition to their transit accessibility, have a high degree of accessibility to customers arriving by taxi, personal automobile, and increasingly, users of ride-hailing services. Given this unique mix of accessibility, these neighborhoods have a high degree of commercial activity suitable for a wide range of potential establishments. The Bronx has over 1,000 hotel rooms (as of September 2020) available for tourists who could be using Bronx-based entertainment establishments.

14. Finally, the lots available in Staten Island are located in a variety of neighborhoods include the West Shore and Charleston, which are characterized by an established pattern of commercial development, albeit on a smaller scale than that in other boroughs. These areas are transit-accessible to borough residents by car, but transit accessibility from outside the borough is more limited than in similar areas in other boroughs, due to the lack of robust public transit options.

15. Plaintiffs have argued that each borough should be considered separately to determine where permissible adult uses may locate, given that they are different counties. This assertion is simply incorrect. New York City encompasses five county-level administrative divisions called boroughs, and each borough is coextensive with a respective county. Pursuant to Chapter 8 of the New York City Charter, DCP is responsible for planning and zoning for the entire City, including all five boroughs. Hence, the consideration of where adult establishments may locate must be undertaken on a City-wide basis, as is the case with respect to all uses under zoning. As is clear from the above analysis, there is more than sufficient space in vibrant areas within the City of New York for adult establishments to operate.

Dated:  New York, New York
        May 19, 2023

                                                    _____
                                                              SUSAN E. AMRON