UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------ x

CLUB AT 60TH STREET, INC., et al.,

                                                    Plaintiffs,

        -against-

                                                    02 Civ. 8333

THE CITY OF NEW YORK,

                                                    Defendant.

------------------------------------------------------------------------ x

725 EATERY CORP. dba Platinum Dolls,
Substituting for MLB ENTERPRISES CORP., et al.,

                                                    Plaintiffs,

        -against-

                                                  02 Civ. 4431

THE CITY OF NEW YORK, et al.,

                                                    Defendants.

------------------------------------------------------------------------ x

59 MURRAY ENTERPRISES, INC., et al.

                                                    Plaintiffs,

        -against-                                     02 Civ. 4432 (LJL)

THE CITY OF NEW YORK, et al.,                     (Action No. 2)

                                                    Defendants.

------------------------------------------------------------------------ x

336 LLC, et al.,

                                      Plaintiffs,

           -against-                        18 Civ. 3732 (WHP)

THE CITY OF NEW YORK, et al.,

                                      Defendants.

------------------------------------------------------------------------ x

## **DECLARATION OF DOB BOROUGH COMMISSIONER RODNEY GITTENS**

        Rodney Gittens, declares pursuant to 28 U.S.C. § 1746, under penalty of perjury, as follows:

        1. I am Bronx Borough Commissioner of the New York City Department of Buildings ("DOB"), the city agency responsible for, *inter alia*, issuing permits to build new and alter existing buildings within the City of New York. I make this declaration to set forth the current permitting procedures applicable to adult establishments as defined in the New York City Zoning Resolution ("Zoning Resolution"), as well as the permitting procedures that will be applicable to adult establishments, once the amendments to the Zoning Resolution approved by the City Planning Commission ("Planning Commission") on August 8, 2001 and adopted by the City Council on October 31, 2001 ("the 2001 Adult Use Amendments" or "the 2001 Amendments"), become enforceable. I submit this declaration in further support of defendants' motions for summary judgment and in opposition to plaintiffs' cross-motions for summary judgment and as my direct testimony for the trial in these four lawsuits scheduled to begin on October 16, 2023. As Bronx Borough Commissioner to DOB, I am fully familiar with the City's zoning regulations pertaining to adult establishments and DOB's procedures with regard to

permit issuance. I make this declaration on the basis of information in DOB's books and records and on the basis of conversations with City employees.

General Permitting Requirements

2. DOB's permitting procedures do not contain delay-inducing, discriminatory requirements for adult establishments. The permitting process for construction and alteration in order to use and occupy buildings, including by adult establishments, is set forth in the New York City Administrative Code ("Admin. Code").

3. Specifically, Admin. Code § 28-105.1 requires a permit to perform certain work on buildings or structures in New York City and provides:

> § 28-105.1 General. It shall be unlawful to construct, enlarge, alter, repair, move, demolish, remove or change the use or occupancy of any building or structure in the city, to change the use or occupancy of an open lot or portion thereof, or to erect, install, alter, repair, or use or operate any sign or service equipment in or in connection therewith, or to erect, install, alter, repair, remove, convert or replace any gas, mechanical, plumbing, fire suppression or fire protection system in or in connection therewith or to cause any such work to be done unless and until a written permit therefore shall have been issued by the commissioner in accordance with the requirements of this code, subject to such exceptions and exemptions as may be provided in section 28-105.4.

4. Admin. Code § 28-104.1 requires the approval of all required construction documents prior to the issuance of a permit. The process for the approval of such documents is set forth in Admin. Code § 28-104.2, which provides:

> § 28-104.2 Application for approval of construction documents. The department shall assign an application number to and docket all applications for approval of construction documents and any amendments thereto filed with it. The department shall examine the construction documents promptly

3

> after their submission. The examination shall be made under the direction of the commissioner for compliance with the provisions of this code and other applicable laws and rules. The personnel employed for the examination of construction documents shall be qualified registered design professionals, experienced in building construction and design…

5. As is apparent from a reading of that section, DOB's approval is issued when complete construction documents are submitted and meet the applicable requirements. The applicable laws and rules that DOB's plan examiners generally review for include the Zoning Resolution (i.e., for compliance with bulk regulations and conformity to applicable use regulations, including requirements related to signs and the proximity regulations specific to adult establishments) and the Construction Codes (e.g., for compliance with the requirements regarding means of egress, fire protection systems, accessibility, plumbing systems, mechanical systems, and energy conservation). The applicable laws and rules do not allow for consideration of the content of expressive activity.

6. In addition to Admin. Code § 28-104.2's requirement that DOB review construction documents "promptly" after submission, time limitations for the approval of such construction documents and the issuance of objections if construction documents do not meet all requirements, are set forth in Administrative Code §§ 28-104.2.7 and 28-104.2.8, which provide, in relevant part:

> **§ 28-104.2.7 Time period for review.** Completed construction documents complying with the provisions of this code and other applicable laws and rules shall be approved by the commissioner and written notice of approval shall be given the applicant promptly and no later than 40 calendar days after the submission of a complete application.
>
> Exceptions:

4

    1. On or before the fortieth day, the commissioner may, for good cause shown and upon notification to the applicant, extend such time for an additional 20 calendar days.

    **§28-104.2.8 Notification of rejection.** Applications failing to comply with the provisions of this code and other applicable laws and rules shall be rejected and written notice of rejection, stating the grounds of rejection, shall be given the applicant promptly and not later than the date required in section 28-104.2.7. [1]

    7. When DOB issues objections, the time frame for DOB's approval of construction documents is dependent upon the applicant's resolution of any and all objections issued. Applicants can obtain permits promptly after the approval of all construction documents, subject to additional compliance with code requirements for permits such as proper insurance and payment of all requisite fees.

DOB's Current Permitting Procedures for Adult Establishments

    8. Currently, adult establishments are not permitted to professionally certify [2,3] construction documents due to the current stay of enforcement of the 2001

---

[1] The time it takes to resolve plan exam objections necessarily depends on the applicant's responsiveness. That is, when a plan examiner issues an objection that proposed plans do not comply with DOB requirements, the onus is on the applicant to resolve those objections and the applicant may fail to do so in a swift or timely manner.

[2] Pursuant to Admin. Code § 28-104.2.1, DOB has established procedures for architects and engineers to provide them the privilege of filing applications subject to "limited supervisory check" and "professional certification." See Title 1 of the Rules of the City of New York ("RCNY") § 21-01. These applications are subject to limited review by DOB staff and are "accepted" by DOB in reliance on the attestation by the filing professional that the proposed work as set forth in the application is in accord with all laws and rules applicable to the proposed construction. That attestation is evidenced, in part, by the signature and affixing of the architect or engineer's seal to the documents being submitted. Another privilege extended to registered architect and licensed professional engineers is set forth in Directive No. 14 of 1975 ("Directive 14"). See Directive 14 of 1975, Request for Judicial Notice ("JNR") Exhibit 6. Pursuant to Directive 14, building permits may be issued with limited examinations of applications filed by registered architects and licensed professional engineers.

Amendments and the consequent need for the plans to identify the limitation of the approval of 60/40 establishments pending the litigation outcome[4] as well as to ensure the applicants have notice of the same, and the unique layout review currently required for 60/40 establishments while the stay is in place.

9. Prohibitions of professional certification are not unique to adult establishments. Additional types of work such as subdivisions and full demolitions are also excluded from the professional certification program. See Buildings Bulletin 2016-010, JNR Exhibit 16.

10. Furthermore, while professional certification of construction documents typically allows faster final completion of the processing of a building permit, that is not always the case. Moreover, how much faster can vary, but it is typically not significant. As set forth above, DOB's initial review must be completed within a 40-day period (which DOB may extend

---

[3] While new building applications and alteration applications that involve a change in the building's footprint may be professionally certified, they are routinely subject to a zoning audit regardless of whether the proposed application involves an adult establishment. See Buildings Bulletin 2016-010, JNR Exhibit 16.

[4] For as long as the 2001 Amendments have been stayed from being enforced, DOB has included the following or similar language on all approvals of 60/40 establishments: "Approved pursuant to the Order enjoining enforcement of the 2001 adult use zoning amendments issued by Judge Pauley of United States District Court, Southern District of New York, in *725 Eatery Corp. v. City of New York*, 408 F. Supp. 3d 424 (S.D.N.Y. 2019), and provided that: (1) the establishment does not have as a substantial portion of its stock-in-trade materials defined in ZR 12-10 subsection (a) and no substantial portion of the establishment as set forth in this application regularly features adult activity as defined in ZR 12-10 subsection (b) or (c) as these provisions existed prior to October 31, 2001; and (2) any approval or permit issued to the applicant for this job shall expire by operation of law upon vacatur of the stay, unless adult activity that is prohibited by such amendments immediately ceases upon reinstatement of the amendments. In the event a court of competent jurisdiction either:(1) invalidates the amendments or (2) grants a further stay or enforcement, any approval or permit issued to the applicant for this job shall not expire solely as a result of such court action."

by 20 days "upon notification to the applicant" and "on good cause shown") regardless of whether the construction documents are professionally certified.

11. Prior to the implementation of the 2001 amendments, many existing adult establishments purported to modify either the use or layout of their premises in order to become "non-adult" (i.e. by featuring adult entertainment in less than 40% of their customer accessible floor area).

12. As a result, for these applications, because zoning and building code requirements are inextricably linked, in order to determine whether the proposed renovations are permissible, DOB examines the proposed layout of the premises in order to ascertain whether, after the renovations, the adult establishment would actually remain "non-adult," (i.e. whether it would have a lawful 60/40 configuration). Plan examiners thus review construction aspects of the renovations such as the location of the partitions, bathrooms, ingress and egress.

DOB's Permitting Procedures for Adult Establishments when the 2001 Amendments become enforceable.

13. Once the 2001 amendments are implemented, eating or drinking establishments and theaters that regularly feature adult entertainment in any portion of their premises will constitute adult establishments. See, Z.R. §12-10 (definition of adult eating or drinking establishment). As a result, there will be no such thing as a 60/40 "non-adult" eating or drinking establishment or theater, and any eating or drinking establishment or theater that seeks to regularly feature adult entertainment will be required to locate in a permissible zoning district and location.[5] Moreover, it is expected that bookstores that purport to fall outside the definition

---

[5] After the implementation of the 2001 amendments, only 60/40 book/video stores that do not have one of the additional characteristics common among and exclusive to book/video stores having a predominant focus on adult materials (as set forth in the Zoning Resolution), will continue to be considered non-adult and, thus, will continue to be able to locate themselves in

of "adult book store" pursuant to the 2001 Amendments will file plans and applications with DOB as non-adult businesses and therefore will not be reviewed as adult establishments. Therefore, once the 2001 amendments are implemented, DOB plan examiners will not have to undertake a review of the layout of adult establishment construction documents in order to determine compliance with the Zoning Resolution unless the applicant chooses to seek such review.

14. Accordingly, on April 2, 2020, DOB issued Buildings Bulletin 2020-005 providing that once the 2001 Zoning Resolution Amendments become enforceable, professional certification of adult establishment applications and plans will no longer be prohibited because of the proposed adult establishment activity in and of itself.  See Buildings Bulletin 2020-005, JNR Exhibit 17; Consolidated Statement of Stipulated Facts ("CSSF") at ¶72.  It further provides that applications proposing adult establishments will no longer be subject to routine review by the Department's General Counsel's Office.  See Buildings Bulletin 2020-005, JNR Exhibit 17; CSSF at ¶88.  In fact, currently, adult establishment applications are no longer subject to routine review by the Department's General Counsel's Office.  CSSF at ¶¶ 85, 87.  Since February 2016, DOB's General Counsel no longer routinely reviews permit applications that propose adult establishments, as defined by the Zoning Resolution, and since March 23, 2022, DOB's General Counsel no longer routinely reviews permit applications that propose 60/40 Establishments or "no-work" permit applications that propose either adult establishments or 60/40 Establishments.

15. Buildings Bulletins are the manner in which DOB sets forth new policies and procedures related to operations to assist DOB customers and employees.

---

areas of the City in which adult establishments are prohibited.  See Z.R. § 12-10 (definition of adult bookstore).

16. Prior to utilizing Buildings Bulletins, DOB issued Operations Policy and Procedure Notices ("OPPNs") to set forth new policies and procedures related to operations. In fact, the prohibition of the use of professional certification for adult establishment construction documents and plans was set forth in OPPN #7/02, which Buildings Bulletin 2020-005 prospectively and partially supersedes. OPPN #7/02, JNR Exhibit 14; Buildings Bulletin 2020-005 JNR 17; JSF at ¶ 72.

17. Accordingly, with the availability of professional certification for adult establishments and no routine legal review, adult establishment applications will be processed in the exact same manner and within the same time frames as similar applications for all other types of businesses, including sensitive receptors.

DOB Procedures for Determining Priority of Uses

18. Not only is DOB construction document approval and permit necessary for an adult establishment to demonstrate applicable code and zoning compliance, but it is also necessary for an adult establishment to be deemed "established" pursuant to Z.R. §§ 32-01 and 42-01. Z.R. §§ 32-01 and 42-01 set forth the requirements for determining when an adult establishment will be deemed "established" for the purposes of 1) precluding an after-arriving adult use from locating within 500 feet of it and 2) securing its right to remain at a location should a sensitive receptor subsequently locate itself within 500 feet of it. These rules codify DOB's long-standing policy (since upheld by the Appellate Division in City of New York v. Love Shack, 286 A.D.2d 240 (1st Dept. 2001), rev'g, Index No. 2210/99 (Sup. Ct. Bronx Co. 2000)) of giving priority rights to those establishments that are the first to obtain a permit from DOB.

19. Specifically, Z.R. §§ 32-01 and 42-01 provide that an adult establishment is deemed established upon the date that it is issued a permit by DOB. See, Z.R. §§ 32-01 and 42-

01. Additionally, although not specifically addressed in the Zoning Resolution, a sensitive receptor is also deemed established upon the date that it is issued a permit by DOB.

20. The inquiry of whether an adult establishment or sensitive receptor is established does not end at the issuance of a DOB permit. As contemplated in Z.R. §§ 32-01 and 42-01, the priority rights of an adult establishment or a sensitive receptor can be affected by its failure to complete construction work and/or commence operations within a certain time frame, as well as its discontinuance of operations. Accordingly, DOB's rule set forth in 1 § RCNY 9000-01, which supplements Z.R. §§ 32-01 and 42-01, provides additional criteria to be used to determine the dates of establishment of adult establishments, houses of worship, and schools for purposes of Z.R. §§ 32-01 and 42-01. See 1 § RCNY 9000-01, JNR Exhibit 75.

21. An adult establishment or sensitive receptor that must obtain a new building permit or alteration permit (other than a "no work" permit) must also show significant progress toward completion of the work under the permit and the use or operation for which the building is constructed or altered must commence within six months from either the issuance of a temporary certificate of occupancy or after DOB sign-off that the work has been completed. See 1 RCNY § 9000-01(b)(1), JNR Exhibit 75.

22. An adult establishment or a sensitive receptor that does not need to perform any construction work for which a DOB work permit is required prior to commencing operation may file an Alteration ("Alt.") III application with DOB and secure a "no work" permit. The priority rights of this adult establishment or sensitive receptor will be determined based upon the date of issuance of the Alt. III "no work" permit. See, OPPN 7/02 (with respect to adult establishments), JNR Exhibit 14. Additionally, the use or operation for which the permit is issued must commence within two months of the issuance of such "no work" permit. See 1 RCNY § 9000-01(b)(2), JNR Exhibit 75.

23. However, adult establishments and sensitive receptors that began operating prior to August 8, 2001, are not required to have a DOB work permit (or "no work" permit) in order to secure their priority rights. See, OPPN 7/02 (with respect to adult establishments), JNR Exhibit 14. Rather, an adult establishment or a sensitive receptor that began operating prior to August 8, 2001, is deemed to be established either as of the date that it obtained a work permit from DOB (subject to the rules regarding failure to commence operation and discontinuance of operation discussed *infra*) or, if no work permit was obtained, as of the date it actually commenced operation. See 1 RCNY § 9000-01(b)(2), JNR Exhibit 75.

24. As the permitting procedures for both adult establishments and non-adult establishments will be identical once the 2001 Amendments become enforceable, the process and time frame for establishing priority will be the same for adult establishments and sensitive receptors.

25. Even currently, while adult establishments are prohibited from professionally certifying plans and applications, based on the limited amount of time that DOB's review will add to the permitting process, the contention that new sensitive receptors are likely to thwart adult establishments' efforts to locate within the City by quickly applying for, and receiving, their own building permits while the adult establishments' construction documents are pending, is far-fetched.

26. Permits are not revoked by the issuance of a notice of proposed revocation. A permit may only be revoked following the process set forth in Administrative Code sec. 28-105.10.

Dated:   New York, New York
         May 19, 2023

_____
Rodney Gittens