UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------

CLUB AT 60TH STREET, INC., et al.,

                    Plaintiffs,

               -against-

THE CITY OF NEW YORK,

                    Defendant.

02 Civ. 8333 (LJL)

--------------------------------------------------------------

725 EATERY CORP., et al.,

                    Plaintiffs,

               -against-

THE CITY OF NEW YORK, et al.,

                    Defendants.

02 Civ. 4431 (LJL)

--------------------------------------------------------------

59 MURRAY ENTERPRISES, INC., et al.

                    Plaintiffs,

               -against-

THE CITY OF NEW YORK, et al.,

                    Defendants.

02 Civ. 4432 (LJL)

--------------------------------------------------------------

336 LLC, et al.,

                    Plaintiffs,

               -against-

THE CITY OF NEW YORK, et al.,

                    Defendants.

18 Civ. 3732 (LJL)

--------------------------------------------------------------

# DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO
## PLAINTIFFS' RENEWED MOTION FOR PARTIAL SUMMARY JUDGMENT

HON. SYLVIA HINDS-RADIX
Corporation Counsel of the City of New York
*Attorney for Defendants*
100 Church Street
New York, New York 10007
(212) 356-2214

SHERYL NEUFELD
MARK MUSCHENHEIM
KERRI DEVINE
      Of Counsel

May 26, 2023

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ..................................................................... ii

ARGUMENT ........................................................................................ 1

    POINT I ......................................................................................... 1

        PLAINTIFFS' CHALLENGE TO THE ZONING
        RESOLUTION'S AMORTIZATION PROVISION
        FAILS. ................................................................................... 1

    POINT II ......................................................................................... 9

        PLAINTIFFS LACK STANDING TO FACIALLY
        CHALLENGE THE PERMITTING
        PROCEDURES WITH RESPECT TO ADULT
        ESTABLISHMENTS. ................................................................ 9

    POINT III ........................................................................................ 15

        THE DOB PERMITTING PROCEDURES
        APPLICABLE TO ADULT ESTABLISHMENTS
        ARE CONSTITUTIONAL. ....................................................... 15

        A.  Zoning Approval Requirements Are Not More
             Onerous for Adult Establishments ....................................... 15

        B.  The Permitting Procedures do not Lack
             Procedural Safeguards. ...................................................... 19

CONCLUSION ..................................................................................... 21

**Statutes**                                                                                                      **Pages**

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

725 Eatery Corp. v. City of New York,
    408 F. Supp. 3d 424 (S.D.N.Y. 2019) ................................................................ 1, 6, 7, 12

801 Conklin St. Ltd. V. Town of Babylon,
    38 F. Supp. 2d 228 (E.D.N.Y. 1999) ....................................................................... 5

Agostini v. Felton,
    521 U.S. 203 (1997)......................................................................................... 8

Ass'n of Club Execs. of Dallas, Inc. v. City of Dallas,
    2022 WL 1642470
    (N.D. Tex. May 24, 2022),
    appeal docketed, No. 22-10556 (5th Cir. Jun. 6, 2022)............................................... 7

Brown v. Ent. Merchs. Ass'n,
    564 U.S. 786 (2011).......................................................................................... 8

Cannady v. Bd. Of Trs. of the Boilermaker-Blacksmith Nat'l Pension Trust,
    20-3141-cv, 2022 WL 151298 (2d Cir. 2022)................................................... 16, 21

Casanova Entm't Group, Inc. v. City of New Rochelle,
    375 F. Supp. 2d 321 (S.D.N.Y. 2005) .................................................................. 12

Chandok v. Klessig,
    632 F.3d 803 (2d Cir. 2011) ............................................................................. 13

City of Austin v. Reagan Nat'l Adver. of Austin, LLC,
    142 S. Ct 1464 (2022)..................................................................................... 7, 8

City of Los Angeles v. Alameda Books, Inc.,
    535 U.S. 425 (2002)........................................................................................ 1, 2

City of Renton v. Playtime Theatres, Inc.,
    475 U.S. 41 (1986)................................................................................ 1, 2, 7, 8, 9

Clapper v. Amnesty Int'l USA,
    568 U.S. 398 (2013)........................................................................................ 10

Convoy, Inc. v. City of San Diego,
    183 F.3d 1108 (9th Cir. 1999) ............................................................................ 15

DLS Inc. v. City of Chattanooga,
    107 F.3d 403 (6th Cir. 1997) .............................................................................................9

Erzoznik v. City of Jacksonville,
    422 U.S. 205 (1975)...........................................................................................................8

For the People Theatres of N.Y. Inc. v. City of New York,
    20 A.D.3d 1 (First Dep't 2005) ........................................................................................3

For the People Theatres of N.Y. Inc. v. City of New York,
    29 N.Y.3d 340 (2017)......................................................................................................21

FW/PBS, Inc. v. Dallas,
    493 U.S. 215 (1990).............................................................................................17, 18, 20

Granite State Outdoor Adver., Inc., v. City of St. Petersburg,
    348 F.3d 1278 (11th Cir. 2003) .......................................................................................19

Hart Book Stores, Inc. v. Edmisten,
    612 F.2d 821 (4th Cir. 1979) .............................................................................................5

Keepers, Inc. v. City of Milford,
    807 F. 3d 24 (2d Cir. 2015) .............................................................................................11

Laird v. Tatum,
    408 U.S. 1 (1972)..............................................................................................................10

Lakewood v. Plain Dealer Pub. Co.,
    486 U.S. 750 (1988)..........................................................................................................10

Latino Officers Ass'n v. Safir,
    170 F. 3d 167 (2d Cir. 1998) ...........................................................................................10

Losilevich v. City of New York,
    No. 21-cv-4741, 2022 U.S. Dist. LEXIS 143614
    (E.D.N.Y. Aug. 10, 2022)................................................................................................10

Lujan v. Defs. of Wildlife,
    504 U.S. 555 (1992)..........................................................................................................10

M.J. Entm't Enters. v. City of Mt. Vernon,
    234 F. Supp. 2d 306 (S.D.N.Y. 2002) .......................................................................11, 12

Mahmud v. Kaufmann,
    607 F. Supp. 2d 541 (S.D.N.Y. 2009) ........................................................................16, 21

Minneapolis Star & Tribune Co. v. Minn. Comm'r of Revenue,
    460 U.S. 575 (1983)............................................................................................................8

*Pao Xiong v. City of Moorhead,*
   641 F. Supp. 2d 822 (D. Minn. 2009) ............................................................5

*Reed v. Town of Gilbert, Arizona,*
   576 U.S. 155 (2015) ..........................................................................7, 8

*SDJ, Inc. v. Houston,*
   837 F.2d 1268 (5th Cir. 1988) ......................................................................5

*Spokeo, Inc. v. Robins,*
   578 U.S. 330 (2016) ..................................................................................10

*Story v. Green,*
   978 F.2d 60 (2d Cir. 1992) ............................................................................9

*Stringfellow's of New York, Ltd. v. City of New York,*
   91 N.Y.2d 382 (1998) ............................................................................3, 17

*Town of Islip v. Caviglia,*
   73 N.Y.2d 544 (1989) ............................................................................4, 6

*Ward v. Rock against Racism,*
   491 U.S. 781 (1989) ..................................................................................7

*Young v. City of Simi Valley,*
   216 F.3d 807 (9th Cir. 2000) ................................................................14, 15

**Statutes**

NYC Admin. Code § 28-104.2.7 ....................................................................20

RCNY Title 1 § 9000-01(b) ........................................................................13

Z.R. § 12-10 ........................................................................................21

Z.R. § 12-10 (2)(d)(ii) ............................................................................21

Z.R. § 32-01(b) ....................................................................................17

Z.R. § 42-01(b) ....................................................................................17

Z.R. § 51-00 ........................................................................................8

Z.R. § 52-22 ........................................................................................8

Z.R. § 52-30 ........................................................................................8

Z.R. § 52-40 ........................................................................................8

Z.R. § 52-60 ..................................................................................................................8

Z.R. § 52-70 ..................................................................................................................3

Z.R. § 52-74 ..................................................................................................................3

Z.R. § 52-77 ..................................................................................................................3

Z.R. § 72-41 ..................................................................................................................3

Defendants, by their attorney, Hon. Sylvia Hinds-Radix, submit this memorandum of law in opposition to plaintiffs' motions for partial summary judgment in these four consolidated cases, Club at 60th Street, Inc., 725 Eatery Corp., 59 Murray Enterprises, Inc. and 336 LLC, d/b/a "the Erotica, et. al.".

## ARGUMENT

### POINT I

### PLAINTIFFS' CHALLENGE TO THE ZONING RESOLUTION'S AMORTIZATION PROVISION FAILS.

As explained in detail in defendants' memorandum of law in support of their motion for summary judgment (ECF 161) ("Dfts' SJ Br."), the 2001 Amendments[1] satisfy the constitutional standards set forth in City of Renton v. Playtime Theatres, Inc., 475 U.S. 41 (1986); the 2001 Amendments are a content-neutral time, place and manner regulation that is designed to serve a substantial governmental interest and allows for reasonable alternative avenues of communication. Renton, 475 U.S. at 50. See also 725 Eatery Corp. v. City of New York, 408 F. Supp. 3d 424, 460 (S.D.N.Y. 2019).[2]

To start, in the PI decision Judge Pauley concluded "that the City's adult-use regulations are content-neutral" since they are "justified by the desire to reduce the adverse secondary effects of adult establishments." 408 F. Supp. 3d at 462, citing Renton (emphasis in original). Second, Judge Pauley concluded that defendants' interest in reducing the negative

---

[1]   The abbreviations used in this memorandum of law are the same as those used in the defendants' memorandum of law in support of their motion for summary judgment. In addition, references to documents on the ECF docket are to those filed in the Club at 60th Street lawsuit.

[2]   In the PI decision, Judge Pauley ruled that Justice Kennedy's concurrence in City of Los Angeles v. Alameda Books, Inc., 535 U.S. 425 (2002) did not materially alter this long-standing analytical framework. See PI decision, 408 F. Supp. 3d at 464-65.

secondary effects of adult establishments "clearly qualifies as a 'substantial governmental interest.'" Id. at 465 (citations omitted).

Judge Pauley also concluded that the 2001 Amendments are sufficiently tailored to meet the City's interest in reducing negative secondary effects caused by adult establishments. In doing so, Judge Pauley ruled that the defendants provided evidence (the DCP Study and 2001 CPC Report) that supports a link between the regulated speech and the secondary effects, noting that defendants "had a reasonable basis to infer that regulating the location of 60/40 establishments would alleviate the negative secondary effects associated" with adult establishments. Id. at 465-66 (internal citations omitted).[3] Neither Judge Pauley nor Renton nor its progeny require that a municipality that premises a zoning change on negative secondary effects must also establish (by, for instance, studies) that other zoning changes are not similarly premised on negative secondary effects, as plaintiffs assert in their claim relating to the amortization provision applicable to adult uses.

Finally, as set forth in the previously filed Declaration of Susan E. Amron, DCP's General Counsel (ECF 159), the 2001 Amendments provide reasonable opportunities for adult establishments to locate and operate in the City of New York.[4] In addition to the ten 100% adult establishments located in permissible zoning districts that may remain at their current locations, there are also currently 32 identified 60/40 establishments that will need to relocate once the 2001 Amendments take effect. See CSF, at ¶¶ 167 & 170. After conducting a comprehensive analysis,

---

[3]   As detailed in Dfts' SJ Br. at 27-29, Alameda Books did not impose a higher evidentiary burden on a municipality's location regulations for adult establishments.

[4]   As also detailed in Dfts' SJ Br. at 36-37, Alameda Books did not change the requirements of the available alternatives analysis.

DCP determined that City-wide there are at least 1,703 lots available for adult establishments to relocate. See ECF 159 (Amron Dec., at ¶¶ 12-13).[5]

Against this backdrop, plaintiffs essentially assert that the defendants cannot require non-conforming adult establishments to terminate if "all" other non-conforming uses are not required to terminate.[6] Plaintiffs' Memorandum of Law in Support of their Motion for Partial Summary Judgment ("Club Plts' Partial SJ Br."), at 18.  As a preliminary matter, plaintiffs inaccurately claim that "all" other non-conforming uses are not required to terminate.[7]  In fact, while the Zoning Resolution typically permits non-conforming uses to remain so long as certain conditions are met (since such uses typically do not have negative secondary effects beyond their property line), the Zoning Resolution mandates that non-conforming uses that cause negative secondary effects beyond their property line terminate after an amortization period. Z.R. § 52-70. See Z.R. § 52-74 (in residential districts the following uses that are not in a completely enclosed building below a certain assessed valuation must have terminated within ten years of December

---

[5]    In performing its analysis DCP omitted mixed use building code lots that theoretically could contain a sensitive receptor.  However, as set forth in the CSF at paragraph 237 (ECF 193-1), 96 percent of those lots are in zoning districts that do not allow adult establishments.  As detailed in that paragraph, only 82 lots (or a portion thereof) are in areas that allow adult establishments; if hypothetically all of the 82 lots contained a sensitive receptor, 412 of the 1,703 lots would not be available for adult establishments since they would be within 500 feet of a sensitive receptor.

[6]    The Zoning Resolution, § 52-77 and § 72-41, requires that adult establishments located in zoning districts that do not allow such establishments terminate within one year of the 2001 Amendments becoming effective.  This one year period allows these establishments to recoup their investments.  Both provisions -- known as amortization provisions -- have been upheld by New York State courts.  See Stringfellow's of New York, Ltd. v. City of New York, 91 N.Y.2d 382, 405 (1998) & For the People Theatres of N.Y. Inc. v. City of New York, 20 A.D.3d 1, 21 (First Dep't 2005).  While these amortization provisions were initially set to expire in October 2002, plaintiffs had years (and in some cases decades) to recoup their investments.

[7]    At other points in their brief, plaintiffs recognize that not all other non-conforming uses must terminate.  Club Plts' Partial SJ Br., at 12, fn 13.

3

15, 1961 or when the use became non-conforming: "coal storage; dumps, marine transfer stations for garbage, or slag piles; junk or salvage yards …; lumber yards …; manure, peat or topsoil storage; [and] scrap metal, junk, paper or rags storage, sorting or baling.").

That certain non-conforming uses are treated differently than others is premised on the negative secondary effects that such uses impose beyond their property line. See Zoning New York City, Voorhees Walker Smith & Smith (August 1958), at 229[8] ("many nuisances created by industries are not confined to immediate vicinity of the industrial plants. For example, odors and other types of air pollution can adversely affect whole neighborhoods…."). And while the negative secondary effects of coal storage or marine transfer stations for garbage differ, adult establishments have well-documented negative secondary effects beyond their property lines. See 1994 DCP Study, JNR Exhibit 41. Indeed, the 1995 City Planning Commission Report directly addressed this issue: non-conforming adult establishments should not be "grandfathered" since that "would substantially reduce the effectiveness of the proposed [zoning change] in responding to the adverse secondary effects of adult establishments." See 1995 CPC Report, JNR Exhibit 41-3 at Bates No. 463-64. See also 2001 CPC Report, JNR Exhibit 45 at Bates No. 701-03. Specifically, grandfathering adult establishments would freeze "certain locations and certain neighborhoods as the situs of adult establishments," and those adult establishments "would in effect have a monopoly in the area" which would create "a strong incentive to keep an inappropriate use operating within a neighborhood." 1995 CPC Report, JNR Exhibit 41-3 at Bates No. 464.[9]

---

[8]    Available    at    https://www1.nyc.gov/assets/planning/download/pdf/about/city-planning-history/zoning_nyc.pdf).

[9]    This differential treatment between non-conforming adult establishments and most other non-conforming uses is not unique to New York City. See, e.g., Town of Islip v. Caviglia, 73 N.Y.2d

4

While amortization provisions applicable to adult establishments have repeatedly been upheld by courts across the country,[10] plaintiffs nevertheless contend that their motion is one of first impression; specifically, they contend that the amortization provision is facially unconstitutional since the defendants have a purported "burden to show that [they] relied on content-neutral 'data or reasoning' to show that <u>adult</u> non-conforming uses cause significantly greater secondary effects than all <u>other</u> types of non-conforming uses" and thus those provisions are "impermissibly content-based." Club Plts' Partial SJ Br., at 31-32 (emphasis in original). Essentially, plaintiffs contend, erroneously, that to establish that the amortization provision is content-neutral defendants were required to set forth evidence not only of the secondary effects of adult establishments, but also that those non-conforming uses that are not subject to an amortization provision cause "significantly" less secondary effects than adult establishments (even though no such requirement applies to other zoning changes, such as the 2001 Amendments).

At the outset, plaintiffs' claim in this regard is based upon the faulty premise that all permitted uses that later become non-conforming do so because they have been determined to cause negative secondary effects. This is not so, a use can become non-conforming for other reasons, such as the City having identified that a particular area or neighborhood would benefit by changing the allowable uses for properties in that area or neighborhood.[11] See Declaration of DCP Zoning Director Frank Ruchala, Jr., at 5.

---

544, 560-61 (1989) & <u>801 Conklin St. Ltd. v. Town of Babylon</u>, 38 F. Supp. 2d 228, 249 (E.D.N.Y. 1999).

[10]   <u>See, e.g.</u>, <u>Hart Book Stores, Inc. v. Edmisten</u>, 612 F.2d 821, 830 (4th Cir. 1979); <u>SDJ, Inc. v. Houston</u>, 837 F.2d 1268, 1278 (5th Cir. 1988); <u>World Wide Video of Wash.</u>, 368 F.3d at 1199-2000; <u>Pao Xiong v. City of Moorhead</u>, 641 F. Supp. 2d 822, 831 (D. Minn. 2009).

[11]   It is well established that non-conforming uses that are subject to amortization provisions, such as adult establishments and coal storage, cause negative secondary effects. In contrast, those non-conforming uses that are not subject to mandatory termination do not typically cause significant

Plaintiffs' claim that the amortization provision constitutes a content-based regulation fails. As Judge Pauley noted in the PI decision, an "ordinance that regulates 'expressive activity is content-neutral so long as it is justified without reference to the content of the regulated speech.'" PI decision, 408 F. Supp. 3d at 461 (quoting Mastrovincenzo, 435 F.3d at 98). And an ordinance that targets the "'potential harmful secondary effects of speech are ... content-neutral and trigger intermediate, rather than strict, scrutiny." Id. at 461-62 (quoting Mastrovincenzo, 435 F.3d at 98). Like the 2001 Amendments, here the amortization provision is premised "by the desire to reduce the adverse secondary effects of adult establishments." Id. at 462.

Indeed, the claim asserted by plaintiffs was rejected decades ago in Town of Islip v. Caviglia, 73 N.Y.2d 544 (1989). In Islip, the New York Court of Appeals rejected an adult establishment's claims that the Town of Islip's ordinance improperly limited the locations where adult establishments could operate, and also improperly required the relocation of adult establishments. After concluding that the ordinance's locational limitations comported with the First Amendment and the New York State constitution, the court turned to the amortization provision, and specifically the adult establishment's claim -- like plaintiffs' claim here -- "that amortization applied to uses enjoying constitutional free speech protection amounts to content-based regulation," and that Islip's ordinance "must be prospective or 'grandfather-in' existing uses." Id. The court rejected that argument, ruling that since "the ordinance is content-neutral under both the Federal and State Constitutions, the amortization provisions rest upon the same legal foundation as such provisions generally and, on the facts presented here, are valid." Id. (citations omitted). The Islip court's holding is sound; the Zoning Resolution's amortization

---

secondary effects; for instance, a non-conforming convenience store typically does not have any effect beyond its property line.

provision is based on the same legal framework as the 2001 Amendments.  And since the 2001

Amendments comport with the First Amendment, the amortization provision similarly does as

well.[12]

       Plaintiffs also contend -- incorrectly -- that the amortization provision should not

be analyzed under Renton, but instead by a variety of other "tests."  In the PI decision, Judge

Pauley declined plaintiffs' "invitation to analyze the constitutionality of the 2001 Amendments

separately under" the various "tests" advanced by plaintiffs which were "drawn from disembodied

snippets of various opinions by the Supreme Court and individual Justices."  PI decision, 408 F.

Supp. 3d at 460, fn 29.  And as defendants' moving brief also sets forth, the Almaeda, Reed v.

Town of Gilbert, Arizona, 576 U.S. 155 (2015) and Ward v. Rock against Racism, 491 U.S. 781

(1989), holdings do not control here.  Dfts' SJ Br., at 25, 27-29 & 36-40.  Plaintiffs also contend

that the recent Supreme Court ruling in City of Austin v. Reagan Nat'l Adver. of Austin, LLC, 142

S. Ct. 1464 (2022), changes the analysis of the amortization provision.  The Austin case, like the

Reed case before it, involved a challenge to a municipal sign ordinance (unlike Reed, in Austin

the court upheld Austin's ordinance which set forth different requirements for on-site premises

signs than off-site premises signs).  But as Judge Pauley noted in the PI decision, Reed did not

alter the analysis applicable to zoning ordinances like the 2001 Amendments.  PI decision, 408 F.

---

[12]  Plaintiffs' reliance on Ass'n of Club Execs. of Dallas, Inc. City of Dallas, 2022 WL 1642470 (N.D. Tex. May 24, 2022), appeal docketed, No. 22-10556 (5th Cir. Jun. 6, 2022), is misplaced. That case involved a Dallas ordinance that completely prohibited protected activity at adult establishments between 2 a.m. and 6 a.m.  The court ruled that the ordinance was not narrowly tailored since the evidence did not establish a link between the secondary effects and the adult establishments.  The court also focused on the lack of reasonable alternatives for First Amendment activity:  "closing the [adult establishments] during this period deprive numerous people access to protected speech."  Id. at * 17.  In stark contrast, here the 2001 Amendments are narrowly tailored and justified by the DCP Study and 2001 CPC Report, and defendants provide ample alternatives for adult establishments to engage in their First Amendment activity.

Supp. 3d at 463.  And like <u>Reed</u>, <u>Austin</u> does not change the <u>Renton</u> analysis applicable to the 2001 Amendments or the amortization provision.  <u>See</u> <u>Agostini v. Felton</u>, 521 U.S. 203, 237 (1997) (courts follow the precedent that directly controls a case).

Plaintiffs also contend that the amortization provision is underinclusive. Specifically, plaintiffs contend that the defendants have "singled out" adult establishments for "disfavored treatment, i.e. mandatory termination, compared to all other nonconforming uses." Club Plts' Partial SJ Br., at 45.  (As noted above, plaintiffs' assertion that amortization provisions only apply to adult establishments is inaccurate.)  Plaintiffs contend that the amortization provision applicable to adult establishments fails because it is underinclusive since the defendants "conducted no studies to compare the adverse effects of different kinds of nonconforming uses." <u>Id.</u> at 45-46.  Unlike the factual scenarios in <u>Erzoznik v. City of Jacksonville</u>, 422 U.S. 205 (1975), <u>Brown v. Ent. Merchs. Ass'n</u>, 564 U.S. 786 (2011) and <u>Minneapolis Star & Tribune Co. v. Minn. Comm'r of Revenue</u>, 460 U.S. 575 (1983) relied on by plaintiffs, such a study was not necessary since the Zoning Resolution itself recognizes that not all non-conforming uses have negative secondary effects (or the same negative secondary effects).

Generally, "regulations governing non-conforming uses … provide a gradual remedy for existing undesirable conditions," and the "regulations are designed to restrict further investment in such uses."[13] Z.R. § 51-00.  In contrast, the Zoning Resolution recognizes that for "objectionable non-conforming uses which are detrimental to the character of the districts in which such uses are located, a reasonable statutory period of life is established for such uses." <u>Id.</u> Indeed,

---

[13]   In those cases, the Zoning Resolution imposes limitations on structural alterations (Z.R. § 52-22), on changes to non-conforming uses (Z.R. § 52-30) and on enlargements or extensions.  Z.R. § 52-40. Also, if a non-conforming use is not active for two-years it generally must terminate.  Z.R. § 52-60.

back in the 1950s it was noted that in "the last three decades municipalities throughout the country have adopted direct means of eliminating at least certain types of non-conforming uses. Most recent American zoning ordinances … have provisions requiring the elimination of both commercial and manufacturing non-conforming uses in residential districts." See Zoning New York City, Voorhees Walker Smith & Smith (August 1958), at 229.

Finally, plaintiffs also assert an Equal Protection claim. It too fails. As the defendants' noted in their moving brief at 62, a law that does not impinge on a fundamental right nor use an inappropriate classification will generally "not be found to violate the Equal Protection Clause unless it is has no reasonable or rational basis." Story v. Green, 978 F.2d 60, 63-64 (2d Cir. 1992). Neither the 2001 Amendments nor the amortization provision impinge on the plaintiffs' First Amendment rights; and since the plaintiffs are not members of a suspect class, the 2001 Amendments are examined under rational basis review. Moreover, "the Equal protection Clause adds nothing to the First Amendment analysis; if a sufficient rationale exists for the ordinance under the First Amendment, then the City has demonstrated a rational basis for the alleged disparate treatment under the Equal Protection Clause." DLS Inc. v. City of Chattanooga, 107 F.3d 403, 411 n.7 (6th Cir. 1997) (citing Renton, 475 U.S. at 55 n.4). Since plaintiffs' First Amendment claim fails, their Equal Protection claim also fails.

## POINT II

### PLAINTIFFS LACK STANDING TO FACIALLY CHALLENGE THE PERMITTING PROCEDURES WITH RESPECT TO ADULT ESTABLISHMENTS.

Plaintiffs claim that the New York City Department of Building's ("DOB") permitting procedures for adult establishments are facially unconstitutional because they allow for a "sensitive use veto" and lack procedural safeguards. Plaintiffs, however, lack standing to

challenge DOB's permitting procedures.  To establish Article III standing, plaintiffs must show that they suffered an "injury in fact" that is "fairly traceable" to the defendants' conduct and would likely be "redressed by a favorable decision." Lujan v. Defs. of Wildlife, 504 U.S. 555, 560 (1992); see also Spokeo, Inc. v. Robins, 578 U.S. 330, 338 (2016).  An injury in fact is one that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." Lujan, 504 at U.S. 560.  "A plaintiff cannot establish a harm is 'imminent' through bare allegations 'of possible future injury' contingent on a 'highly attenuated chain of possibilities.'" Losilevich v. City of New York, No. 21-cv-4741, 2022 U.S. Dist. LEXIS 143614, *10 (E.D.N.Y. Aug. 10, 2022), quoting Clapper v. Amnesty Int'l USA, 568 U.S. 398, 409-10 (2013).

In Lakewood v. Plain Dealer Pub. Co., 486 U.S. 750 (1988), the Supreme Court loosened the standing requirements required for facial challenges to statutes allegedly vesting unbridled discretion in licensing authorities.  To establish standing to bring such a facial challenge, the Court held that plaintiff was required to show, "a close enough nexus to expression, or to conduct commonly associated with expression, to pose a real and substantial threat of the identified censorship risks." Id. at 769.  However, while one bringing a First Amendment challenge to a licensing statute need not have applied for such license to establish standing, "[a]llegations of a 'subjective chill [of First Amendment rights] are not an adequate substitute for a claim of specific present objective harm or a threat of a specific future harm.'" Latino Officers Ass'n v. Safir, 170 F. 3d 167, 170 (2d Cir. 1998) (brackets in original) quoting Laird v. Tatum, 408 U.S. 1, 13-14 (1972); Lakewood v. Plain Dealer Pub. Co., 486 U.S. 750, 755-756 (1988).  "[A] plaintiff must proffer some objective evidence to substantiate his claim that the challenged [regulation] has deterred him from engaging in protected activity." Latino Officer Ass'n, 170 F.3d at 170.

Plaintiffs' claim of possible future standing with respect to the permitting procedures is insufficient to establish standing to challenge them. As plaintiffs acknowledge, their standing with respect to the permitting procedures is contingent on a finding by this Court that the mandatory termination provisions are constitutional. Club Plts' Partial SJ Br., at 2, 50. To sufficiently establish standing, however, plaintiffs must establish standing for each claim asserted. Keepers, Inc. v. City of Milford, 807 F. 3d 24, 42 (2d Cir. 2015); M.J. Entm't Enters. v. City of Mt. Vernon, 234 F. Supp. 2d 306, 311 (S.D.N.Y. 2002). Plaintiffs herein essentially concede that they do not currently have standing to challenge the permitting procedures. Indeed, the facts herein are strikingly similar to those in M.J. Entm't Enters, in which the Court found that plaintiff therein did not have standing with respect to its challenge of the "special permit use" requirements where plaintiff would only be subject to such requirements if it was successful in challenging the Mount Vernon zoning scheme. For the same reasons, plaintiffs herein fail to establish standing to challenge the permitting procedures.

Even assuming that plaintiffs' standing to challenge the permitting procedures was not contingent on other determinations by this Court, plaintiffs have failed to sufficiently establish that the challenged permitting procedures have deterred them from engaging in protected activity and, thus, also do not have standing for this reason. Plaintiffs allege that the permitting procedures and so-called potential "sensitive use veto" have chilled and deterred them from relocating. Club at 60th Compl. at ¶ 133; Club Plts' Partial SJ Br., at 59. However, none of the plaintiffs allege that they have ever identified any available alternative sites to which they desire to relocate, nor set forth any efforts to identify available alternative sites. While plaintiffs do also allege that there

are insufficient sites to which existing adult establishments may legally relocate,[14] they do not allege that there are no sites within the City of New York that are legally permissible for adult establishments to locate, yet they have never attempted to relocate. This may be because the Club plaintiffs assert that there are only three sites in Manhattan to which Club plaintiffs could simultaneously relocate[15] and Manhattan Club plaintiffs have all sworn that they will not relocate outside of Manhattan,[16] but the desire to be located in Manhattan is not legally sufficient. See PI decision, 408 F. Supp. 3d at 467. Thus it is clear that plaintiffs' claims regarding their alleged inability to relocate are primarily based on the alleged insufficiency of sites, as several plaintiffs swore to in their declarations submitted in support of plaintiffs' motion for a preliminary injunction,[17] and not permitting procedures that plaintiffs have never tried to avail themselves of. Thus, any argument that plaintiffs' inability to relocate is the result of the permitting procedures "is too attenuated to satisfy Article III's causation requirement." M.J. Entm't Enters., 234 F. Supp. 2d at 311. Accordingly, plaintiffs' alleged injuries are not fairly traceable to the permitting procedures and a decision with respect to the permitting procedures is unlikely to redress their claimed harm. See Casanova Entm't Group, Inc. v. City of New Rochelle, 375 F. Supp. 2d 321, 335 (S.D.N.Y. 2005)(finding plaintiff did not have standing to challenge special use permit

---

[14]  See Club at 60th Street, Second Am. Compl ("Club at 60th Compl."), at ¶ 86; 725 Eatery Corp., Second Am. Compl ("725 Eatery Compl."), at 81; 59 Murray Enterprises, Second Am. Compl. ("59 Murray Compl."), at ¶ 85; 336 LLC, Compl. ("336 LLC Compl."), at ¶ 101.

[15]  Defendants refute that there are only three sites in Manhattan to which adult establishments could simultaneously relocate. See CSF at ¶¶141-144.

[16]  Club Plts' Partial SJ Br., at 36; Declarations submitted in support of Plaintiffs' Motion for a Preliminary Injunction, Vol. 4 of Plaintiffs' Joint Appendix in Support of Plaintiffs' Motion for a Preliminary Injunction ("Pls. Joint Appendix") at Bates 0234, 0251.

[17]  See Pls. Joint Appendix, Vol 4 at 0236, 0272, 0287, 0302]

provisions because plaintiff's inability to operate an adult-oriented cabaret at its current location is not attributable to the requirement of a special use permit.)

Furthermore, plaintiffs have failed to establish that the threat of the "sensitive use veto" is real and substantial. Pursuant to § 9000-01(b) of Title 1 of the Rules of the City of New York ("RCNY"), "[t]he date of establishment of an adult establishment, house of worship, or school…shall be the date of issuance of an appropriate department permit…." Plaintiffs claim that this rule enables houses of worship or schools to intentionally block an adult establishment from opening by swooping in and obtaining a permit to operate at a site within 500 feet of the adult establishment's proposed location, after the adult establishment has submitted an application but before it has obtained the permit. This claim is based on pure speculation and is baseless.

In support of their claim that the threat of such a "sensitive use veto" is both real and substantial and has had a chilling effect on plaintiffs by deterring them from seeking to relocate, plaintiffs rely on one nearly ten-year old instance from the last 27 years during which the zoning regulations with respect to adult establishments have been enforced.[18] Club Plts' Partial SJ Br., at 56-59; Berzak Dec. (ECF 156) generally. In that one instance, plaintiffs speculate that a competitor of Sapphire 2, an adult eating or drinking establishment, attempted to obtain a permit to operate a house of worship, in a building owned by a church, within 500 feet of the location Sapphire 2 had sought building permits to open at that location. Aside from the fact that these allegations are highly speculative and not supported by undisputed facts, plaintiffs admit that there was in fact no sensitive use veto. Ultimately, Sapphire 2 established priority and obtained the

---

[18] The allegations regarding Sapphire 2's permitting experience are not undisputed facts, however they are also not material disputed facts that would prevent the court from granting the City's motion for summary judgment. Chandok v. Klessig, 632 F.3d 803, 812 (2d Cir. 2011).

necessary permits, thus thwarting any attempted "sensitive use veto." Club Plts' Partial SJ Br, at 58; Berzak Dec. at ¶40. Indeed, the permitting procedures worked in Sapphire 2's favor.

Moreover, the permitting procedures in place at the time of the alleged attempted "sensitive use veto" will no longer be in place if and when plaintiffs are required to relocate. In 2014, when Sapphire 2 was going through the process of obtaining building permits, adult establishments were not allowed to submit professionally certified applications, including construction plans. As plaintiffs allege with respect to Sapphire 2, the offending church's application was professionally certified and the permit was issued three days after its application was filed, while Sapphire 2's permit, which could not be professionally certified, was not issued until two and a half months after its application was filed. Berzak Dec. at ¶ 28. As reflected in Buildings Bulletin 2020-005, issued on April 2, 2020, JNR Exhibit 17, once the 2001 Amendments become enforceable, the use of professional certification will be authorized for applications related to adult establishments. Therefore, assuming arguendo, that the one and only instance plaintiffs point to of an alleged *attempted* sensitive use veto rendered the threat of a "sensitive use veto" real and substantial, that is no longer the case. The ability of adult establishments to professionally certify applications, including construction documents, nullifies any possible chilling effect because the procedures and timing for obtaining building permits will be the same for adult establishments, schools and houses of worship. To the extent houses of worship and schools had a competitive advantage in the race to obtain a building permit when Sapphire 2 was applying for building permits, that is no longer the case.

Furthermore, the within matter is distinguishable from Young v. City of Simi Valley, 216 F.3d 807 (9th Cir. 2000), upon which plaintiffs rely. In addressing standing, the Court noted in Young that, "[t]he overbreadth exception to the prudential limits on standing, however,

14

'does not affect the rigid constitutional requirement that plaintiffs must demonstrate an injury in fact to invoke a federal court's jurisdiction.'" Id. (quoting Convoy, Inc. v. City of San Diego, 183 F.3d 1108, 1112 (9th Cir. 1999)).  The Court went on to find that the plaintiff in Young had established that he had suffered an injury-in-fact because, unlike in the within matter, despite the fact that it was not the sensitive use veto that resulted in plaintiff's permit being denied, plaintiff had been denied an adult use permit twice and had expended at least $45,000 in trying to obtain a permit only to be denied. Id. at 815. As plaintiffs herein have failed to demonstrate that they have suffered an injury-in-fact, they may not similarly challenge the permitting procedures.

Plaintiffs also lack standing to challenge the general permitting procedures, including the revocation procedures, the construction document approval procedures and the remote possibility of review by General Counsel's Office, as they are content-neutral and do not have a close enough nexus to expression. See Dfts' SJ Br., at II(B).

### POINT III

**THE DOB PERMITTING PROCEDURES APPLICABLE TO ADULT ESTABLISHMENTS ARE CONSTITUTIONAL.**

**A.    Zoning Approval Requirements Are Not More Onerous for Adult Establishments**

Assuming arguendo that plaintiffs have standing to challenge DOB's permitting requirements, DOB's requirements for construction plan approval and permit issuance, including obtaining zoning approval, are no more onerous for adult establishments than non-adult establishments.  As plaintiffs acknowledge, the City does not require a specific license or permit for adult establishments.  Club Plts' Partial SJ Br. (ECF 155) at 63.  Rather, plaintiffs allege that the manner in which the general DOB permitting requirements are applied to adult establishments is more onerous than the manner in which they are applied to non-adult establishments.  In their

operative Complaints, plaintiffs based this claim, in part, on DOB's prohibition of professional certification of applications for construction document approval for adult establishments and DOB's past practice of requiring General Counsel's Office to review such applications and plans for adult establishments.[19] As reflected in Buildings Bulletin 2020-005, issued on April 2, 2020, JNR Exhibit 17, once the 2001 Amendments become enforceable, the use of professional certification will be permitted for filings related to adult establishments; additionally, applications for adult establishments are currently no longer subject to routine review by DOB's General Counsel's Office. See JNR Exhibit 17; CSF at ¶ 72, 88, 91, 92. Accordingly, Plaintiffs' claims with respect to these procedures are moot. See Dfts' SJ Br. (ECF 161) at Point II(A).

Plaintiffs change course in their motion for partial summary judgment, however, and now claim that the DOB permitting procedures are more onerous for adult establishments due to, (1) the requirement that adult establishments submit an area diagram showing all existing uses within 500 feet of the adult establishment and DOB's "exhaustively long examinations" of such diagrams and, (2) potential delays with respect to notices to revoke permits after they have been issued. Club Plts' Partial SJ Br., at 64-67 (ECF 155). As a preliminary matter, as these allegations with respect to the area diagram and delays in processing notices to revoke permits are raised for the first time on summary judgment, they should not be considered. Cannady v. Bd. Of Trs. of the Boilermaker-Blacksmith Nat'l Pension Trust, 20-3141-cv, 2022 WL 151298, *5 (2d Cir. 2022); Mahmud v. Kaufmann, 607 F. Supp. 2d 541, 555 (S.D.N.Y. 2009) ("Generally, courts will not consider, on a motion for summary judgment, allegations that were not pled in the complaint and raised for the first time in opposition to a motion for summary judgment.)

---

[19] See Club at 60th Compl. at ¶ 123, 125, 206-207; 725 Eatery Compl. at 116, 118, 200-201; 59 Murray Compl. at ¶ 122, 124, 205-206; 336 LLC Compl. at ¶ 135.

In any event, the area diagram requirement and notice to revoke procedures are not procedures that are applied more onerously to adult establishments.  When an application seeks a change to a type of use which is different from the existing use for purposes of its characterization under the City's zoning laws, the applicant, as part of its efforts to obtain a building permit, must seek zoning approval from the City.  CSF at ¶ 77.  For any type of establishment to obtain zoning approval in connection with an application for a building permit, that applicant must necessarily establish its conformity with the applicable zoning regulations.  The zoning regulations applicable to adult establishments prohibit adult establishments from locating within 500 feet of an existing "school," "house of worship," or other adult establishments.  See Z.R. §§ 32-01(b) & 42-01(b); CSF at ¶ 119(c), 123(c).  Consequently, for an adult establishment to establish compliance with such requirements, DOB requires the submission of an area diagram denoting other uses within 500 feet of the adult establishment.  See JNR Exhibit 8.  Thus, this is not, as plaintiffs suggest, a scenario in which DOB is imposing a requirement applicable to all applicants in a more onerous way on adult establishments.  Rather, the area diagram requirement is triggered by the zoning regulations specific to adult establishments; it is necessarily required for an adult establishment to establish zoning compliance.  In this regard, plaintiffs' claim appears to be a backdoor challenge to the previously upheld zoning regulations requiring a 500 foot distance between adult establishments and certain other uses, present in the 1995 regulations as well, disguised as a facial challenge to the permitting procedures, and should be rejected as such.  See Stringfellow's of New York, Ltd. v. City of New York, 91 N.Y.2d 382, 393-394 (1998).

The requirement that adult establishments submit an area diagram with applications for building permits and construction document approval is distinguishable from the circumstances set forth in FW/PBS, Inc. v. Dallas, 493 U.S. 215 (1990), upon which plaintiffs rely.  Club Plts'

Partial SJ Br., at 62-63.  In FW/PBS, the Supreme Court held that where an inspection scheme is "more onerous with respect to sexually oriented business than with respect to the vast majority of other businesses," a facial challenge was proper.  Id. at 225.  FW/PBS involved an ordinance requiring "sexually oriented business" to obtain a specific license.  Furthermore, under the ordinance, inspections of such businesses by various agencies were triggered by circumstances, such as whenever ownership of a sexually oriented business changed or when it applied for the annual renewal of its permit, which did not similarly trigger such inspections for non "sexually oriented business."  Id. at 225.  Accordingly, in FW/PBS, the same requirement was applied in a different manner to "sexually oriented businesses."  That is not the case here.  All applicants must establish compliance with the applicable zoning requirements, which for adult establishments include establishing that they are not within 500 feet of certain uses.  An analogous scenario to FW/PBS, not present herein, would be if non-adult establishments subject to the same 500 foot distance zoning requirement, did not have to submit an area diagram.  In the instant matter, as plaintiffs have failed to establish that by requiring an area diagram, DOB imposes more onerous permitting requirement on adult establishments than non-adult establishments, plaintiffs' facial challenge, to the extent it is based on that requirement, fails as a matter of law.  In fact, plaintiffs concede, "[z]oning or building requirements which are no more onerous for adult businesses than nonadult businesses are not subject to facial challenges."  Club Plts' Partial SJ Br., at 62. Furthermore, Plaintiffs' assertion in their moving brief that DOB conducts "exhaustively long examinations" of the area diagrams, is purely speculative, based on one alleged instance in the 27 years since the Zoning Regulations with respect to adult establishments have been enforced, and resulted in the applicant obtaining the necessary permit and approvals.  Club Plts' Partial SJ Br., at 55.

Plaintiffs provide no support for their claim that DOB's procedures with respect to notices to revoke permits are applied more onerously to adult establishments. The procedures with respect to notices to revoke permits are content-neutral and plaintiffs do not allege otherwise; there are no distinctions between the procedures employed when notices to revoke permits are issued to adult establishments as compared to when they are issued to non-adult establishments. See Buildings Bulletin 2016-010, JNR Vol 1 Exhibit 16, Bates 000150-000153. Indeed, plaintiffs do not cite to any. Rather, plaintiffs' challenge appears to be based on their general grievances with the notice to revoke procedures, but not with anything specific to adult establishments. Accordingly, they are not subject to a facial challenge. See Dfts' SJ Br. at Point II(B). Moreover, Plaintiffs have not demonstrated how, if at all, they have been harmed by the notice of intent to revoke procedures. The issuance of a notice to revoke a permit necessarily means that a permit has already been issued. Priority is established at permit issuance. Where a notice of intent to revoke is resolved in the adult establishment's favor, the adult establishment retains its priority as of the date the permit was initially issued. CSF at ¶222.

**B.      The Permitting Procedures do not Lack Procedural Safeguards.**

For the reasons set forth below as well as those set forth in Dfts' SJ Br. at II(C)(2) &(3), plaintiffs' claim that the DOB permitting procedures are unconstitutional on their face due to an alleged lack of time limits fails as the challenged procedures, including the construction document approval procedures and the remote possibility of review by General Counsel's Office, are content-neutral. Time limits are not required for a content-neutral permitting scheme to survive a facial challenge, and any delays in processing permits are more appropriately addressed in an as-applied challenge. See Granite State Outdoor Adver., Inc., v. City of St. Petersburg, 348 F.3d 1278, 1282 (11th Cir. 2003).

While applications for adult establishments were previously routinely referred to DOB's General Counsel's Office for review, that is no longer the case. See JNR Exhibit 17; CSF at ¶ 88, 91, 92. Buildings Bulletin 2020-005 provides, "Applications that propose Adult Establishments need not be subject to routine review by the Department's General Counsel's Office." JNR Exhibit 17. Plaintiffs now also base their claim that the DOB permitting procedures are facially unconstitutional on the remote possibility that an application for an adult establishment may be referred to General Counsel's Office and the lack of time limits for such review.[20] Plaintiffs' reliance on FW/PBS, which concerned a lack of time of limits for inspections required for adult establishments, in support of this claim is misplaced. Club Plts' Partial SJ Br., at 68. In FW/PBS, inspections were in fact required in many circumstances for adult establishments such as whenever ownership of a sexually oriented business changed or when it applied for the annual renewal of its permit, which did not similarly trigger such inspections for non "sexually oriented business." Id. at 225. To the contrary, Buildings Bulletin 2020-005 does not require General Counsel review of applications for adult establishments, but rather simply does not preclude it as General Counsel review of applications for any types of establishments is not precluded. See Dfts' SJ Br.at II(C)(2); Buildings Bulletin 2020-005, JNR Exhibit 17.

Furthermore, it is unclear how plaintiffs are harmed by the revocation procedures or what chilling effect they have. A permit holder retains a permit until revocation and therefore there is no censorship during any hypothetical delays in the revocation process.

Finally, the Bookstore plaintiffs' claim that the 2001 Amendments give the Building Commissioner unbridled discretion to determine the "substantial purpose" of a bookstore

---

[20] While there are no specific time limits for General Counsel's Office to review applications, applications for construction document approval are subject to the time limits set forth in Administrative Code § 28-104.2.7.

is similarly flawed. Bookstore Plaintiffs' Memorandum of Law in Support of Motions for Partial Summary Judgment, at 14. First, Bookstore plaintiffs' raise this for the first time in their motion for summary judgment and for that reason it should not be considered. Cannady, 2022 WL 151298, *5; Mahmud, 607 F. Supp. 2d at 555. In any event, in asserting this argument, plaintiffs are challenging the language set forth in the 2001 Amendments at Z.R. § 12-10 (2)(d)(ii) which have already been upheld. See For the People Theatres of N.Y. Inc. v. City of New York, 29 N.Y.3d 340 (2017). More importantly, this claim is unrelated to the availability of alternative sites or DOB's permitting procedures. To the extent the Buildings Commissioner issues any rules pursuant to (2)(d)(ii) of the definition of adult establishment set forth in Z.R. § 12-10 that plaintiffs find objectionable, they may challenge such rules then.

## CONCLUSION

For the forgoing reasons, plaintiffs' motions for partial summary judgment should be denied.

Dated:      New York, New York
            May 26, 2023


                              HON. SYLVIA O. HINDS-RADIX
                              Corporation Counsel of the City of New York
                              Attorney for Defendants
                              100 Church Street
                              New York, New York 10007
                              (212) 356-2219

                        By:   _____
                              Kerri Devine
                              Assistant Corporation Counsel

Of Counsel:

Sheryl Neufeld
Mark Muschenheim

21