UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------

CLUB AT 60TH STREET, INC., et al.,

                             Plaintiffs,

                          -against-

THE CITY OF NEW YORK,                      02 Civ. 8333 (LJL)

                             Defendant.

-------------------------------------------------------------------

725 EATERY CORP., et al.,

                             Plaintiffs,

                          -against-

THE CITY OF NEW YORK, et al.,          02 Civ. 4431 (LJL)

                             Defendants.

-------------------------------------------------------------------

59 MURRAY ENTERPRISES, INC., et al.

                             Plaintiffs,

                          -against-         02 Civ. 4432 (LJL)

THE CITY OF NEW YORK, et al.,

                             Defendants.

-------------------------------------------------------------------

336 LLC, et al.,

                             Plaintiffs,        18 Civ. 3732 (LJL)

                          -against-

THE CITY OF NEW YORK, et al.,

                             Defendants.

-------------------------------------------------------------------

# DEFENDANTS' MEMORANDUM OF LAW IN FURTHER SUPPORT OF THEIR THEIR RENEWED MOTIONS FOR SUMMARY JUDGMENT AND IN OPPOSITION TO PLAINTIFFS' RENEWED CROSS-MOTIONS FOR SUMMARY JUDGMENT

HON. SYLVIA HINDS-RADIX
Corporation Counsel of the City of New York
*Attorney for Defendants*
100 Church Street
New York, New York 10007
(212) 356-2214

SHERYL NEUFELD
MARK MUSCHENHEIM
KERRI DEVINE
      Of Counsel

June 9, 2023

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ...................................................................................................III

ARGUMENT

      POINT I

          THE 2001 AMENDMENTS COMPORT WITH
THE FIRST AMENDMENT.................................................................1

          A.   This Court has Already Held that the 2001
Amendments are Content Neutral and Narrowly
Tailored to Achieve a Substantial Government
Interest; Those Holdings are Law of the Case
and There is No Basis to Disturb Them. ...............................1

          B.   The 2001 Amendments Afford Ample
Alternative Means of Communication Since the
Defendants have Identified over 1,000 lots
where the 32 Identified Adult Establishments
Could Locate and Operate. ....................................................7

      POINT II

          THE APPLICABLE DOB PERMITTING AND
VESTING PROCEDURES ARE
CONSTITUTIONAL..........................................................................10

          A.   Plaintiffs' Claims are in Part Moot....................................10

          B.   The DOB Permitting Procedures are Not More
Onerous for Adult Establishments.......................................11

          C.   The Vesting Procedures are Not More Onerous
for Adult Establishments .....................................................13

          D.   The Content Neutral Permitting Procedures do
not Require Time Limits to Survive a Facial
Challenge. ............................................................................17

          E.   The DOB permitting Procedures do not Create a
Risk of a Sensitive Use Veto. ..............................................18

          F.   Bookstore Plaintiffs have Failed to Establish
Any Due Process Violations.................................................18

**Page**

CONCLUSION....................................................................................................................19

## TABLE OF AUTHORITIES

**Cases**                                                                                                    **Pages**

"Q" Lungian Enters. v. Town of Windsor Locks,
   272 F. Supp. 3d 289 (D. Conn. 2017)......................................................................18

725 Eatery Corp. v. City of New York,
   408 F. Supp. 3d 424 (S.D.N.Y. 2019) ....................................................1, 2, 3, 4, 5, 6, 7, 8, 18

Agostini v. Felton,
   521 U.S. 203 (1997)........................................................................................................4, 5

Arizona v. California,
   460 U.S. 605 (1983)............................................................................................................2

City of Austin v. Reagan Nat'l Adver. of Austin, LLC,
   142 S. Ct. 1464 (2022)........................................................................................................4

City of Los Angeles v. Alameda Books,
   535 U.S. 425 (2002)............................................................................................................4

City of New York v. Gordon,
   155 F. Supp. 3d 411 (S.D.N.Y. 2015) ...............................................................................2, 3

City of Renton v. Playtime Theatres, Inc.,
   475 U.S. 41 (1986)........................................................................................................1, 8, 14

Covenant Media of S.C., LLC v. City of N. Charleston,
   493 F.3d 421 (4th Cir. 2007) ...........................................................................................17

Dandong v. Pinnacle Performance Ltd.,
   966 F. Supp. 2d 374 (S.D.N.Y. 2013) ...............................................................................3

For the People Theatres of N.Y. Inc. v. City of New York,
   29 N.Y.3d. 340 (2017).......................................................................................................5

FW/PBS, Inc., v. City of Dallas,
   493 U.S. 215 (1990)......................................................................................................12, 13

Gasparo v. City of New York,
   16 F. Supp. 2d 198 (E.D.N.Y. 1998) ...............................................................................18

GEFT Outdoor, LLC v. Monroe Cnty.,
   62 F. 4th 321 (7th Cir. 2023) ...........................................................................................17

Granite State Outdoor Adver., Inc. v. City of St. Petersburg,
   348 F.3d 1278 (11th Cir. 2003) ....................................................................................15, 17

**Cases**                                                                                    **Pages**

H.D.V.-Greektown, LLC v. City of Detroit,
   568 F. 3d 609 (6th Cir. 2009) ........................................................................... 17-18

Hickerson v. City of New York,
   146 F.3d. 99 (2d Cir. 1998),
   cert. denied, 525 U.S. 1067 (1999)............................................................................8

Infinity Outdoor Inc. v. City of New York,
   165 F. Supp. 2d 403 (E.D.N.Y. 2001) .....................................................................18

Johnson v. Holder,
   564 F.3d 95 (2d Cir. 2009) .......................................................................................3

In re Korean Air Lines Disaster,
   798 F. Supp. 755 (E.D.N.Y.1992) ............................................................................2

Marks v. United States,
   430 U.S. 188 (1977)..................................................................................................4

Northwest Austin Mun. Util. Dist. No. One v. Holder,
   557 U.S. 193 (2009)..................................................................................................5

Pepper v. United States,
   562 U.S. 476 (2011)..................................................................................................2

Perreca v. Gluck,
   262 F. Supp. 2d 269 (S.D.N.Y. 2003) .....................................................................2

Reed v. Town of Gilbert,
   576 U.S. 155 (2015)..................................................................................................4

Romero v. Manhattan & Bronx Surface Transit Operating Authority,
   2022 WL 624451 (S.D.N.Y. March 2, 2022) ...........................................................2

Shelby County v. Holder,
   570 U.S. 529 (2013)...............................................................................................5, 6

Stringfellow's of New York, LTD. v. City of New York,
   91 N.Y.2d 382 (1998)............................................................................................14

Taveras v. New York City,
   2023 U.S. Dist. WL 3026871
   (S.D.N.Y. Apr. 20, 2023)..........................................................................................6

Thomas v. Chicago Park Dist.,
   534 U.S. 316 (2002)...........................................................................................17, 18

**Cases**                                                                                          **Pages**

TJS of N.Y., Inc. v. Town of Smithtown,
   598 F.3d 17 (2d Cir. 2010) ......................................................................................8

United States v. Quintieri,
   306 F.3d 1217 (2nd Cir. 2002) ...............................................................................2

White River Amusement Pub, Inc. v. Town of Hartford,
   481 F.3d 163 (2d Cir. 2007) ................................................................................ 5-6

Young v. City of Simi Valley,
   216 F.3d 807 (9th Cir. 2000) ................................................................................18

**Statutes**

1 RCNY § 9000-01 ........................................................................................................13

NYC Admin. Code § 28-101.5 .......................................................................................15

NYC Admin. Code § 28-104.2.7 ..............................................................................12, 17

NYC Admin. Code § 28-105.10 ...............................................................................16, 17

NYC Admin. Code § 28-105.10.1 ..................................................................................16

**Statutes**                                                                                                    **Pages**

NYC Admin. Code § 28-105.10.2 ........................................................................16

NYC Admin. Code § 28-207.2 ............................................................................16

NYC Admin. Code § 28-105.10 ..........................................................................17

NYC Charter § 669(c) .........................................................................................17

ZR § 32-01(b) .....................................................................................................14

ZR § 42-01(b) .....................................................................................................14

Defendants, by their attorney, Hon. Sylvia Hinds-Radix, Corporation Counsel of the City of New York, submit this memorandum of law in further support of their renewed motions for summary judgment, and in opposition to plaintiffs' renewed cross-motions for summary judgment, in these four consolidated cases, <u>Club at 60th Street, Inc.</u>, <u>725 Eatery Corp.</u>, <u>59 Murray Enterprises, Inc.</u> and <u>336 LLC, d/b/a "the Erotica, et. al."</u>.

## ARGUMENT

## POINT I

## THE 2001 AMENDMENTS COMPORT WITH THE FIRST AMENDMENT.

**A.   This Court has Already Held that the 2001 Amendments are Content Neutral and Narrowly Tailored to Achieve a Substantial Government Interest; Those Holdings are Law of the Case and There is No Basis to Disturb Them.**

Defendants' motions for summary judgment should be granted because the 2001 Amendments[1] are a content-neutral time, place and manner regulation that serves a substantial governmental interest and -- as explained in Point I B below -- provides for reasonable alternative avenues of communication.

In the 2019 preliminary injunction decision, this Court held "that the City's adult-use regulations are content-neutral" since they are "<u>justified</u> by the desire to reduce the adverse secondary effects of adult establishments." <u>725 Eatery Corp. v. City of New York</u>, 408 F. Supp. 3d 424, 462 (S.D.N.Y. 2019) (Pauley, J.) ("PI Decision") (<u>citing</u> <u>City of Renton v. Playtime Theatres, Inc.</u>, 475 U.S. 41 (1986)) (emphasis in original). <u>See also</u> <u>id.</u> at 461-63 & Defendants' Memorandum of Law in Support of their Renewed Motions for Summary Judgment, at 26 (ECF

---

[1]   The abbreviations used in this memorandum of law are the same as those used in the defendants' memorandum of law in support of their renewed motions for summary judgment (ECF 197). In addition, references to documents on the ECF docket are to those filed in the <u>Club at 60th Street</u> lawsuit.

197) ("Dfts' SJ Br."). Similarly, this Court held that reducing the negative secondary effects of adult establishments "clearly qualifies as a 'substantial governmental interest,'" and that the 2001 Amendments are sufficiently tailored to meet the City's interest in reducing negative secondary effects caused by adult establishments. 408 F. Supp. 3d at 465-66 (citations omitted). See also id. at 463-66 & Dfts' SJ Br., at 26-32.

Despite these Court holdings, plaintiffs now attempt to relitigate these issues in their Memorandum of Law in Support of their Renewed Cross-Motions for Summary Judgment and in Opposition to Defendants' Motions for Summary Judgment (ECF 201) ("Pltfs' X-mtn SJ Br."). This attempt should be rejected since these holdings are law of the case.

The law of the case "'doctrine posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.'" Pepper v. United States, 562 U.S. 476, 506 (2011) (quoting Arizona v. California, 460 U.S. 605, 618 (1983)). "Within this Circuit, the 'law of the case' doctrine is a rule of practice followed by New York courts that dictates that 'a decision on an issue of law made at one stage of a case becomes [binding] precedent to be followed in subsequent states of the same litigation.'" Perreca v. Gluck, 262 F. Supp. 2d 269, 272 (S.D.N.Y. 2003) (quoting In re Korean Air Lines Disaster, 798 F. Supp. 755, 759 (E.D.N.Y.1992)). "The doctrine continues to apply even where a case has been reassigned to a new judge." City of New York v. Gordon, 155 F. Supp. 3d 411, 419 (S.D.N.Y. 2015) (citations omitted).

A "'decision should generally be adhered to … in subsequent stages in the same case … unless cogent and compelling reasons militate otherwise.'" Romero v. Manhattan & Bronx Surface Transit Operating Authority, 2022 WL 624451, *6 (S.D.N.Y. March 2, 2022) (Liman, J.) (quoting United States v. Quintieri, 306 F.3d 1217, 1255 (2nd Cir. 2002)). "Cogent and compelling

2

reasons include 'an intervening change in law, availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'" Id. (quoting Johnson v. Holder, 564 F.3d 95, 99-100 (2d Cir. 2009)). And while judges are not required to give deference to the factual determinations or inferences of a previous judge, nor the application of law to facts, conclusions of law made by a judge typically receive deference. Gordon, 155 F. Supp. 3d at 419. Reconsideration of decided points is also less appropriate when the arguments raised are substantively identical to those previously raised and decided upon by the court. Dandong v. Pinnacle Performance Ltd., 966 F. Supp. 2d 374, 386 (S.D.N.Y. 2013).

No cogent and compelling circumstances are present in these four cases, and the arguments now advanced by plaintiffs have essentially been raised and decided by this Court. Indeed, plaintiffs only take specific issue with the PI Decision 45-plus pages into their brief (Pltfs' X-mtn SJ Br., at 47, 52 & 54), but do not set forth any cogent or compelling reasons to diverge from it. The PI Decision -- made after a lengthy briefing process[2] -- was based on settled law. There has been no intervening change in law since the PI Decision that would substantially alter the legal rights of the plaintiffs. Nor is there any new material evidence favoring plaintiffs that would be dispositive or influential in this case. And the PI Decision did not contain any clear errors or perpetrate a manifest injustice. Consequently, the Court need not revisit the rulings of law made in the PI Decision.

Plaintiffs nevertheless attempt to relitigate a variety of legal issues that were resolved in the PI Decision. To start, plaintiffs attempt to persuade this Court to change its

---

[2]    Neither the briefing nor the PI Decision were made under a tight time frame typical to resolving preliminary injunction motions; plaintiffs' filed their preliminary injunction motions in November 2018 (ECF 57-75), defendants opposed more than two months later (ECF 83-85 & 87), plaintiffs filed their reply papers in March 2019 (ECF 96-101) and the Court issued its decision more than six months after briefing was fully submitted (ECF 106).

interpretation of Justice Kennedy's concurrence in City of Los Angeles v. Alameda Books, 535 U.S. 425 (2002), and its language surrounding "how speech will fare." Pltfs' X-mtn SJ Br., at 4-5. The PI Decision specifically addressed "Justice Kennedy's concurrence … given its importance to Plaintiffs' [preliminary injunction] briefs." 408 F. Supp. 3d at 464. The PI Decision explicitly rejected this emphasis in its interpretation of the Alameda Books opinion, instead finding that the lowest common denominator necessary to the rule set forth in Marks v. United States, 430 U.S. 188 (1977), was the plurality's evidentiary framework, and at any rate, Justice Kennedy's "'how speech will fare' discussion [clarifies or restates] familiar analytical principles, including that a time, place, and manner regulation must leave open adequate alternative channels for the regulated speech." 408 F. Supp. 3d at 464-65 (citation omitted). See also Dfts' SJ Br., at 25-29 & 36-37.

Similarly, the PI Decision also considered the effect of a Supreme Court case involving the regulation of signs, Reed v. Town of Gilbert, 576 U.S. 155 (2015); the PI Decision noted that "the federal courts of appeals that have considered Reed's impact on the Supreme Court's secondary-effects doctrine have roundly rejected the notion that Reed changed the applicable law for zoning ordinances like the 2001 Amendments." 408 F. Supp. 3d at 463. See also Dfts' SJ Br., at 38-39. And while plaintiffs also point to a recently decided Supreme Court sign case, City of Austin v. Reagan Nat'l Adver. of Austin, LLC, 142 S. Ct. 1464 (2022), that case similarly does not alter the analysis applicable to zoning regulations like the 2001 Amendments. See also Agostini v. Felton, 521 U.S. 203, 237 (1997) (courts follow the precedent that directly controls a case).

Plaintiffs also argue that the 1994 DCP study (JNR Ex. 41) that analyzed 100 percent adult establishments is insufficient to support an argument that the 2001 Amendments are narrowly tailored. Pltfs' X-mtn SJ Br., at 5, 54-55. The PI Decision determined that this study,

4

together with the 2001 CPC Report (JNR Ex. 45), supported a link between 60/40 establishments under the 2001 Amendments and secondary effects. 408 F. Supp. 3d at 465-66. See also Dfts' SJ Br., at 29-32. Specifically, the PI Decision held that the "DCP Study certainly demonstrates some nexus between deleterious secondary effects and establishments with a predominant, ongoing focus on adult-oriented expression …. And the 2001 CPC Report, which cites to judicial determinations that mechanical compliance with the 60/40 Standard leaves the essentially non-conforming nature of the adult business intact, fairly supports the underlying rationale for the 2001 Amendments…." 408 F. Supp. 3d at 465-66. See also For the People Theatres of N.Y. Inc. v. City of New York, 29 N.Y.3d. 340, 344 (2017) (holding "that the City has met its burden of demonstrating that the [60/40] establishments affected by [the 2001 Amendments] retained a predominant focus on sexually explicit materials or activities").

Plaintiffs also attempt to rely on a voting rights case that ruled that the preclearance provision of the Voting Rights Act of 1965 violated the Tenth Amendment rights of Shelby County in Alabama based on the changed landscape nearly 50 years after the Voting Rights Act was adopted. Shelby County v. Holder, 570 U.S. 529 (2013). See also Northwest Austin Mun. Util. Dist. No. One v. Holder, 557 U.S. 193 (2009). Plaintiffs assert that based on these voting rights cases, the defendants must justify the 2001 Amendments with current evidence, and more specifically, that it would "significantly reduce" secondary effects. Pltfs' X-mtn SJ Br., at 8. As a preliminary matter, Courts should follow the precedents that directly control a case. Agostini, 521 U.S. at 237. Moreover, the PI Decision already concluded -- nearly 18 years after the 2001 Amendments was adopted -- that "the First Amendment does not require a municipality to 'conclusively prove its theory for establishing … a connection' between the regulated speech and the secondary effects sought to be abated." 408 F. Supp. 3d at 466 (quoting White River

Amusement Pub, Inc. v. Town of Hartford, 481 F.3d 163, 170 (2d Cir. 2007)).  More importantly, given the availability -- in the hundreds -- of alternative locations to engage in protected activity, plaintiffs have ready alternative locations to engage in First Amendment activity.[3]

Plaintiffs next attempt to relitigate a variety of claims regarding the sufficiency of alternative locations for adult establishments.  Plaintiffs first argue that alternative locations for their adult establishments must be in Manhattan.[4]  Pltfs' X-mtn SJ Br., at 14-15.  The PI Decision rejected that argument, noting that based on established case law, the appropriate geographic scale to analyze alternative channels is at the city, rather than borough, level. 725 Eatery Corp., 408 F. Supp. 3d at 467.  Next, plaintiffs argue that alternative sites must be available and financially practicable.  Pltfs' X-mtn SJ Br., at 34, n.24.  The PI Decision similarly rejected that argument, again relying on established case law that "[a]vailability does not mean that the acquisition or use of land must be profitable or commercially practicable, and sites are not rendered unavailable simply by being already occupied by existing businesses, not currently for sale or lease or otherwise not commercially viable." 408 F. Supp. 3d at 467 (internal quotation marks removed).

---

[3]   Plaintiffs' reliance on these cases also fails since certain provisions of the Voting Rights Act of 1965 by its terms were not intended to exist in perpetuity.  Shelby County, 570 U.S. at 535 (noting that preclearance measures "were scheduled to expire after five years").  In contrast, the Zoning Resolution provisions at issue here do not have a sunset clause since they were intended to permanently address the negative secondary effects caused by adult establishments.  If these provisions were to terminate, the negative secondary effects could then easily reoccur.

[4]   Some plaintiffs assert that if the 2001 Amendments are enforced they will not relocate outside of Manhattan.  Pltfs' X-mtn SJ Br., at 15 fn 16 (citing to various declarations).  Thus, it is questionable whether these plaintiffs even have standing to allege a lack of alternative locations outside of Manhattan.  See, e.g., Taveras v. New York City, 2023 WL 3026871 (S.D.N.Y. Apr. 20, 2023) ("What is more, to the extent that Plaintiff claims he is still injured because he refuses to accept the now-issued license, that injury is caused by his own actions, not Defendants', and is not redressable by an order from this Court." (parentheticals omitted)).

As established above, the holdings in the PI Decision should receive deference by this Court under law of the case doctrine. Plaintiffs again raise these issues in a substantively identical manner to previous stages of this litigation, a practice disfavored by the courts. Additionally, the arguments made by plaintiffs diverge from the clearly established case law, a fact recognized in the PI Decision. With these points in mind, as well as the important considerations of judicial efficiency and finality, this Court should apply law of the case doctrine and give deference to the holdings in the PI Decision. And once the law of the case doctrine is applied, the only remaining issue to be resolved as to plaintiffs' claims about the constitutionality of the 2001 Amendments is whether they afford ample alternative means of communication. See PI Decision, 408 F. Supp. 3d at 468 (concluding, based on the evidence submitted on the preliminary injunction motion, that defendants had not established "sufficient alternative avenues of communication").

**B.    The 2001 Amendments Afford Ample Alternative Means of Communication Since the Defendants have Identified over 1,000 lots where the 32 Identified Adult Establishments Could Locate and Operate.**

The parties agree that if the 2001 Amendments are enforced, 32 adult establishments (as of May 2022) will need to relocate. CSF, at ¶ 170. The DCP Declarations of Susan Amron (ECF 159) and Matthew Croswell (ECF 191:3) set forth the extensive analysis that led to the identification of over 1,000 specific locations where these 32 adult establishments could be located, and over 200 locations where these adult establishments could simultaneously be located. Consequently, plaintiffs' claim that the 2001 Amendments do not provide reasonable opportunities for adult establishments to locate and operate in the City fails.[5]

---

[5]    Unlike here, at the preliminary injunction stage the defendants did not submit a list identifying specific locations available throughout the City where adult establishments could be located. And in the PI Decision, the Court also concluded that defendants had not shown "how the amount of available land would be affected by the requirement that adult establishments be located at least

The determination of whether there are available alternative locations for adult establishments to locate and operate "centers on 'whether proposed sites are physically and legally available, and whether they are part of an actual commercial real estate market in the municipality.'" 408 F. Supp.3d at 466 (quoting TJS of N.Y., Inc. v. Town of Smithtown, 598 F.3d 17, 21-22 (2d Cir. 2010)). See also Dfts' SJ Br., at 32-34. But as noted above, the analysis does not require that a location "be profitable or commercially practicable," and specific locations are not considered unavailable even if the location is currently occupied or not for sale or lease. Id. at 467. Indeed, the fact that adult establishments "must fend for themselves in the real estate market, on an equal footing with other prospective purchasers and lessees, does not give rise to a First Amendment violation." City of Renton v. Playtime Theatres, Inc., 475 U.S. 41, 54 (1986). As also noted above, the PI Decision rejected "Plaintiffs' unsupported contention that the availability of adequate sites must, as a categorical matter, be considered on a county-by-county basis-namely, that Defendants must demonstrate the presence of sufficient alternative channels for adult expression in Manhattan." 408 F. Supp.3d at 466 (citing Hickerson v. City of New York, 146 F.3d. 99, 108 n.5 (2d Cir. 1998), cert. denied, 525 U.S. 1067 (1999)). See also Dfts' SJ Br., at 35-36.

As detailed in the Croswell Declaration, DCP conducted an extensive analysis of potentially available lots throughout New York City.[6] DCP initially used numerous databases to identify, and then remove any lots located in or within 500 feet of zoning districts where adult

---

500 feet from sensitive receptors or other adult establishments." 408 F. Supp. 3d at 468-69. As detailed below, neither is true at this summary judgment stage of the litigation; the defendants submitted a list of over 1,200 available locations, and also analyzed the impact on the availability of these locations if adult establishments simultaneously moved into some of these locations.

[6]   There are over 850,000 lots in New York City.  Croswell Decl., at ¶ 3.

establishments are not allowed under the Zoning Resolution, as well as schools and houses of worship.  Croswell Decl., at ¶¶ 3-7.  DCP also established 500 foot buffers around over 70 lots that appeared to be adult establishments, and removed lots along the Newtown Creek and the Gowanus Canal areas of Brooklyn that were proposed for rezoning, as well as lots that were publicly owned, or lots identified as being used for transportation or utility purposes.  Id. at ¶¶ 8-9.  In addition, DCP removed lots that were smaller than 5,000 square feet, even though some adult bookstores are less than 5,000 square feet.[7]  Id. at ¶ 9.

As a result of this process, 2,217 lots remained that were then each manually reviewed by eight DCP staff members which resulted in the removal of another 514 lots.  The remaining 1,703 lots were originally identified to plaintiffs as available for adult establishments.  Id. at 10.  See also JNR, Ex. 71.

Recently, in response to plaintiffs' assertions (Pltfs' X-mtn SJ Br., at 19-32) DCP conducted additional analysis of all lots that contained more than one use (known as mixed use lots), since these lots could hypothetically contain houses of worship.  More than 95 percent of these mixed use lots are in a zoning district that does not permit adult establishments (and thus were previously excluded), leaving 1,509 lots in areas within 500 feet of a zoning district, or in a zoning district, where adult establishments could be located.  Croswell Decl., at ¶ 11.  Consequently, DCP created 500 foot buffers around these 1,509 mixed use building code lots, as well as two of the 514 lots excluded during DCP staff review since those two lots contained houses

---

[7]   See Declaration of Anita Laremont (ECF 84), Ex. A (indicating that bookstore plaintiffs Chelsea 7 Corp. and Video Lovers are located in buildings that are less than 5,000 square feet).

of worship. Id. at ¶ 12. As a result of this buffering, 1,275 lots remain where adult establishments could be located.[8] Croswell Decl., at ¶ 12 & Ex. B (ECF 191:5) (listing the 1,275 available lots).

Finally, DCP created a computer program to analyze the effect on the 1,275 available lots if adult establishments simultaneously were located in these available lots. In that case, there would be at least 204 lots available (including 110 available lots where adult bookstores could be located if, assuming arguendo, they were not permitted in M2 and M3 districts, as the bookstore plaintiffs assert). Croswell Decl., at ¶ 13. Consequently, there are more than enough lots available for the 32 establishments to locate and operate as adult establishments.[9]

## POINT II

### THE APPLICABLE DOB PERMITTING AND VESTING PROCEDURES ARE CONSTITUTIONAL.

#### A.    Plaintiffs' Claims are in Part Moot.

In their operative complaints, plaintiffs allege that the DOB permitting procedures are discriminatory and constitute a content-based prior restraint on expression in that they impose "delay-inducing procedural hurdles" on adult establishments by routinely referring all adult establishment applications for construction document approval to DOB's General Counsel's

---

[8]    As noted in the Croswell Declaration, the 1,275 number of available lots is a conservative count for a numerous reasons. Croswell Decl., at ¶ 14. And any claim that the DCP analysis is stale fails since updating this analysis would not change the results in any substantial manner; specifically, there has only been one major re-zoning since December 2019 (that was not taken into account in DCP's analysis), the SoHo/NoHo rezoning in Manhattan, which did not result in any significant decrease in the number of available lots. Id. at ¶ 12 fn 4.

[9]    Plaintiffs' claims relating to the mandatory termination provisions are addressed in Defendants' Memorandum of Law in Opposition to Plaintiffs' Renewed Motion for Partial Summary Judgment (ECF 202), at 3-9.

Office for review and by prohibiting such documents from being professionally certified.[10] Plaintiffs' claims with respect to these so-called "delay-inducing procedurals hurdles" are clearly moot as there is no longer a requirement that applications submitted by adult establishments be reviewed by DOB's General Counsel's Office and once the 2001 Amendments are upheld, professional certification will be available for such applications.  See Dfts' SJ Br. (ECF 197) at Point II(A).

While plaintiffs concede that the issue with respect to professional certification is no longer in the case (Pltfs' X-mtn SJ Br. at 58-59), they assert that their claims with respect to DOB's General Counsel's review of adult establishment applications are not moot, because, to the extent DOB's General Counsel's Office still has the authority to review adult establishment applications as it does all others, there are allegedly no time limits specified for such review.  To the extent plaintiffs claim that subjecting adult establishment applications to DOB General Counsel review is discriminatory and content-based as it is required only of adult establishments, that requirement is no longer the case, and any such claims are clearly moot.

**B.      The DOB Permitting Procedures are Not More Onerous for Adult Establishments.**

Plaintiffs' claim that the mere general authority of DOB's General Counsel's Office to review applications, including those submitted by adult establishments, renders the permitting procedures constitutionally defective as there are no time limits specific to such possible review is not moot, but is incorrect.  Contrary to plaintiffs' assertions, the general authority of DOB's

---

[10]  See Club at 60th Street, Inc., et ano, v. City of New York, Index No. 02CV833 Second Amended Complaint ("Club at 60th Compl.") at ¶ 123, 125, 206-207; 725 Eatery, Corp. v. City of New York, et al., Index No. 02CV4431 Second Amended Complaint ("725 Eatery Compl.") at 116, 118, 200-201; 59 Murray Enterprises, Inc., et ano, v. City of New York, et al., Index No. 02CV4432 ("59 Murray Compl.") at ¶ 122, 124, 205-206; 336 LLC, et al., v. City of New York, et al., Index No. 18CV3732 ("336 LLC Compl.") at ¶ 135.

General Counsel's Office to review all applications, not solely those submitted by adult establishments, is clearly distinguishable from the inspections specifically required of only sexually oriented businesses by multiple agencies at issue in FW/PBS, Inc., v. City of Dallas, 493 U.S. 215 (1990). In FW/PBS, the Supreme Court held that where an inspection scheme is "more onerous with respect to sexually oriented business than with respect to the vast majority of other businesses," a facial challenge was proper. Id. at 225. FW/PBS involved an ordinance requiring "sexually oriented business" to obtain a specific license. Furthermore, under the ordinance, inspections of such businesses by various agencies were triggered by circumstances, such as whenever ownership of a sexually oriented business changed or when it applied for the annual renewal of its permit, which did not similarly trigger such inspections for non "sexually oriented business." Id. at 225. Accordingly, in FW/PBS, the same requirement was applied in a different manner to "sexually oriented businesses." That is not the case here. See Dfts' SJ Br. (ECF 197) at Point II(A).

FW/PBS is further distinguishable because, while there are no specific time limits for review by DOB's General Counsel's Office, absent an extension, Administrative Code § 28-104.2.7 explicitly requires DOB to render a decision on an application for construction document approval "no later than 40 calendar days after the submission of a complete application." See Dfts' SJ Br. (ECF 197) at Point II(C)(3). The review at issue herein is conducted by a division within the agency subject to DOB's 40-day time limit, whereas in FW/PBS, the applicable ordinance required the chief of police to issue a license within 30 days; however, the agencies required to conduct the additional inspections of the sexually oriented businesses—the health, fire and building departments—were not subject to that same time limit. FW/PBS, 493 U.S. at 227. Furthermore plaintiffs' assertion that such a hypothetical review by DOB's General Counsel's

Office will likely run afoul of the 40-day time limit is misleading and baseless as plaintiffs point to no instances of applications submitted by adult establishments being reviewed by DOB's General Counsel's Office since routine review of such applications ceased. Accordingly, plaintiffs do not and cannot show that the general authority of DOB's General Counsel's Office to review applications is applied in a more time-consuming and onerous manner to adult establishments now that adult establishments' applications are no longer routinely referred to General Counsel's Office. For the same reasons, they fail to establish that DOB's permitting procedures function as an impermissible prior restraint; as set forth above, the review by DOB's General Counsel's Office does not lack time limits and it does not increase the time it takes for adult establishments to obtain approvals as compared to other types of establishments, unlike in FW/PBS.[11] Pltfs' X-mtn SJ Br. at 68. Thus, plaintiffs' facial challenge should be denied.

**C.    The Vesting Procedures are Not More Onerous for Adult Establishments**

Plaintiffs similarly fail to establish that the vesting provisions set forth in 1 RCNY § 9000-01 are more onerous for adult establishments. 1 RCNY § 9000-01 provides that subject to certain qualifications, "the date of establishment of an adult establishment, house of worship, or school shall be the date of issuance of an appropriate department permit…" and thus applies the same vesting requirements to adult establishments as to houses of worship and schools. See JNR, Ex. 75. Plaintiffs cite as an alleged example of this more onerous treatment, the fact that a church may vest next to an already existing and vested adult establishment whereas an adult establishment cannot vest near an already vested church or school. Pltfs' X-mtn SJ Br. at 64-65. That, however,

---

[11]    Plaintiffs appear to abandon the claims set forth in the operative complaints that the alleged content-based differential treatment of adult establishments with respect to permitting procedures is subject to and fails strict scrutiny. See Pltfs' X-mtn SJ Br. at 67; cf. 725 Eatery Compl. at ¶ 201; 59 Murray Compl. at ¶ 206.

is a function of the previously upheld locational restrictions applicable to adult establishments,

present in the 1995 Adult Use regulations, and not a result of the so-called "vesting" requirements.

See ZR §§ 32-01(b), 42-01(b).   In finding the 1995 regulations constitutional, including the

locational restrictions, the Court of Appeals noted in Stringfellow's of New York, LTD. v. City of

New York, 91 N.Y.2d 382, 400 (1998):

> It is now well recognized that municipalities can
> constitutionally bar adult establishments from, or
> within, a specified distance of residentially zoned
> areas and facilities in which families and children
> congregate (see, Renton v Playtime Theatres, supra,
> at 44; Young v American Mini Theatres, supra, at 52;
> Matter of Town of Islip v Caviglia, supra, at 549,
> 563).   Moreover, zoning ordinances may be used to
> prohibit an adult business from operating within a
> specified distance of another in order to avoid the
> undesirable impacts associated with the clustering
> (see, Young v American Mini Theatres, supra, at 52;
> Matter of Town of Islip v Caviglia, supra, at 563).

Plaintiffs' attempt to relitigate this issue must be rejected.

Furthermore, plaintiffs' assertion that an adult establishment's application for a

permit "will routinely require several weeks, if not months, to get the permit needed to vest" is

unsupported and based on a misunderstanding of DOB's review of such applications.   Pltfs' X-

mtn SJ Br. at 65.   Plaintiffs' speculation is premised on one instance and concerns an application

submitted by an adult establishment (which ultimately successfully opened) that was not and could

not be professionally certified as professional certification was not then available for such

applications.   See Declaration of Michael Berzak dated September 6, 2022 (ECF 156).   As

plaintiffs acknowledge, professional certification of a building permit application typically allows

for faster final completion of a building permit application than of the processing of plans which

are not professionally certified.   Consolidated Statement of Stipulated Facts ("CSF")(ECF 193:1)

14

at ¶ 76; <u>cf.</u> Delcaration of Michael Berzak in Support of Permitting Issues Presented in Plaintiffs'

Motion for a Preliminary Injunction (Plaintiffs' Joint Appendix Volume 4 at 0108 (ECF 62)),

("Not being able to utilize *self-certified* plans dramatically increases the time it takes to get plans

approved for adult businesses compared to the time required by all other types of business and

uses (i.e., *other than* adult entertainment businesses) which elect to submit self-certified plans").

Accordingly, the one specific instance on which plaintiffs base their argument is irrelevant as once

the 2001 Amendments become effective, adult establishments will be able to submit professionally

certified plans.  Accordingly, plaintiffs' "hypothetical constitutional violations in the abstract"

cannot support their facial challenge.  <u>See</u> <u>Granite State Outdoor Adver., Inc. v. City of St.</u>

<u>Petersburg</u>, 348 F.3d 1278, 1282 (11th Cir. 2003).

   Furthermore, plaintiffs' assertion that, "the City must make a determination

whether all potentially disqualifying other uses are in fact validly existing and permitted," evinces

a misunderstanding of DOB's review in general, and particularly of professionally certified plans

and the fact that such plans are "accepted," rather than "approved" and require less than a full

examination.  CSF at ¶224 and fn 17; Buildings Bulletin 2016-010-4-A-1(ECF 147:1); New York

City Administrative Code ("Administrative Code") § 28-101.5.  Indeed, DOB is not required to

examine every use shown on an area diagram depicting uses within 500 feet of a proposed adult

establishment.  CSF at ¶ 224.

   Similarly, plaintiffs misconstrue the process for rescinding a building permit in

arguing that DOB has "unlimited substantive discretion to rescind permit approvals."  Indeed,

plaintiffs misrepresent that, "the City can rescind permits prior to opening of an adult business

without even a requirement of a 'reasonable belief' that the permit issued in error, thereby giving

government officials 'unbridled discretion....'"  Pltfs' X-mtn SJ Br. At 66.  To the contrary,

15

permits may only be revoked on notice and pursuant to the process set forth in Administrative

Code § 28-105.10, which provides:

> **§ 28-105.10.1 Notice of proposed revocation.** The
> commissioner may, on written notice to the permit
> holder, revoke any permit for failure to comply with
> the provisions of this code or other applicable laws
> or rules; or whenever there has been any false
> statement or any misrepresentation as to a material
> fact in the application or submittal documents upon
> the basis of which such approval was issued; or
> whenever a permit has been issued in error and
> conditions are such that the permit should not have
> been issued.  Such notice may be accompanied by a
> stop work order pursuant to section 28-207.2 and
> shall inform the permit holder of the reasons for the
> proposed revocation and that the applicant has the
> right to present to the commissioner or his or her
> representative within 10 business days of delivery of
> the notice by hand or electronic delivery or 15
> business days of the posting of notice by mail,
> information as to why the permit should not be
> revoked.
>
> **§ 28-105.10.2 Immediate suspension in cases of
> imminent peril.**   The   commissioner   may
> immediately suspend any permit without prior notice
> to the permit holder when the commissioner has
> determined that an imminent peril to life or property
> exists.  The commissioner shall forthwith notify the
> permit holder that the permit has been suspended and
> the reasons therefor, that it is proposed to be revoked,
> and that the permit holder has the right to present to
> the commissioner or his or her representative within
> 10 business days of delivery of the notice by hand or
> electronic delivery or 15 business days of the posting
> of notice by mail information as to why the permit
> should not be revoked.

See also Declaration of Rodney Gittens dated July 7, 2022 ("Gittens Dec.") (ECF 191:2) at ¶26.

Thus, DOB does not have "unbridled discretion" to revoke a permit; it may only be revoked after notice and an opportunity to be heard and then subject to an expedited appeal to the New York City Board of Standards and Appeals. See Administrative Code § 28-105.10; New York City Charter § 669(c). Furthermore, as reflected in Administrative Code § 28-105.10, absent a stop work order or suspension in cases of imminent peril, a permit remains active during the revocation process. See also Gittens Dec. (ECF 191:2) at ¶ 26. Moreover, if an audit of an issued permit is ultimately resolved in the applicant's favor, the potential priority resulting from such permit is based on the date of the initial issuance.

**D.     The Content Neutral Permitting Procedures Do Not Require Time Limits to Survive a Facial Challenge.**

As set forth in Defendant's moving brief and opposition, DOB's permitting procedures do not require time limits to survive a facial challenge and in any event, they contain sufficient time limits. See Dfts' SJ Br. (ECF 197) at Point II(C)(2)&(3); Defendants' Memorandum of Law in Opposition to Plaintiffs' Renewed Motions for Partial Summary Judgment ("Dfts' Opp.")(ECF 202) at Point III(B); Administrative Code § 28-104.2.7.[12] Plaintiffs' claim that Thomas v. Chicago Park Dist., 534 U.S. 316 (2002) "has no impact whatsoever on the present case," is unavailing. While plaintiffs attempt to distinguish Thomas based on the fact that it applied to the regulation of speech in a public forum, its application has not been so limited by courts. See GEFT Outdoor, LLC v. Monroe Cnty., 62 F. 4th 321, 328 (7th Cir. 2023); Covenant Media of S.C., LLC v. City of N. Charleston, 493 F.3d 421, 435 (4th Cir. 2007); Granite State Outdoor Adver., Inc., 348 F.3d at 1282; H.D.V.-Greektown, LLC v. City of

---

[12]   The approval of construction documents, the primary component of the permitting procedures, is subject to the time limits set forth in Administrative Code § 28-104.2.7. The subsequent issuance of the permit is a ministerial act and often occurs on the same day as construction document approval. See Dfts' SJ Br. (ECF 197) at Point II(C)(3).

Detroit, 568 F. 3d 609, 623 (6th Cir. 2009); "Q" Lungian Enters. v. Town of Windsor Locks, 272
F. Supp. 3d 289, 300 (D. Conn. 2017).  Furthermore, contrary to plaintiffs' assertions, both the
2001 Amendments and the DOB permitting procedures are indeed content-neutral.  See PI
Decision; Dfts' SJ Br. (ECF 197), at Point I(D)(1) & Point II (C); Dfts' Opp. (ECF 202) Point
III(A); Point I (A) above.

      Furthermore, defendants maintain that pursuant to Thomas, the DOB permitting
procedures do not require the procedural safeguard of prompt judicial review set forth in
Freedman.  Dfts' SJ Br., at Point II (C)(2).  However, to the extent it is required, it is satisfied by
the availability of a proceeding in the nature of mandamus pursuant to Article 78 of the New York
Civil Procedure Law and Rules.  See Infinity Outdoor Inc. v. City of New York, 165 F. Supp. 2d
403, 429 (E.D.N.Y. 2001); Gasparo v. City of New York, 16 F. Supp. 2d 198, 213 (E.D.N.Y.
1998).

**E.**      **The DOB Permitting Procedures Do Not Create a Risk of a Sensitive Use Veto.**

      Plaintiffs' claim that the vesting provisions are facially unconstitutional due to the
risk of a sensitive use veto is purely speculative and baseless; Young v. City of Simi Valley, 216
F.3d 807 (9th Cir. 2000) is clearly distinguishable.  See Dfts' SJ Br. (ECF 197) at Point II(D); Dfts'
Opp (ECF 202) at Point II.  Plaintiffs' so-called "overwhelming evidence" in support of this claim
is one stale, irrelevant instance that occurred under procedures that will no longer be in place once
the 2001 Amendments become enforceable and which did not even result in a sensitive use veto
because the applicant ultimately obtained the permit.  Pltfs' X-mtn SJ Br. at 75.

**F.**      **Bookstore Plaintiffs Have Failed to Establish Any Due Process Violations.**

      The Bookstore Plaintiffs fail to establish that their right to procedural or substantive
due process was violated.  See Dfts' SJ Br. (ECF 197) at Point III.  Plaintiffs fail to provide
authority as to how they were entitled to notice and an opportunity to be heard with respect to the

enactment of the 2001 Amendments and in any event, their failure to identify a property interest of which they have been deprived is fatal to their claims. Moreover, the application of zoning regulations upheld as constitutional and enacted to address negative secondary effects associated with adult establishments is in no way conscience shocking.

## CONCLUSION

For the forgoing reasons, defendants' motions for summary judgment should be granted, and plaintiffs' cross-motions for summary judgment should be denied.[13]

Dated:      New York, New York
            June 9, 2023

                          HON. SYLVIA O. HINDS-RADIX
                          Corporation Counsel of the City of New York
                          Attorney for Defendants
                          100 Church Street
                          New York, New York 10007
                          (212) 356-2219


                          By: _____
                                Kerri Devine
                                Assistant Corporation Counsel

Of Counsel:

Sheryl Neufeld
Mark Muschenheim

---

[13]  Plaintiffs assert that if this Court upholds the 2001 Amendments they should nevertheless be given an additional year to operate in their current locations (beyond the 20-plus years they have already had). That claim should be rejected for the reasons set forth in Dfts' SJ Br., at 63. Moreover, plaintiffs' claim that their patrons' rights to access to protected expression is not persuasive given that ten adult establishments will not have to relocate. CSF ¶¶ 167 & 182.