UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------

CLUB AT 60TH STREET, INC., et al.,

        Plaintiffs,

    -against-

THE CITY OF NEW YORK,

        Defendant.

02 Civ. 8333 (LJL)

-----------------------------------------------------------------

725 EATERY CORP., et al.,

        Plaintiffs,

    -against-

THE CITY OF NEW YORK, et al.,

        Defendants.

02 Civ. 4431 (LJL)

-----------------------------------------------------------------

59 MURRAY ENTERPRISES, INC., et al.

        Plaintiffs,

    -against-

THE CITY OF NEW YORK, et al.,

        Defendants.

02 Civ. 4432 (LJL)

-----------------------------------------------------------------

336 LLC, et al.,

        Plaintiffs,

    -against-

THE CITY OF NEW YORK, et al.,

        Defendants.

18 Civ. 3732 (LJL)

-----------------------------------------------------------------

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTIONS *IN LIMINE***

HON. SYLVIA HINDS-RADIX
Corporation Counsel of the City of New York
*Attorney for Defendants*
100 Church Street
New York, New York 10007
(212) 356-2214

SHERYL NEUFELD
MARK MUSCHENHEIM
KERRI DEVINE
SCALI RIGGS,
    Of Counsel

September 22, 2023

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES .................................................................................................. ii

ARGUMENT ........................................................................................................................... 1

    POINT I

        PLAINTIFFS SHOULD BE PRECLUDED FROM SUBMITTING EVIDENCE RELATING TO THE AVAILABILITY OF ALTERNATIVE LOCATIONS FOR ADULT ESTABLISHMENTS ON A BOROUGH-BY-BOROUGH LEVEL, AS WELL AS THE COMMERCIAL VIABILITY OF THOSE ALTERNATIVE LOCATIONS. ................................................. 2

    POINT II

        PLAINTIFFS SHOULD BE PRECLUDED FROM SUBMITTING EVIDENCE RELATED TO THEIR CLAIM THAT THE CITY IS REQUIRED TO CONDUCT A NEW SECONDARY EFFECTS STUDY. ........................................................................................ 5

    POINT III

        THE LAW OF THE CASE DOCTRINE ALSO WARRANTS GRANTING THE MOTION *IN LIMINE*. ............................................................................................... 10

CONCLUSION ....................................................................................................................... 15

# TABLE OF AUTHORITIES

**Cases**                                                                      **Pages**

725 Eatery Corp. v. City of New York,
408 F. Supp. 3d 424 (S.D.N.Y. 2019).................................................................................. *passim*

Arizona v. California,
460 U.S. 605 (1983).........................................................................................................10

Banushi v. Police Officer Alvin L. Palmer Shield No. 04009 & Equashia Allen,
2011 WL 13894 (E.D.N.Y. Jan. 4, 2011) ..........................................................................1

Broecker v. New York City Dep't of Educ.,
2023 WL 2170245 (E.D.N.Y. March 30, 2023) ..............................................................14

City of New York v. Dezer Properties,
95 N.Y.2d 771 (2000) ........................................................................................................7

City of New York v. Gordon,
155 F. Supp. 3d 411 (S.D.N.Y. 2015)..........................................................................10, 14

City of New York v. Les Hommes,
94 N.Y.2d 267 (1999) ........................................................................................................7

City of Renton v. Playtime Theatres, Inc.,
475 U.S. 41 (1986)........................................................................................................2, 5

Commerce Funding Corp. v. Comprehensive Habilitation Servs., Inc.,
2004 WL 1970144 (S.D.N.Y. Sept. 3, 2004)....................................................................1

Dandong v. Pinnacle Performance Ltd.,
966 F. Supp. 2d 374 (S.D.N.Y. 2013)..............................................................................11

For the People Theatres of N.Y. Inc. v City of New York,
29 N.Y.3d 340 (2017), cert. denied, 138 S. Ct. 1000 (2018)...........................7, 8, 9, 12

Garten v. Hochman,
2010 WL 2465479 (S.D.N.Y. June 16, 2010) .................................................................13

Goodheart Clothing Co. v. Laura Goodman Enters.,
962 F.2d 268 (2d Cir. 1992).............................................................................................13

Heffron v. Int'l Soc'y for Krishna Consciousness,
452 U.S. 640 (1981).........................................................................................................3

Hickerson v. City of New York,
146 F.3d. 99 (2d Cir. 1998)..............................................................................................3

| **Cases** | **Pages** |
|---|---|

Johnson v. Holder,
 564 F.3d 95 (2d Cir. 2009)..................................................................................................10

Luce v. United States,
 469 U.S. 38 (1984).................................................................................................................1

Lund v. City of Fall River,
 714 F.3d 65 (1st Cir. 2013)...................................................................................................4

Pepper v. United States,
 562 U.S. 476 (2011).............................................................................................................10

Romero v. Manhattan & Bronx Surface Transit Operating Authority,
 2022 WL 624451 (S.D.N.Y. March 2, 2022) .....................................................................10

Simpson v. City of New York,
 2015 WL 5918182 (S.D.N.Y. Oct. 9, 2015) .........................................................................1

Stringfellow's of New York, Ltd. v. City of New York,
 91 N.Y.2d 382 (1998) ............................................................................................................6

TJS of N.Y. Inc. v. Town of Smithtown,
 598 F.3d 17 (2d Cir. 2010)....................................................................................................4

United States v. Doonan,
 2022 WL 954600 (S.D.N.Y. March 29, 2022) ..................................................................13

United States v. Quintieri,
 306 F.3d 1217 (2d Cir. 2002)..............................................................................................10

**Statutes**

Fed. R. Evid. 104 .............................................................................................................................1

Fed. R. Evid. 104(a).........................................................................................................................1

Fed. R. Evid. 401 ................................................................................................................1, 3, 5, 9

Fed. R. Evid. 402 ................................................................................................................1, 3, 5, 9

Defendants, by their attorney, Hon. Sylvia O. Hinds-Radix, Corporation Counsel of the City of New York, respectfully submit this memorandum of law in support of their motion *in limine* to preclude evidence relating to one, the availability of alternative locations for adult establishments on a borough-by-borough basis (rather than on a City-wide basis), two, the commercial viability of the 1,200-plus alternative locations identified by the defendants, and three, the necessity of conducting another negative secondary effects study of existing adult establishments that will have to relocate if the 2001 Amendments to the New York City Zoning Resolution are enforced.

## ARGUMENT

The purpose of a motion *in limine* is to allow the trial court to rule on the admissibility and relevance of certain anticipated evidence before that evidence is introduced at trial. Simpson v. City of New York, 2015 WL 5918182, at *1 (S.D.N.Y. Oct. 9, 2015) (citing Luce v. United States, 469 U.S. 38, 40 n.2 (1984)). "A motion in limine . . .calls on the court to make a preliminary determination on the admissibility of the evidence under Rule 104 of the Federal Rules of Evidence." Commerce Funding Corp. v. Comprehensive Habilitation Servs., Inc., 2004 WL 1970144, at *4 (S.D.N.Y. Sept. 3, 2004) (citing Fed. R. Evid. 104(a)). Irrelevant evidence is not admissible. FED. R. EVID. 402. Evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action." FED. R. EVID. 401. The Court's determination of what constitutes relevant—and thereby admissible—evidence should be "guided by the nature of the claims and defenses presented." Banushi v. Police Officer Alvin L. Palmer Shield No. 04009 & Equashia Allen, 2011 WL 13894, at *1 (E.D.N.Y. Jan. 4, 2011).

## POINT I

**PLAINTIFFS SHOULD BE PRECLUDED FROM SUBMITTING EVIDENCE RELATING TO THE AVAILABILITY OF ALTERNATIVE LOCATIONS FOR ADULT ESTABLISHMENTS ON A BOROUGH-BY-BOROUGH LEVEL, AS WELL AS THE COMMERCIAL VIABILITY OF THOSE ALTERNATIVE LOCATIONS.**

Defendants move to preclude the submission of evidence relating to plaintiffs' anticipated argument that the defendants must establish the availability of alternative locations for adult establishments on a borough-by-borough basis,[1] rather than on a City-wide basis. Defendants also move to preclude the submission of evidence relating to plaintiffs' anticipated argument that the alternative locations must be commercially viable.

The City of New York ("City") is required to provide reasonable alternative avenues of communication for adult establishments subject to the 2001 Amendments. City of Renton v. Playtime Theatres, Inc., 475 U.S. 41, 50 (1986). The City has done so, identifying over 1,200 locations City-wide where the 32 existing adult establishments could relocate.[2] Stip. Facts, at ¶ 170 (ECF 216) & Croswell Decl. at ¶ ¶ 2 & 12 (ECF 212-3).

The City, however, is not required to provide alternative locations on a borough-by-borough basis. In the preliminary injunction decision, this Court rejected "Plaintiffs'

---

[1] See, e.g., Sclar Decl., at ¶ 104 ("Each borough ... should be considered as an independent constituency in assessing whether or not the 2001 [Amendments] ... provides sufficient locations for adult businesses.") (ECF 92, at PDF 21). References to documents on the ECF docket are to those filed in the 689 Eatery Corp. (# 02 Civ. 4431) lawsuit.

[2] Planning and zoning for the City, including all boroughs, is the responsibility of the Department of City Planning, and the consideration of where adult establishments may locate must be undertaken on a City-wide basis, as is the case with respect to all uses under zoning. Amron Decl., at ¶ 15 (ECF 212-1).

2

unsupported contention that the availability of adequate sites must, as a categorical matter, be considered on a county-by-county basis -- namely, that Defendants must demonstrate the presence of sufficient alternative channels for adult expression in Manhattan." 725 Eatery Corp. v. City of New York, 408 F. Supp. 3d 424, 467 (S.D.N.Y. 2019) ("PI decision") (citing Hickerson v. City of New York, 146 F.3d. 99, 108 n.5 (2d Cir. 1998). Indeed, in Hickerson the Second Circuit similarly rejected the argument that "the First Amendment requires proof of adequate available sites on a borough-by-borough basis," ruling that the argument was "without foundation and unsupported by case law." Hickerson, 146 F.3d. at 108 n.5. Focusing on Manhattan, the PI decision ruled that regardless of "Manhattan's uniqueness with respect to real estate, entertainment or culture . . . the First Amendment simply 'does not guarantee the right to communicate one's views at all times and places and in any manner that may be desired.'" 408 F. Supp. 3d at 467 (quoting Heffron v. Int'l Soc'y for Krishna Consciousness, 452 U.S. 640, 647 (1981)).

Since the availability of alternative locations is considered on a City-wide basis, evidence relating to the need to provide alternative locations in a specific borough, such as Manhattan, should be precluded pursuant to Federal Rules of Evidence 401 and 402, including but not limited to the November 13, 2018 Berzak Decl. ¶¶ 5-6, 24-32, 35-36 & 40 (ECF 80, at PDF 21); January 2, 2019 Berzak Decl. (ECF 98); March 15, 2019 Berzak Decl. ¶¶ 1-9 (ECF 113, at PDF 9); Kelly Decl. ¶¶ 1-67 & 75-76 (ECF 83, at PDF 135); November 13, 2018 Sclar Decl. ¶¶

3

103-116 (ECF 92, at PDF 21); March 15, 2019 Sclar Decl. ¶ 21 (ECF 115, at PDF 24); Stip. Facts ¶¶ 141-144 & 154-155 (ECF 216);[3] Exs. 61 & 68 (ECF 162).[4]

Similarly, evidence relating to the commercial viability of the 1,200 plus alternative locations should be precluded. As the PI decision recognized, the "availability inquiry centers on 'whether proposed sites are physically and legally available, and whether they are part of an actual commercial real estate market in the municipality.'" 408 F. Supp. 3d at 466 (citations omitted). However, "the acquisition or use of land [need not] be profitable or commercially practicable, and sites are not rendered unavailable simply by being 'already occupied by existing businesses,' not 'currently for sale or lease' or otherwise not 'commercially viable.'" Id. at 466-67. Sites are also considered to be physically and legally available when they are in industrial or manufacturing zones and even when they must be developed. Id. at 467. See also TJS of N.Y. Inc. v. Town of Smithtown, 598 F.3d 17, 28 (2d Cir. 2010) ("whether or not sites fit the specific needs of adult businesses – or any other precise type of commercial enterprise – is constitutionally irrelevant").

As the Second Circuit held in TJS of N.Y., Inc., 598 F.3d at 29, "the possibility that sites will be unprofitable or commercially unviable for adult businesses ... is not relevant to the availability inquiry." And as recognized by the First Circuit, "[t]he proper enquiry looks to restrictions imposed by the government, not to the market effects of other people's commerce or the economics of site clearance." Lund v. City of Fall River, 714 F.3d 65, 70 (1st Cir. 2013) (upholding adult use zoning ordinance and stating "even if we credit Lund's representation that

---

[3] The parties Consolidated Statement of Stipulated Facts ("Stip. Facts") specifically provided that it did "not represent ... an agreement by all parties that each and every stipulated or uncontroverted fact is material and/or relevant to the claims at issue herein." Stip. Facts, at 3 (ECF 216).

[4] The parties submitted 75 exhibits in their Joint Request and Stipulations Regarding the Taking of Judicial Notice ("JNR"); the JNR specifically provided that the parties "reserve any and all objections they may have to consideration of each" exhibit. JNR, at Bates 000002 (ECF 162).

sites identified by the district court are subject to long-term leases, the fact that other competing private parties got ahead of him is not alone of any moment in the constitutional analysis, and the cost of development is nothing more than a business consideration for Lund to weigh."). See also, Renton 475 U.S. at 54 ("That [plaintiffs] must fend for themselves in the real estate market, on an equal footing with other prospective purchasers and lessees, does not give rise to a First Amendment violation."); M.J. Entm't Enters., 328 F. Supp.2d 480, 484 (S.D.N.Y. 2004) (recognizing that sites that are currently in use are available despite the fact that the sites "would have to be acquired or leased, and even subdivided").

Since the commercial viability of alternative locations is "constitutionally irrelevant," evidence relating to the commercial viability of alternative locations should be precluded pursuant to Federal Rules of Evidence 401 and 402, including but not limited to November 13, 2018 Berzak Decl. ¶¶ 37-38 (ECF 80, at PDF 21); March 15, 2019 Berzak Decl. ¶¶ 10-13 (ECF 113, at PDF 9); Kelly Decl. ¶¶ 53-74 & 77-80 (ECF 83, at PDF 135); Stip. Facts ¶ 145(b)-(d)&(g)-(i).

## POINT II

**PLAINTIFFS SHOULD BE PRECLUDED FROM SUBMITTING EVIDENCE RELATED TO THEIR CLAIM THAT THE CITY IS REQUIRED TO CONDUCT A NEW SECONDARY EFFECTS STUDY.**

Defendants move to preclude the submission of evidence relating to plaintiffs' anticipated argument that the defendants must conduct a new "secondary effects" study specifically addressed to the negative secondary impacts of "60/40" eating or drinking establishments and bookstores with booths ("60/40 establishments").

A brief history of the long-running events relating to zoning restrictions of adult establishments follows that establishes that another secondary effects study is not warranted.[5] To start, nearly thirty years ago, the City amended the New York City Zoning Resolution ("Zoning Resolution") to address the secondary effects of adult establishments ("1995 regulations"). These negative effects, including increased crime, diminished property values, reduced shopping and commercial activity, and a perceived decline in residents' quality of life, were identified by the Department of City Planning ("DCP") in an "Adult Entertainment Study" completed in September 1994 ("1994 DCP Study"). JNR Ex. 41 (ECF 162).

Under the 1995 regulations, adult establishments were defined, in part, as establishments in which a "substantial portion" of the business is used for adult purposes. See Stip. Facts, at ¶¶ 5-7 (ECF 216). The meaning of the term "substantial portion" was amplified by administrative guidelines set forth in the City's Department of Buildings Operations Policy and Procedure Notice ("OPPN") 6/98. See JNR Ex. 11 (ECF 162); Stip. Facts, at ¶ 10 (ECF 216). OPPN 6/98 clarified that "substantial portion" essentially meant that if at least 40 percent of the floor area of a business was occupied by an adult use, the business qualified as an adult establishment for zoning purposes. See JNR Ex. 11.

After the 1995 regulations were adopted, adult establishments unsuccessfully challenged them on federal and state constitutional grounds. See Stringfellow's of New York, Ltd. v. City of New York, 91 N.Y.2d 382 (1998) ("Stringfellow's"). In response to enforcement efforts that followed the Stringfellow's decision, the adult entertainment industry largely attempted to evade enforcement through sham compliance. While several courts agreed that some of the

---

[5] A detailed history is set forth in defendants' Memorandum of Law in support of their motion for summary judgment. ECF 220, at 5-12.

businesses had engaged in sham compliance (Stip. Facts, at ¶ 17), the New York Court of Appeals subsequently held that the 1995 regulations should be strictly construed such that establishments presenting adult entertainment or materials in less than 40 percent of their public floor space were not subject to the 1995 regulations. See Stip. Facts, at ¶ 18 (citing City of New York v. Dezer Properties, 95 N.Y.2d 771 (2000); City of New York v. Les Hommes, 94 N.Y.2d 267 (1999)).

In 2001, the New York City Council adopted the amendments to the 1995 regulations at issue in this litigation. The adopted amendments close certain loopholes utilized by adult establishments to evade enforcement, and thus more accurately and completely express the legislative intent behind the 1995 zoning provisions. The 2001 Amendments did not change the substance of the location restrictions set forth in the 1995 regulations. Rather, the 2001 Amendments clarify that restaurants, clubs and bars which "regularly feature" topless or nude entertainment are subject to the adult use regulations, no matter the amount of floor area devoted to adult entertainment. See Stip. Facts, at ¶ 25-8 (ECF 216); 2001 Amendments, JNR Ex. 1 at Bates No. 673-4, 690-96 (ECF 162). With respect to adult book and video stores, the 2001 Amendments improve upon the definition of "adult bookstore" by setting forth objective criteria for determining whether the stock-in-trade is devoted to adult materials. See id.

In September 2002, certain establishments that purportedly complied with the 1995 regulations by limiting their adult use operations to less than 40% of their floor area (known as "60/40 establishments") commenced litigation in state court challenging the constitutionality of the 2001 Amendments on their face. For the People Theatres of N.Y. Inc. v City of New York, 29 N.Y.3d 340 (2017) ("People Theatres"), cert. denied, 138 S. Ct. 1000 (2018). Specifically, the People Theaters plaintiffs claimed that the City was constitutionally required to provide evidence showing that the 60/40 establishments did not remedy the secondary effects identified in the 1994

7

DCP Study. Following extended litigation in both the trial and appellate courts, in 2017 the New York Court of Appeals rejected the plaintiffs' claim in People Theaters.

In a lengthy and well-reasoned decision upholding the 2001 Amendments under both the United States and New York State constitutions, the New York Court of Appeals concluded, as a matter of law, that 60/40 establishments retained a predominant, ongoing focus on sexuality explicit materials or activities. Stip. Facts, at ¶ 35. Thus, there was no need for the City to have conducted a new study prior to enacting the 2001 Amendments because the secondary effects of the 60/40 businesses covered by the 2001 Amendments were already studied by the City in 1994. People Theatres, 29 N.Y.3d at 363. The Supreme Court denied certiorari in February 2018, and the instant litigation was resurrected.

Plaintiffs here, all owners or operators of 60/40 establishments, contend that the 2001 Amendments are facially invalid under the First Amendment. Plaintiffs theorize, as the plaintiffs in People Theaters did, that the 1994 DCP study (JNR Ex. 41) that analyzed 100 percent adult establishments is insufficient to support an argument that the 2001 Amendments are narrowly tailored. Pls.' X-Mot. SJ Br., at 5, 17, 54-55 (ECF 225). Specifically, plaintiffs argue that City was not entitled to rely on the prior legislative record, which included the 1994 DCP Study, because 60/40 eating or drinking establishments and bookstores with booths are purportedly new types of establishments created in response to the 1995 regulations. Id.

In the PI decision that this Court rendered, Judge Pauley disagreed with plaintiffs. To that end, Judge Pauley held:

> The Club Plaintiffs contend that the 2001 Amendments fail to satisfy the narrow tailoring requirement based on the lack of evidence of new or continuing secondary effects from 60/40 establishments. In particular, they rehash the argument raised in the For the People Theatres

8

> litigation that the DCP never studied the secondary effects of 60/40 establishments and that in fact, some individuals testified to their belief that 60/40 establishments did not result in any significant impacts. In this Court's view, the Club Plaintiffs ask too much of Defendants, who need only demonstrate that the 2001 Amendments promote the City's interest in reducing secondary effects more effectively than if they did not exist.
>
> * * *
>
> [T]he First Amendment does not require a municipality to conclusively prove its theory for establishing . . . a connection between the regulated speech and the secondary effects sought to be abated. Likewise, the Club Plaintiffs' suggestion that the City must furnish evidence linking 60/40 establishments with secondary effects runs afoul of the notion that a city need not prove that such a link exists or prove that its ordinance will be effective in suppressing secondary effects.

408 F. Supp.3d at 645-66 (citations and quotations omitted).

In concluding that the 2001 Amendments are sufficiently tailored to meet the City's interest in reducing negative secondary effects, this Court determined that the defendants provided evidence (the DCP Study and 2001 City Planning Commission Report) that supports a link between the regulated speech and the secondary effects, and noted that defendants "had a reasonable basis to infer that regulating the location of 60/40 establishments would alleviate the negative secondary effects associated" with adult establishments. Id. at 465-66.

Because plaintiffs' claim that the City was required to conduct additional studies specifically addressed to the negative secondary impacts of 60/40 establishments has repeatedly been rejected by both the New York Court of Appeals and this Court, any evidence in support of the claim is not relevant to the First Amendment analysis. Plaintiffs should be precluded pursuant to Federal Rules of Evidence 401 and 402 from presenting evidence related to this claim, including

9

but not limited to: the June 30, 2017 Freeman Aff. (ECF 83, at PDF 186); Stip. Facts, ¶¶ 203-216 (ECF 216); Exs. 62, 63, 64, 74 (ECF 162).

## POINT III

### THE LAW OF THE CASE DOCTRINE ALSO WARRANTS GRANTING THE MOTION *IN LIMINE*.

In addition to the authorities and argument set forth above that warrant granting this motion *in limine*, the motion should also be granted based on the law of the case since the PI decision already ruled on these issues. The law of the case "'doctrine posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.'" Pepper v. United States, 562 U.S. 476, 506 (2011) (quoting Arizona v. California, 460 U.S. 605, 618 (1983)). "The doctrine continues to apply even where a case has been reassigned to a new judge." City of New York v. Gordon, 155 F. Supp. 3d 411, 419 (S.D.N.Y. 2015) (citations omitted).

A "'decision should generally be adhered to ... in subsequent stages in the same case ... unless cogent and compelling reasons militate otherwise.'" Romero v. Manhattan & Bronx Surface Transit Operating Authority, 2022 WL 624451, *6 (S.D.N.Y. March 2, 2022) (Liman, J.) (quoting United States v. Quintieri, 306 F.3d 1217, 1255 (2d Cir. 2002)). "Cogent and compelling reasons include 'an intervening change in law, availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'" Id. (quoting Johnson v. Holder, 564 F.3d 95, 99-100 (2d Cir. 2009)). And while judges are not required to give deference to the factual determinations or inferences of a previous judge, nor the application of law to facts, conclusions of law made by a judge typically receive deference. Gordon, 155 F. Supp. 3d at 419. Reconsideration of decided points is also less appropriate when the arguments raised are substantively identical to those

previously raised and decided upon by the court. Dandong v. Pinnacle Performance Ltd., 966 F. Supp. 2d 374, 386 (S.D.N.Y. 2013).

No cogent and compelling circumstances are present in these four cases. The PI decision -- made after a lengthy briefing process -- was based on settled law. There has been no intervening change in law since the PI decision that would substantially alter the legal rights of the plaintiffs. Nor is there any new material evidence favoring plaintiffs that would be dispositive or influential in this case. And the PI decision did not contain any clear errors or perpetrate a manifest injustice. Consequently, the Court need not revisit the rulings of law made in the PI decision.

Plaintiffs will argue that alternative locations for their adult establishments must be in Manhattan. See, e.g., Pls.' X-Mot. SJ Br., at 14-15 (ECF 225). The PI decision rejected that argument, noting that based on established case law, the appropriate geographic scale to analyze alternative channels is at the city, rather than borough, level. 725 Eatery Corp., 408 F. Supp. 3d at 467. Plaintiffs will also presumably argue that alternative sites must be available and financially practicable. See, e.g., Pls.' X-Mot. SJ Br., at 25, n.24 (ECF 225). The PI decision similarly rejected that argument, again relying on established case law that "[a]vailability does not mean that the acquisition or use of land must be profitable or commercially practicable, and sites are not rendered unavailable simply by being already occupied by existing businesses, not currently for sale or lease or otherwise not commercially viable." 408 F. Supp. 3d at 467 (internal quotation marks removed).

Plaintiffs will presumably argue that the DCP Study (JNR Ex. 41) that analyzed the negative secondary effects of 100 percent adult establishments is insufficient to support an argument that the 2001 Amendments are narrowly tailored. See, e.g., Pls.' X-Mot. SJ Br., at 5, 54-55 (ECF 225). The PI decision determined that this study, together with the 2001 City Planning

11

Commission Report (JNR Ex. 45), supported a link between 60/40 establishments under the 2001 Amendments and negative secondary effects. 408 F. Supp. 3d at 465-66. Specifically, the PI decision held that the "DCP Study certainly demonstrates some nexus between deleterious secondary effects and establishments with a predominant, ongoing focus on adult-oriented expression …. And the 2001 [City Planning Commission] Report, which cites to judicial determinations that mechanical compliance with the 60/40 Standard leaves the essentially non-conforming nature of the adult business intact, fairly supports the underlying rationale for the 2001 Amendments…." 408 F. Supp. 3d at 465-66. See also For the People Theatres of N.Y. Inc. v. City of New York, 29 N.Y.3d. 340, 344 (2017) (holding "that the City has met its burden of demonstrating that the [60/40] establishments affected by [the 2001 Amendments] retained a predominant focus on sexually explicit materials or activities").

Plaintiffs may argue that law of the case should not be applied since the 69-page PI decision was merely a determination of plaintiffs' preliminary injunction motion and the evidentiary record is now "significantly expanded." See, e.g., Pls.' X-Mot. Rely SJ Br., at 10 (ECF 229). That argument fails. The evidentiary record has not significantly expanded. Indeed, in their preliminary injunction motion plaintiffs submitted a 17-volume joint appendix consisting of over 1,800 pages. ECF 80-96. And in their reply papers in further support of their preliminary injunction motion, plaintiffs submitted another four volumes consisting of more than 300 pages. ECF 112-115. More importantly, the evidentiary record on the three *in limine* issues at hand has not expanded in any material manner, and plaintiffs did not previously identify any new, material evidence. Pls.' X-Mot. Rely SJ Br., at 10-11 (ECF 229).

Plaintiffs may also argue that law of the case is inapplicable because the prior decision was on a motion for a preliminary injunction. Pls.' X-Mot. Rely SJ Br., at 2-9 (ECF 229).

Plaintiffs, however, cite to no case that conclusively precludes the application of law of the case to decisions on motions for a preliminary injunction. Id. Rather, courts in the Second Circuit have left the door open to the possibility of applying law of the case to such decisions. See United States v. Doonan, 2022 WL 954600, at *5 n.3 (S.D.N.Y. March 29, 2022) ("the law of the case doctrine is not typically applied in connection with preliminary determinations, such as a ruling on a motion for preliminary injunction" (emphasis added) (quoting Garten v. Hochman, 2010 WL 2465479, at *3 n.1 (S.D.N.Y. June 16, 2010)); Goodheart Clothing Co. v. Laura Goodman Enters., 962 F.2d 268, 274 (2d Cir. 1992) ("A preliminary determination of likelihood of success on the merits in a ruling on a motion for a preliminary injunction is ordinarily tentative.... It would therefore be anomalous at least in most cases, and here, to regard the initial ruling as foreclosing the subsequent, more thorough consideration of the merits that the preliminary injunction expressly envisions." (emphasis added)).

Here neither the briefing papers on the preliminary injunction motion, nor the PI decision, was typical of a preliminary determination.[6] Due to the robust, voluminous record before the Court at the time it issued the PI decision and the fact that, as set forth above, that record remains materially unchanged, this Court should exercise its discretion in applying law of the case to the three legal issues -- which are premised on undisputed facts -- previously decided by Judge Pauley. While the law of the case doctrine is "particularly flexible" where the prior decisions were made on a preliminary injunction motion, a Court can "give deference to legal conclusions"

---

[6] Indeed, neither the briefing nor the PI decision were made under a tight time frame typical to resolving preliminary injunction motions; plaintiffs' filed their preliminary injunction motions in November 2018 (ECF 78-96) (nearly six months after the motions were originally scheduled to be filed (ECF 51)), defendants opposed more than two months later in January 2019 (ECF 101-103 & 105), plaintiffs filed their reply papers in March 2019 (ECF 112-116) and the Court issued its decision more than six months after briefing was fully submitted (ECF 120).

reached in connection with such motions. Gordon, 155 F. Supp. 3d at 419. "Good sense dictates that a court interpret the same statute in the same way throughout a litigation, unless there is an intervening change in the law." Id. at 420.

While the instant actions involve interpretation of case law rather than statutes, the same rationale applies and, as in Gordon, plaintiffs herein fail to identify any intervening change in law. A similar analysis was applied more recently in Broecker v. New York City Dep't of Educ., 2023 WL 2170245 (E.D.N.Y. March 30, 2023). In Broecker, the Court considered whether to apply law of the case to two prior orders denying motions for preliminary injunctions in ruling on a motion to dismiss the amended complaint, where the factual record remained "unchanged in any relevant manner" and where there was no intervening change of law. Id. at 10-11. While the Court noted that it "need not decide here whether the law of the case doctrine applies to prevent or compel this Court's reconsideration of the factual and legal issues" discussed in the prior orders, it went on to hold that the prior orders addressed most of the issues in the motion to dismiss and that, "[b]arring 'an intervening change in law' or 'availability of new evidence,'...the Court will incorporate its analysis to find on the merits that Plaintiff's Amended Complaint fails to state viable claims...." Id. at 8-9 (emphasis added). Here too, as the exhaustive record before the Court remains materially the same as that before the Court on the motion for a preliminary injunction, and as there has been no intervening change of law, Judge Pauley's decision with respect to the three purely legal issues should be adhered to.[7]

---

[7] Plaintiffs may also argue that the Court should disregard the vast majority of Judge Pauley's 69 page PI decision (ECF 120) because plaintiffs claim it was dicta, and thus not law of the case; essentially, plaintiffs would argue that since the PI decision concluded that the defendants did not establish sufficient alternative locations at that time, the rest of Judge Pauley's conclusions (in pages 1 through 63 of the PI decision) should be disregarded. But as set forth above in Points I and II, the PI decisions were premised on settled law, and plaintiffs cannot put forth any compelling argument to disregard those conclusions.

14

## **CONCLUSION**

For the forgoing reasons, defendants' *in limine* motion should be granted.

Dated:  New York, New York
        September 22, 2023

                              HON. SYLVIA O. HINDS-RADIX
                              Corporation Counsel of the City of New York
                              Attorney for Defendants
                              100 Church Street
                              New York, New York 10007
                              (212) 356-2186

                        By: _____
                              Mark W. Muschenheim
                              Assistant Corporation Counsel

Of Counsel:

Sheryl Neufeld
Kerri Devine
Scali Riggs