UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

725 EATERY CORP., etc., *et ano.,*                       :

                     Plaintiffs,

                                :

       - against -                                      :       Civil Action No.
                                :       02 CV 4431 (LJL)

THE CITY OF NEW YORK, et al.,
                    Defendants.         :
-----------------------------------------------------------------X

59 MURRAY ENTERPRISES INC., etc., *et al.,*              :
                    Plaintiffs,

                                :

       - against -                                      :       Civil Action No.
                                :       02 CV 4432 (LJL)

THE CITY OF NEW YORK, et al.,
                    Defendants.         :
-----------------------------------------------------------------X

CLUB AT 60TH STREET, INC., etc., *et al.,*              :
                    Plaintiffs,

                                :

       - against -                                      :       Civil Action No.
                                :       02 CV 8333 (LJL)

THE CITY OF NEW YORK,
                    Defendant.          :
-----------------------------------------------------------------X

---

**CLUB PLAINTIFFS' RESPONSE TO CITY'S MOTIONS IN LIMINE**

---

i

# TABLE OF CONTENTS

I.   Motions in limine are not needed or warranted in this bench trial ................. 1

II.  Neither of the evidentiary exclusions urged by the City's Point I are
     meritorious ................................................................................................. 3

     A.   Evidence about Manhattan's uniqueness is relevant and
          admissible ........................................................................................... 3

     B.   Evidence about commercial viability is relevant and admissible .......... 4

III. Evidence that the 2001 Amendments are not necessary or effective
     to reduce secondary effects is relevant and admissible ................................ 7

IV.  The preliminary injunction decision is not the law of the case. .................... 9

     A.   The law of the case doctrine doesn't apply to preliminary
          injunctions. ........................................................................................ 10

     B.   Law of the case never applies to dicta. ............................................... 14

     C.   Law of the case also does not apply where (as here) there is a
          significantly expanded evidentiary record, a change in case law,
          or other reasons that new consideration might lead to a different
          result. ................................................................................................. 15

     CONCLUSION ............................................................................................. 17

## <u>TABLE OF AUTHORITIES</u>

<u>CASES</u>

**U.S. SUPREME COURT**

*City of Los Angeles v. Alameda Books, Inc.*, 535 U.S. 425 (2002) ..................................... 2, 4, 5, 8

*City of Renton v. Playtime Theatres,* 475 U.S. 41 (1986) ............................................... 4

*Trump v. Int'l Refugee Assistance Project,* 582 U.S. 571 ............................................11

*United States v. United States Smelting, etc.,* 339 U.S. 186 (1950)............................... 10

*Univ. of Texas v. Camenisch,* 451 U.S. 390 (1981) ................................................10, 11

**U.S. COURTS OF APPEALS**

*Alameda Books, Inc. v. City of L.A.*, 631 F.3d 1031 (9th Cir. 2011) ............................. 6, 7

*Gage v. Gen. Motors Corp.,* 796 F.2d 345 (CA10 1986)............................................. 10

*Goodheart Clothing v. Laura Goodman Ent.,* 962 F.2d 268 (2d Cir. 1992) ......................... 12, 13

*Higgins v. Cal. Prune & Apricot Grower, Inc.,* 3 F.2d 896 (2nd Cir. 1924) ................... 15

*ILGO v. Giuliani,* 143 F.3d 638 (2nd Cir. 1998) ......................................................... 12

*Johnson v. Holder*, 564 F.3d 95 (2nd Cir. 2009) ......................................................... 15

*Lund v. City of Fall River*, 714 F.3d 65 (1st Cir. 2013) ................................................ 6

*Palmieri v. Defaria*, 88 F.3d 136 (2d Cir. 1996) .......................................................... 2

*TJS of NY, Inc, v. Town of Smithtown*, 598 F.3d 17 (2d Cir. 2010) ................................. 6

*United States v. Quintieri,* 306 F.3d 1217 (2nd Cir. 2002)............................................ 12

*Van Alen v. Dominick & Dominick, Inc.*, 560 F.2d 547 (2d Cir. 1977).............................. 2

**U.S. DISTRICT COURTS**

*Alameda Books, Inc. v. City of L.A.*, 2008 U.S. Dist. LEXIS 108860, 2008 WL 8854571 (C.D.

    Cal. Case no. CV 95-0777 ...................................................................... 6

*Banque Hypothecaire Du Canton De Geneve v. Union Mines*, 652 F. Supp. 1400 (D. Md. 1987) 2

*Broecker v. New York City Department of Education*, 2023 LEXIS 55541, 2023 WL 13894

    (E.D.N.Y. Jan. 4, 2011) ................................................................................. 13

*Chill v. Calamos Advisors LLC*, No. 15 CIV. 1014 (ER), 2018 WL 4778912 (S.D.N.Y. Oct. 3,

    2018) ................................................................................................................ 2

*City of New York v. Gordon*, 155 F. Supp.3d 411 (S.D.N.Y. 2015)........................................ 12, 13

*Dandong v. Pinnacle Performance, Ltd.*, 966 F. Supp.2d 374 (S.D.N.Y. 2013).....................11, 12

*Egiazaryan v. Zalmayev*, 880 F. Supp.2d 494 (S.D.N.Y. 2012) ................................................... 14

*Garten v. Hochman*, 2020 U.S. Dist. LEXIS 59699, 2010 WL 2465479 (S.D.N.Y. June 16, 2010)

    ................................................................................................................................ 10

*M.J Entm't Enters. v.  City of Mt. Vernon*, 328 F.Supp.2d 480 (S.D.N.Y. 2004) ........................... 6

*Marshall v Port Authority,* 2022 WL 17491006 (S.D.N.Y. December 5, 2022)........................ 1, 2

*Perreca v. Gluck*, 262 F.Supp.2d 269 (S.D.N.Y. 2003) ............................................................... 12

*Reefer & Gen. Shipping Co. v. Great White Fleet*, 1995 U.S. Dist. LEXIS 14169, 1995 WL

    575290 (S.D.N.Y. Sept. 27, 1995) ...................................................................... 14

*Romero v. Manhattan & Bronx Surface Transit Operating Authority*, 2022 U.S. Dist. LEXIS

    36892, 2022 WL 624451 (S.D.N.Y. Mar. 2, 2022) ......................................................11, 12

*Royal & Sun All. Ins. PLC v. UPS Supply Chain Sols., Inc.*, No. 09 Civ 5935, 2011 WL 3874878

    (S.D.N.Y. Aug. 31, 2011) ................................................................................... 2

*United States v. Doonan*, 2022 U.S. Dist. LEXIS 59041, 2022 WL 954600 (S.D.N.Y. Mar. 30,

    2022) .......................................................................................................... 10, 12

*United States v. Ozsusamlar*, 428 F. Supp. 2d 161 (S.D.N.Y. 2006) ............................................ 2

*Victoria's Secret Stores Brand Mgmt., Inc. v. Sexy Hair Concepts, LLC*, No. 07 Civ. 5804 (GEL),

2009 WL 959775 (S.D.N.Y. Apr. 8, 2009).......................................................................... 2

## <u>CLUB PLAINTIFFS' RESPONSE TO CITY'S MOTIONS IN LIMINE</u>

**I.     Motions in limine are not needed or warranted in this bench trial**

The City's Motions in Limine make three requests for relief:

(1) Plaintiffs should be precluded from submitting evidence relating to the availability of adult locations specifically in Manhattan, as well as any evidence relating to the commercial viability of the alternative locations identified by the City.

(2) Plaintiffs should be precluded from submitting evidence related to their claim the City is required to conduct a new secondary effects study.

(3) The law of the case requires granting of the foregoing requests.

The merits of these issues are presently before the Court and *thoroughly* briefed in the parties' various summary judgment motions. Since the purpose of consolidating the trial on the merits with the summary judgment motions was to ensure that all *potentially* relevant evidence would be considered in one proceeding prior to any legal rulings being made, so as to avoid the need for any retrial after any potential appellate remand, the City's current motions simply make no sense and would defeat the purpose of holding this trial *at all*, rather than proceeding exclusively by summary judgment.[1]

Moreover, the City's motion does not meet the standards for a motion in limine, recently articulated by this Court in *Marshall v Port Authority,* 2022 WL 17491006 (S.D.N.Y. December 5, 2022) (Liman, *D.J.*):

---

[1] Indeed, the City's motion is fundamentally inconsistent with the Court's May 2023 rulings that the trial will be based on the pre-trial declarations and Stipulated Facts.  While the motion might make some sense if plaintiffs were seeking to introduce additional evidence, the City is attempting to preclude the consideration of evidence which the Court has already ruled should be part of the trial record.

"The purpose of an *in limine* motion is 'to aid the trial process by enabling the Court to rule in advance of trial on the relevance of certain forecasted evidence, as to issues that are definitely set for trial, without lengthy argument at, or interruption of, the trial.'" *Palmieri v. Defaria*, 88 F.3d 136, 141 (2d Cir. 1996) (quoting *Banque Hypothecaire Du Canton De Geneve v. Union Mines*, 652 F. Supp. 1400, 1401 (D. Md. 1987)). . . . **"The trial court should exclude evidence on a motion *in limine* only when the evidence is clearly inadmissible on all potential grounds."** *United States v. Ozsusamlar*, 428 F. Supp. 2d 161, 164–65 (S.D.N.Y. 2006).

2022 WL 17491006 at *2 (emphasis added).

Whether the Court ultimately agrees that Justice Kennedy's concurring opinion in *City of Los Angeles v. Alameda Books, Inc.*, 535 U.S. 425 (2002), controls here, or the extent to which it controls, it is by no means the case that Plaintiffs' evidence is "clearly inadmissible on all potential grounds."

Moreover, motions in limine are not needed in bench trials.  If the Court determines that testimony or evidence is not relevant or unreliable, it can exclude or disregard the evidence at trial or after the trial. Here, there is "no possibility of prejudice, and no need to protect the factfinder from being overawed by 'expert' analysis." *Victoria's Secret Stores Brand Mgmt., Inc. v. Sexy Hair Concepts, LLC*, No. 07 Civ. 5804, 2009 WL 959775, at *8 n.4 (S.D.N.Y. Apr. 8, 2009) (Lynch, *D.J.*). Where, as here, the judge is the factfinder, "expert evidence should be quite freely admitted so that the judge may have the benefit of live testimony and cross-examination to determine how much weight, if any, to give to the expert's conclusions." *Royal & Sun All. Ins. PLC v. UPS Supply Chain Sols., Inc.*, No. 09 Civ 5935, 2011 WL 3874878, at *2 (S.D.N.Y. Aug. 31, 2011) (Aspen, *D.J.*) (internal quotation marks and citation omitted); *see also Van Alen v. Dominick & Dominick, Inc.*, 560 F.2d 547, 552 (2d Cir. 1977) ("[O]rdinarily it may be the more prudent course in a bench trial to admit into evidence doubtfully admissible records, and testimony based on them...."). *Chill v. Calamos Advisors LLC*, No. 15 CIV. 1014, 2018 WL 4778912, at *6 (S.D.N.Y. Oct. 3, 2018) (Ramos, *D.J.*) (unreported).

2

Nonetheless, Plaintiffs will proceed to address the merits of each of these previously asserted arguments.

## II.   Neither of the evidentiary exclusions urged by the City's Point I are meritorious

### A.   Evidence about Manhattan's uniqueness is relevant and admissible

The City's attempt to preclude evidence of Manhattan's unique relevance to the issues of "how speech will fare" and "diminution of the public's access to expression" is inappropriate in a motion in limine. It would also eliminate evidence critically needed to evaluate the merits of those points.

At the outset we note that the City has asserted that the Club Plaintiffs contend that alternative sites should be evaluated on a "borough-by-borough" basis.  That is an argument the *Club Plaintiffs* have *never* made and do not make in any of their Summary Judgment papers.[2]

Rather, the Club Plaintiffs have consistently argued a much narrower position, fully supported by Supreme Court case law: specifically, that the impact of enforcement of the 2001 Amendments in Manhattan would be unique and would drastically impact how speech would fare both in Manhattan and throughout the entire City, and that it would result

_____

[2] Judge Pauley's preliminary injunction opinion cannot be law of the case on this point because he erroneously re-stated the Club Plaintiffs' argument.  Specifically, the Plaintiffs had argued that Manhattan was a uniquely significant portion of the City of New York as a national media center, and, for that reason, the particularly devastating impact of the 2001 Amendments in Manhattan, and on its tourists, etc., should be separately considered.  *See* Doc. 58 in case no. 3 (Club at 60th v. NYC) at ECF pp. 39-41 and Doc. 96 at ECF p. 13.  But rather than addressing this argument, the preliminary injunction opinion incorrectly re-phrased Plaintiffs' argument as simply being that Plaintiffs contend that alternative sites must be proven to exist in all five boroughs. 408 F.Supp.3d at 467.  The Club Plaintiffs never made that argument, and do not make it now. Because the preliminary injunction ruling was in Plaintiffs' favor, they never had occasion to bring this error to the Court's attention.

in a substantial reduction in the public's access to expression, including in the access of Manhattan's large tourist population.

In *Alameda Books* Justice Kennedy's controlling concurring opinion holds that in defending a challenged adult zoning scheme, a city must take into account "how speech will fare" and must show that the scheme will "leave the quantity and accessibility of the speech substantially undiminished." *Id.* at 445.  The evidence the City would like to keep out shows not only the drastic impact which the 2001 Amendments (enacted pre-*Alameda*) would have in eliminating the few remaining adult business in Manhattan, but that the owners of those businesses would not relocate outside of Manhattan and likely few others would either.  If those businesses cease to exist, it is the *public's* access which will unquestionably be diminished.  That evidence is relevant and should be included at trial so there will be a complete record for this Court's consideration.

The evidence the City would like to keep out would also include evidence of the unique nature of Manhattan as a global entertainment center.  That, again, is evidence which is relevant to "how speech will fare" and should be considered at trial in order to prevent a potential remand for a second trial.

**B.  Evidence about commercial viability is relevant and admissible**

Seeking to eliminate evidence of the commercial viability of proposed alternative sites is likewise inappropriate in a motion in limine. It would also eliminate evidence critically needed to evaluate the merits of the points regarding "how speech will fare" and "diminution of the public's access to expression."

The City wants the Court to preclude Plaintiffs from relying upon their already-submitted summary judgment evidence at trial on the issue of the commercial viability of sites the City contends can be counted as available alternative locations for adult businesses

4

forced to relocate.  Its rationale is that, under *City of Renton v. Playtime Theatres*, 475 U.S. 41 (1986), proof of commercial viability was arguably not required.

However, *Alameda Books* changed that prior position. Justice Kennedy expressly disagreed with the Plurality's reading of *Renton* because it left out what Justice Kennedy called the issue of "how speech will fare." 535 U.S. at 450.

Justice Kennedy then went on to provide an example of what the City of Los Angeles needed to show on remand in order to demonstrate the constitutionality of its challenged adult zoning ordinance (which, as applied in *Alameda*, prohibited movie viewing booths from existing in any business establishment which also sold adult retail items).  This very clearly shows that commercially viability is now a relevant and material inquiry:

> The claim, therefore, must be that this ordinance will cause two businesses to split rather than one to close, that the quantity of speech will be substantially undiminished, and that total secondary effects will be significantly reduced.  This must be the rationale of a dispersal statute.

535 U.S. at 451.

In short, Justice Kennedy required the City to prove the likelihood that the actual effect of the ordinance on how speech would fare would be that businesses forced to cease operating as combined bookstores with movie viewing booths would in fact be re-established as two independent businesses at different locations, so there would be no diminution in the public's access to the expression.

The analogy to the current case is clear.  If the actual effect of the 2001 Amendments would be to close all the 60/40 businesses, there must be a reasonable basis to conclude that they would actually relocate elsewhere in the City.  But, as a practical matter, they won't do so unless they can find commercially viable locations.  Accordingly, the evidence

5

Plaintiffs have presented on the commercial viability of the City's suggested locations is a required part of the constitutional analysis.

Lastly, the City argues that commercial viability is not to be considered in an analysis of "alternative sites," but based only on cases that did not address the question of whether this evidence may be ever be a factor in the analysis under Justice Kennedy's "how speech will fare" requirement. Not *one* of the three post-*Alameda* cases cited by the City, *i.e, TJS of NY, Inc, v. Town of Smithtown*, 598 F.3d 17 (2d Cir. 2010), *Lund v. City of Fall River*, 714 F.3d 65 (1st Cir. 2013), or *M.J Entm't Enters. v. City of Mt. Vernon*, 328 F.Supp.2d 480 (S.D.N.Y. 2004), discussed or ruled on the separate question of the significance of Justice Kennedy's "how speech will fare" language and whether evidence on commercial viability might be relevant to *that* legal test.[3]

In contrast, the very courts charged with specifically interpreting and applying the Supreme Court's *Alameda* decision, *i.e., Alameda Books, Inc. v. City of L.A.*, 2008 U.S. Dist. LEXIS 108860, 2008 WL 8854571 (C.D. Cal. Case no. CV 95-0777, decided July 16, 2008), and *Alameda Books, Inc. v. City of L.A.*, 631 F.3d 1031 (9th Cir. 2011), *both* concluded that the adult business plaintiffs there were entitled to put on proof on the issue of whether it would be "economically feasible" for the regulated multi-use adult businesses to reestablish as independent viable businesses. *See* 2008 U.S. Dist. LEXIS 108860 at *45 ("Plaintiffs have cast doubt on the City's rationale for the ordinance by providing compelling evidence that stand-alone arcades will not be economically feasible"), and 631 F.3d at 1038-39 (rejecting evidence supplied by declarant Andrus that a "stand alone adult

---

[3] And *M.J. Entertainment,* correctly cited by the City only as a *see also* citation, dealt with a situation where the evidence was not at all clear that the four sites shown as legally permissible in the tiny town of Mt. Vernon, were in fact commercially unfeasible. Indeed, the court noted that plaintiff's expert, Mr. Bass, identified the four sites as being ones where, "from both a zoning *and commercial perspective,* plaintiff could site an adult entertainment business." 328 F.Supp.2d at 483.

arcade would not be profitable" *only* because the witness's evidence was not deemed compelling proof of the point, but *not* disagreeing with the district court that competent evidence to that effect would be relevant and admissible under Justice Kennedy's test),  and 631 F.3d at 1039 (rejecting testimony of witness Hinckley "that a stand alone adult arcade would not attract a significant number of customers" but, again, only on the ground that the testimony was non-convincing, but not on the ground that it was irrelevant).  In short, the commercial feasibility of an adult zoning scheme for businesses forced to relocate was found to be a critical element under Justice Kennedy's opinion.

The decisions precluding consideration of commercial viability, on which the City relies, did not address the relationship between that factor and "how speech will fare." Indeed, the opinions do not suggest that the issue was even raised by counsel in those actions, much less decided by those courts.  Accordingly, they are clearly inapposite for present purposes.

In any event, at this point in the proceedings, where the only issue is whether a motion in limine should be granted, and where all the evidence has already been submitted in the voluminous summary judgment papers, it is clear that the current motion should be denied so the Court can fully and fairly evaluate all the evidence brought to bear on this point before issuing any dispositive ruling.  And, of course, Plaintiffs' evidence on this point should also be considered at trial so as to avoid any potential need for a remand and new trial following a ruling by the Court of Appeals.

## III.   Evidence that the 2001 Amendments are not necessary or effective to reduce secondary effects is relevant and admissible

The City's motion in limine also inappropriately seeks to keep out evidence the Plaintiffs have presented in their summary judgment papers showing that the 2001

Amendments are not needed to reduce any significant secondary effects. That evidence should be allowed.

As Justice Kennedy sets forth, any reduction in secondary effects may not be merely proportional to reductions in expression: "A city may not assert that it will reduce secondary effects by reducing speech in the same proportion.  On this point, I agree with Justice SOUTER.  See *post,* at 1746.  The rationale of the ordinance must be that it will suppress secondary effects—and not by suppressing speech." 535 U.S. at 449-450.

The City's Motions in Limine *appear* to seek to prevent evidence by Plaintiffs of the more recent studies and other evidence which demonstrate that the 2001 Amendments would *not* achieve any significant reductions in secondary effects.  However, without this evidence, the Court could not properly evaluate whether the 2001 Amendments would satisfy the required proportionality test.  One cannot measure proportionality by allowing input on only one side of a balance scale.

Also, just as the City is allowed to rely on its own (1994) study of secondary effects, Plaintiffs as well are entitled to present their rebutting evidence on secondary effects and even the *Alameda plurality* agreed with that. [4]

Accordingly, under no circumstances should the City's motion in limine be allowed to prevent introduction of any of the evidence Plaintiffs have provided in their summary judgment papers on the question of the need for the 2001 Amendments.

_____

[4] "The municipality's evidence must fairly support the municipality's rationale for its ordinance. If plaintiffs fail to cast direct doubt on this rationale, either by demonstrating that the municipality's evidence does not support its rationale or by furnishing evidence that disputes the municipality's factual findings, the municipality meets the standard set forth in *Renton.*  If plaintiffs succeed in casting doubt on a municipality's rationale in either manner, the burden shifts back to the municipality to supplement the record with evidence renewing support for a theory that justifies its ordinance." 535 U.S at 438-439.

## IV.    The preliminary injunction decision is not the law of the case.

The Court should reject the City's law-of-the-case arguments, recognizing the City's arguments for what they are: a naked effort to re-litigate summary judgment, on which briefing has closed and as to which the Court has said it will not issue a ruling before trial.

Significant portions of the City's brief here are lifted verbatim from its memorandum in opposition to the Plaintiffs' cross-motion for summary judgment (in particular, *compare* Motion in Limine at ECF pp. 15-16 and 18 *with* the City's Memorandum in Opposition to Plaintiff's Renewed Cross Motions for Summary Judgment[5] ("City's Opp to Cross SJ") at ECF p. 10-12 and 14). The law-of-the-case section of the Motion in Limine is the City's effort to file an impermissible surreply to Plaintiffs' Reply Memorandum in support of their Cross Motion for Summary Judgment[6] ("Cross-MSJ") (indeed, the Motion in Limine even explicitly cites to passages in the Plaintiffs' Reply Memorandum in support of its cross-MSJ and makes arguments in response to those passages (at, *e.g.*, Motion in Limine at ECF 17). The City is attempting to seize for itself the last word on an issue on which the City is not entitled to have it. *Cf.* Plaintiff's Reply in Support of Cross-MSJ[7] at ECF p. 35 (noting that the Plaintiffs would have liked to have argued some issues further, but conceding that "the City is entitled to have the last word on its own motion."). The Court should recognize the motion in limine for what it is—an attempt to get a second bite at summary judgment—and deny it out of hand.

---

[5] Doc. 204 filed in Case 3, Club at 60th v. N.Y.C. on June 12, 2023.
[6] Doc. 206 filed in Case 3 (Club at 60th v. NYC) on July 10, 2023.
[7] *Ibid.*

If the Court considers its merits at all, it should deny the motion because preliminary injunctions do not constitute the law of the case, except in very limited circumstances that are not present here. The Plaintiffs briefed this issue at length in their reply in support of their cross-MSJ (*id,* starting at ECF p. 7) and for the sake of efficiency will provide only an abridged version of that argument here.

### A. The law of the case doctrine doesn't apply to preliminary injunctions.

"The law of the case rule applies only when there has been a final decision."[8] *Gage v. Gen. Motors Corp.,* 796 F.2d 345, 349 (10th Cir. 1986*),* citing to *United States v. United States Smelting, etc.,* 339 U.S. 186 (1950).  For this reason, the law is clear that, absent an unusual exception, the law of the case doctrine does not apply to rulings on preliminary injunctions: "The findings of fact and conclusions of law made by a court granting a preliminary injunction are not binding at trial on the merits."  *Univ. of Texas v. Camenisch,* 451 U.S. 390, 395 (1981).  "[T]he law of the case doctrine is not typically applied in connection with preliminary determinations, such as a ruling on a motion for preliminary injunction." *United States v. Doonan,* 2022 U.S. Dist. LEXIS 59041, 2022 WL 954600, at *15, n.3 (S.D.N.Y. Mar. 30, 2022)  (Cronan, *D.J.*) (quoting *Garten v. Hochman,* 2020 U.S. Dist. LEXIS 59699, 2010 WL 2465479, at n.1 (S.D.N.Y. June 16, 2010) (Gardephe, *D.J*).

Moreover, even Judge Pauley himself recognized that his decision would not be binding at trial: "Fundamentally, the purpose of such interim equitable relief *is not to*

---

[8] Thus, while the preliminary injunction decision could be a final decision (and hence the law of the case) *as to motions for preliminary injunctions*, the Plaintiffs are not now seeking a preliminary injunction.

*conclusively determine the rights of the parties*, but to balance the equities as the litigation moves forward." *725 Eatery Corp. v. City of New York*, 408 F.Supp.3d at 458 (emphasis added), quoting from *Trump v. Int'l Refugee Assistance Project*, 582 U.S. 571, ___, 137 S.Ct. 2080, 2087 (2017), quoting in turn from *Camenisch*.

The City does not directly address any of this binding case law. Instead, it argues that the present case fits into an exception to that general rule, but never explains why it thinks any exception is applicable here, and it is clear that no exception applies.

As discussed in the Plaintiffs' reply in support of their cross-MSJ, the exceptions are few and far between. One exception noted in a case cited by the City allows treating a preliminary decision as law of the case when a party later makes an *identical motion* based on identical arguments. *See, e.g., Romero v. Manhattan & Bronx Surface Transit Operating Authority*, 2022 U.S. Dist. LEXIS 36892, 2022 WL 624451, at *45 (S.D.N.Y. Mar. 2, 2022) (Liman, *D.J.*) (applying law of the case doctrine to grant a motion to dismiss because the plaintiffs had previously filed "identical" claims, had those claims dismissed, "abandoned their appeal," and then re-filed *the same claims*); *Dandong v. Pinnacle Performance, Ltd.*, 966 F. Supp.2d 374, 385 (S.D.N.Y. 2013) (Furman, *D.J.*) (applying law of the case to preclude a second motion to dismiss based on the *same theory* as a prior unsuccessful motion to dismiss). These are proper applications of a preclusive rule because they involved dispositive resolutions of the exact same issue (i.e., a motion to dismiss) in both instances. That is nothing like precluding an argument and evidence at trial because of a preliminary injunction ruling.

11

A second exception noted in cases cited by the City allows for some preliminary decisions to have preclusive effect in *other cases* under doctrines of res judicata or collateral estoppel, particularly if there is some component of partial finality or appellate review to them. *See Goodheart Clothing v. Laura Goodman Ent.,* 962 F.2d 268, 274 n.1 (2d Cir. 1992) (noting that a First Circuit decision reversing a district court's preliminary injunction had been given preclusive effect in another proceeding). *See also, e.g., ILGO v. Giuliani,* 143 F.3d 638, 645 (2nd Cir. 1998) (holding that preclusive effect may be given to a denial of a preliminary injunction where the order also dismissed claims on the merits). That exception doesn't apply here.

The third exception cited by the City—which in fact is likely the most common application of law of the case—is the "mandate rule," under which a trial court cannot revisit issues decided by an appellate court. *See United States v. Quintieri,* 306 F.3d 1217, 1225 (2nd Cir. 2002); *Perreca v. Gluck,* 262 F.Supp.2d 269, 272 (S.D.N.Y. 2003) (Ellis, *M.J.*) (applying the mandate rule on remand from court of appeals)[9]. Because there has been no interlocutory appeal, the mandate rule is not at issue here, either.

The City's motion in limine largely repeats and relies on the same citations to cases it made in its summary judgment briefing. None of those cases apply here. In addition to the cases cited above (*Doonan*, *Romero*, and *Dandong*) the City again cites *City of New York v. Gordon,* 155 F. Supp.3d 411, 419 (S.D.N.Y. 2015) (Broderick, *D.J.)*. But in *Gordon*

---

[9] The City cited *Perreca* in its summary judgment briefing but has omitted it from its motion in limine.

the district court explicitly stated that it "would give little if any weight to any factual determinations," "inferences," and "the application of law to facts" from a preliminary injunction decision – precisely the opposite of what the City is seeking here. *See Gordon at 419*. The City also cites to *Goodheart*, but in that case the Second Circuit held that a preliminary injunction's finding regarding bad-faith trademark infringement was not binding on the merits question of whether the mark owner was entitled to statutory attorney's fees; the court said it would be "anomalous" to treat preliminary injunctions any other way. *Goodheart*, 962 F.2d at 274.

The City cites only one case in its motion in limine that it did not cite in its summary judgment briefing— *Broecker v. New York City Department of Education*, 2023 LEXIS 55541, 2023 WL 13894 (E.D.N.Y. Jan. 4, 2011).[10] But *Broecker* explicitly disavows reliance on law of the case to reach its conclusion: "the Court need not decide here whether the law of the case doctrine applies to *prevent or compel* this Court's reconsideration of the factual and legal issues" previously decided (2023 LEXIS at * 22, emphasis in original). Instead, the court, having reviewed the new briefing and its prior decisions, simply reached the same conclusion as it did previously and "f[ound] *on the merits* that Plaintiffs' Amended Complaint fails to state viable claims" upon which relief can be granted. (*Id.* at *25) (emphasis in original). In other words, the *Broecker* court looked at the issues anew and

---

[10] *Broecker* was decided in March of 2023—two and a half months before the City filed its memorandum in opposition to the Plaintiffs' cross-motion for summary judgment in June of 2023. The City did not cite *Broecker* in that brief. Its citation to *Broecker* now is evidence that the City is simply trying to re-litigate summary judgment after the Court advised the parties that it would not rule on those motions prior to trial.

reached the same conclusion as it had previously. That is fundamentally different from being *bound* by its prior conclusions. The law of the case did not "compel" the *Broecker* court to reach the same conclusion and does not compel the Court here.

### B. Law of the case never applies to dicta.

Wholly apart from whether the law of the case applies to preliminary injunctions, even more significantly, the law of the case *never* applies to *dicta*. "[D]ictum, *i.e.*, a statement not essential to the holding, is not the law of the case." *Egiazaryan v. Zalmayev, 880 F. Supp.2d 494, 502 (S.D.N.Y. 2012)* (Castel, D.J.). In *Egiazaryan*, the court "state[d] in an earlier opinion [on a motion to dismiss] that [the plaintiff] had adequately alleged false assertions of fact" in two sets of letters written by the defendant. *Egiazaryan*, 880 F. Supp.2d at 503. But the court's *holding* was that the plaintiff had not adequately pleaded a defamation claim because he had not plausibly alleged facts relating to the fault element. *Id.* Because the ultimate holding was that the plaintiff had not alleged a viable defamation claim, "any conclusions as to whether the letters contained false assertions of fact were unnecessary to the holding and cannot operate as law of the case." *Id. See also, e.g., Reefer & Gen. Shipping Co. v. Great White Fleet, 1995 U.S. Dist. LEXIS 14169, 1995 WL 575290, at *12-13 (S.D.N.Y. Sept. 27, 1995)* (Kram, D.J.) (dicta "did not constitute the law of the case").

Here, the court's ultimate *holding* with respect to the preliminary injunction was that the Plaintiffs were entitled to equitable relief. Therefore, any statements in the decision *adverse* to the Plaintiffs—whether they were about secondary effects, adequacy of

supporting evidence, or anything else—were not necessary to the ruling in the Plaintiffs' favor. Any such statements are merely dicta, and cannot be a basis for law of the case.

### C. Law of the case also does not apply where (as here) there is a significantly expanded evidentiary record, a change in case law, or other reasons that new consideration might lead to a different result.

The law of the case "doctrine 'does not rigidly bind a court to its former decisions, but is only addressed to its good sense.'" *Johnson v. Holder*, 564 F.3d 95, 99 (2nd Cir. 2009) (quoting *Higgins v. Cal. Prune & Apricot Grower, Inc.*, 3 F.2d 896 (2nd Cir. 1924) (L. Hand, J.)). Among the reasons a court might decline to apply law of the case – if the doctrine applied in the first place – include an expanded evidentiary record, new case law, or some other reason to think that blind carryforward of a prior ruling might be manifestly unjust. *Johnson* at 99-100.

All three of those factors are present here.

First, while the preliminary injunction record certainly was not insubstantial, the record now is far more extensive and complete. As the Court knows, the parties have spent several years gathering and developing additional evidence in the form of stipulations, declarations and affidavits, including multiple versions of the stipulated facts (culminating in a final Consolidated Statement of Stipulated Facts filed on May 19, 2023, containing no less than 246 stipulated facts) as well as a ten volume Joint Judicial Notice Request (filed on May 9, 2022) and then numerous additional declarations and affidavits by both sides. The record is far more complete and developed now than it was at the time of the preliminary injunction decision.

Second, about two and a half years after the preliminary injunction was decided, the Supreme Court decided *City of Austin v. Reagan National Advertising*, ___ U.S. __, 142 S.Ct. 1464 (2022). That case reaffirmed the change in the legal landscape in terms of whether and when to apply intermediate or strict scrutiny. *City of Austin* clarified what constitutes a content-based restriction, and also clarified that (consistent with *Reed*) strict scrutiny was required for all content-based restrictions.  Inasmuch as the preliminary injunction decision disregarded *Reed* and applied only intermediate scrutiny, the new case law of *City of Austin* makes clear that the preliminary injunction subjected the 2001 Amendments to the wrong level of constitutional review.

And third, Judge Pauley himself expressly stated that his conclusions of law were not "conclusive,"[11]—and his own findings seemed to give reason to doubt those conclusions. Specifically, by the penultimate page of the preliminary injunction decision (408 F.Supp.3d at 470), Judge Pauley wrote that the 2001 Amendments were "a throwback to a bygone era." Quoting Proust, he said that "the reality [on which the 2001 Amendments were based] no longer exist[s]." He further observed that "The City's landscape has changed dramatically since the Defendants last studied the secondary effects of adult establishments twenty-five years ago" – now much closer to 30 years ago.

---

[11] 408 F.Supp.3d at 458.

At bottom, whatever the City might have thought about its justifications in 1994[12] or 2001, and whatever the Court might have thought about them in 2019, we know now that they are not closely related – and certainly not narrowly tailored – to the stated goal of reducing the supposed adverse secondary effects, because three decades of lived experience has so shown.[13] Allowing the 2001 Amendments to go into effect today would be "solving" a "problem" that no longer exists – if it ever did.  (*Id.*)  These are compelling reasons to consider the issues anew even if the law of the case "doctrine" might otherwise have applied.

### CONCLUSION

For all the reasons above, the City's Motions in Limine should be denied and the trial should proceed, as originally ordered, based on the already-submitted summary judgment materials, supplemented by examination of any witnesses whom the parties may specify following this Court's ruling on the Motions in Limine.

---

[12] For example, even the 1994 DCP Study said that "it was not possible to draw definitive conclusions" and that the evidence on the issue of whether adult businesses decrease nearby property values is, at best, "necessarily ambiguous".  On this point the record has *not* changed. The preliminary injunction decision summarized and quoted some of this evidence, including the 1994 DCP Study, at 408 F.Supp.3d at 437.

[13] Again, see the substantial and unrefuted evidence which Plaintiffs submitted, *inter alia,* in Exhibits 61-64 in Volume 9 of the Joint Judicial Notice Requests as well as the findings of Justice York (set out in Doc. 201 at ECF pp. 27-28, n.20) and, significantly, the City's stipulations on the lack of a variety of findings supporting the 2001 Amendments, as discussed in Doc. 201 at ECF pp. 19-22.

Respectfully submitted,

G. Randall Garrou
randygarrou@wgdlaw.com
Of Counsel to Weston Garrou & Mooney
12121 Wilshire Blvd. Suite 525
Los Angeles CA 90025
(310) 749-6069
randygarrou@wgdlaw.com

Jerome H. Mooney
jerrym@mooneylaw.com
Weston Garrou & Mooney
12121 Wilshire Blvd. Suite 525
Los Angeles CA 90025
(310) 442-0072

Alan M. Abramson
alanabramson@abramsonmorak.com

Abramson & Morak
35 Worth Street
New York, NY 10013
(212) 226-7098

by ___/s/ G. Randall Garrou_____
      G. RANDALL GARROU

      *Counsel for Plaintiffs in*
      *02 Civ 8333 (LJL)*


s/ Jeffrey M. Nye_____
Jeffrey m. Nye, Esq.
*Counsel for Plaintiffs in 02 Civ 4431 (LJL)*
Stagnaro, Saba & Patterson Co., LPA
7373 Beechmont Avenue
Cincinnati, OH 45230
*(513) 533-6714*
*jmn@sspfirm.com*

18

/s/ Edward S. Rudofsky
Edward S. Rudofsky, Esq.
*Counsel for Plaintiffs in 02 Civ 4432 (LJL)*
Zane and Rudofsky
Five Arrowwood Lane
Melville, NY 11747
(917) 913-9697
*eed@rudofskylaw.com*