UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------

CLUB AT 60TH STREET, INC., et al.,

                Plaintiffs,

           -against-

THE CITY OF NEW YORK,               02 Civ. 8333 (LJL)

             Defendant.

------------------------------------------------------------------

725 EATERY CORP., et al.,

                Plaintiffs,

           -against-

THE CITY OF NEW YORK, et al.,        02 Civ. 4431 (LJL)

             Defendants.

------------------------------------------------------------------

59 MURRAY ENTERPRISES, INC., et al.

                Plaintiffs,

           -against-         02 Civ. 4432 (LJL)

THE CITY OF NEW YORK, et al.,

             Defendants.

------------------------------------------------------------------

336 LLC, et al.,

                Plaintiffs,         18 Civ. 3732 (LJL)

           -against-

THE CITY OF NEW YORK, et al.,

             Defendants.

------------------------------------------------------------------

# DEFENDANTS' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THEIR MOTIONS *IN LIMINE*

HON. SYLVIA HINDS-RADIX
Corporation Counsel of the City of New York
*Attorney for Defendants*
100 Church Street
New York, New York 10007
(212) 356-2214

SHERYL NEUFELD
MARK MUSCHENHEIM
KERRI DEVINE
SCALI RIGGS,
        Of Counsel

October 10, 2023

Defendants, by their attorney, Hon. Sylvia O. Hinds-Radix, Corporation Counsel of the City of New York, respectfully submit this reply memorandum of law in further support of their motions *in limine*.

## ARGUMENT

These motions *in limine* seek to narrow the issues at the upcoming trial. While plaintiffs now object to this effort, less than two months ago plaintiffs (together with defendants) similarly sought to narrow the issues when requesting a delay of the trial until after a ruling on the parties' summary judgment motions; such a ruling could "significantly limit[] the issues of fact to be tried" and "would likely reduce the number of witnesses subject to cross-examination (and the associated costs of such appearances)."  Letter from Rudofsky to Judge Liman of 8/24/23, at 2 (ECF 232).[1]  So too here.

More importantly, this motion is appropriate given that the issues at hand -- whether the available alternative locations can be City-wide, whether the commercial viability of the alternative locations is pertinent, and whether another secondary effects study needs to be conducted -- do not involve any factual disputes, but rather are questions of law premised on rulings in these actions that were (and are) premised on established case law.

---

[1] References to documents on the ECF docket are to those filed in the <u>725 Eatery Corp.</u> (# 02 Civ. 4431) lawsuit.

## POINT I

**SINCE DEFENDANTS NEED ONLY ESTABLISH THE AVAILABILITY OF ALTERNATIVE LOCATIONS ON A CITY-WIDE BASIS, EVIDENCE THAT MANHATTAN SHOULD BE SEPARATELY CONSIDERED IS IRRELEVANT, AS IS EVIDENCE ABOUT THE COMMERCIAL VIABILITY OF THOSE ALTERNATIVE LOCATIONS.**

Plaintiffs contend now, as they did at the preliminary injunction stage, that in determining whether the defendants have identified sufficient alternative locations "Manhattan … should be separately considered." Pltfs' Opp'n Br., at 3 fn 2 (ECF 239); see also Sclar Decl., at ¶ 104 (ECF 92, at PDF 21). While plaintiffs quibble about whether the Court properly characterized their argument when Judge Pauley issued the Preliminary Injunction decision, there is no question that Judge Pauley rejected plaintiffs' Manhattan-based alternative locations argument. 725 Eatery Corp. v. City of N.Y., 408 F. Supp. 3d 424, 467 (S.D.N.Y. 2019) ("PI decision") (rejecting plaintiffs' "unsupported contention … that Defendants must demonstrate the presence of sufficient alternative channels for adult expression in Manhattan" (citing Hickerson v. City of N.Y., 146 F.3d. 99, 108 n.5 (2d Cir. 1998)). Moreover, the PI decision was premised on the Second Circuit's holding (not mentioned by plaintiffs) that alternative locations need not be established "on a borough-by-borough basis." Hickerson, 146 F.3d. at 108 n.5. Consequently, evidence relating to plaintiffs' contention that Manhattan "should be separately considered" is irrelevant and should be precluded.

Plaintiffs also seek to submit evidence relating to the commercial viability of alternative locations. As both the Second Circuit and the PI decision recognized, the commercial viability of alternative locations "is not relevant to the availability inquiry." TJS of N.Y. Inc. v.

Town of Smithtown, 598 F.3d 17, 28 (2d Cir. 2010); see also 408 F. Supp. 3d at 466-67.  Since evidence relating to commercial viability of alternative locations is irrelevant, it also should be precluded.

Plaintiffs' opposition to this point (as well as the Manhattan alternative location point) is premised on the "how speech will fare" component of Justice Kennedy's concurrence in City of Los Angeles v. Alameda Books, Inc., 535 U.S. 425 (2002) ("Alameda Books").  Pltfs' Opp'n Br., at 4-7.  But as Judge Pauley concluded in the PI decision, Justice Kennedy's concurrence "clarif[ied] or restat[ed] familiar analytical principles, including that time, place, and manner regulations must leave open adequate alternative channels for regulated speech." 408 F. Supp. 3d at 465.[2]  See also Tollis Inc. v. Cnty. of San Diego, 505 F.3d 935, 939-41 (9th Cir. 2007) (rejecting "contention that Alameda Books imposed a heightened evidentiary burden on the County to show 'how speech would fare' under the ordinance.  So long as there are a sufficient number of suitable relocation sites, the County could reasonably assume that, given the draw of pornographic and sexually explicit speech, willing patrons would not be measurably discouraged by the inconvenience of having to travel to an industrial zone.").

### POINT II

**EVIDENCE RELATING TO PLAINTIFFS' CLAIM THAT THE DEFENDANTS SHOULD CONDUCT A NEW SECONDARY EFFECTS STUDY IS IRRELEVANT.**

In the PI decision, this Court determined that the 1994 Department of City Planning Study ("1994 DCP Study") (JNR Ex. 41) (ECF 162), together with the 2001 City

---

[2] The PI decision also quoted from a Ninth Circuit case that collected cases "explicitly stat[ing] that Justice Kennedy's separate decision did little, if indeed anything, to the traditional Renton framework."  408 F. Supp. 3d at 465 (quoting Ctr. For Fair Pub. Pol'y v. Maricopa Cnty., 336 F.3d 1153, 1163 (9th Cir. 2003)).

Planning Commission Report ("2001 CPC Report") (JNR Ex. 45), supported a link between 60/40

establishments under the 2001 Amendments to the New York City Zoning Resolution and negative

secondary effects. 408 F. Supp. 3d at 465-66. Plaintiffs nevertheless posit that Defendant City

of New York's ("City") study and report do not support its rationale for the 2001

Amendments. See, e.g., Pltfs' Opp'n Br., at 8. In an effort to "cast doubt"[3] on the defendants''

rationale for the 2001 Amendments, plaintiffs submit evidence which purportedly

demonstrates that the secondary effects complained of in 1994 no longer existed, at least with

respect to 60/40 businesses. Pltfs' Opp'n Br., at 8; Pls.' X-Mot. SJ Br., at 5, 17, 54-55 (ECF

225). Plaintiffs argue that the City was required to conduct a new study of secondary effects

as they relate to 60/40 establishments. Id.

       Both this Court and the New York Court of Appeals previously rejected plaintiffs'

argument, holding that the City was not required to conduct a new secondary effects study related

to 60/40 establishments. In the PI decision, this Court held that the 2001 Amendments are

sufficiently tailored to meet the City's interest in reducing negative secondary effects caused by

adult establishments. In so holding, Judge Pauley ruled that the defendants provided evidence (the

1994 DCP Study and 2001 CPC Report) that supports a link between the regulated speech and the

secondary effects, noting that defendants "had a reasonable basis to infer that regulating the

---

[3] In their oppositions to Defendants' Motions *in Limine*, Plaintiffs theorize that their evidentiary submissions are relevant to the Alameda Books burden-shifting analysis, in that such evidence "casts doubt" on the City's rationale for the 2001 Amendments. Pltfs' Opp'n Br., at 8. The Alameda Books burden-shifting framework provides, in summary, as follows, "First, a 'municipality's evidence must fairly support the municipality's rationale for its ordinance'. Second, the municipality prevails '[i]f plaintiffs fail to cast direct doubt on this rationale, either by demonstrating that the municipality's evidence does not support its rationale or by furnishing evidence that disputes the municipality's factual findings'. Third, '[i]f plaintiffs succeed in casting doubt on a municipality's rationale in either manner, the burden shifts back to the municipality to supplement the record with evidence renewing support for a theory that justifies its ordinance.'" For the People Theatres of N.Y. Inc. v City of N.Y., 29 N.Y.3d 340, 349 (2017) ("People Theatres"), cert. denied, 2018 WL 942493, 138 S. Ct. 1000 (2018), quoting, Alameda Books, 535 U.S. at 438-39 (internal citations omitted).

location of 60/40 establishments would alleviate the negative secondary effects associated" with adult establishments.  408 F. Supp. 3d at 465-66 (citations omitted).  Judge Pauley specifically noted that "the Club Plaintiffs' suggestion that the City must furnish evidence linking 60/40 establishments with secondary effects runs afoul of the notion that 'a city need not prove that such a link exists or prove that its ordinance will be effective in suppressing secondary effects.'"  Id. (quoting White River Amusement Pub, Inc. v. Town of Hartford, 481 F.3d 163, 171 (2d Cir. 2007)).

Similarly, the New York Court of Appeals held that the City met its burden at the third stage of the Alameda Books burden-shifting framework by producing evidence adequate to support its conclusion that 60/40 establishments retained a predominant, ongoing focus on sexually explicit activities or materials (and, thus, were indistinguishable in focus from 100% adult establishments).  Consequently, there was no need for the City to have conducted a new secondary effects study prior to enacting the 2001 Amendments because the secondary effects of the 60/40 businesses covered by the 2001 Amendments were already studied by the City in 1994.  See People Theatres 6 N.Y.3d 63, 83-84 (2005); People Theatres 29 N.Y.3d at 350, 363 (2017).

Since Courts have repeatedly held that the City is entitled to rely on the 1994 DCP Study and the 2001 CPC Report, and need not conduct a new secondary effects study, plaintiffs' evidentiary submissions which purportedly "cast doubt" on the secondary effects as they relate to 60/40 establishments, are not relevant and should be excluded.

## POINT III

## THE LAW OF THE CASE DOCTRINE ALSO WARRANTS GRANTING THE MOTION *IN LIMINE.*

Contrary to plaintiffs' assertions, defendants do not ignore binding precedent in arguing that law of the case should apply to these three purely legal issues already resolved by Judge Pauley in the PI decision.  Pltfs' Opp'n Br., at 11.  Indeed, there is no binding precedent precluding the application of law of the case to a decision on a motion for a preliminary injunction. Rather, this Court should apply "good sense" in adhering to Judge Pauley's decision on these three legal issues, consistent with the way the Court did in City of N.Y. v. Gordon, 155 F. Supp. 3d 411, 421 (S.D.N.Y. 2015).

As in Gordon, it is proper here to give deference to the legal conclusions of the prior judge, absent an intervening change of law.  The three legal conclusions, addressed more fully above, are based on undisputed facts that were before Judge Pauley.  Defendants did not conduct any additional studies as to negative secondary effects of adult establishments since 2001, were not legally required to consider the commercial viability of possible alternative sites and did not separately consider the availability of alternative locations in Manhattan (as opposed to City-wide).  The record with respect to these issues remains materially the same as the one before Judge Pauley at the time he issued the PI decision.  While plaintiffs assert that the record is "far more and complete and developed now," (Pltfs' Opp'n Br., at 15) they do not point to any specific changes in the record with respect to the three legal rulings at issue.  And contrary to plaintiffs' assertions, City of Austin v. Reagan Nat'l Adver. of Austin, LLC, 142 S. Ct. 1464 (2022), does not alter the analysis applicable to zoning regulations like the 2001 Amendments.  Pltfs' Opp'n Br., at 16.  See also Agostini v. Felton, 521 U.S. 203, 237 (1997) (courts follow the precedent that

directly controls a case).  Finally, there is no legal support for plaintiffs' argument that the mere passage of time weighs against application of law of the case.  Pltfs' Opp'n Br., at 17.

Plaintiffs incorrectly assert that Judge Pauley stated that his conclusions of law were not conclusive.  Pltfs' Opp'n Br., at 16.  To the contrary, in addition to the absence of an express statement that his conclusions of law were not conclusive, the sheer depth of analysis suggests that they were in fact conclusive.  What Judge Pauley did expressly recognize was that the purpose of a PI decision is not "to conclusively determine the rights of the parties," (408 F. Supp 3d at 458 (citation omitted)), however, that is not what defendants seek to do, for if it was conclusively determined in the PI decision, plaintiffs would prevail.[4]  Instead, defendants posit simply that Judge Pauley's prior comprehensive legal rulings based on undisputed facts should not be revisited, consistent with Gordon.

---

[4] While the PI decision did conclude that at that stage the City had not established sufficient alternative locations because it had not conducted a lot-by-lot analysis of locations outside of Manhattan (408 F. Supp. 3d at 469), at this stage the City has done so; that analysis establishes that there are over 1,200 locations City-wide where the 32 existing adult establishments could relocate.  Stip. Facts, at ¶ 170 (ECF 216) & Croswell Decl. at ¶ ¶ 2 & 12 (ECF 212-3).

## **CONCLUSION**

For the forgoing reasons and those set forth in their moving papers, defendants' *in limine* motions should be granted.

Dated:      New York, New York
             October 10, 2023

                            HON. SYLVIA O. HINDS-RADIX
                            Corporation Counsel of the City of New York
                            Attorney for Defendants
                            100 Church Street
                            New York, New York 10007
                            (212) 356-2186

                            By:  _____
                                      Mark W. Muschenheim
                                      Assistant Corporation Counsel

Of Counsel:

Sheryl Neufeld
Kerri Devine
Scali Riggs